# Exhibit 1

**⊕ICSID**

INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

1818 H STREET, NW  |  WASHINGTON, DC 20433  |  USA
TELEPHONE (202) 458 1534  |  FACSIMILE (202) 522 2615
WWW.WORLDBANK.ORG/ICSID

## CERTIFICATE

SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE

V.

BOLIVARIAN REPUBLIC OF VENEZUELA

(ICSID CASE NO. ARB/12/13)

I hereby certify that the attached document is a true copy of the English version of the Tribunal's Award dated November 3, 2017, which was rendered in the English and Spanish languages.

Martina Polasek
Acting Secretary-General

Washington, D.C., November 3, 2017

**International Centre for Settlement of Investment Disputes**

SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE

CLAIMANT

v.

BOLIVARIAN REPUBLIC OF VENEZUELA

RESPONDENT

**Award**

Rendered by a tribunal composed of:

Professor Dr. Klaus M. Sachs, President
The Honorable Charles N. Brower, Arbitrator
Mr. Gabriel Bottini, Arbitrator

Secretary of the Tribunal
Ms. Natalí Sequeira (until 7 August 2017)
Mr. Francisco Grob

**Date of dispatch to the Parties: 3 November 2017**

## TABLE OF CONTENTS

**A.    THE PARTIES**.................................................................................................. **5**

    I.     Claimant ............................................................................................... 5

    II.    Respondent ........................................................................................... 5

**B.    THE ARBITRAL TRIBUNAL**.......................................................................... **5**

    I.     The Honorable Charles N. Brower .......................................................... 6

    II.    Mr. Gabriel Bottini ............................................................................... 6

    III.   Prof. Dr. Klaus Sachs ........................................................................... 6

**C.    SUMMARY OF THE PROCEDURAL HISTORY**............................................ **7**

**D.    FACTUAL BACKGROUND**............................................................................ **11**

**E.    PARTIES'' POSITIONS**.................................................................................. **11**

    I.     Agreed Amount of Quantum and Joint Proposal ................................... 11

    II.    Summaries of the Parties' Positions on Costs ....................................... 12

**F.    THE TRIBUNAL'S REASONING** .................................................................. **18**

    I.     The Parties' Agreement on Quantum ..................................................... 18

    II.    Decision on Costs ................................................................................ 19

**G.    THE TRIBUNAL'S DECISION**...................................................................... **23**

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| CLA- | Claimant's Legal Authorities |
| Claimant's Cost Submission | Claimant's Cost Submission of 30 June 2015 |
| Claimant's First Updated Cost Submission | Claimant's submission of its Updated Cost Submission of 23 November 2015 |
| Claimant's Second Updated Cost Submission | Claimant's submission of its Updated Cost Submission of 28 July 2017 |
| Claimant's Second Post-Hearing Submission | Claimant's Simultaneous Second-Round Post-Hearing Submission of 22 May 2015 |
| Counter Memorial | Respondent's Counter Memorial dated 21 March 2014 |
| CVG Bauxilum | CVG Bauxilum, C.A. |
| FET | Fair and Equitable Treatment |
| France-Venezuela-BIT or "the Treaty" | Agreement on Encouragement and Reciprocal Protection on Investments Between the Government of the French Republic and the Goverment of the Bolivarian Republic of Venezuela |
| ICSID | International Centre for Settlement of Investment Disputes |
| ICSID Arbitration Rules | The ICSID Rules of Procedure for Arbitration Proceedings |
| ICSID Convention | The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States |
| ICSID Institution Rules | Rules of Procedure for the Institution of Conciliation and Arbitration Procedures |
| Rejoinder | Respondent's Rejoinder on the Merits dated 18 September 2014 |
| Request | Request for Arbitration against Respondent dated 25 May 2012 |
| Respondent's Additional Cost Submission | Respondent's submission of its Additional Cost Submission of 28 July 2017 |
| Secretariat | ICSID Secretariat |

| | |
|---|---|
| Secretary-General | ICSID Secretary-General |
| The "Bauxite Claims" | Claimant's claims that, by virtue of the increase of the bauxite price that had initially been agreed upon in the Bauxite Contract between Claimant and CVG Bauxilum, Respondent failed to accord to Claimant fair and equitable treatment pursuant to Article 3(1) of the Treaty and to protect and secure Claimant's investment pursuant to Article 3(2) of the Treaty. |
| The "Bauxite Contract" | The contract signed by CVG Bauxilum and Saint-Gobain Proppants Venezuela C.A. on 25 October 2005 |
| The "Decision" | The Decision on Liability and the Principles of Quantum rendered by the Tribunal in this arbitration proceeding on 30 December 2016 |

## A.   THE PARTIES

### I.   CLAIMANT

1.   Saint-Gobain Performance Plastics Europe, hereinafter referred to as "**Claimant**" or "**Saint-Gobain**", represented in this arbitration by its duly authorized attorneys Mr. Alexander A. Yanos of Alston & Bird LLP, 90 Park Avenue, 15th Floor, New York, NY 10016-1387 , United States of America, Ms. Elizabeth C. Solander, Hughes Hubbard & Reed LLP, 1775 I Street, N.W., Washington, D.C. 20006-2401, United States of America and Ms. Noiana Marigo, of Freshfields Bruckhaus Deringer US LLP, 601 Lexington Ave, 31st Floor, New York, NY 10022, United States of America.

