# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A.,<br><br>Respondents. | Civil Action No.: 1:18-cv-01963-LPS |

## PLAINTIFF SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Laura Davis Jones (Bar No. 2436)
Peter J. Keane (Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

ALSTON & BIRD LLP
Alex Yanos, *pro hac vice*
Carlos Ramos-Mrosovsky, *pro hac vice*
Rajat Rana, *pro hac vice*
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444

*Counsel for Plaintiff Saint-Gobain Performance Plastics Europe*

June 24, 2019

DOCS_DE:224287.1 76899/001

# TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................................ 1

    A.    The ICSID Convention ................................................................................ 2
    B.    Saint-Gobain Prevailed In ICSID Arbitration Against Venezuela ........................ 4
    C.    Saint-Gobain Brings This Proceeding To Enforce The Award Against
        Venezuela And PDVSA Pursuant To 22 U.S.C. § 1650a And ICSID
        Convention Article 54 ................................................................................. 7

II.    THE COURT SHOULD ENFORCE THE AWARD UNDER 22 U.S.C. §
    1650A ...................................................................................................................... 8

    A.    This Court Has Jurisdiction To Enforce The Final Award .................................. 8
    B.    Venezuela and PDVSA Were Properly Served In Accordance With The
        FSIA And Failed To Respond Within 60 Days ................................................ 10
    C.    Venezuela And PDVSA Failed To Answer Within 60 Days Of Service ............. 12
    D.    Saint-Gobain Has Established Its Claim For Relief .......................................... 13

DOCS_DE:224287.1 76899/001

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdulla v. Embassy of Iraq,*
No. 12-2590, 2013 U.S. Dist. LEXIS 127914 (E.D. Pen. Sept. 9, 2013) *aff'd*
598 Fed. Appx. 824 (3d Cir. March 2, 2015) ...................................................................13

*Angellino v. Royal Family Al-Saud,*
681 F.3d 463 (D.C. Cir. 2012).........................................................................................11

*Beer v. Islamic Republic of Iran,*
574 F. Supp. 2d 1 (D.D.C. 2008).....................................................................................13

*Burda Media, Inc. v. Viertel,*
317 F.3d 292 (2nd Cir. 2005)...........................................................................................12

*Chevron Corp. v. Ecuador,*
795 F.3d 200 (D.C. Cir. 2015)...........................................................................................9

*Cont'l Cas. Co. v. Argentine Republic,*
893 F. Supp. 2d 747 (E.D. Va. 2012) ................................................................................9

*Devengoechea v. Bolivarian Republic of Venezuela,*
No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755 (S.D. Fla. Apr. 24, 2014) ..............12

*Gates v. Syrian Arab Republic,*
580 F. Supp. 2d 53 (D.D.C. 2008)...................................................................................13

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
863 F.3d 96 (2d Cir. 2017)........................................................................................2, 3, 9

*Peterson v. Islamic Republic of Iran,*
627 F.3d 1117 (9th Cir. 2010) .........................................................................................11

*Sealift Bulkers, Inc. v. Republic of Armenia,*
965 F. Supp. 81 (D.D.C. 1997).........................................................................................13

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela,*
No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469 (D.D.C. Dec. 17,
2018) .............................................................................................................................9, 14

## Statutes

22 U.S.C. § 1650a(a)...............................................................................................................3

28 U.S.C. §§ 1330(a) and 1605.................................................................................8

28 U.S.C. § 1608................................................................................................10

28 U.S.C. § 1608(3)............................................................................................14

28 U.S.C. § 1608 (a)(1)...................................................................................10, 11

28 U.S.C. § 1608(a)(2).................................................................................10, 11, 12

28 U.S.C. § 1650a.........................................................................................3, 8, 14

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*.....................................8

DOCS_DE:224287.1 76899/001

Pursuant to 28 U.S.C. § 1608 and Federal Rule of Civil Procedure 55, Plaintiff and Arbitration Award Creditor Saint-Gobain Performance Plastics Europe ("Plaintiff" or "Saint-Gobain") moves for entry of a default judgment against the Bolivarian Republic of Venezuela ("Venezuela") and its alter-ego Petróleos de Venezuela S.A. ("PDVSA") (collectively "Defendants"). *See generally Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 414 (D. Del. 2018) (finding that "PDVSA may be deemed the alter ego of Venezuela . . . .").

