## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A., <br><br> Defendants. | Civil Action No. 1:18-cv-01963-LPS |

## DEFENDANT PETRÓLEOS DE VENEZUELA, S.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

HOGAN LOVELLS US LLP
Scott R. Haiber (DE ID 2995)
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410) 659-2700
Fax: (410) 659-2701
scott.haber@hoganlovells.com

Dennis H. Tracey, III (pro hac vice)
Robin L. Muir (pro hac vice)
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendant Petróleos de Venezuela, S.A.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................... 3

ARGUMENT........................................................................................................................... 4

    I.        SAINT-GOBAIN'S MOTION FOR A DEFAULT JUDGMENT SHOULD BE
              DENIED BECAUSE SAINT-GOBAIN HAS NOT DEMONSTRATED THAT
              SERVICE OF PROCESS WAS PROPERLY EFFECTUATED AGAINST
              PDVSA. ...................................................................................................... 4

    II.      SAINT-GOBAIN'S COMPLAINT FAILS TO PLEAD A JUSTICIABLE CLAIM
              AGAINST PDVSA........................................................................................ 9

    III.    SAINT-GOBAIN HAS FAILED TO PROVIDE SATISFACTORY EVIDENCE –
              OR INDEED *ANY* EVIDENCE – THAT WOULD SUPPORT A DEFAULT
              JUDGMENT. .............................................................................................. 15

CONCLUSION....................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brasil S.A. v. PDVSA Servs., Inc.*,
No. 4:16-3698, 2018 WL 6928292 (S.D. Tex. Dec. 10, 2018) .............................................7

*Butler v. Sukhoi Co.*,
579 F.3d 1307 (7th Cir. 2009) ........................................................................ 10, 11, 12, 13

*Callejo v. Bancomer, S.A.*,
764 F.2d 1101 (5th Cir. 1985) .......................................................................................14

*Cavic v. Republic of Serbia*,
No. 8:16-CV-1910-JLS-KESx, 2018 WL 6038346 (C.D. Cal. Mar. 21, 2018) ......................7

*Church-El v. Bank of N.Y.*,
Civil No. 11–877, 2013 WL 1190013 (D. Del. March 21, 2013).......................................4, 9

*Continental Cas. Co. v. Argentine Republic*,
893 F. Supp. 2d 747 (E.D. Va. 2012).............................................................................14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. 18-2797, 2019 WL 3403888 (3d Cir. July 29, 2019) ........................................ 12, 13, 17

*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018) ...........................................................................*passim*

*Devengoechea v. Bolivarian Republic of Venezuela*,
Case No.: 12-CV-23743-PCH, 2014 WL 12489848 (S.D. Fla. April 25, 2014).....................8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) .....................................................................................................13

*Gambone v. Lite Rock Drywall*,
288 F. App'x 9 (3d Cir. 2008) .......................................................................................11

*Gold Kist, Inc. v. Laurinburg Oil Co.*,
756 F.2d 14 (3d Cir. 1985) ........................................................................................4, 10

*Harry and David v. J & P Acquisition, Inc.*,
865 F. Supp. 2d 494 (D. Del. 2011) .................................................................................4

*Havensight Capital LLC v. People's Republic of China*,
Case No. CV 15-01206 DDP, 2015 WL 12778414 (C.D. Cal. Apr. 30, 2015).....................15

*Mezerhane v. República Bolivariana De Venezuela*,
No. 11-23983, 2013 WL 12091160 (S.D. Fla. March 19, 2013).........................................8

**TABLE OF AUTHORITIES – Continued**

**Page(s)**

*Peterson v. Islamic Republic of Iran*,
   264 F. Supp. 2d 46 (D.D.C. 2003) ......................................................................................16

*Rubin v. Islamic Republic of Iran*,
   138 S. Ct. 816 (2018) .........................................................................................................17

*Shapiro v. Republic of Bolivia*,
   930 F.2d 1013 (2d Cir. 1991)..............................................................................................14

*Shirobokova v. CSA Czech Airlines, Inc.*,
   335 F. Supp. 2d 989 (D. Minn. 2004) .................................................................................15

*Shomide v. ILC Dover LP*,
   No. 03–1019, 2006 WL 2042969 (D. Del. July 20, 2006) ...................................................4

*Spencer v. Islamic Republic of Iran*,
   922 F. Supp. 2d 108 (D.D.C. 2013) ...............................................................................16, 17

