**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A.,<br><br>Respondents. | Civil Action No.: 1:18-cv-01963-LPS |

**<u>PLAINTIFF SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE'S REPLY IN
SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT</u>**

DOCS_DE:224969.1 76899/001

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.      Venezuela And Its Alter Ego, PDVSA, Were Properly Served Under The
           Hague Convention And The FSIA. ......................................................................... 3

    II.    Article 15 Of The Hague Convention Does Not Preclude Entry Of Default
           Judgement But Confirms That Default Judgement May Be Entered When
           Service Papers Were "Actually Delivered" To A Defendant Pursuant To
           The Convention. ...................................................................................................... 6

    III.   Because No "Certificate" Is Needed To Complete Service, The Court
           Need Not Consider The Status Of Venezuela's Rival Governments. ................... 8

    IV.   Saint-Gobain Has Properly Established Venue over Venezuela and
           PDVSA. .................................................................................................................. 9

    V.     Saint-Gobain Does Not Need To Plead A New Case Against PDVSA ............... 11

    VI.   There Is No Good Cause To Vacate The Clerk's Entry Of Default. .................... 13

         A.     Saint-Gobain Will Be Prejudiced If Default Is Set Aside. ........................ 13

         B.     The Default Resulted From Venezuela's Culpable Conduct. .................... 14

         C.     Neither Defendant Presents a Meritorious Defense. ................................. 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*,
983 F.2d 495 (3d Cir. 1992)..................................................................................................12

*Box v. Dall. Mexican Consulate Gen.*,
487 F. App'x 880 (5th Cir. 2012) .......................................................................................5, 8

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005)................................................................................................4, 6

*Cavic v. Republic of Serbia*,
No. 816CV1910JLSKESX, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ..............................................................................................................................4

*Charleston Aluminum, LLC v. Ulbrinox S. De R.L. de S.V.*,
No. 3:12-2389-MBS, 2013 U.S. Dist. LEXIS 5647 (D.S.C. Jan. 15, 2013) ...........................5

*Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*,
832 F.3d 92 (2d Cir. 2016) (Winter, J., concurring)................................................................10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
244 F. Supp. 3d 100 (D.D.C. 2017) .......................................................................................12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
333 F. Supp. 3d 380 (D. Del. 2018).........................................................................2, 3, 9, 11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela (In re Petroleos de Venezuela, S.A.)*, Nos. 18-2797, 18-3124, 18-2889, 2019 U.S. App. LEXIS 22436 (3d Cir. July 29, 2019) ...................................................................................2, 3, 9, 10

*Devengoechea v. Bolivarian Republic of Venezuela*,
No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755 (S.D. Fla. Apr. 24, 2014) .........................5

*EM Ltd. v. Banco Cent. de la Republica Argentina*,
800 F.3d 78 (2d Cir. 2015)......................................................................................................9

*Fox v. Regie Nationale des Usines Renault*,
103 F.R.D. 453 (W.D. Tenn. 1984) ..........................................................................................4

*Gold Kist v. Laurinburg Oil Co.*,
756 F.2d 14 (3d Cir. 1985).....................................................................................................13

DOCS_DE:224969.1 76899/001

*InterDigital Tech. Corp. v. OKI Am., Inc.*,
　866 F. Supp. 212 (E.D. Pa. 1994) ..................................................................................12

*Marschhauser v. Travelers Indem. Co.*,
　145 F.R.D. 605 (S.D. Fla. 1992) ...............................................................................4, 5, 7

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela.*,
　863 F.3d 96 (2d Cir. 2017)..............................................................................................1

*Peacock v. Thomas*,
　516 U.S. 349 (1996).......................................................................................................11

*Republic of Argentina v. Weltover*,
　504 U.S. 607 (1992).......................................................................................................11

*Spencer v. Islamic Republic of Iran*,
　922 F. Supp. 2d 108 (D.D.C. 2013) ..............................................................................12

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
　2018 U.S. Dist. LEXIS 211469 (D.D.C. 2018) ...............................................................1

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
　571 F.3d 221 (2d Cir. 2009)............................................................................................9

*Zazzali v. Swenson*,
　852 F. Supp. 2d 438 (D.Del. 2012).................................................................................10

**RULES**

Fed. R. Civ.P. 4 .................................................................................................................5, 6.

