## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAINT-GOBAIN PERFORMANCE
PLASTICS EUROPE,

          *Plaintiff*,

    v.

BOLIVARIAN REPUBLIC OF
VENEZUELA; PETRÓLEOS DE
VENEZUELA, S.A.,

          *Defendants*.

Civil Action No. 1:18-cv-01963-LPS

## REPLY BRIEF OF THE BOLIVARIAN REPUBLIC OF VENEZUELA IN SUPPORT OF ITS CROSS-MOTION TO VACATE CLERK'S DEFAULT AND TO DISMISS OR TRANSFER THE CASE

OF COUNSEL:

Kent A. Yalowitz (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.yalowitz@arnoldporter.com

E. Whitney Debevoise (admitted *pro hac vice*)
Sally L. Pei (admitted *pro hac vice*)
Stephen K. Wirth (admitted *pro hac vice*)
Avishai D. Don (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Whitney.debevoise@arnoldporter.com
Sally.pei@arnoldporter.com
Stephen.wirth@arnoldporter.com
Avishai.don@arnoldporter.com

DATED:  August 21, 2019

A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
bayliss@abramsbayliss.com

*Counsel for the Bolivarian Republic of Venezuela*

{A&B-00621772}

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................1

I.    THE COURT SHOULD DISMISS OR TRANSFER FOR IMPROPER
      VENUE. .......................................................................................................................1

II.   THE CLERK'S ENTRY OF DEFAULT SHOULD BE VACATED. ...............................5

      A.    Plaintiff will not be prejudiced. ...............................................................5

      B.    The Republic has meritorious defenses. ...................................................6

      C.    The Republic's default was not the result of culpable conduct. .............................8

CONCLUSION.........................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

*Box v. Dallas Mexican Consulate General*,
487 F. App'x 880 (5th Cir. 2012) .................................................................................7

*Burda Media v. Viertel*,
417 F.3d 292 (2d Cir. 2005).........................................................................................7

*Crystallex v. Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018), *aff'd and remanded*, No. 18-2797, 2019
WL 3403888 (3d Cir. July 29, 2019)..........................................................1, 2, 3, 4

*Dambach v. United States*,
211 F. App'x 105 (3d Cir. 2006) ..................................................................................8

*Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743-PCH,
2014 WL 12489848 (S.D. Fla. Apr. 25, 2014) ............................................................7

*Fox v. Regie Nationale des Usines Renault*,
103 F.R.D. 453 (W.D. Ten.. 1984) ...............................................................................7

*Gross v. Stereo Component Sys., Inc.*,
700 F.2d 120 (3d Cir. 1983)..........................................................................................8

*Int'l Bus. Machines Corp. v. Expedia, Inc.*, No. CV 17-1875-LPS-CJB,
2019 WL 3322542 (D. Del. July 24, 2019) ...............................................................4–5

*Jiménez v. Palacios*,
C.A. No. 2019-0490-KSJM, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019)................................4

*Kumar v. Republic of Sudan*,
880 F.3d 144 (4th Cir. 2018) .......................................................................................6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
443 F. Supp. 2d 636 (D. Del. 2006).........................................................................2–3

*Practical Concepts, Inc. v. Republic of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987)....................................................................................5

*Republic of Sudan v. Harrison*,
139 S. Ct. 1048 (2019).................................................................................................7

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994).......................................................................................3

**Statutes, Rules, and Treaties**

28 U.S.C.
    § 1391(f)..............................................................................................................................2
    § 1391(f)(3).....................................................................................................................2, 4
    § 1391(f)(4).........................................................................................................................3
    § 1609..................................................................................................................................6
    § 1610..................................................................................................................................2

8 Del. Code § 371(b)..................................................................................................................2

Foreign Sovereign Immunities Act, Pub. L. No. 94-583, 90 Stat. 2891................................ *passim*

Hague Convention on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil or Commercial Matters, 658 U.N.T.S. 163 ................................................6

**Legislative Materials**

H.R. Rep. No. 94-1487 (1976)......................................................................................................3

The Bolivarian Republic of Venezuela, by and through its undersigned counsel, respectfully submits this Reply in Support of its Cross-Motion to Vacate the Default and to Dismiss or Transfer the Case for Improper Venue.