### II.   RESPONDENT

2.   The Bolivarian Republic of Venezuela, hereinafter referred to as "**Respondent**" or "**Venezuela**", represented in this arbitration by Dr. Reinaldo Enrique Muñoz Pedroza, Procurador General de la República, Av. Los Ilustres, cruce con calle Francisco Lazo Martí, Urb. Santa Mónica, Caracas, Bolivarian Republic of Venezuela. Respondent is also represented by its duly authorized attorneys Mr. Benard V. Preziosi, Jr. of Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY 10178, United States of America, and Mr. Eloy Barbará de Parres, Ms. Gabriela Álvarez Ávila, Ms. Kate Brown de Vejar and Ms. Dori Yoldi of Curtis, Mallet-Prevost, Colt & Mosle, S.C., Rubén Darío 281, Piso 9, Col. Bosque de Chapultepec, 11580 Mexico City, United Mexican States.

3.   Claimant and Respondent are hereinafter each referred to as a "**Party**" and jointly as the "**Parties**".

## B.   THE ARBITRAL TRIBUNAL

4.   The Arbitral Tribunal has been constituted as follows:

## I.   THE HONORABLE CHARLES N. BROWER

(appointed by Claimant)

20 Essex Street Chambers
20 Essex Street
London WC2R 3AL
GREAT BRITAIN
Tel: +44 (0)20 7842 1200
Fax: +44 (0)20 7842 1270
E-mail: cbrower@20essexst.com

## II.   MR. GABRIEL BOTTINI

(appointed by Respondent)

Paraná 580- Piso 5° "J"
C1017AAL- Buenos Aires
Argentina
Tel.: + 54 11 4371-3165
Fax: + 54 11 4372-7974
E-mail gbottini@outlook.com

## III.   PROF. DR. KLAUS SACHS

(appointed by the Parties)

Nymphenburger Str. 12
D-80335 München
GERMANY
Tel.: +49 89 23 807-109
Fax: + 49 89 23 807-40 621
E-mail: Klaus.Sachs@cms-hs.com

## C.    SUMMARY OF THE PROCEDURAL HISTORY

5.    This arbitration concerns a legal dispute between Saint-Gobain and Venezuela arising out of Venezuela's alleged refusal to compensate Saint-Gobain for the expropriation of Saint-Gobain's investment in its 99.99%[1] subsidiary Norpro Venezuela C.A. ("**Norpro Venezuela**" or "**Norpro**") following a televised speech of Venezuela's President Hugo Chávez on 15 May 2010. Claimant alleges that Respondent breached the *Agreement on Encouragement and Reciprocal Protection of Investments between the Government of the French Republic and the Government of the Bolivarian Republic of Venezuela* (the "**France-Venezuela-BIT**" or the "**Treaty**"), which entered into force on 15 April 2004, by refusing to offer compensation for the expropriation of Norpro Venezuela's proppants plant in Puerto Ordaz, Bolivar State, as well as by sanctioning or failing to intervene in the increase of the price for the supply of bauxite allegedly in breach of a contract entered into with a State-owned entity, thus failing to treat Claimant fairly and equitably and to accord its investment full protection and security, in violation of Articles 5(1) and 3(1) and (2) of the Treaty.

6.    On 25 May 2012, Claimant filed a Request for Arbitration against Respondent (the "**Request**") with the Secretary-General of ICSID in accordance with Article 36 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "**ICSID Convention**") and the Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings (the "**ICSID Institution Rules**").

7.    On 29 May 2012, the Secretariat of ICSID (the "**Secretariat**") transmitted the Request to Respondent.

8.    On 15 June 2012, the Secretary-General registered Claimant's Request in accordance with Article 36 of the ICSID Convention and Rules 6 and 7 of the ICSID Institution Rules and notified the Parties of such registration. The case was assigned the ICSID Case Number ARB/12/13.

9.    On 28 September 2012, Claimant appointed Judge Charles N. Brower, a national of the United States of America, as arbitrator.

10.    On 3 October 2012, Respondent appointed Mr. Gabriel Bottini, a national of the Argentine Republic, as arbitrator.

---

[1] One share is held by Mr. Luis Páez, a Venezuelan national and the President of Norpro Venezuela, who subscribed a single share when Norpro Venezuela was incorporated. The planned transfer of Mr. Páez's share to Saint-Gobain has not yet been completed. Request, ¶ 4, note 4.

11.    On 4 October 2012, Judge Brower accepted his appointment as arbitrator by Claimant, having provided a duly signed declaration to the Secretariat in accordance with Rule 6(2) of the ICSID Rules of Procedure for Arbitration Proceedings (the "**ICSID Arbitration Rules**").

12.    On 25 October 2012, Mr. Bottini accepted his appointment as arbitrator by Respondent, having provided a duly signed declaration to the Secretariat in accordance with Rule 6(2) of the ICSID Arbitration Rules.

13.    On 12 November 2012, the Secretary-General informed Prof. Dr. Klaus Sachs that the Parties agreed on his appointment as President of the Tribunal. By letter of 14 November 2012, Prof. Sachs accepted his appointment, having provided a duly signed declaration to the Secretariat in accordance with Rule 6(2) of the ICSID Arbitration Rules.

14.    On 26 November 2012, the Secretary-General informed the Parties that Prof. Sachs, Judge Brower and Mr. Bottini had accepted their appointments as arbitrators and, accordingly, pursuant to Rules 6(1) of the ICSID Arbitration Rules, the Tribunal was deemed to have been constituted and the proceedings to have begun as of such date; in addition, Ms. Natalí Sequeira was designated to serve as the Secretary of the Tribunal (the "**Secretary**").