As described further below and in the accompanying Declaration of Alex Yanos ("Third Yanos Decl."),[1] both Venezuela and PDVSA have failed to serve a pleading responsive to the complaint within sixty days of having been properly served with the summons and complaint in this matter in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1965) ("Hague Service Convention") and in conformity with 28 U.S.C. § 1608(d). On June 12, 2019, the Clerk of Court entered default against Venezuela and PDVSA under Rule 55(a) of Federal Rules of Civil Procedure. D.I. 10. The Court should now enter a default judgment in favor of Saint-Gobain and against Defendants.

## I.    BACKGROUND

This is an action to recognize and enforce the pecuniary obligations of an arbitral award in favor of Saint-Gobain and against Venezuela (the "Award") issued on November 3, 2017 by a

---

[1] As used in this motion, "First Yanos Decl." refers to the December 12, 2018, Declaration of Alexander A. Yanos in Support of Saint-Gobain's Complaint to Register and Enforce ICSID Arbitration Award as a Foreign (D.I. 3), and "Second Yanos Decl." refers to the April 24, 2019, Declaration of Alexander A. Yanos in Support of Entry of Default (D.I. 9).

1

three-member arbitral tribunal (the "Tribunal") constituted pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 (the "ICSID Convention" or the "Convention"). This action is brought pursuant to 22 U.C.S. § 1650a and Article 54 of the ICSID Convention.

## A. The ICSID Convention

The ICSID Convention is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017). The Convention provides a framework for the resolution of investment disputes between a foreign state that is a member of the Convention and a national of another country that is a member of the Convention. *See* First Yanos Decl., Ex. 2. To that end, the Convention established the International Centre for Settlement of Investment Disputes ("ICSID"), which administers arbitral proceedings under the ICSID Convention, including the arbitration at issue here. *Id.*, Art. 1.

The ICSID Convention obliges Contracting States to enforce ICSID awards as if they were final judgments of their respective national courts. Article 54(1) of the Convention provides that:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

The United States has been a party or "Contracting State" to the ICSID Convention since 1966. *See* 17 U.S.T. 1270. The United States' Article 54 obligation to enforce ICSID awards as

2

DOCS_DE:224287.1 76899/001

if they were final judgments of a court in one of the United States is codified at 22 U.S.C. § 1650a(a), which provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the Convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and ***shall be given the same full faith and credit as if the award were a final judgment of a court*** of general jurisdiction of one of the several States. (Emphasis added).

Unlike other international arbitration awards, awards rendered under the ICSID Convention are **not** subject to review under the Federal Arbitration Act, and do not require confirmation in the manner prescribed by the Federal Arbitration Act. This is established at 28 U.S.C. § 1650a, which states "[t]he Federal Arbitration Act (9 U.S.C. 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] Convention." *See also Mobil Cerro Negro, Ltd.*, 863 F.3d at 102 ("Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.").

Instead, and by design, review of ICSID awards is encapsulated within the framework of the ICSID Convention itself. ICSID Awards may be annulled or set aside *only* by specially-constituted *ad hoc* committees appointed by the Chairman of the Administrative Council of ICSID (*ex officio* the President of the World Bank) on specific grounds enumerated in the ICSID Convention. *See* First Yanos Decl., Ex.2, Arts. 52-53.

The ICSID Convention entered into force for Venezuela on June 1, 1995. Then, in Article 8 of the France-Venezuela Bilateral Investment Treaty of April 30, 2004 ("the Treaty"), France and Venezuela reciprocally consented to submit disputes with one another's investors arising under the Treaty to ICSID.

3

**B. Saint-Gobain Prevailed In ICSID Arbitration Against Venezuela**

On March 29, 2011, Venezuelan President Hugo Chávez decreed the expropriation of Saint-Gobain's 99.99% interest in NorPro Venezuela C.A., a company which manufactured ceramic proppants used during fracking to keep induced hydraulic fractures "propped" open. *See* First Yanos Decl., Ex. 1 ¶¶ 245-47.