*In re Terrorist Attacks on September 11, 2001*,
   538 F.3d 71 (2d Cir. 2008) .................................................................................................10

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
   No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ..........................................7

*TIG Ins. Co. v. Republic of Argentina*,
   No. 18-mc-0129 (DLF), 2019 WL 3017618 (D.D.C. July 10, 2019) ...................................10

*Tinsley v. ING Group*,
   No. Civ.A. 05–808–KAJ, 2006 WL 533375 (D. Del. March 3, 2006)...................................5

*United States v. $55,518.55 in U.S. Currency*,
   728 F.2d 192 (3d Cir. 1984) .................................................................................................9

*Vivadent (USA), Inc. v. Darby Dental Supply Co.*,
   655 F. Supp. 1359 (D.N.J. 1987), *superseded by statute on other grounds*..........................15

*Water Splash, Inc. v. Menon*,
   137 S. Ct. 1504 (2017) .........................................................................................................5

*Witzke v. Ferguson*,
   Civil Action No. 17-1295-CFC, 2019 WL 181320 (D. Del. Jan. 11, 2019) ......................5, 9

**Statutes**

28 U.S.C § 1391..............................................................................................................14, 15

28 U.S.C. § 1604.....................................................................................................................10

**TABLE OF AUTHORITIES – Continued**

**Page(s)**

28 U.S.C. § 1605.................................................................................................................2, 12

28 U.S.C. § 1608...............................................................................................................*passim*

**Other Authorities**

Hague Convention on the Service Abroad of Judicial and Extrajudicial
   Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. § 361,
   *et seq.*...........................................................................................................................*passim*

Defendant Petróleos de Venezuela, S.A. ("PDVSA") respectfully submits this memorandum in opposition to the motion of plaintiff Saint-Gobain Performance Plastics Europe ("Plaintiff" or "Saint-Gobain") for entry of a default judgment (ECF No. 11), and in support of PDVSA's motion to vacate the Clerk's entry of default entered against it on June 12, 2019 (ECF No. 10).

### PRELIMINARY STATEMENT

Plaintiff Saint-Gobain commenced this action in December 2018 against the Bolivarian Republic of Venezuela (the "Republic") and PDVSA, seeking to register and enforce an arbitral award issued against the Republic only.  Saint-Gobain now seeks a default judgment against PDVSA and the Republic.  That motion should be denied and the clerk's default entered against PDVSA should be vacated.

First, Saint-Gobain has failed to demonstrate that service of process on PDVSA was properly completed under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. § 361, *et seq.* (the "Hague Service Convention").  Absent proper service of process, a default judgment is plainly unwarranted.

Second, as Saint-Gobain admits, under the Foreign Sovereign Immunities Act, 28 U.S.C. 1602, *et seq.* ("FSIA"), no default judgment may be entered against a sovereign unless the claimaint "establishes his claim or right to relief by evidence satisfactory to the court."  But Saint-Gobain has presented *no* evidence of liability against PDVSA.  Indeed, Saint-Gobain's own pleadings demonstrate that it has no valid claim against PDVSA:

- It is undisputed that PDVSA is a sovereign and cannot be sued unless there is a valid exception to the FSIA.  Here, Saint-Gobain argues that the applicable

1

exception is Section 1605(a)(1), which permits a party to seek confirmation of an arbitration award "made pursuant to . . . an agreement to arbitrate." But PDVSA made no "agreement to arbitrate," and did not arbitrate any dispute with Saint-Gobain. As such, Section 1605(a)(1) is inapplicable on its face.

- Saint-Gobain also argues that PDVSA is subject to suit under Section 1605(a)(6) because the Republic of Venezuela waived sovereign immunity by consenting to arbitrate under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, March 18, 1965, 17 U.S.T. § 1270 (the "ICSID Convention"). But, once again, it was the *Republic* that entered into the ICSID Convention – not PDVSA – and Saint-Gobain has not cited a single authority that would allow a suit against PDVSA under the ICSID Convention.

- Saint-Gobain's argument that PDVSA is the "alter ego" of the Republic does nothing to address these fatal flaws. First, absent an independent basis for subject matter jurisdiction, Saint-Gobain cannot bring suit against PDVSA, and this Court, in turn, has no jurisdiction to consider an alter ego claim. Moreover, Saint-Gobain has not asserted *any* evidence in support of its alter ego claim other than a citation to this Court's ruling in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018). However, the finding in that case was based on the specific facts and transactions at issue in that case, and cannot be used to bootstrap an "alter ego" finding in a different case based on different facts and a different time period.