**STATUTES**

22 U.S.C. 1650a .....................................................................................................1, 3, 13, 15

28 U.S.C. § 1391(f)(1) ............................................................................................................11

28 U.S.C. § 1391(f)(3) ...............................................................................................3, 9, 10, 11

28 U.S.C. § 1608(a)(2)...............................................................................................................3

9 U.S.C. 1 et seq.................................................................................................................12, 15

**INTERNATIONAL TREATIES**

Convention on the Settlement of Investment Disputes Between States and
　Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270..............................................13, 14

DOCS_DE:224969.1 76899/001

The Hague Convention on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361,
    658 U.N.T.S. 163 ............................................................................................................... *passim*

**OTHER AUTHORITIES**

Restatement (3d) of the Foreign Relations Law of the United States (1987).................................8

iv

Saint-Gobain Performance Plastics Europe ("Plaintiff" or "Saint-Gobain"), by and through its undersigned counsel, respectfully submits this Reply in Support of its Motion for Default Judgment, (D.I. No. 11).

## INTRODUCTION

The Bolivarian Republic of Venezuela ("Venezuela") and Petróleos de Venezuela, S.A. ("PDVSA") (collectively, "Defendants") have failed to meet their burden of establishing a legitimate basis for this Court to refrain from entering a default judgment registering and enforcing the Award. By statute, an ICSID Award is owed "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. 1650a. Enforcement proceedings are correspondingly summary because an ICSID award is not subject to substantive or procedural review in federal court. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela.*, 863 F.3d 96, 117 (2d Cir. 2017); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 U.S. Dist. LEXIS 211469, *16 (D.D.C. 2018) ("[T]he language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of Tidewater's entitlement to any unpaid claims under the Award.").

Defendants are therefore left to dispute service of process and venue. With respect to service, Venezuela and PDVSA do not dispute "actual delivery" of the summons and complaint in this action. Rather, they insist that actual delivery cannot be deemed proper service within the meaning of the Hague Convention unless and until they themselves certify the service of process. This self-serving "interpretation" of the Hague Convention defies logic. The function of a certificate that a State's Central Authority may issue under the Hague Convention framework is to

prove service on *third parties*, not to afford States an opportunity to permanently avoid attempts to serve legal papers upon themselves.

In fact, the express terms of the Hague Convention prove that Respondents' position is wrong:  the Convention explicitly provides that a default judgment may issue without a Central Authority's certificate where, as here, there has been "actual delivery" and service upon a defendant.  Hague Convention, art. 15(1).

At the same time, we note that this Court need not concern itself with the fact that rival governments are vying for control of Venezuela—a sovereign State and legal entity: in this case, service was complete as of December 27, 2018—nearly a full a month prior to the United States' decision to transfer diplomatic recognition from one Venezuelan government to another.  *See* Second Yanos Decl., Ex. 4.[1]

Venezuela's and PDVSA's objections to venue also must fail.  Venezuela contends that venue in Delaware cannot be proper because it does not do business in Delaware.  However, this argument fails to comprehend the logic of this court's finding, which the Third Circuit just *last month* affirmed, that PDVSA is Venezuela's alter ego.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela (In re Petroleos de Venezuela, S.A.)*, Nos. 18-2797, 18-3124, 18-2889, 2019 U.S. App. LEXIS 22436, at *50 (3d Cir. July 29, 2019) (observing that "if the relationship between Venezuela and PDVSA cannot satisfy the Supreme Court's extensive-control requirement, *we know nothing that can*").  In short, venue is proper here because as a matter of law, where Venezuela's alter ego is present in Delaware then Venezuela itself is also present in Delaware. *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 420 (D. Del. 2018),

---

[1] Terms used within this Reply are used as defined previously in Saint-Gobain's Motion for Default Judgment.