## INTRODUCTION

Venue is improper in this District.  Plaintiff's assertion to the contrary rests on two mistaken premises: first, that this Court already found in *Crystallex* that PDVSA does business in Delaware—a bold misreading of *Crystallex*; and second, that venue as to PDVSA confers venue over the Republic—a notion that would turn on its head the Foreign Sovereign Immunities Act's ("FSIA") intentional distinction between instrumentalities and foreign sovereigns for purposes of venue and vitiate Congress' intentional determination in the FSIA to put an end to quasi in rem proceedings.  The Court should reject these arguments and dismiss the complaint without prejudice or transfer the case to the District of Columbia.

Plaintiff's arguments in opposition to vacatur of the clerk's default fare no better.  Plaintiff identifies no prejudice that it would suffer if the default is lifted, nor any culpable conduct on the part of the Republic that led to the default.  And the Republic has meritorious defenses at this time that it should be permitted to litigate.

## I.    THE COURT SHOULD DISMISS OR TRANSFER FOR IMPROPER VENUE.

Venue in this District is improper under the FSIA because no acts, omissions, parties, or property connect the ICSID award or the underlying events to the District of Delaware.  *See* 28 U.S.C. § 1391(f).  Plaintiff does not dispute this fact.  Nor could it: the ICSID award concerns a Venezuelan company, Venezuelan property, and Venezuelan conduct.  *See* D.I. 18, at 7.  Instead, Plaintiff argues that PDVSA does business in this District and that venue as to PDVSA—an instrumentality of the Republic—can provide venue as to the Republic itself.  Plaintiff is wrong for three reasons.

*First*, we demonstrated in our opening memorandum that PDVSA is neither "licensed to do business" nor "doing business" in Delaware within the meaning of 28 U.S.C. § 1391(f)(3). Plaintiff does not and cannot argue that PDVSA is "licensed to do business" in Delaware.  As for whether PDVSA is "doing business," we explained that § 1391's "doing business" standard requires a "physical presence" in a state, such that the business has been "localized and is in operation" in a way that would require a license to do business under applicable State law.  *See* D.I. 18, at 7–8.  In Delaware, that requirement is triggered by the maintenance of "branch offices, agents or representatives located in this State."  8 Del. Code § 371(b).  Again, Plaintiff does not and cannot argue that PDVSA has a physical presence in Delaware.  Rather, Plaintiff asserts that the Republic is "doing business" in Delaware "through PDVSA" because this Court held in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 417 (D. Del. 2018), *aff'd and remanded*, No. 18-2797, 2019 WL 3403888 (3d Cir. July 29, 2019), that PDV Holding's shares were "used for a commercial purpose" by PDVSA, which had used shares of PDV Holding "to appoint directors, approve contracts, and pledge assets as security for PDVSA's debt."  *Id.* at 418.

Plaintiff's assertion improperly conflates two provisions of the FSIA.  Section 1610 requires that property be "used for a commercial activity" *in the United States* to be subject to attachment; the venue provision incorporates the "doing business" standard, which requires a *physical* presence in the relevant *District*.  28 U.S.C. § 1391(f).  Exercising share ownership does not require a physical presence at all.  It has long been held in a variety of contexts that ownership of shares without a physical presence is not enough to bring a holding company within the jurisdiction of the State.  D.I. 18, at 8 & nn.12, 13 (citing numerous cases); *accord Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 643 (D. Del. 2006) (refusing to exercise jurisdiction

over "holding companies that do not conduct business in Delaware. They are not registered to do business in Delaware. They do not produce, market or sell … any product in Delaware."). Although we cited numerous cases to this effect in our opening memorandum, Plaintiff has nothing at all to say about them. Plaintiff does not identify a single case to support its assertion that the venue provision's "doing business" standard can be satisfied by the mere exercise of the incidents of ownership of shares of a corporation organized under the law of the state in which the District Court sits.

Congress intended to put an end to the practice of commencing litigation by finding a foreign sovereign's property and attempting to attach it. Congress eliminated *in rem* "attachments for jurisdictional purposes" in order to avoid "serious friction in [the] United States' foreign relations." H.R. Rep. 94-1487, at 26–27. Plaintiffs would have this Court circumvent that intent. Bizarrely, Plaintiff contends that this case is like *Crystallex* in that the expropriation in that case also occurred in Venezuela. But the plaintiff in *Crystallex* sought confirmation of its arbitral award against the Republic in the District of Columbia, where venue was proper under § 1391(f)(4). *See Crystallex*, 333 F. Supp. 3d at 386. Only after it had obtained a judgment did it seek to execute on the judgment in this District. *Id.* at 386–87.