15.    Following the exchange of written submissions and an oral hearing held in Washington, D.C., USA from 2 to 6 February 2015, the Tribunal rendered its Decision on Liability and the Principles of Quantum on 30 December 2016 (the "**Decision**"), which forms an integral part of the Award. For the summary of the procedural history leading up to the issuance of the Decision, reference is made to Section C. of the Decision.

16.    In the operative part of its Decision, the Tribunal held:

   1.    Respondent has breached Article 5(1) subparagraphs 2 and 3 of the Treaty by failing to specify the amount of compensation and to pay prompt compensation for the expropriation of Claimant's investment in Venezuela.

   2.    Respondent shall pay to Claimant the amount of compensation to be calculated on the basis of the Tribunal's findings summarized at paragraphs 849 through 851 above, plus pre-award interest as of 15 May 2010 until the date of the Award at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually.

   3.    Respondent shall pay to Claimant post-award interest on the amount of compensation under 2 as of the date of the Award until the date of payment

at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually. Post-award interest is to be paid only on the principal amount of compensation, and not on the pre-award interest awarded.

4.    The award of damages and interest is made net of applicable Venezuelan taxes, and Respondent may not deduct taxes in respect of the payment of the award of damages and interest.

5.    The decision on costs is reserved for the Award.

6.    All other claims and requests are dismissed.

17.    On 11 January 2017, the Tribunal issued Procedural Order No. 4, in which it ordered:

The Parties are invited to liaise in an attempt to reach agreement on the final amount of compensation to be paid by Respondent to Claimant in respect of the expropriation of Norpro Venezuela – based on the Tribunal's findings summarized in paragraphs 849 to 851 of the Tribunal's Decision on Liability and the Principles of Quantum.

The Parties shall inform the Tribunal within two months from the notification of the Decision, *i.e.*, by Wednesday, 1 March 2017, whether and to what extent they have been able to reach agreement on the matter set out under paragraph 3 above.

In case the Parties have not been able to reach agreement on the final amount of compensation to be paid by Respondent to Claimant by 1 March 2017, the Tribunal will invite the Parties to agree on, or failing agreement to submit their respective proposals for, a calendar for submissions of the Parties on the remaining quantum issues to be decided.

18.    By e-mail of 17 February 2017, the Parties jointly requested an extension of the 1 March 2017 deadline identified in paragraph 4 of Procedural Order No. 4 to 31 March 2017. By e-mail of 18 February 2017, the Tribunal granted the Parties' extension request.

19.    By letter of 30 March 2017, Respondent filed its submission on the final amount of compensation to be awarded to Claimant based on the findings made by the Tribunal in its Decision. In particular, it presented four figures calculated by the Parties' experts using their respective DCF models and proposed that the Parties agree on the second highest of these four amounts, *i.e.*, the amount derived by Respondent's expert using its own economic model.

20.    By letter of 31 March 2017, Claimant informed the Tribunal that it considered the results of the application of the DCF method based on the parameters set out by the Tribunal in its Decision inconsistent with the standard of compensation mandated by the Treaty and customary international law and requested that the Tribunal direct the Parties to confer and propose a calendar for submissions on the quantum issues to be decided.

21.    Following the exchange of further submissions between the Parties as regards the necessity to file new submissions on quantum and as regards Claimant's requests for reconsideration and correction of the Tribunal's Decision, the Tribunal issued its Decision on Claimant's Requests for Reconsideration and Correction on 28 June 2017 (the "**Reconsideration Decision**"). For a detailed summary of the submissions exchanged prior to the issuance of the Reconsideration Decision, reference is made to Section A. of the Reconsideration Decision.

22.    In the cover letter dated 28 June 2017, transmitted to the Parties together with the Reconsideration Decision, the Tribunal made reference to paragraph 89 of the Reconsideration Decision, where it expressed the view that it was not yet in a position to determine the final amount of compensation to be paid by Respondent to Claimant in respect of the expropriation of Claimant's investment without providing Claimant with the opportunity to comment on the contents of Respondent's letter of 30 March 2017. The Tribunal therefore invited Claimant to file its comments, in particular on Respondent's proposal to adopt the second highest of four figures calculated by the Parties' experts on the basis of the Tribunal's findings in its Decision as the final amount of compensation, by 12 July 2017.

23.    By letter of 12 July 2017, Claimant commented on Respondent's letter of 30 March 2017 and, in particular and without prejudice to its previous submissions made in the context of its requests for reconsideration and correction, agreed with Respondent's proposal to adopt the second highest of four amounts. Claimant further requested leave to amend its submission on costs in light of additional fees and costs incurred subsequent to the last cost update in November 2015.

24.    In its letter of 14 July 2017, the Tribunal invited both Parties to submit any updates to the Cost Submissions that they wished to be considered in the Tribunal's decision on costs to be included in the Award by 28 July 2017.

25.    On 28 July 2017, Claimant filed an updated cost submission ("**Claimant's Updated Cost Submission**"). On the same date, Respondent filed an additional cost submission ("**Respondent's Additional Cost Submission**").

26.   On 7 August 2017, the Centre informed the Parties and the Tribunal that Mr. Francisco Grob, ICSID Legal Counsel, would replace Ms. Sequeira as Secretary of the Tribunal.

27.   On 20 September 2017, the Tribunal declared the proceeding closed pursuant to Rule 38(1) of the ICSID Arbitration Rules.