In response, Saint-Gobain accepted Venezuela's offer to arbitrate Treaty disputes by notices of dispute sent to Venezuela July 4, 2011 and January 17, 2012. *Id.* ¶¶ 249, 253. Saint-Gobain filed a request for ICSID arbitration against Venezuela on May 25, 2012, seeking compensation for Venezuela's unlawful expropriation of its investment in Venezuela. *Id.* ¶¶ 5, 266. Saint-Gobain's request for arbitration was registered as ICSID Case Number ARB/12/13 on June 15, 2012.[2]

Consistent with the ICSID Convention and Arbitration Rules, a Tribunal of three eminent international lawyers was constituted: Judge Charles N. Brower, a U.S. citizen and former judge of the Iran-U.S. Claims Tribunal, appointed by Saint-Gobain; Mr. Gabriel Bottini, an Argentine citizen and former Director of International Affairs and Disputes of the Treasury-Attorney General's Office of Argentina, appointed by Venezuela; and Prof. Dr. Klaus Sachs, a German citizen and noted international arbitrator, jointly selected by the parties as President of the Tribunal. Following the exchange of voluminous written submissions, the Tribunal held a four-day oral hearing at the World Bank from February 2 to 5, 2015.

---

[2] Venezuela's withdrawal from the ICSID Convention on January 25, 2012, with effect from July 25, 2012, has no bearing on this case because both parties consented to arbitrate this dispute before Venezuela's denunciation of the ICSID Convention took effect. Indeed, Venezuela has never disputed the Tribunal's jurisdiction over Saint-Gobain's claims under the Treaty or the ICSID Convention.

4

On December 30, 2016, the Tribunal rendered a Decision on Liability and the Principles of Quantum ("Decision on Liability"). *See* First Yanos Decl., Ex. 3 (Decision on Liability). In the Decision on Liability, the Tribunal found that Venezuela had breached Article 5 of the Treaty by expropriating Saint-Gobain's investment without paying compensation. *Id.* ¶ 908. The Decision on Liability also discussed, at length, the principles upon which the Tribunal would assess the quantum of compensation to be paid to Saint-Gobain. *Id.* ¶¶ 566-905. The Tribunal then gave the parties two months to attempt to reach agreement on the amount of compensation to be paid to Saint-Gobain, failing which it would hear further submissions on outstanding quantum issues. *Id.* ¶ 907.

Venezuela and Saint-Gobain were unable to reach agreement and the parties accordingly submitted further extensive pleadings and expert testimony on the appropriate quantum of compensation owed for Venezuela's unlawful expropriation of Saint-Gobain's investment.

Subsequently, on November 3, 2017, the Tribunal issued its Award pursuant to Chapter IV (Articles 48-49) of the ICSID Convention. The Tribunal ordered Venezuela to pay Saint-Gobain compensation as follows:

(i)     US$ 29.6 million as the principal amount of compensation for the expropriation of Saint-Gobain's investment in Venezuela;

(ii)    US$ 4.8 million as pre-award interest from May 15, 2010 through March 31, 2017, with further pre-award interest through November 3, 2017 to be calculated at a rate equal to 2% over the average 6-month U.S. Treasury bill rate, compounded annually;

(iii)   Post-award interest on the principal amount of compensation at a rate equal to 2% over the average 6-month U.S. Treasury bill rate, compounded annually;

5

(iv)    The costs of the arbitration, in the amount of US$ 1,303.189.99;

(v)     Two-thirds of Saint-Gobain's legal fees and expenses in the amount of US$ 4,634,532.05; and

(vi)    Post-award interest on costs at a rate equal to 2% over the average 6-month U.S. Treasury bill rate, compounded annually.

*See* First Yanos Decl., Ex. 1 ¶ 72.

On March 12, 2018, the Secretary-General of ICSID registered Venezuela's application for annulment of the Award pursuant to Article 52(5) of the ICSID Convention.  Under Rule 14(3)(e) of ICSID's Administrative and Financial Regulations, "the applicant [for annulment] shall be solely responsible for making the advance payments [to ICSID] . . . to cover expenses following the constitution of the [*ad hoc*] Committee."

Despite seeking annulment of the Award fifteen months ago, and repeated inquiries by the *ad hoc* Committee appointed by the Secretary-General of ICSID to consider Venezuela's challenge to the Award, Venezuela failed to make a single payment to cover ICSID's expenses, thus causing the suspension of the proceedings before the *ad hoc* committee on October 24, 2018.  On April 25, 2019, the Acting Secretary-General of ICSID accordingly directed that the *ad hoc* committee discontinue the annulment proceeding pursuant to ICSID's Administrative and Financial Regulations on account of Venezuela's failure to pay mandatory advances on costs. *See* Third Yanos Decl., Ex. 1.

The Award is binding on Venezuela.  Pursuant to Article 53 of the ICSID Convention, Venezuela is obligated to "abide by and comply with the terms of the award. . . ."  Nevertheless, Venezuela still has not paid any of the amounts they owe under the Award.  A detailed

6

calculation of amounts payable under the Award (US\$ 43,236,008.09 as of June 24, 2019) is attached. *See* Third Yanos Decl., Ex. 2.