- In addition, as will be discussed below, Saint-Gobain's motion should be denied and the default against PDVSA should be vacated because PDVSA has other meritorious defenses, including lack of personal jurisdiction and improper venue.

For these reasons and those that follow, PDVSA respectfully requests that the Court deny Saint-Gobain's motion for entry of a default judgment against PDVSA, vacate the Clerk's default against PDVSA, and grant such other and further relief to PDVSA as it deems just and proper.

## BACKGROUND

Plaintiff Saint-Gobain commenced this action in December 2018 seeking to register and enforce an arbitral award dated November 3, 2017 (the "Award") issued under the ICSID Convention against defendant Bolivarian Republic of Venezuela (the "Republic"). (ECF No. 1 – Compl. p. 1.)  Significantly, the Award was issued against the Republic only, *not* against PDVSA, and PDVSA was not a party to the underlying arbitration. (ECF No. 3-1 – Yanos Decl. Ex. 1.)  PDVSA has no relation to the arbitration claim and is not even mentioned in the Award. (*Id.*)

According to the affidavit of service filed with the Court, on December 14, 2018, Saint-Gobain couriered the following documents to the Central Authority designated by Venezuela for international service of process pursuant to Hague Service Convention: (i) form USM-94 "Request for Service Abroad of Judicial or Extrajudicial Documents," in duplicate English and Spanish versions, addressed to each of the Republic and PDVSA; and (ii) duplicate English and Spanish copies of the Summons and Complaint, the five supporting exhibits, and notice of right to consent to trial before a magistrate judge.  (ECF No. 9 – Yanos Second Decl. ¶ 7, Ex. 2.) According to Saint-Gobain, service on PDVSA was complete no later than December 27, 2018

because the Foreign Ministry's acceptance of the service documents, addressed to PDVSA, effectuated service on the PDVSA. (*Id.* at ¶ 10.)

On June 12, 2019, upon Saint-Gobain's request, the Clerk entered a default as to the Republic and PDVSA. (ECF No. 10.) On June 24, 2019, Saint-Gobain moved for entry of a default judgment. (ECF No. 11.)

PDVSA now opposes Saint-Gobain's motion and seeks to vacate the default entered against it.

## **ARGUMENT**

### I.    SAINT-GOBAIN'S MOTION FOR A DEFAULT JUDGMENT SHOULD BE DENIED BECAUSE SAINT-GOBAIN HAS NOT DEMONSTRATED THAT SERVICE OF PROCESS WAS PROPERLY EFFECTUATED AGAINST PDVSA.

"The Third Circuit and multiple district courts within the Circuit have recognized that an entry of default or a default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking." *Church-El v. Bank of N.Y.*, Civil No. 11–877 (NLH/KMW), 2013 WL 1190013, at *4 (D. Del. March 21, 2013); *accord Shomide v. ILC Dover LP*, No. 03–1019, 2006 WL 2042969, at *5 (D. Del. July 20, 2006) ("A default judgment may not be entered against a defendant that has not been properly served with the summons and complaint." (citations omitted)). "'Proper service is crucial in cases [in which a default has been entered], since proper service commences the running of the time period which forms the basis of the default.'" *Harry and David v. J & P Acquisition, Inc.*, 865 F. Supp. 2d 494, 500 (D. Del. 2011) (citation omitted).

A default entered in the absence of proper service of process is void and should be set aside. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). A court need not consider whether the plaintiff will be prejudiced, whether the defendant has a meritorious

defense, or whether the default was the result of the defendant's culpable conduct; ineffective service of process, alone, precludes entry of a default judgment. *See Witzke v. Ferguson*, Civil Action No. 17-1295-CFC, 2019 WL 181320, at \*2 (D. Del. Jan. 11, 2019); *see also Tinsley v. ING Group*, No. Civ.A. 05–808–KAJ, 2006 WL 533375, at \*2 (D. Del. March 3, 2006) ("Because there is no proof that service has been effected, it cannot be said that ING Group is in default.").

As further explained below, Saint-Gobain's motion for a default judgment should be denied and the Clerk's entry of default against PDVSA should be vacated because Saint-Gobain has not effectuated service of process on PDVSA.