*aff'd*, Nos. 18-2797, 18-3124, 18-2889, 2019 U.S. App. LEXIS 22436, at \*49-50 (3d Cir. July 29, 2019).  Thus, venue is proper pursuant to 28 U.S.C. § 1391(f)(3) and, since Venezuela and its alter ego failed to defend within 60 days of service and Saint-Gobain has established its entitlement to recognition and enforcement of the Award under 28 U.S.C. §1650a, (*see* D.I. No. 11, at 8–14), a default judgment should be entered.

## ARGUMENT

**I.    Venezuela And Its Alter Ego, PDVSA, Were Properly Served Under The Hague Convention And The FSIA.**

The Hague Convention requires each signatory to "designate a Central Authority which will undertake to receive requests for service."  Hague Convention, art. 2. Venezuela designated its Foreign Ministry as its Central Authority and it was to the Foreign Ministry that Plaintiff couriered the summons and complaint in this action, where they were received and signed for.  *See* Second Yanos Decl., Exs. 4, 5.  At that point, service was successful and complete.  *See* 28 U.S.C. § 1608(a)(2).  *See also* Hague Convention, art. 5 (a "document may always be served by delivery to an addressee who accepts it voluntarily").

Venezuela and PDVSA nevertheless insist that service was not proper pursuant to the Hague Convention because Venezuela's "Central Authority" did not return a certificate confirming service—on itself.

That is not correct.  To be sure, the Hague Convention anticipates that a State's Central Authority will ordinarily certify its service of process *on third parties*.  The Hague Convention was designed to allow private litigants in one State to serve process on other private litigants in another State through that State's designated Central Authority.  In that scenario, the Central Authority's role is to make and confirm service upon *a third party* in good faith.  *See*, *e.g.*, Hague Convention, art. 5 ("The Central Authority of the State addressed ***shall itself serve*** the document

3

*or shall arrange to have it served* by an appropriate agency") and art. 6 ("The certificate shall state

that the document has been served and shall include the method, the place and the date of service

and *the person to whom the document was delivered*") (emphases added).  In the third-party

service scenario, the value of a certificate as proof of service is plain—litigants, especially faraway

ones, are often reluctant to admit to having been served.  Even so, federal district courts have

repeatedly held service on a third party pursuant the Hague Convention to be effective without a

certificate.  *See*, *e.g.*, *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005) (finding a

certificate not essential to proper service on a third party); *Fox v. Regie Nationale des Usines

Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984) (same).

However, where the relevant papers were actually delivered to the Central Authority and

the State, represented by its Central Authority, is also the party to whom the process needed to be

served, then a certificate from the Central Authority that the Central Authority delivered to itself

the documents that were delivered to it is meaningless.[2]  That is precisely what happened here:

Venezuela's Central Authority—its Foreign Ministry—was at the time of service legally

responsible for the conduct of Venezuela's international relations and recognized as such by the

United States.  Venezuela's Foreign Ministry accepted the summons and complaint in this action,

---

[2] Venezuela cites *Cavic v. Republic of Serbia*, No. 816CV1910JLSKESX, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018), for the proposition that service of papers on the Central Authority does not equate to service on a state itself.  (D.I. No. 18, at 13).  But *Cavic* is inapposite.  There, Serbia's Central Authority received *only* a request for service addressed to another defendant, a state-owned bank.  *Id.* at *3 ("The documentation shows that Cavic requested service only on Jugobanka, *not on Serbia*.") (emphasis added).  Venezuela's reliance on *Marschhauser v. Travelers Indem. Co*., 145 F.R.D. 605, 609 (S.D. Fla. 1992), is also misplaced.  The court did not pass on whether service on the Israeli central authority was itself sufficient for service on the State of Israel, but, finding that no certificate of service had been returned to the plaintiff, found that it nevertheless had the authority to enter an order of default pursuant to Article 15 of the Hague Convention. *See id*. at 610.