*Second*, even if PDVSA were doing business in Delaware—and it is not—venue would still be improper, because the FSIA distinguishes between foreign sovereigns and their instrumentalities for purposes of venue. "Section 1391(f) makes the federal district court for the District of Columbia the venue for civil actions against foreign states and their subdivisions; but it allows venue in suits against an agency or instrumentality of a foreign state 'in any judicial district in which the agency or instrumentality is licensed to do business or is doing business[.]'" *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 152 (D.C. Cir. 1994) (quoting

§ 1391(f)(3)).  Plaintiff asks this Court to apply the FSIA "as written."  D.I. 21, at 10.  We agree: this Court should observe the distinction between foreign sovereigns and their instrumentalities that Congress wrote into the statute.  A mere allegation that PDVSA is the Republic's alter ego does not convert the Republic into an instrumentality of itself for the purpose of § 1391(f)(3).  If, as Plaintiff suggests, PDVSA should be treated as equivalent to the Republic for purposes of venue, that would render § 1391(f)(3)—which applies to instrumentalities, not states—completely inapplicable.

*Finally*, Plaintiff grossly misapprehends this Court's decision in *Crystallex*.  The Court decidedly did not determine that PDVSA was the Republic's alter ego for all purposes and for all time.  The Court warned that it was deciding that case on the record then before it, for the limited purpose of determining whether to permit a judicial auction of a particular asset at a particular time, and that any future case would have to be decided on whatever facts then obtain.  The Court also warned that "even in this case, the record may be supplemented in the next stage of the proceedings (as is further described below), which could potentially lead to different findings." *Crystallex*, 333 F. Supp. 3d at 425.

The Court may take judicial notice of the fact that the sole recognized government of the Republic is different than it was in 2018.  *See*, *e.g.*, *Jiménez v. Palacios*, C.A. No. 2019-0490-KSJM, 2019 WL 3526479, at *11 (Del. Ch. Aug. 2, 2019).  There is no record before this or any other court that the Republic under the leadership of President Guiadó is treating PDVSA as an alter ego.  In these circumstances, it is incumbent on Plaintiff to make such a showing to support its venue allegations.  *See Int'l Bus. Machines Corp. v. Expedia, Inc.*, No. CV 17-1875-LPS-CJB, 2019 WL 3322542, at *7 (D. Del. July 24, 2019) ("Plaintiff has failed to meet its burden to show that venue discovery is appropriate as to the alter-ego issue, in light of the Plaintiff's minimal

showing as to this second alter-ego element"). Plaintiff decided not to present any record support of its alter ego allegations at this stage of the proceedings. That is a third, independent, reason to dismiss or transfer.

## II.     THE CLERK'S ENTRY OF DEFAULT SHOULD BE VACATED.

There is good cause to vacate the clerk's entry of default. As the D.C. Circuit has explained,

> it is in the interest of the United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA. When a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments.

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551–52 (D.C. Cir. 1987) (citations omitted). Plaintiff has identified no prejudice that it will suffer if this matter is adjudicated on the merits. The Republic has meritorious defenses that it should be allowed to present to the Court. And Plaintiff has not pointed to any culpable conduct on the part of the Republic that could overcome the heavy presumption against default judgments.

### A.     Plaintiff will not be prejudiced.

Plaintiff has identified no prejudice that it will suffer if the clerk's entry of default is vacated. Plaintiff asserts only that it has "waited long enough" for the satisfaction of its claim against the Republic. But as the Republic explained, D.I. 18, at 18, mere delay is insufficient to establish the kind of prejudice that would overcome the strong presumption against default judgments—a presumption that is all the more formidable in cases involving sovereign defendants, *see* D.I. 18, at 17.

### B.      The Republic has meritorious defenses.

The default should also be vacated because the Republic has meritorious defenses.  For the reasons already explained, venue is improper in this Court.[1]  In addition, this Court lacks personal jurisdiction because Plaintiff has not perfected service on the Republic.

Plaintiff contends that service on the Republic was proper simply because Plaintiff sent the complaint and summons to the Central Authority.  But that is not enough under the Hague Convention, which also requires the issuance of a certificate by the Central Authority (or another designated authority) "stat[ing] that the document has been served" and specifying "the method, the place and the date of service and the person to whom the document was delivered."  Hague Convention, art. 6.