## D.   FACTUAL BACKGROUND

28.   A detailed summary of the background facts that are not disputed between the Parties, or which have otherwise been established by the evidence submitted in these proceedings to the satisfaction of the Tribunal has been set out in Section D. of the Decision.

## E.   PARTIES'' POSITIONS

29.   For detailed summaries of the Parties' positions on liability and quantum as argued in their written submissions and during the Hearing, reference is made to Sections E. and F. of the Decision.

30.   Further to the Tribunal's Decision, which dealt with the question of Respondent's liability under the Treaty and the principles of quantum applicable to the determination of the amount of compensation, the remaining issues to be addressed in this Award are: (i) the exact amount of compensation to be paid by Respondent to Claimant in respect of the expropriation of its investment based on the findings made by the Tribunal in its Decision; and (ii) the allocation of the costs of the arbitration and the legal fees and costs incurred by the Parties in connection with this arbitration.

### I.   AGREED AMOUNT OF QUANTUM AND JOINT PROPOSAL

31.   In its letter of 30 March 2017, Respondent presented the results which had been calculated by the Parties' experts, who had each run their own and the other Party's expert's economic model based on the Tribunal's findings in its Decision, and exchanged between the Parties on 7 March 2017. These results were as follows:

| Respondent's Expert's Calculations | | | |
|---|---|---|---|
| | Using Claimant's DCF Model | | Using Respondent's DCF Model |
| | (US$ Million) | | |
| 1. Value as of May 15, 2010 | $ | 25.6 | $ | 29.6 |
| 2. Interest through March 31, 2017 | $ | 4.1 | $ | 4.8 |
| 3. Total | $ | 29.8 | $ | 34.4 |

| Claimant's Expert's Calculations | | | |
|---|---|---|---|
| | Using Claimant's DCF Model | | Using Respondent's DCF Model |
| | (US$ Million) | | |
| 4. Value as of May 15, 2010 | $ | 23.0 | $ | 30.6 |
| 5. Interest through March 6, 2017 | $ | 3.6 | $ | 4.7 |
| 6. Total | $ | 26.6 | $ | 35.3 |

32. On that basis, Respondent proposed that the Parties agree on the final amount of compensation derived by its expert using his own economic model, *i.e.*, an amount of USD 34.4 million (including interest through to 31 March 2017).

33. Upon invitation from the Tribunal to comment on Respondent's letter of 30 March 2017 and in particular the above mentioned proposal after the Tribunal's Reconsideration Decision had been rendered on 28 June 2017, Claimant stated in its letter of 12 July 2017 that: (i) Respondent's letter accurately reflected the four amounts calculated by the Parties' experts on the basis of the parameters set out in the Tribunal's Decision; and (ii) without prejudice to its previous submissions made in the context of its requests for reconsideration and correction of the Tribunal's Decision, it agreed with Respondent's proposal to adopt the second highest of these four amounts, *i.e.*, USD 34.4 million including interest through to 31 March 2017.

## II. SUMMARIES OF THE PARTIES' POSITIONS ON COSTS

34. Both Parties request that the Tribunal order reimbursement by the other Party of the costs they have incurred, respectively. In the following, the positions of the Parties on costs, as argued in their written submissions will be summarized.

### 1. Summary of Claimant's Position on Costs

35.  Claimant submits that in light of the Tribunal's finding in its Decision that Respondent breached Article 5(1) subparagraphs 2 and 3 of the Treaty, Respondent should be ordered to bear the entirety of Claimant's costs plus compound interest calculated annually from the date of the Award until the date of payment by Venezuela.[2]

36.  Claimant submits that the Tribunal's authority to assess and apportion the costs between the Parties is derived from Article 61(2) of the ICSID Convention, which is generally understood broadly so as to include: (i) fees, allowances and any other expenses incurred by attorneys and experts; and (ii) all travel expenses and costs incurred by witnesses, advisors and representatives of the Parties.[3]

37.  Claimant further submits that a tribunal should exercise its authority to award costs and to apply the rule of "*costs follow the event*" particularly in cases where a respondent State has breached its treaty obligations. According to Claimant, tribunals "*have consistently awarded the claimant all or a portion of its reasonable costs*" in such circumstances. Claimant makes reference to *ADC v. Hungary* and *Gold Reserve*, where the tribunals linked their costs award to the principle of full reparation established in *Chorzów*.[4] Claimant further quotes from an authority who considers that "*there is a case for treating the arbitration costs incurred by a claimant who is found to have suffered damages at the hands of a State (or vice versa) as being among the* 'natural, normal and predictable consequences of the damage inflicted.'"[5]

38.  Claimant argues that it is not necessary for a claimant to prevail on each of its claims in order to be eligible for reimbursement of its reasonable costs and refers to the tribunal in *Hochtief v. Argentina*, which considered it sufficient that "*the core of the claim ha*[d] *been upheld*" and that the claimant was "*entitled to reparation for the losses caused by Respondent's violation of Claimant's rights under the BIT*."[6] According to Claimant, the logic of full repara-

---

[2] Claimant's Updated Cost Submission, p. 1.
[3] Claimant's Cost Submission, ¶ 4.
[4] Claimant's Cost Submission, ¶¶ 5-7, *quoting from ADC v. Hungary* (**CLA-001**), ¶¶ 531, 533 *and Gold Reserve v. Venezuela* (**CLA-152**), ¶ 860.
[5] Claimant's Cost Submission, ¶ 8, *quoting from* Bienvenu, Pierre and Valasek, Martin J., "*Compensation for Unlawful Expropriation, and Other Recent Manifestations of the Principle of Full Reparation in International Investment Law*", in Albert Jan van den Berg (ed.), 50 Years of the New York Convention: ICCA International Arbitration Conference, 14 ICCA Congress Series 231 (2009) (**CLA-011**).
[6] Claimant's Cost Submission, ¶ 9, *quoting from Hochtief v. Argentina* (**CLA-160**), ¶ 330.