**C. Saint-Gobain Brings This Proceeding To Enforce The Award Against Venezuela And PDVSA Pursuant To 22 U.S.C. § 1650a And ICSID Convention Article 54**

On December 12, 2018, Saint-Gobain filed this action to enforce the pecuniary obligations of the Award against Venezuela and its alter-ego PDVSA. D.I. 1. Thereafter, Saint-Gobain served Venezuela, as well as its alter-ego PDVSA, with the Complaint pursuant to the Hague Service Convention, to which Venezuela is a party.

Specifically, on December 14, 2018, Saint-Gobain couriered: (*i*) duly-executed USM-94 "Request for Service Abroad of Judicial or Extrajudicial Documents" in duplicate English and Spanish versions addressed to each of Venezuela and its alter-ego PDVSA, together with duplicate English and Spanish copies of: (*ii*) the summons and Complaint in this action, (*iii*) five supporting exhibits, and (*iv*) notice of right to consent to trial before a magistrate judge, to the Central Authority designated by Venezuela for international service of process pursuant to the Hague Service Convention. *See* Second Yanos Decl., Exs. 2 & 3. Venezuela's "Central Authority" is the Office of Consular Relations of Venezuela's Ministry of the Popular Power for External Relations (*Ministerio del Poder Popular para Relaciones Exteriores*) (the "Foreign Ministry").[3]

Deliveries to the Foreign Ministry were made on December 21 and December 27, 2018 and signed for by T. Flores and I. Ruiz, employees of the Foreign Ministry, respectively. Second Yanos Decl., Exs. 4 & 5. Service on Venezuela and its alter-ego PDVSA was thus complete no

---

[3] *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, opened for signature Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Service-related information provided by Venezuela to the Hague Conference on Private International Law is attached as Exhibit 6 to the Second Yanos Declaration.

7

later than December 27, 2018 because Venezuela was itself the party to be served and no further action by the Venezuelan Foreign Ministry was required to complete service. Likewise, service on Venezuela's alter-ego, PDVSA, was complete no later than December 27, 2018 because the Foreign Ministry's acceptance of duly-executed USM-94 form and accompanying documents addressed to Venezuela's alter ego, PDVSA, effectuated service on PDVSA. *See* Hague Service Convention, Article 5 ("[T]he document may always be served by delivery to an addressee who accepts it voluntarily."); *Crystallex Int'l Corp.*, 333 F. Supp. 3d 380, 414 (D. Del. 2018) (finding that "PDVSA may be deemed the alter ego of Venezuela . . . .").

## II.    THE COURT SHOULD ENFORCE THE AWARD UNDER 22 U.S.C. § 1650A

### A. This Court Has Jurisdiction To Enforce The Final Award

This Court has subject matter jurisdiction pursuant to 22 U.S.C. § 1650a and 28 U.S.C. §§ 1330(a) and 1605.

Neither Venezuela nor its alter-ego PDVSA enjoys sovereign immunity in this case. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, provides in relevant part that:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards. *Id.*, § 1605(a)(1).
>
> [or] . . .
>
> in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver, *id.*, § 1605(a)(6);

8

Both exceptions to sovereign immunity apply to this action to recognize and enforce an ICSID arbitral award.

*First*, the Award was issued pursuant to an agreement to arbitrate—formed by the Treaty by which Venezuela agreed to arbitrate Treaty disputes with French investors and Saint-Gobain's acceptance of that offer—within the framework established by the ICSID Convention, an international agreement in force for the United States that specifically calls for the recognition and enforcement of arbitration. *See* ICSID Convention, Article 54; *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, * 10 (D.D.C. Dec. 17, 2018) ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FISA has concluded that they do") (quoting *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013)).

*Second*, by consenting to arbitrate—in the Treaty and under the Convention—Venezuela waived any immunity from sovereign immunity that it might have otherwise enjoyed. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir. 2015) (Section 1605(a)(6) grants a U.S. district court jurisdiction "to confirm an award made pursuant to an arbitration agreement governed by an international treaty."); *Mobil Cerro Negro, Ltd.*, 863 F.3d at 104-05 ("The FSIA's immunity provisions do not shield a foreign sovereign from federal courts' exercise of jurisdiction over a civil action to enforce an ICSID award: the waiver and arbitration exceptions to immunity that are found in subsections 1605(a)(1) and (a)(6), respectively, apply, and allow such an action to proceed"); *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) (noting that there is no doubt that "ICSID arbitral awards fall within . . .