### A. Service on an Instrumentality of a Foreign Sovereign Under the Hague Service Convention

The FSIA governs service of process on foreign sovereigns and their agencies and instrumentalities and authorizes service in accordance with the Hague Service Convention, among other methods. *See* 28 U.S.C. § 1608(b). The Hague Service Convention requires member-states "to establish a central authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (citation omitted). Upon receipt of documents for service, along with the accompanying "Request for Service Abroad of Judicial or Extrajudicial Documents," the Central Authority of the receiving state is required to effectuate service on the defendant. *See* Hague Service Convention, 20 U.S.T. at 362, art. 5. Once service has been effectuated, the Central Authority is then required to complete a certificate detailing "the method, the place and the date of service and the person to whom the document was delivered," or explaining why service was prevented, and return that certificate directly to the service applicant. *See id.*, art. 6. Under the FSIA, service under the Hague

5

Service Convention is deemed to be "made" on the date of service set forth in the certificate of service provided by the Central Authority.  *See* 28 U.S.C. § 1608(c)(2).

### B.        Saint-Gobain Failed to Effect Service Under the Hague Convention

Saint-Gobain claims that service of process on PDVSA was made no later than December 27, 2018.  (ECF No. 9 – Yanos Second Decl. ¶ 10.)  The only proof of the alleged service is a declaration from Saint-Gobain's counsel attesting that "[d]eliveries to Venezuela's Central Authority were made on December 21 and December 27, 2018 and signed for by T. Flores and I. Ruiz, employees of the Central Authority, respectively," along with screen shots of tracking information of unidentified parcels to unspecified addresses in "Caracas, VE," which counsel refers to as "proof of delivery."  (*Id.* at ¶¶ 8-9, Exs. 4-5.)  According to Saint-Gobain, the acceptance of the service documents by Venezuela's Foreign Ministry, its designated Central Authority, alone, effectuated service on the Republic and PDVSA, and that "no further action by the Venezuelan Foreign Ministry was required to complete service," and there was "no need for the Foreign Ministry to issue a certificate to Saint-Gobain confirming that it had succeeded in servicing process on itself."  (ECF No. 11 – Mot. for Entry of Default J. p. 11.)

Saint-Gobain is wrong.  Article 5 of the Hague Service Convention expressly provides that "[t]he Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency."  Hague Service Convention, 20 U.S.T. at 362, art. 5.  The requirement of service on the defendant is absolute; there is *no exception* for when the State (or the State's alleged alter ego) is the defendant.

Similarly, Article 6 requires the designated Central Authority to complete a certificate detailing the service or explaining why service could not be made and return it to the service applicant.  *See id.*, art. 6.  Again, there is *no exception* to this requirement.  The courts have

regularly required confirmation of service with respect to claims against PDVSA and its subsidiaries. *See, e.g., Vallourec Tubos do Brasil S.A. v. PDVSA Servs., Inc.*, No. 4:16-3698, 2018 WL 6928292, at *1-2 (S.D. Tex. Dec. 10, 2018) (Venezuelan Central Authority was required to serve PDVSA-subsidiary, Bariven, S.A., pursuant to Article 5 of Hague Service Convention and was required to provide confirmation of that service pursuant to Article 6).

Accordingly, when the Venezuelan Central Authority fails to effectuate service on the Republic or PDVSA or fails to return a certificate detailing such service, as required by the Hague Service Convention, *not a single court has ever held, as Saint-Gobain urges here, that acceptance of the documents by the Central Authority constitutes valid service. See, e.g.*, *Cavic v. Republic of Serbia*, No. 8:16-CV-1910-JLS-KESx, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ("[T]he arrival of [Plaintiff's] request for service at the [Serbian] Ministry of Justice in October 2017 does not constitute service on Serbia itself. The arrival of the papers at the Ministry of Justice is a 'request for service'; service must then be effectuated by the Ministry upon the parties within Serbia."). To the contrary, courts have held that the plaintiff may only effect service through accepted alternatives provided under the Hague Service Convention and federal law. *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-1457 (TJK), 2018 WL 6605633, at *3 (D.D.C. Dec. 17, 2018). Thus, courts have permitted plaintiffs to utilize Article 15 of the Hague Service Convention, under which an applicant may seek a judgment "even if no certificate of service or delivery has been received," provided three conditions are met: (1) the documents were transmitted to the Central Authority of the receiving state by a method provided for in the Hague Service Convention; (2) a period not less than six months has elapsed since the transmission of the documents; and (3) no certificate of any kind

has been received from the Central Authority, despite that that every reasonable effort has been made to obtain it. *See* Hague Service Convention, 20 U.S.T. at 364-65, art. 15.