4

served in the form required by the Hague Convention, upon Venezuela and its alter ego.  *See* Second Yanos Decl., Exs. 2–5.[3]  No further action by Venezuela was required to perfect service at that point.  Rather, as another federal district court has explained, "[s]ervice was effectuated on Venezuela, through its Central Authority under the Hague Convention . . . when it received the Summons, Complaint and transmittal documents."  *Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755, *3 (S.D. Fla. Apr. 24, 2014).[4]  If the State/Central Authority Refused in bad faith to issue the requisite certificate, it should not be rewarded for such conduct.

Indeed, any other rule would allow a State to frustrate service on itself through the formality of refusing to issue a certificate: there is no reason to read such a moral hazard into the Convention or the FSIA's service scheme.  *See Box v. Dall. Mexican Consulate Gen.*, 487 F. App'x 880, 886 (5th Cir. 2012) (reasoning that a certificate is "more important" when serving a third party); *see*

---

[3] Saint-Gobain couriered duly-executed USM-94 forms addressed to Venezuela and its alter-ego PDVSA, in duplicate English and Spanish versions, each with duplicate English and Spanish copies of the complaint in this action, five supporting exhibits, summons, and notice of right to consent to trial before a magistrate judge, to the Venezuelan Foreign Ministry, the Central Authority designated by Venezuela for purposes of the Hague Convention.  *See* Second Yanos Decl. Exs. 2 & 3.  These were signed for upon arrival.  *See id.* Exs. 4 & 5.

[4] Venezuela attempts to distinguish *Devengochea* (D.I. No. 18, at 13) on the basis that service in that case was made through a court-appointed process server and proven through "a process server's affidavit."  But the Hague Convention requires no more than that an "authority or judicial officer competent under the law of the State in which the documents originate" forward the request for service to the Central Authority.  Hague Convention, art. 3.  There can be no serious question that counsel are competent to serve process under "the law of the State in which the documents originate" in this case.  *See*, *e.g.*, *Marschhauser*, 145 F.R.D. at 608-09 ("Under United States law, a private attorney is competent to send service of process under Fed. R. Civ.P. 4(c)(2)(a), and the United States Department of State has interpreted Article 3 to mean that any marshal, sheriff, court official or attorney authorized to serve process in the domestic action qualifies as a 'competent authority' under the Convention.").  *See also Charleston Aluminum, LLC v. Ulbrinox S. De R.L. de S.V.*, No. 3:12-2389-MBS, 2013 U.S. Dist. LEXIS 5647, *5 (D.S.C. Jan. 15, 2013) ("The court construes Article 3 of the Hague Convention broadly enough to include, not only government officials affiliated with the courts, but also officers of the court, such as attorneys.").

5

*also Burda Media, Inc.*, 417 F.3d at 301 (the Hague Convention "should be read together with Rule 4, which 'stresses actual notice, rather than strict formalism.'").

**II.      Article 15 Of The Hague Convention Does Not Preclude Entry Of Default Judgement But Confirms That Default Judgement May Be Entered When Service Papers Were "Actually Delivered" To A Defendant Pursuant To The Convention.**

Despite Venezuela's arguments to the contrary, Article 15 of the Hague Convention does not "preclude" a default judgment here. (D.I. No. 18, at 14–17). In fact, Article 15 allows default judgment to be entered against any defendant that has been served pursuant to the Hague Convention, even if the Central Authority of the State where the Defendant is located fails to provide a certificate of service.