Plaintiff does not dispute that it has not received a certificate of service.  Plaintiff instead argues that requiring a certificate is "meaningless" in cases against foreign sovereign defendant where the Central Authority is the same entity that represents the foreign sovereign.  D.I. 21, at 4.  Essentially, Plaintiff urges this Court to create an exception from procedures set forth in the FSIA and the Hague Convention for effecting service on a foreign sovereign.

But the Hague Convention's requirements cannot simply be swept aside.  It is precisely in cases against foreign sovereign defendants that courts insist on scrupulous adherence to service requirements.  "[A] court cannot excuse noncompliance."  *Kumar v. Republic of Sudan*, 880 F.3d 144, 154 (4th Cir. 2018).  Plaintiff protests that requiring a certificate here would be a mere "formality."  D.I. 21, at 5.  But the Supreme Court has taught that the fact that a rule "may seem

---

[1] Plaintiff does not contest that the Republic's property is immune from execution under 28 U.S.C. § 1609, which constitutes a "complete defense" to the extent Plaintiff is attempting to use this action to obtain a judgment affecting property of the Republic.

like an empty formality" does not allow plaintiffs to sidestep procedures that are designed for "cases with sensitive diplomatic relations." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019).

Plaintiff's reliance on cases where courts have excused plaintiffs from the need to present a certificate to demonstrate service on third parties is therefore misplaced. *See* D.I. 21, at 4 (citing *Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984) (lawsuit against French corporation), and *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005) (same)). Whether or not the exercise of "judicial discretion" to ignore the requirements of the Hague Convention was appropriate in cases against private foreign defendants, *see Fox*, 103 F.R.D. at 455, it cannot be here.

In those rare cases against sovereign defendants where courts have relieved plaintiffs of the Hague Convention's certificate requirement, they have done so only when the plaintiffs presented satisfactory evidence that service was effected or that sufficient attempts had been made to ensure acceptance of service. In *Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743-PCH, 2014 WL 12489848 (S.D. Fla. Apr. 25, 2014), plaintiffs filed an affidavit of the process server attesting that he had made "repeated inquiries" as to whether Venezuela had accepted or would accept service. *See Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743-PCH, ECF No. 7-1, ¶ 10 (S.D. Fla.). The point is not that the court appointed a process server, *cf.* D.I. 21, at 5 n.4, but rather that the plaintiffs had diligently attempted to confirm that service was effected. Likewise, in *Box v. Dallas Mexican Consulate General*, 487 F. App'x 880 (5th Cir. 2012), the court determined that the plaintiff had made "every reasonable effort" to follow up with the Mexican government after attempting service, *id.* at 886. Here, in contrast, Plaintiff asserts only that documents couriered to the Central Authority "were signed for upon

arrival," an assertion supported only by printouts of the UPS electronic tracking information. D.I. 21, at 5 n.3 (citing D.I. 9, Exs. 4, 5). Plaintiff makes no representation that it made any further inquiries to confirm with the Republic that service had been made. That is insufficient to relieve Plaintiff of the requirement to comply with the service provisions of the Hague Convention.

### C.    **The Republic's default was not the result of culpable conduct.**

Finally, the Republic's default did not result from culpable conduct. Plaintiff accuses the Republic of "dilatory tactics," D.I. 21, at 13, but nowhere acknowledges that Venezuela has been in the grip of an ongoing political and humanitarian crisis, which has impeded the Guaidó Administration's best efforts to address its obligations, *see* D.I. 18, at 2–4, 19. Plaintiff has come nowhere close to showing that the Republic has engaged in the kind of "deliberate" or "bad faith" conduct needed to prevent a lifting of the clerk's default. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123–24 (3d Cir. 1983); *Dambach v. United States*, 211 F. App'x 105, 109–10 (3d Cir. 2006).

### CONCLUSION

For the foregoing reasons, the Court should vacate the clerk's default and either dismiss the complaint without prejudice or transfer the case to the United States District Court for the District of Columbia.

OF COUNSEL:

Kent A. Yalowitz (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.yalowitz@arnoldporter.com

E. Whitney Debevoise (admitted *pro hac vice*)
Sally L. Pei (admitted *pro hac vice*)
Stephen K. Wirth (admitted *pro hac vice*)
Avishai D. Don (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Whitney.debevoise@arnoldporter.com
Sally.pei@arnoldporter.com
Stephen.wirth@arnoldporter.com
Avishai.don@arnoldporter.com

Dated:  August 21, 2019

*/s/ A. Thompson Bayliss*
A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
bayliss@abramsbayliss.com

*Counsel for the Bolivarian Republic of Venezuela*

{A&B-00621772}                                    9