tion mandates that "*as long as there has been some breach of a claimant's treaty rights re-quiring resort to arbitration, a costs award is necessary to put the claimant back in the posi-tion it would have been in had the breach never occurred.*"[7]

39.     Claimant claims that the tribunals in *OI European v. Venezuela* and *Flughafen Zürich v. Ven-ezuela* applied this approach by requiring Venezuela to pay for the costs of the proceeding and a substantial part of the claimant's reasonable legal costs, respectively.[8] In addition, Claimant makes reference to the decision in *Tidewater v. Venezuela*, where the tribunal held that the expropriation was lawful but nevertheless awarded costs to the claimants, holding that "[t]*he result is that* [claimants] *have been put to a great deal of time, trouble and ex-penses in order to obtain compensation that Venezuela had vouchsafed to provide under the terms of the Barbados BIT and ought to have so provided in 2009.*"[9]

40.     Claimant notes that Respondent does not challenge the Tribunal's authority to grant a costs award but rather seeks one itself, relying on Claimant's non-participation in the procedures provided under Venezuelan law for the determination of the compensation due to Claimant. In response to that argument, Claimant emphasizes that it would not have had to participate in such proceedings if Respondent had complied with its obligations under the Treaty and Venezuelan law by providing Claimant with adequate compensation at the time of expropri-ation. As a result of Respondent's failure to do so, Claimant argues that it had to initiate legal action, which resulted in delays that cost it significant time and financial resources.[10]

41.     In Claimant's view, the fact that its challenge and application for provisional measures were not successful cannot serve as grounds to deviate from the principle of full reparation, arguing that "*good-faith procedural conduct resulting in a minor delay*" does not justify awarding costs to the opposing party. Claimant refers to the case of *Poštová Banka v. Hellenic Republic* where the tribunal did not make a costs order despite ruling in favor of the respondent on jurisdiction, holding that the "*issue was not clear-cut and involved a complex factual and legal background. Each side presented valid arguments in support of its respective case and acted fairly and professionally.*"[11]

---

[7] Claimant's Cost Submission, ¶ 9.

[8] Claimant's Cost Submission, ¶ 10, *referring to OI European Group v. Venezuela* (**CLA-156**), ¶¶ 969-976 *and Flu-ghafen Zürich v. Venezuela* (**CLA-161**), ¶¶ 994-995, 997, 1000-1001.

[9] Claimant's Cost Submission, ¶ 11, *referring to Tidewater v. Venezuela* (**CLA-155**), ¶ 213.

[10] Claimant's Cost Submission, ¶¶ 13-14. *See also* Claimant's First Updated Cost Submission, p. 1.

[11] Claimant's Cost Submission, ¶ 16, *quoting from Poštová Banka v. Hellenic Republic* (**CLA-163**), ¶ 377.

42.    On the other hand, Claimant claims that an adjustment to the costs award may be warranted "*in light of extreme conduct or abuse of process by parties, including deliberate obstruction of proceedings*," which it considers to be the case here due to Respondent's refusal to pay its share of the advances on costs as required by ICSID Regulation 14(3)(d). Claimant argues that Respondent thereby "*threatened the continuity of the proceedings*" and forced it to pay Respondent's share to avoid discontinuance of the proceedings. Claimant refers to the decision in *Venoklim v. Venezuela*, where the tribunal took note of Venezuela's similar conduct and ordered it to reimburse the claimant for its unpaid share of the advance on costs.[12]

43.    Based on the above and pursuant to Rule 28 of the ICSID Arbitration Rules, Claimant seeks reimbursement of: (i) the advances of fees and expenses of the members of theTribunal and ICSID's administrative fees; (ii) the travel costs and expenses of Claimant's witnesses and party representatives; and (iii) the costs of its legal representation, independent experts and consultants.[13] According to Claimant's Updated Cost Submission filed on 28 July 2017, Claimant has incurred the following costs:[14]

| Description | Updated Total Amount as of 28 July 2017 (USD) |
|---|---|
| Tribunal and ICSID Costs | 1,425,000[15] |
| Travel Costs and Expenses of Witnesses and Representatives | 85,227.27 |
| Attorney's Fees and Disbursements | 5,214,398.70 |
| Valuation Expert Fees and Disbursements | 1,652,172.11 |
| **Total Costs Claimed** | **8,376,798.08** |

---

[12] Claimant's Cost Submission, ¶ 18, *referring to Venoklim v. Venezuela* (**CLA-165**), ¶¶ 163-165.
[13] Claimant's Cost Submission, ¶ 19.
[14] Claimant's Second Updated Cost Submission, p. 2.
[15] This amount includes the final advance on costs requested by ICSID by letter of 17 August 2017, which was paid by Claimant and received by ICSID on 6 September 2017.