9

immunity exception . . . . [and] a foreign state's entering into the ICSID Convention waived foreign sovereign immunity").

For both of these independently sufficient reasons, Venezuela is not immune from jurisdiction of this Court under the FSIA. It follows that PDVSA, previously found by this Court to be an alter ego of Venezuela, likewise enjoys no immunity from this Court's subject matter jurisdiction under the FSIA. *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 394 ("[I]f Crystallex . . . demonstrates that PDVSA is the alter ego of Venezuela, then Crystallex will also necessarily have established that the Court may exercise subject matter jurisdiction with respect to PDVSA as well.").

### B. Venezuela and PDVSA Were Properly Served In Accordance With The FSIA And Failed To Respond Within 60 Days

Saint-Gobain properly served process on both Venezuela and PDVSA with the summons and Complaint in this action.

The FSIA, 28 U.S.C. § 1608, lists four methods of service in descending order of preference that a plaintiff must use to effect service on a defendant foreign sovereign: (1), "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision;" 28 U.S.C. § 1608 (a)(1); (2) "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents;" *id.* § 1608(a)(2); (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail required a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned . . . ." *id.* § 1608(a)(3); and (4) if none of the first three

10

methods works, a plaintiff can serve the appropriate documents through diplomatic channels with the assistance of the Department of State. *Id.* § 1608(a)(4).

A plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 681 F.3d 463, 465 (D.C. Cir. 2012); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, n.4 (9th Cir. 2010) ("The four forms of service are listed in descending order of preference").

Here, service under 28 U.S.C § 1608(a)(1) was unavailable, because Saint-Gobain, Venezuela, and PDVSA are not party to any "special arrangement for service." Saint-Gobain thus proceeded to serve Venezuela and PDVSA in accordance with the Hague Service Convention, that is, "in accordance with an applicable international convention on service of judicial documents." *See* 28 U.S.C. § 1608(a)(2). Accordingly, Saint-Gobain couriered duly-executed USN-94 forms addressed to Venezuela and its alter-ego PDVSA, in duplicate English and Spanish versions, each with duplicate English and Spanish copies of the complaint in this action, five supporting exhibits, summons, and notice of right to consent to trial before a magistrate judge, to the Venezuelan Foreign Ministry, the Central Authority designated by Venezuela for purposes of the Hague Service Convention. *See* Second Yanos Decl. Exs. 2 & 3. These were signed for by T. Flores and I. Ruiz, employees of the Foreign Ministry, on December 21, 2018 and December 27, 2018. *Id.* Exs. 4 & 5.

In these circumstances, delivery to and acceptance by the Venezuelan Foreign Ministry completed service of the Complaint because Venezuela, together with its alter-ego PDVSA, was *itself* the party to be served and no further action by the Venezuelan Foreign Ministry was required to complete service. Importantly, effective service in this case did not depend on the Venezuelan Central Authority's subsequent delivery of the summons and complaint to a third-

11

party located in Venezuela, as would have been the case if the defendant were a Venezuelan individual or a corporation meaningfully distinct from the Venezuelan State.[4] Thus, as another federal district court has explained, "[s]ervice was effectuated on Venezuela, through its Central Authority under the Hague Convention . . . when it received the Summons, Complaint and transmittal documents." *Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755, *3 (S.D. Fla. Apr. 24, 2014). Service on Venezuela's alter-ego, PDVSA, was similarly effectuated upon receipt by the Venezuelan Foreign Ministry. *See id.*; *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 414.

## C. Venezuela And PDVSA Failed To Answer Within 60 Days Of Service

Venezuela, together with its alter-ego PDVSA, is now in default because it has failed to submit a timely answer or other responsive pleading to Saint-Gobain's complaint. Pursuant to 28 U.S.C. § 1608(d), a foreign sovereign "shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section." Venezuela and PDVSA failed to respond within 60 days of their acceptance of Saint-Gobain's Complaint (*i.e.*,