Here, Saint-Gobain has not even attempted to satisfy the requirements of Article 15 – nor could it given that it sought entry of default on April 24, 2019, less than six months after transmission of the documents. (ECF No. 9 – Yanos Second Decl. ¶¶ 7-8.). *See Mezerhane v. República Bolivariana De Venezuela*, No. 11-23983, 2013 WL 12091160, at *3 (S.D. Fla. March 19, 2013) (plaintiff was not entitled to default judgment against Venezuela, among other defendants, because plaintiff failed to demonstrate compliance with Article 15 of Hague Service Convention).

The only case cited by Saint-Gobain in support of its erroneous interpretation of the FSIA – *Devengoechea v. Bolivarian Republic of Venezuela*, Case No.: 12-CV-23743-PCH, 2014 WL 12489848 (S.D. Fla. April 25, 2014) – is inapposite. In that case, a default judgment was entered against the Republic pursuant to Article 15 of the Hague Service Convention. *See id.*, 2014 WL 12489848, at *2 (referencing "Article 15 of the Hague Convention" in paragraphs 6 and 7). Again, Article 15 permits entry of a judgment when "no certificate of service or delivery has been received," provided that all reasonable efforts to obtain a certificate were made, and at least six months from the date of transmission to the Central Authority have past. *See* Hague Service Convention, 20 U.S.T. at 364-65, art. 15.

Here, Saint-Gobain did not even attempt to demonstrate that it has met the strict standards of Article 15. It has not shown that it made every reasonable effort to obtain a certificate of service from the Venezuelan Central Authority (or even that *any* effort has been made), as Article 15 requires. Nor did it even wait the minimum six month period to seek a default. To the contrary, Saint-Gobain ignored the requirements of the Convention and glibly

8

argues that the Venezuelan Central Authority was not required to effectuate service on the Republic or PDVSA or to return a certificate detailing that service, and that service of process was complete upon receipt of the Summons and Complaint by the Central Authority, without more. That preposterous position is contradicted by the plain language of the Hague Service Convention and unsupported by *any* legal authority.

In the absence of compliance with the requirements of the proof of service in accordance with the Hague Service Convention, Saint-Gobain's motion for a default judgment must be denied and the clerk's default entered against PDVSA vacated. *See Witzke*, 2019 WL 181320, at *2 (vacating default when service of process was improper); *Church-El*, 2013 WL 1190013, at *4 (same). Indeed, under these circumstances, it was completely inappropriate for Saint-Gobain to have even requested entry of a default against PDVSA from the Clerk in the first place. Not only was its proof of service improper, but it misrepresented that service of process in accordance with the Hague Service Convention had been completed.

## II.   SAINT-GOBAIN'S COMPLAINT FAILS TO PLEAD A JUSTICIABLE CLAIM AGAINST PDVSA.

Even if Saint-Gobain had effected service on PDVSA, a default judgment would be entirely inappropriate in this case. Generally, entries of default and default judgments are disfavored by the courts, and when a defendant moves to set aside the entry of default or a default judgment the law therefore "require[s] doubtful cases to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *United States v. $55,518.55 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984) (citation omitted). "[I]t is well established that a district court ruling on a motion to set aside a default under Rule 55(c) . . . , must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of

9

the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

Here, all three factors compel the denial of Saint-Gobain's motion. There is certainly no prejudice to Saint-Gobain from having to prove its claims. Moreover, PDVSA has numerous compelling defenses. And, finally, there was no default – much less one that was based on any culpable conduct of PDVSA.

We will first address the meritorious defenses below.

### A.     The Court Lacks Subject Matter Jurisdiction Over the Claim Against PDVSA.

Under the FSIA, a foreign sovereign state, including its agencies and instrumentalities, is presumptively immune from suit in all courts in the United States. *See* 28 U.S.C. § 1604. "Thus, in order to establish subject matter jurisdiction under the FSIA, the plaintiff must overcome the presumption that the foreign state is immune from suit by producing evidence that 'the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions.'" *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (7th Cir. 2009) (quoting *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000)). Whether the plaintiff has satisfied this burden is determined by looking at "the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008). Jurisdictional immunity under the FSIA is assessed at the time an action is commenced. *See TIG Ins. Co. v. Republic of Argentina*, No. 18-mc-0129 (DLF), 2019 WL 3017618, at *3 (D.D.C. July 10, 2019) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003)) (additional citations omitted).