Article 15 has two paragraphs. Venezuela ignores the first, which provides that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –
>
> a) the document *was served* by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, *or*
>
> b) the document was *actually delivered to the defendant* or to his residence by another method provided for by this Convention.[5]

Hague Convention, art. 15(1) (emphasis added). In other words, Article 15's first paragraph confirms that a default judgment may be granted consistent with the Hague Convention so long as the necessary documents were "served" or "actually delivered to the defendant" by another method provided for by the Convention. That is the case here: service was accepted by the Central

---

[5] Article 15(1) of the Hague Convention also requires "that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend." Venezuela does not deny that it has had time to defend.

6

Authority designated by Venezuela. *See* Second Yanos Decl. ¶¶ 8–9, Exs. 4, 5; *see also* Hague

Convention art. 5 (noting that "the document may always be served by delivery to an addressee

who accepts it voluntarily").

Defendants focus exclusively on the second paragraph of Article 15, which adds that:

> Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –
>
> a) the document was ***transmitted*** by one of the methods provided for in this Convention,
>
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Convention, art. 15(2). Paragraph 2 exists "notwithstanding" the requirements of Paragraph

1. It does not add to the prior paragraph's preconditions for a default judgment where "service"

or "actual delivery" have been made to a defendant, but recognizes an *alternative* set of

preconditions for default judgment where all that can be proved is that service was *attempted*. *See*

*Marschhauser*, 145 F.R.D. at 608 (recognizing that the two paragraphs of article 15 represent

alternative paths to a default judgment in the absence of a certificate, and that the first paragraph

allows for a default judgment if "the plaintiff demonstrates that actual or substituted service was

made on the defendant."). Logically, Article 15 will have more relevance in a scenario where a

litigant has sought service on a third party defendant through a State's Central Authority but cannot

force that foreign government to act or prove that service was made or the papers "actually

delivered." *See Box*, 487 F. App'x at 886 (distinguishing serving a corporation from serving the

7

state itself).  Article 15's second paragraph is irrelevant here, where Saint-Gobain did not merely transmit the summons and complaint to Venezuela's Central Authority for service on a third party, but actually served and confirmed actual delivery of the papers on Venezuela through its Central Authority.  *See* Second Yanos Decl., ¶¶ 7–8.

### III.    Because No "Certificate" Is Needed To Complete Service, The Court Need Not Consider The Status Of Venezuela's Rival Governments.

There is no need for the Court to reach the legal status of Venezuela's rival governments.  (D.I. No. 18, at 15-16).  Saint-Gobain completed service on Venezuela in late December of 2018.  Second Yanos Decl., Exs. 4–5.  At that time, the United States recognized the Maduro government of Venezuela.  It was not until late January of 2019 that the United States recognized Mr. Guaido's government.   (D.I. No. 18, at 2).   Which government the United States recognizes *today* is irrelevant to the question before the Court, however, because Saint-Gobain did not serve a government but a State and, at the time it did so, the United States recognized Maduro's government as the representative of that State.  It is settled international law that a new government inherits the legal obligations incurred for the State by a prior regime.  *See* Restatement (3d) of the Foreign Relations Law of the United States, § 208, cmt. a (1987) ("When the state ceases to exist, its capacities, rights, and duties terminate.  They are not affected by a mere change in the regime or in the form of government or its ideology").[6]

Here, Interim President Guaido's government has inherited all obligations and liabilities incurred by the former Maduro administration.  Mr. Guaido has not appointed a new Central Authority, nor has he denounced the Hague Convention.  *See* Hague Convention, art. 30 (stating that the Hague Convention is renewed by each state every five years, and any denunciation of the

---

[6] It may be noted that the international legal obligations of the United States do not change upon the election of a new President.

8

Convention must take place six months before the end of the current five-year period).  In any event, because no certificate from the Venezuelan Central Authority is needed, the Court has no need to "recognize" a certificate issued by the Maduro government or to reach the question of who is Venezuela's legitimate President.

For all these reasons, service on Venezuela and its alter ego PDVSA was complete as of December 27, 2018.