### 2. Claimant's Relief Sought

44.  Claimant requests that the Tribunal:[16]

(a)  ORDER that Venezuela reimburse Saint-Gobain for the following fees and costs, plus compound interest calculated annually at a commercial rate from the date of the Award until the date of payment by Venezuela:

(i)  USD 1,425,000.00, which corresponds to the advances on the fees and expenses of the Tribunal and administrative fees of ICSID made by Saint-Gobain;

(ii)  USD 85,227.27, which corresponds to the reasonable travel and other expenses incurred by Saint-Gobain's witnesses and representatives;

(iii)  USD 5,214,398.70, which corresponds to the fees and disbursements of Saint-Gobain's counsel Freshfields Bruckhaus Deringer US LLP, Hughes Hubbard & Reed LLP, LEC Partnes LLC, and Sosa & Martínez Estudio Jurídico (including USD 53,374.49, which corresponds to the fees and expenses of Saint-Gobain's legal expert, Dr. Brewer-Carías, and USD 15,512.26, which corresponds to the fees and expenses of Saint-Gobain's technology consultants, FTI Consulting and Immersion Legal Graphics, LCC); and

(iv)  USD 1,652,172.11, which corresponds to the fees and expenses of Saint-Gobain's valuation expert, Compass Lexecon.

(b)  AWARD any other relief it may deem appropriate.

### 3. Summary of Respondent's Position on Costs

45.  Respondent agrees with Claimant that Article 61(2) of the ICSID Convention grants the Tribunal authority to assess by whom the expenses of the Parties, as well as the fees and expenses of the Tribunal and charges for the use of ICSID facilities, shall be borne.[17]

46.  Respondent submits that ICSID tribunals often exercise their discretion by awarding costs to the party that prevailed in the arbitration proceedings and claims that it should be considered

---

[16] Claimant's Cost Submission, ¶ 30 with figures updated from Claimant's Second Updated Cost Submission, p. 2.

[17] Counter Memorial, ¶ 271; Rejoinder, ¶ 280.

the prevailing party in this case. Respondent makes reference to Claimant's request to reconsider the Tribunal's Decision, which was unanimously rejected, and to the figures derived by the Parties' experts based on the Tribunal's findings. Respondent notes that all of these figures, which range from USD 23 million to USD 30 million (excluding pre-award interest) are "*far lower than the grossly exaggerated amounts that Claimant demanded throughout the case*," *i.e.*, USD 99.5 million as of 15 May 2010 or USD 120.5 million as of 31 May 2014.[18]

47.     Respondent further invokes Claimant's refusal to participate in the procedures for determining compensation under Venezuelan law and its request for provisional measures against those procedures, which, in Respondent's view, "*frustrated their implementation*." According to Respondent, there would have been no need to incur the expenses of this arbitration if Claimant had "*taken a reasonable position*" in this regard.[19]

48.     Respondent argues that "[i]*n light of Claimant's strategic decision not to participate in the procedures provided under Venezuelan law for the determination of just compensation and instead to engage in tacticts to delay such a determination, and given Claimant's grossly excessive compensation demand in this case*," Claimant should be ordered to bear all of the costs incurred by the Parties as well as the costs of the arbitration.[20]

49.     Pursuant to Respondent's Additional Cost Submission filed on 28 July 2017, Respondent has incurred the following costs:

| Category | Amount (USD) |
| --- | --- |
| Fees of Curtis, Mallet-Prevost, Colt & Mosle, LLP until 23 November 2015 | 4,144,946.25 |
| Fees of Venezuelan Legal Counsel | 162,637.00 |
| Economic Expert – Vladimir Brailovsky | 340,565.63 |
| Economic Expert – Econ One (Daniel Flores) until 23 November 2015 | 1,415,833.74 |
| Transportation and Travel Expenses | 199,955.50 |

---

[18] Respondent's Additional Cost Submission, p. 2.
[19] Respondent's Additional Cost Submission, p. 2.
[20] Counter Memorial, ¶ 272; Rejoinder, ¶ 281.

| Category | Amount (USD) |
|---|---|
| Document Production/Duplicating & Word Processing | 126,876.84 |
| Courier Service | 9,390.96 |
| Fees and disbursements of Curtis, Mallet-Prevost, Colt & Mosle, LLP after 23 November 2015 | 127,468.75 |
| Fees and disbursements of Respondent's economic expert Econ One (Daniel Flores) after 23 November 2015 | 61,370.11 |
| **Total Costs Claimed** | **6,589,044.78** |

### 4.  Respondent's Relief Sought

50.  Respondent requests that the Tribunal award costs against Claimant and, in this case, implement that decision by deducting from the final amount of compensation determined by the Tribunal all of Respondent's costs indicated in the updated Cost Submission of 23 November 2015 and in the Additional Cost Submission.[21]

## F.    THE TRIBUNAL'S REASONING

### I.    THE PARTIES' AGREEMENT ON QUANTUM

51.  As noted above, the Parties have reached agreement on the final amount of compensation to be paid by Respondent to Claimant in respect of the expropriation of Norpro Venezuela based on the findings contained in the Tribunal's Decision. This consent is expressed in Respondent's letter of 30 March 2017 and Claimant's letter of 12 July 2017.

52.  Based on the agreement reached between the Parties, the Tribunal therefore determines that the final amount of compensation to be paid by Respondent to Claimant in respect of the expropriation of its investment, calculated on the basis of the Tribunal's findings summarized at paragraphs 849 through 851 of its Decision, amounts to USD 34.4 million. This amount includes pre-award interest as of 15 May 2010 through to 31 March 2017 in the amount of USD 4.8 million.

---

[21] Respondent's Additional Cost Submission, p. 2.

53. Respondent shall further pay to Claimant pre-award interest, calculated at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually, from 1 April 2017 until the date of this Award.

54. Finally, Respondent shall pay to Claimant post-award interest as determined by the Tribunal in its Decision. Such interest shall start to accrue from the 30th day following the date of this Award.