---

[4] There was correspondingly no need for the Foreign Ministry to issue a certificate to Saint-Gobain confirming that it had succeeded in serving process on itself. *See, e.g., Burda Media, Inc. v. Viertel*, 317 F.3d 292, 301 (2nd Cir. 2005) (service under the Hague Service Convention is "properly perfected . . . notwithstanding the failure of the Central Authority to return a Certificate" when the plaintiff attempts in good faith to comply with the requirements of the Convention and the defendant has sufficient notice that "no injustice would result"); *Devengochea*, No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755, *3 ("Since Venezuela was properly served with process pursuant to the Hague Convention and Venezuela had failed to respond or file any response pursuant to Article 15 of the Hague Convention, a Clerk's Default was entered in favor of Devengochea and against Venezuela"). This is a sensible rule. Otherwise, sovereign defendants could evade service under the Hague Service Convention by the simple expedient of declining to certify that they had formally served themselves. Such a result would be incompatible with the Hague Service Convention, Article 5 of which provides that a "document may always be served by delivery to an addressee who accepts it voluntarily," as well as with the FSIA itself, which makes foreign sovereigns subject to service "in accordance with an applicable international convention on service of judicial documents." *See* 28 U.S.C. § 1608(a)(2).

12

by February 25, 2019 at the latest).[5]  After Venezuela and its alter-ego PDVSA made no response to the Complaint for nearly *six months* the Clerk of Court entered a default against Venezuela and PDVSA on June 12, 2019.  D.I. 10.   This Court may now therefore enter a default judgment against Venezuela under 28 U.S.C. § 1608(e).  *See, e.g., Sealift Bulkers, Inc. v. Republic of Armenia*, 965 F. Supp. 81, 84 (D.D.C. 1997) ("Under the Foreign Sovereign Immunities act, if a claimant has properly served a foreign sovereign defendant and the foreign sovereign has failed to respond within sixty days of service, the Court may enter default judgment" under 28 U.S.C. § 1608(e)).

### D. Saint-Gobain Has Established Its Claim For Relief

Under the FSIA, "[n]o judgment by default shall be entered by a court of the United States . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).  To satisfy this requirement, the plaintiff must "provide satisfactory evidence as to each element of the claim upon which the relief is sought." *Abdulla v. Embassy of Iraq*, No. 12-2590, 2013 U.S. Dist. LEXIS 127914, \*\*27, 28 (E.D. Pen. Sept. 9, 2013) *aff'd* 598 Fed. Appx. 824 (3d Cir. March 2, 2015).  However, the FSIA "does not impose on plaintiffs the burden of producing the full range of evidence . . . ." *Id.*  Rather, "the quantum and quality of evidence that might satisfy a court can be less than that normally required." *Id.  See also Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (The plaintiff "must present a legally sufficient prima facie case, *i.e.*, 'a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.'"); *Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1, 9 (D.D.C. 2008) ("This Court accepts the uncontested evidence and

---

[5] The FSIA's provision of a sixty-day period in which to serve a responsive pleading is already an accommodation granted to sovereign defendants and an exception to the twenty-one-day period granted to ordinary defendants. *See* Fed. R. Civ. P. 12 a(1)(A)(i).

DOCS_DE:224287.1 76899/001

sworn testimony submitted by plaintiffs as true in light of defendants' failure to object or enter an appearance to contest the matters in this case.").

The inquiry required by 28 U.S.C. § 1608(3) is straightforward in light of the status of an ICSID award under 22 U.S.C. § 1650a. As a matter of law, the "award of an arbitral tribunal rendered pursuant to [the ICSID Convention] *shall* create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award *shall* be enforced and *shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.*" *See* 22 U.S.C. § 1650a (emphases added). In other words, the "language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [petitioner's] entitlement to any unpaid claims under the award." *Tidewater Inv. SRL*, 2018 U.S. Dist. LEXIS 211469, *16 (D.D.C. 2018) (citing *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp.2d 131, 132-33 (D.D.C. 2012) (the court is "*required by statute* to give [an ICSID award] full faith and credit and confirm it accordingly")) (emphasis added).

Here, Saint-Gobain has presented true and correct copies of the Award, which have been certified as authentic by ICSID. First Yanos Decl., Exs. 1 & 3. Where the Award is entitled to the same full faith and credit as a final judgment from another state, *see* 22 U.S.C. § 1650a, Saint-Gobain has established its entitlement to relief. The Court should therefore enforce the issue a default judgment enforcing the Award.

14

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for Saint-Gobain against Venezuela and PDVSA. A proposed form of judgment is submitted herewith.

Dated: June 24, 2019

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
Peter J. Keane (Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

ALSTON & BIRD LLP
Alex Yanos, *pro hac vice*
Carlos Ramos-Mrosovsky, *pro hac vice*
Rajat Rana, *pro hac vice*
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Plaintiff Saint-Gobain Performance Plastics Europe*

15