Here, Saint-Gobain argues that this Court has subject matter jurisdiction over the Republic because it seeks to confirm the Award, which was made pursuant to an agreement to

10

arbitrate, and by agreeing to arbitrate, the Republic waived its sovereign immunity.  (ECF No. 11 – Mot. for Entry of Default J. pp. 8-10.)  Saint-Gobain alleges that this Court has subject matter jurisdiction over PDVSA, even though it was not a party to the Award, the arbitration, or agreement to arbitrate, because it is allegedly an alter ego of the Republic.  (*Id.* at p. 10.)  Saint-Gobain provides no other basis for subject matter jurisdiction over the claim against PDVSA. None of its arguments withstands scrutiny.

In *Peacock v. Thomas*, the Supreme Court drew a distinction between post-judgment proceedings to collect a judgment by executing against property of the judgment debtor, for which a court may have ancillary enforcement jurisdiction, and claims that seek to shift liability on an existing judgment to a third party not otherwise liable on the judgment.  516 U.S. 349, 357 (1996).  The Court held that an action to hold a third party liable on a judgment, such as "alter ego status" or "veil piercing," must independently demonstrate subject matter jurisdiction.  *See id.*  "In reaching this conclusion, the Court explained that ancillary jurisdiction was not intended for use as a tool for establishing personal liability on the part of a new defendant, for instance by designating that third party as an alter ego of the indebted party or by piercing the corporate veil."  *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 12 (3d Cir. 2008) (analyzing *Peacock*).

In *Butler v. Shukhoi Company*, the Seventh Circuit explained how a plaintiff seeking to hold a new party primarily liable for a judgment cannot rely on an alter ego theory, alone, to establish subject matter jurisdiction under the FSIA.  579 F.3d at 1313.  In that case, the plaintiff sought to hold certain instrumentalities of a foreign state liable as alter egos of the defendant for a judgment he previously obtained against an aircraft manufacturer.  *See id.*  The Court found that the plaintiff's allegations of an alter ego relationship were insufficient to establish that the claims against the defendants fell within one of the FSIA's exceptions to sovereign immunity.

11

*See id.* ("We agree with appellants that this conduct is insufficient to divest appellants of their sovereign immunity because, even if substantiated through discovery, it does not bring the claim within one of one the statutorily-enumerated exceptions either to pre-judgment or post-judgment immunity under the FSIA.").

This Court's decision in *Crystallex International Corporation v. Bolivarian Republic of Venezuela* is not to the contrary. In that case, the plaintiff did not seek, as Saint-Gobain does here, to hold a third party liable on a judgment, but, rather, it sought to collect on a judgment against the Republic by executing on property owned by PDVSA. *See Crystallex*, 333 F. Supp. 3d at 394. Significantly, it did *not* name PDVSA as a defendant in the underlying case or seek to hold PDVSA liable for its judgment against the Republic. *See id.* In the Court's view, because the plaintiff only sought to attach certain specified property of PDVSA, the plaintiff did "not need to additionally prove that some other independent basis of subject matter jurisdiction exists with respect to PDVSA." *See id.* (citing *Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, at * 13 (S.D.N.Y. Mar. 30, 2007)). The Court reasoned that "if Crystallex meets its burden to show that the Court has subject matter jurisdiction with respect to Venezuela under Section 1605(a)(6), and if Crystallex further demonstrates that PDVSA is the alter ego of Venezuela, then Crystallex will also necessarily have established that the Court may exercise subject matter jurisdiction with respect to PDVSA as well." *Id.*

The Third Circuit recently confirmed these principles in affirming the District Court's decision. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, 2019 WL 3403888, at *5-6 (3d Cir. July 29, 2019) ("*Crystallex II*"). The Third Circuit concluded:

> [W]hen a party establishes that an exception to sovereign immunity applies in a merits action that results in a federal judgment—here, the exception for confirming arbitration awards, 28 U.S.C. § 1605(a)(6)—that party does not need

12

to establish yet another exception when it registers the judgment in another district court under 28 U.S.C. § 1963 and seeks enforcement in that court.

*Id.* at *5.