**IV.     Saint-Gobain Has Properly Established Venue Over Venezuela And PDVSA.**

Venue is proper because PDVSA does business in this district.  *See* 28 U.S.C. §1391(f)(3). This Court has found that PDVSA is Venezuela's alter ego.  *See Crystallex*, 333. F. Supp. 3d at 414 (finding, upon review of an exhaustive record, that the "presumption of separateness" between PDVSA and Venezuela had been "rebutted . . . and . . . that PDVSA may be deemed the alter ego of Venezuela.") and *id*. at 392 (citing *EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78, 91 n.56 (2d Cir. 2015) ("Our precedent supports the view . . . that once an instrumentality of a sovereign state has been deemed to be the alter ego of that state . . . the instrumentality and the state are to be treated as one and the same for all purposes.")).  *See also Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (alter egos "are treated as one entity for jurisdictional purposes")).  This Court's alter ego finding means that Venezuela and PDVSA are to be treated as one and the same.  It therefore follows that venue as to PDVSA is venue over Venezuela because the Court is to "disregard the corporate separateness of" PDVSA and Venezuela.  *In re Petroleos de Venezuela, S.A.*, 2019 U.S. App. LEXIS 22436, at *49 (despite a "strong presumption that a foreign sovereign and its instrumentalities are separate legal entities" an alter ego finding "requires that we ignore the formal separateness of the two entities.").  *See*

9

*also id*. at *49-50 ("[I]f the relationship between Venezuela and PDVSA cannot satisfy the Supreme Court's extensive-control requirement, we know nothing that can.").[7]

Citing a concurring opinion from another Circuit, Venezuela tries to argue that venue pursuant to 28 U.S.C. § 1391(f)(3) should not be available since PDVSA is both an instrumentality of Venezuela and its alter ego.  (D.I. No. 18, at p. 9) (citing *Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 832 F.3d 92, 117 (2d Cir. 2016) (Winter, J., concurring) ("[I]f [defendant] w[ere] so intertwined with the State of Mexico as to be deemed the state itself, Section 1391(f)(3) would be inapplicable.")).  Venezuela, however, misconstrues the *dicta* on which it purports to rely.  In fact, Judge Winter's concurring opinion dealt with the analysis that applies to determine whether an entity is an "instrumentality" of a foreign sovereign or the sovereign itself, based on whether its activity is "predominantly" commercial or governmental.  *Id.*[8]  None of that analysis was intended to change the fact that an instrumentality of the State can also be the alter ego of that State for venue purposes.

Indeed, the plain text of the FSIA's venue provision states that "a civil action against a foreign state . . . may be brought . . . in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state."  28 U.S.C. § 1391(f)(3).  This provision should be applied as written, regardless of whether that instrumentality is also, as the Court has found, the State's alter ego.

---

[7] *Zazzali* (D.I. No. 18, at 8) is irrelevant as it was not a case involving alter-ego relationships.  *See Zazzali v. Swenson*, 852 F. Supp. 2d 438 (D. Del. 2012) (involving specific venue provisions under the Securities Exchange Act of 1934, the federal racketeering statute, and doctrine of pendent venue with respect to nine individual defendants, a Nebraska corporation without any business operations in Delaware, and two John Doe defendants).

[8] PDVSA does not dispute that it is Venezuela's "instrumentality," nor could it.

10

As for PDVSA's insistence that it is not "doing business" in Delaware and that it merely passively owns shares of PDVH (D.I. No. 16, at 15), this argument has already failed.  As this Court found in *Crystallex*, Venezuela, through PDVSA, actively exercised its ownership of PDVH shares to appoint directors, approve contracts, and pledge assets as security for PDVSA's debt. *See* 333 F. Supp. 3d at 418 (finding that "the PDVH shares are being 'used for a commercial purpose' by PDVSA" in Delaware).[9]  *See also id*. at 418 ("In sum, Venezuela is using the shares of PDVH 'not as a regulator of a market, but in the manner of a private player within it,' rendering its actions 'commercial' within the meaning of the FSIA.'") (citing *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)).