## II.    DECISION ON COSTS

55. There is common ground between the Parties that the Tribunal's authority to render a decision on the allocation of costs is based on Article 61(2) of the ICSID Convention, which provides:

> "*In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the Award.*"

56. There is further common ground that the Tribunal's discretion to "*assess the expenses incurred by the parties*" extends to all costs incurred by the Parties in connection with the arbitration proceedings, *i.e.*, including the fees charged for their legal representation and valuation experts.

57. The Tribunal will thus exercise its discretion under Article 61(2) of the ICSID Convention and decide on the allocation of: (i) the costs of the arbitration, which includes the administrative fees charged by ICSID as well as the fees and expenses of the members of the Tribunal; and (ii) the fees and expenses incurred by the Parties in connection with this arbitration.

### 1.   The Costs of the Arbitration

58. First, the Tribunal will address the question of who shall bear the costs of the arbitration. As to the advances on costs paid in this regard, the Tribunal notes that, in accordance with Regulation 14(3)(d) of ICSID Administrative and Financial Regulations, ICSID requested the Parties to pay each of the respective advances on costs in equal shares. Respondent, however, has not paid its 50% share pursuant to any of the advance payment requests issued by ICSID over the course of this proceeding. Upon request, Claimant has therefore paid its own as well as Respondent's share of the advances on costs in the total amount of USD 1,425,000.

59.     The Tribunal agrees with Claimant that Respondent's refusal to pay its share of the advances on costs constitutes a breach of the ICSID procedural framework, which the Tribunal will take into account in its decision on the allocation of the arbitration costs.

60.     The Tribunal further recalls its finding in the Decision that Respondent has breached Article 5(1) subparagraphs 2 and 3 of the Treaty by failing to specify the amount of compensation and to pay prompt compensation for the expropriation of Claimant's investment.[22] At the same time, the Tribunal notes that it did not make a finding on whether Respondent has breached its own domestic laws concerning the expropriation process and whether any such breach amounted to a lack of due process as alleged by Claimant in this proceeding.[23]

61.     In any event and irrespective of whether Respondent's conduct was in compliance or in breach of its own expropriation laws, the Tribunal notes that, to its knowledge, Respondent has to date, *i.e.*, more than seven years after the expropriation date, not paid any amount of compensation to Claimant and has not deposited any amount of preliminary compensation with a competent court in Venezuela – despite the fact that it has always recognized the occurence of an expropriation that requires payment of just compensation. In this context, the Tribunal cannot follow Respondent's argument that Claimant's request for provisional measures frustrated the implementation of Venezuelan procedures for determining compensation,[24] given that the Tribunal decided in its Procedural Order No. 3 to deny Claimant's request in full and thus refrained from ordering Respondent to discontinue any domestic proceedings related to the expropriation of Norpro Venezuela.

62.     Against this background and taking into account Respondent's failure to comply with the requirements of Article 5(1) subparagraphs 2 and 3 of the Treaty, the Tribunal agrees with Claimant that it was forced by Respondent's conduct to initiate this arbitration proceeding in order to obtain adequate compensation for the expropriation of its investment in Venezuela.[25] Consequently, the Tribunal considers it appropriate that Respondent shall bear the costs of the arbitration, which amount to (in USD):[26]

---

[22] Decision, ¶ 480 and order no. 1.
[23] Decision, ¶ 504.
[24] *Cf.* Respondent's Additional Cost Submission, p. 2.
[25] *Cf.* Claimant's Cost Submission, ¶¶ 13-14.
[26] The ICSID Secretariat will provide the parties with a detailed Financial Statement of the case account.

| | | |
|---|---|---:|
| Arbitrators' fees and expenses | | |
| | Prof. Dr. Klaus Sachs | 508,122.79 |
| | The Honorable Charles N. Brower | 256,489.47 |
| | Mr. Gabriel Bottini | 229,089.47 |
| ICSID's administrative fees | | 160,000 |
| Direct expenses[27] | | 149,488.26 |
| **Total** | | **1,303,189.99** |

63.   Accordingly, the Tribunal orders Respondent to pay Claimant USD 1,303,189.99 for the expended portion of the advances to ICSID.[28]

### 2. The Costs Incurred by the Parties in Connection with this Arbitration

64.   Second, the Tribunal will assess the question of who shall bear the fees and expenses incurred by the Parties in connection with this arbitration. At the outset, the Tribunal notes that neither Party has raised any objection to the reasonableness of the costs incurred by the other Party and that, in fact, the total costs that each of them incurred are within a similar range of approximately USD 6.5-7 million.

65.   For the reasons set out above, in particular given that Claimant had to initiate the present arbitration proceeding to obtain compensation, the Tribunal considers it appropriate that Respondent shall bear a certain portion of the costs incurred by Claimant in connection with this proceeding. In its assessment of the specific portion that should be borne by Respondent, the Tribunal has particularly taken into account the following considerations.

66.   First, the Tribunal recalls that while it has found a breach of Article 5(1) subparagraphs 2 and 3 of the Treaty and left open whether there was a breach of due process in the expropriation process, it denied Claimant's Bauxite Claims, *i.e.*, its claims that Respondent breached Article 3(1) and 3(2) of the Treaty by virtue of the increase of the bauxite price that was initially agreed upon in the Bauxite Contract entered into between Claimant and CVG Bauxilum.[29]

---

[27] This amount includes charges relating to the dispatch of the Award (courier, printing and copying).
[28] The remaining balance of the advances will be reimbursed to Claimant.
[29] Decision, ¶¶ 542 and 560.