The Third Circuit's rationale and holding was specifically limited to the post-judgment context. *See id.* The Court held only that if the *Bancec*[1] factors could be established, "the District Court had the power to issue a writ of attachment on that entity's non-immune assets to satisfy the judgment against the country." *Id.* at *7 (citing *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563-65 (11th Cir. 1987); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-38 (5th Cir. 1992)). The Third Circuit never held (and could not hold consistent with *Peacock*) that ancillary jurisdiction would apply to a plaintiff's claim to hold a third party liable on a judgment.

This case, in contrast to *Crystallex*, is not a post-judgment proceeding. Saint-Gobain seeks to hold PDVSA primarily liable for the Award. (ECF No. 1 – Compl. p. 1.) Saint-Gobain named PDVSA as a defendant and seeks to register and enforce the Award as a judgment against PDVSA. (*See id.* at pp. 8-9.) Therefore, pursuant to the Supreme Court's holding in *Peacock* (and the 7th Circuit's holding in *Butler*), Saint-Gobain must establish an independent basis for subject matter jurisdiction with respect to the claim against PDVSA in this action.

Saint-Gobain cannot – and, indeed, has not even attempted to – satisfy this burden. Rather, Saint-Gobain cites only PDVSA's alleged alter ego relationship with the Republic as the basis for subject matter jurisdiction over PDVSA, which, even if true, does not bring its claim against PDVSA within of the statutorily-enumerated exceptions to sovereign immunity under the FSIA. Moreover, as explained below, Saint-Gobain has not offered *any evidence* that PDVSA is an alter ego of the Republic.

---

[1] In *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983), the Supreme Court identified five factors to consider when determining when a government instrumentality loses its separate juridical status and becomes the alter ego of its parent government, which are now referred to as the *Bancec* factors.

13

**B.      This Court Does Not Have Personal Jurisdiction Over PDVSA.**

Under the FSIA, personal jurisdiction is proper against a foreign sovereign if subject matter jurisdiction and proper service of process are present. *See Continental Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751-52 (E.D. Va. 2012) ("Thus, § 1330(b) provides that '[p]ersonal jurisdiction over a foreign state shall exist as to every claim . . . over which the district courts have jurisdiction . . . where service has been made under section 1608 of this statute." (citations omitted)); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) ("Under the FSIA . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process."); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1107 n.5 (5th Cir. 1985) ("where subject matter jurisdiction exists and where service of process is made pursuant to 28 U.S.C. § 1608, then personal jurisdiction exists"). As previously explained, Saint-Gobain failed to properly serve PDVSA with process (*see* Section I, *supra*) and has failed to establish subject matter jurisdiction over the claim against PDVSA (*see* Section II(A), *supra*). This Court, therefore, lacks personal jurisdiction over PDVSA as well.

**C.      Venue in this District is Improper.**

Saint-Gobain alleges that venue is proper in this District under 28 U.S.C § 1391(f)(3) because PDVSA is an instrumentality of Venezuela that does business in Delaware through its wholly owned subsidiary, PDV Holding, Inc., a Delaware corporation. (ECF No. 1 – Compl. ¶¶ 3, 5.) Section 1391(f)(3) provides that venue in an action against a foreign sovereign is proper "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state." 28 U.S.C § 1391(f)(3).

14

Contrary to Saint-Gobain's assertion, venue is not proper in this District. The only connection to this District alleged by Saint-Gobain is that PDVH does business in this District. But PDVH is not a party to this action. Therefore, Saint-Gobain cannot rely on PDVH's alleged business contacts with this District for venue purposes. *Cf. Havensight Capital LLC v. People's Republic of China*, Case No. CV 15-01206 DDP (FFMx), 2015 WL 12778414, at *1 (C.D. Cal. Apr. 30, 2015) (plaintiff failed to demonstrate that venue was proper under Section 1391(f)(3) when alleged "corporate citizen" was not named as defendant and plaintiff alleged no "facts that would allow the Court to plausibly conclude that it is an agent or instrumentality of the [foreign sovereign]"). And PDVSA is not "doing business" in Delaware simply because it owns shares in a Delaware corporation. *See Shirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989, 991 (D. Minn. 2004) (entity is not "doing business" in particular state if it "has no physical presence in [the state], and has no . . . operations in the state"); *Vivadent (USA), Inc. v. Darby Dental Supply Co.*, 655 F. Supp. 1359, 1362 (D.N.J. 1987), *superseded by statute on other grounds* ("[A] corporation will be held to be 'doing business' for purposes of section 1391(c) if its activities within the district are such that its business has become localized and is in operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business."). Accordingly, venue in this District is improper.