## V.    Saint-Gobain Does Not Need To Plead A New Case Against PDVSA

Defendants insist that Saint-Gobain needs to bring a new "veil-piercing" claim against Saint-Gobain for which, it contends, the Court would lack subject matter jurisdiction under the FSIA.  (D.I. No. 16, at 11) (citing *Peacock v. Thomas*, 516 U.S. 349 (1996)).  This is not correct. Saint-Gobain does not need to bring a new "veil-piercing" or "alter ego" claim in order to "hold a third party liable on a judgment," (D.I. No. 16, at 11–12), because the veil has already been pierced, by this Court.  *See Crystallex*, 333. F. Supp. 3d at 414.  For present purposes, then, Venezuela and PDVSA must be considered to be the same entity.[10]

---

[9] That the conduct at issue in the Award did not occur in Delaware (D.I. No. 18, at 7) is beside the point—neither did the expropriation underlying the Award in *Crystallex*.  ICSID Awards are entitled to full faith and credit in every federal judicial district, including this one, in which Venezuela is subject to venue through its alter ego pursuant to 28 U.S.C. § 1391(f)(3).  Saint-Gobain has not alleged that venue arises under 28 U.S.C. § 1391(f)(1).

[10] *Cf. Crystallex*, 333 F. Supp. 3d at 393 ("*Peacock* holds that ancillary jurisdiction does not extend to suits demanding that a third party use its legitimately held assets to satisfy a previously rendered judgment," it is "the Court finds it is appropriate — if it finds PDVSA is Venezuela's alter ego — to view the instant case as *not* involving a demand that PDVSA use *its* legitimately held assets to satisfy Venezuela's judgment. Rather, the issue here is whether PDVSA's assets are, in effect,

11

There is no need for "new evidence" to prove for a second time facts that this Court has already found and that were affirmed only two weeks ago by the Third Circuit in a case involving the same Defendants. To the contrary, Defendants are estopped from challenging that finding here, where the identical issue was decided against them in *Crystallex*. *See generally Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992) ("issue preclusion acts to bar re-litigation of an issue when: '(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.'") (internal citations omitted). *See also, e.g.*, *InterDigital Tech. Corp. v. OKI Am., Inc.*, 866 F. Supp. 212, 214 (E.D. Pa. 1994) ("[I]ssue preclusion may be invoked by a person or entity *who was not a party or in privity with a party in an earlier adjudication.*" (emphasis added)).[11]

Finally, Defendants cannot distinguish *Crystallex* on the basis that it arose in the "post-judgment context." (D.I. No. 16, at 13). This case is *also* a post-judgment proceeding. Saint-Gobain seeks to enforce an ICSID Award. Unlike an award (such as that in *Crystallex*) enforceable only pursuant to the New York Convention, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 244 F. Supp. 3d 100 (D.D.C. 2017), and the Federal Arbitration Act, an ICSID award

---

*Venezuela's* assets; for if they are, then this case is not correctly characterized as one in which Crystallex is attaching a third-party's property.") (emphasis added).

[11] *Spencer v. Islamic Republic of Iran*, 922 F. Supp. 2d 108, 109 (D.D.C. 2013), (D.I. No. 16 at 16) is inapposite. In that case, the court accepted a prior finding from the same district court in an earlier case that the defendants were liable for a terrorist attack, but found that the plaintiffs before it had not adequately pleaded that their injuries were caused by that attack. No such issue arises here where the fact that Venezuela and PDVSA are alter egos suffices to defeat Defendants' objections.

12

receives "*the same full faith and credit as if the award were a final judgment of a court* of general jurisdiction of one of the several States" when issued.  *See* 22 U.S.C. 1650a (emphasis added).