67.    Second, as for quantum, the Tribunal recalls that while Claimant requested in its final submission to be awarded compensation in the amount of USD 99.5 million plus pre-award interest as of 15 May 2010,[30] Respondent requested that compensation should be awarded in the amount of USD 9.5 million excluding pre-award interest.[31] Respondent argues that in light of the amount agreed upon by the Parties pursuant to the Tribunal's findings in its Decision, *i.e.*, USD 29.6 million excluding pre-award interest, it should be considered the prevailing party in this arbitration.[32] The Tribunal cannot agree with this characterization. Apart from the Tribunal's finding on liability that Respondent has breached its obligations under the Treaty, the Tribunal notes that as a result of its findings on the principles of quantum, Claimant is entitled to approximately 30% of what it has requested or to more than 300% of the compensation that Respondent has considered just in the context of this arbitration.

68.    As pointed out by Respondent,[33] Claimant has further initiated three incidental proceedings, *i.e.*, (i) a request to disqualify arbitrator Bottini; (ii) a request for provisional measures directed at discontinuing all domestic proceedings in Venezuela related to the expropriation of Norpro Venezuela; and (iii) a request for reconsideration and correction of the Tribunal's Decision. The Tribunal does not consider it necessary at this stage to express an opinion as to whether each of these three requests was "*substantial and properly required the Tribunal's consideration,*" as was the case in *Tidewater v. Venezuela* on which Claimant relies in this regard.[34] In the Tribunal's view, it suffices to note for the present purposes that all three requests were unsuccessful.

69.    Taking into account all of the above considerations, the Tribunal does not consider it justified to order that Respondent shall bear the entirety of the costs incurred by Claimant in connection with this arbitration. The Tribunal is of the view that it is appropriate for Respondent to bear two thirds of the costs incurred by Claimant. Consequently, Respondent shall reimburse Claimant with an amount of USD 4,634,532.05.

### 3.    Interest on Costs Award

70.    As a final matter, Claimant requests that Respondent be ordered to reimburse its costs, plus compound interest calculated annually at a commercial rate from the date of the Award until the date of payment by Venezuela.

---

[30] Claimant's Second Post-Hearing Submission, ¶ 116.
[31] Respondent's Post-Hearing Reply Brief, ¶ 64.
[32] Respondent's Additional Cost Submission, p. 2.
[33] Respondent's Additional Cost Submission, p. 2.
[34] Claimant's Cost Submission, ¶ 17, *quoting from Tidewater v. Venezuela* (**CLA-155**), ¶ 212.

71.   The Tribunal considers it appropriate to award interest on the amount of costs that Respondent is ordered to reimburse at the same post-award interest rate as on the principal amount of compensation, *i.e.*, at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually. Such interest shall start to accrue from the 30th day following the date of this Award.

## G.    THE TRIBUNAL'S DECISION

72.   Based on the above, the Tribunal[35] renders the following

### AWARD

1.   **Respondent shall pay to Claimant within 30 days of the date of this Award: (i) USD 29.6 million as principal amount of compensation for the expropriation of Claimant's investment in Venezuela; and (ii) USD 4.8 million as pre-award interest as of 15 May 2010 through to 31 March 2017.**

2.   **Respondent shall further pay to Claimant within 30 days of the date of this Award pre-award interest on the principal amount of compensation under 1, *i.e.*, USD 29.6 million, as of 1 April 2017 until the date of this Award at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually.**

3.   **Subject to the limitation that post-award interest is to be paid only on the principal amount of compensation, and not on the pre-award interest awarded, Respondent shall pay to Claimant post-award interest on the principal amount of compensation under 1, *i.e.*, USD 29.6 million, as from the 30th day following the date of this Award until the date of payment at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually.**

---

[35] Arbitrator Bottini believes that, whenever an ICSID tribunal exercises its discretion under Article 61(2) of the ICSID Convention and enters an adjusted costs order (i.e., ordering one party to pay the other party's costs or the tribunal's costs, in full or in part), two relevant factors to be considered are the extent to which the claimants' damages claim has been granted and who has prevailed in any incidental proceeding decided in the arbitration. Arbitrator Bottini finds that the Tribunal's decision on costs reflects neither of these two factors.

4.  **The award of damages and interest is made net of applicable Venezuelan taxes, and Respondent may not deduct taxes in respect of the payment of the award of damages and interest.**

5.  **Respondent shall bear the costs of the arbitration, *i.e*., the fees and expenses of the members of the Tribunal as well as the charges for the use of the facilities of ICSID, in full. Consequently, Respondent shall reimburse Claimant with an amount of USD 1,303,189.99 within 30 days of the date of this Award.**

6.  **Respondent shall further bear two thirds of the costs incurred by Claimant in connection with this arbitration proceeding and thus reimburse Claimant with an amount of USD 4,634,532.05 within 30 days of the date of this Award.**

7.  **Respondent shall pay to Claimant post-award interest on the amount of costs to be reimbursed under 5 and 6 as from the 30th day following the date of this Award until the date of payment at a rate equal to 2% over the average 6-month US Treasury bill rate, compounded annually.**

8.  **All other claims and requests are dismissed.**

_____                          _____
The Honorable Charles N. Brower                          Mr. Gabriel Bottini
Arbitrator                                                      Arbitrator
Date September 28, 2017                          Date October 9, 2017


_____
Professor Dr. Klaus Sachs
President
Date October 25, 2017