### III.    SAINT-GOBAIN HAS FAILED TO PROVIDE SATISFACTORY EVIDENCE – OR INDEED *ANY* EVIDENCE – THAT WOULD SUPPORT A DEFAULT JUDGMENT.

In addition to demonstrating that the defendant was properly served and thereafter failed to timely answer or appear, the FSIA requires a party seeking a default judgment against a foreign sovereign to "establish[] his claim or right to relief by evidence satisfactory to the court."

15

28 U.S.C. § 1608(e) ("No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."). "Accordingly, courts must scrutinize the plaintiffs' allegations, and may not simply accept a complaint's unsupported allegations as true." *Spencer v. Islamic Republic of Iran*, 922 F. Supp. 2d 108, 109 (D.D.C. 2013) (citations omitted).

The decision in *Spencer v. Islamic Republic of Iran* is instructive. In that case, the court found that the evidence submitted by the plaintiffs was insufficient to support entry of a default judgment under the FSIA. *See id.* In attempting to prove their entitlement to relief, the plaintiffs relied entirely on the evidence presented in a related case, *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003), in which the court had "entered a default judgment on behalf of a group of plaintiffs against defendants Iran and the Iranian Ministry of Information and Security, finding they were liable for injuries and deaths resulting from the same 1983 bombing at issue in this case." *Id.* (citing *Peterson*, 264 F. Supp. 2d at 61). Despite this finding, the *Spencer* court found that the plaintiffs' evidence was "insufficient for a finding of liability in this action because it fails to establish that the present plaintiffs meet several statutory requirements" and denied the plaintiffs' motion for a default judgment. *Id.* at 109-10.

Here, Saint-Gobain seeks to register and enforce the Award as a judgment against PDVSA, when PDVSA was not a party to the underlying arbitration, which involved Saint-Gobain and the Republic only. Saint-Gobain's claim against PDVSA is premised on the erroneous theory that PDVSA is an "alter ego" of the Republic. To support this theory, Saint-Gobain relies solely on the Court's decision in *Crystallex* that "PDVSA *may* be deemed the alter ego of Venezuela . . . ." *Crystallex*, 333 F. Supp. 3d at 414 (emphasis added).

16

Saint-Gobain has plainly failed to satisfy its burden of establishing its right to relief against PDVSA through satisfactory evidence, as Section 1608(e) requires.   Saint-Gobain submits a copy of the Award, but no *evidence* that PDVSA is an alter ego of the Republic or otherwise liable for the Award, as required to warrant entry of a judgment against PDVSA for the Republic's debt.

Saint-Gobain's reliance on the *Crystallex* decision is misplaced.  As previously explained, courts are required to analyze alter ego status on a case-by-case basis, and according to the conditions at the current time.  *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823 (2018) (citation omitted).  It therefore would be inappropriate to entirely rely on the *Crystallex* Court's analysis when assessing the alter ego relationship for purposes of this case.  That case involved a different time period and entirely different facts from the present case.  In fact, when affirming the District Court's finding of an alter ego relationship in *Crystallex*, the Third Circuit expressly authorized the Republic to "direct to the District Court credible arguments to expand the record with later events," recognizing that changes in circumstances may materially impact the alter ego analysis.  *See Crystallex II*, 2019 WL 3403888, at \*11.

Simply put, Saint-Gobain cannot rely on the *Crystallex* decision to satisfy its obligation to submit *evidence* establishing its right to relief.  And because Saint-Gobain offered no other "evidence" to support its claim that PDVSA is an alter ego of the Republic or otherwise liable for the Award, its motion for a default judgment must be denied.  *See Spencer*, 922 F. Supp. 2d at 109 (denying motion for default in absence of sufficient evidence of claim).

## CONCLUSION

For the foregoing reasons, this Court should deny Saint-Gobain's motion in its entirety, vacate the Clerk's default against PDVSA, and grant such other and further relief to PDVSA as it deems just and proper.

Dated: August 7, 2019

Respectfully submitted,

HOGAN LOVELLS US LLLP

By:  /s/ Scott R. Haiber
Scott R. Haiber (DE ID 2995)
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410) 659-2700
Fax: (410) 659-2701
scott.haber@hoganlovells.com

Dennis H. Tracey, III (pro hac vice)
Robin L. Muir (pro hac vice)
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendant Petróleos de Venezuela, S.A.*