## VI.     There Is No Good Cause To Vacate The Clerk's Entry Of Default.

Finally, no good cause exists to vacate the default entered against Venezuela and its alter ego where (1) Saint-Gobain will be prejudiced by further delay; (2) Venezuela has no meritorious defenses to the Award; and (3) Defendants' default is culpable.  *See generally Gold Kist v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

### A.  Saint-Gobain Will Be Prejudiced If Default Is Set Aside.

Defendants suggest that there can be "no prejudice to Saint-Gobain from having to prove its claims."  (D.I. No. 16, at 10).  That might be true if Saint-Gobain had not already done so in the face of dilatory tactics by Venezuela.

To recall, it has been over eight years since the unlawful expropriation of Saint-Gobain's investment in Venezuela and almost two years since an ICSID tribunal issued the Award that, as a matter of law, was thereupon final and binding upon Venezuela.  *See* ICSID Convention Article 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.  Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.").  Yet rather than honor the Award, Venezuela commenced annulment proceedings under the ICSID Convention apparently for purposes of pure delay in March of last year: having obtained a stay of enforcement as a consequence of its annulment application, Venezuela neglected to pay the associated ICSID fees or to pursue its case, prompting ICSID ultimately to discontinue the annulment proceeding but nevertheless freezing

13

Saint-Gobain's enforcement efforts case for some six months, a delay compounded by Venezuela's and its alter ego's non-appearance here.  *See* Third Yanos Decl., Ex. 1.  Proceedings to enforce ICSID awards are meant to be summary: Saint-Gobain has waited long enough.

### B.  The Default Resulted From Venezuela's Culpable Conduct.

For the same reasons, the default resulted from Venezuela's culpable conduct and failure to act on its international law obligations.  Indeed, having manufactured delays in respect of the Award, and shirked its international law obligation under Article 53 of the ICSID Convention to "abide by and comply with" the Award, Venezuela's primary defenses before this Court are themselves dilatory.  Reduced to its essentials, Defendants' position is that the summary enforcement of an ICSID Award should be still further delayed (i) because Venezuela has failed to act upon what it considers its own Hague Convention obligations; and (ii) because Saint-Gobain should be forced to re-litigate the alter ego relationship between Venezuela and PDVSA, as if this Court's decision—affirmed only two weeks ago by the Third Circuit—had never happened.

### C.  Neither Defendant Presents A Meritorious Defense.

Finally, as set out above, neither Venezuela nor its alter ego PDVSA has alleged meritorious defenses that would justify setting aside the Clerk's entry of default.  Moreover, there are no other defenses to the Award than those which the Court will necessarily pass upon in deciding the pending motions.  If (as this Court has already found) Venezuela and PDVSA are alter egos such that the "presumption of separateness" between them should be set aside, then venue is proper in this district and PDVSA's subject matter jurisdiction argument falls away. Likewise, if Venezuela and its alter ego were effectively served pursuant to the Hague Convention and the FSIA (as they were) irrespective of the Venezuelan Central Authority's non-issuance of a certificate, then Venezuela and its alter ego are properly subject to personal jurisdiction.  Once the

14

Court has decided these points, there will be nothing else to decide.  *See* 22  U.S.C. § 1650a ("The pecuniary obligations imposed by . . . an [ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.  The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.").

## CONCLUSION

For the reasons set forth above, no grounds exist for setting aside Saint-Gobain's Motion for Default Judgement.  Saint-Gobain therefore respectfully requests that the Court enter an Order granting a Default Judgment recognizing and enforcing the ICSID Award.

Dated: August 14, 2019                                        Respectfully Submitted,

*/s/ Peter J. Keane*

Laura Davis Jones (Bar No. 2436)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

Alex Yanos, *pro hac vice*
Carlos Ramos-Mrosovsky*, pro hac vice*
Rajat Rana, *pro hac vice*
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel:       212-210-9400
Fax:       212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Plaintiff Saint-Gobain Performance Plastics Europe*

15