**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br><br>          Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A.,<br><br>          Respondents. | Civil Action No.: 1:18-cv-01963-LPS |

**SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE'S SURREPLY TO VENEZUELA'S REPLY IN SUPPORT OF ITS CROSS-MOTION TO VACATE THE CLERK'S DEFAULT AND TO VACATE OR TRANSFER THE CASE**

Saint-Gobain respectfully submits this Surreply to Venezuela's Reply in Support of Its Cross-Motion to Vacate the Clerk's Default and to Vacate or Transfer the Case.[1]

**I.      This Court Has Already Found That PDVSA Is "Doing Business" In Delaware.**

Venezuela misrepresents this Court's decision in *Crystallex.* In that case, this Court found that PDVSA—and therefore Venezuela—is engaged in "commercial activity" in this District because it has been using its PDVH shares to manage its commercial operations in the United States. *See Crystallex*, 333 F. Supp. 3d 380, 417-419. *See also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Nos. 18-2797 & 18-3124, 2019 U.S. App. LEXIS 22436, *47-48 (3d Cir. July 29, 2019) (finding that PDVSA uses PDVH shares "to run its business as an owner, to appoint directors, approve contracts, and to pledge PDVH's debts for its own short-term debt").

---

[1] All defined terms herein have the same meaning as given in Saint-Gobain's prior submissions.

1

Venezuela seeks to limit this Court's decision in *Crystallex* to the context of attachments under 28 U.S.C. § 1610's "commercial activity" standard and accuses Saint-Gobain of "improperly conflat[ing] two provisions of the FSIA."  Reply at 2.  Venezuela, in other words, insists that PDVSA may engage in "commercial activity" in this District for purposes of 28 U.S.C. § 1610 without "doing business" for venue purposes under 28 U.S.C. § 1391(f)(3). Venezuela's distinction is not sustainable: it would be anomalous for a sovereign's defenses to venue to be stronger than those against actual attachment and there is no indication in the FSIA that Congress intended such a result.  Federal courts have found the two standards functionally equivalent.  Thus, in *Altmann v. Republic of Austria*, 142 F. Supp. 2d 1187, 1215 (C.D. Cal. 2001), the district court found "venue appropriate under § 1391(f)(3) because the [defendant] engages in commercial activity" in the district.  *See also id.* (finding "no authority that suggests that a foreign agency or instrumentality that engages in 'commercial activity' within a district is not also 'doing business' within a district" and reasoning that "the statutory scheme of the FSIA suggests that these terms, if not interchangeable, are at least substantially similar in meaning"), *aff'd*, 317 F.3d 954, 972 (9th Cir. 2002) ("We agree with the District Court that venue is appropriate"), *aff'd on other grounds*, 541 U.S. 677 (2004)).  As a result, PDVSA's alleged lack of a "physical presence" in Delaware is irrelevant.[2]

---

[2] Venezuela's cited cases (Reply at 2-3) do not show otherwise.  As recognized in *Vivadent*, "[n]o uniform definition of 'doing business' has been adopted in this circuit or by other circuit courts."  *See Vivadent (USA), Inc. v. Darby Dental Supply Co.*, 655 F. Supp. 1359, 1361 (D.N.J. 1987).  Cases concerning the scope of state licensing jurisdiction under the Commerce Clause to the United States Constitution, or arising in other non-FSIA contexts, (Reply at 2-3; D.I. 18 at 8-9), do not assist the Court in considering venue under the FSIA's 28 U.S.C. § 1391(f)(3).

**II.      Venezuela Ignores The Venue Implications Of *Crystallex***

Venezuela's further attempt to distinguish *Crystallex* on the theory that venue was proper in *Crystallex* because the plaintiff in that case had first "sought confirmation of its arbitral award . . . in the District of Columbia" (Reply at 3) misunderstands the nature of this proceeding. While it is true that Crystallex commenced litigation in Delaware "only after it had obtained a judgment" in the District of Columbia (Reply at 3), Venezuela ignores a key difference between the awards at issue in *Crystallex* and here: Saint-Gobain has an ICSID award that federal law *already considers* tantamount to a state court judgment entitled to full faith and credit. *See* 28 U.S.C. §§ 1650a, 1738. As a result, this case is on precisely the same footing as *Crystallex*.[3]

Venezuela's argument that "even if PDVSA were doing business in Delaware . . . venue [over Venezuela] would still be improper, because the FSIA distinguishes between foreign sovereigns and their instrumentalities for purposes of venue" (Reply at 3-4) also must fail. This Court has already found that the ordinary "presumption of separateness" between Venezuela and its instrumentalities reflected in the FSIA's statutory scheme does not apply and that "PDVSA may be deemed the alter ego of Venezuela." *Crystallex*, 333 F. Supp. 3d at 414. Because of that finding, this court allowed Crystallex to enforce its award (converted into a judgment) against PDVSA assets in the District. Saint-Gobain ultimately seeks the same relief: the enforcement of its award (already tantamount to a final state court judgment by operation of 28 U.S.C. § 1650a) against assets of Venezuela and PDVSA in the District. This path has been endorsed by the Third Circuit. *See Crystallex*, 2019 U.S. App. LEXIS 22436, at *49 (finding that the Court must

---

[3] Although commonly referred to as an "ICSID award," the award in *Crystallex* was in fact made pursuant to the ICSID Additional Facility Rules because Canada was not, as that time, a party to the ICSID Convention. See *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 106 n. 3 (D.D.C. 2017). Thus, enforcement of the award in *Crystallex* was governed by the Federal Arbitration Act and not by 22 U.S.C. § 1650a.

"ignore the formal separateness of the two entities"). Venue over Venezuela as PDVSA's alter ego is thus proper in this District pursuant to 28 U.S.C. § 1391(f)(3).

**III.    Crystallex's Alter Ego Finding Is Unaffected By The Recognition Of The Guaido Government**

Finally, the fact that the "recognized government of [Venezuela] is different than it was in 2018" (Reply at 4), makes no difference here. *Crystallex* did not find that a PDVSA was the alter ego of a specific government. Rather, it held that PDVSA was the alter ego of Venezuela—that is, of the State itself. It is telling that this Court's decision preceded the change in diplomatic recognition by nearly six months, while the Third Circuit's affirmance followed that change by an equivalent amount of time. Indeed, the change in diplomatic recognition was explicitly noted in, but made no difference to, the Third Circuit's decision. *See Crystallex*, 2019 U.S. App. LEXIS 22436, at *10 n. 2 ("As a practical matter, there is reason to believe that Guaidó's regime does not have meaningful control over Venezuela or its principal instrumentalities such as PDVSA. Nonetheless . . . we recognize Guaidó's regime as authorized to speak and act on behalf of Venezuela in these appeals.").[4] As for Venezuela's suggestion that new evidence may "potentially lead to different findings" (Reply at 4), no such evidence has been offered. Simply put, PDVSA cannot be the alter ego of Venezuela in one case and not in another before the exact same factfinder at the exact same time.

---

[4] Nor does subsequent recognition of a new Venezuelan government invalidate service made upon Venezuela's Central Authority at a time when the United States recognized a prior government. *See generally Guaranty Trust Co. v. United States*, 304 U.S. 126, 139 (1938) ("notice . . . given to the duly recognized diplomatic representatives must, so far as our own courts are concerned, be taken as notice to the state which they represented . . . it does not follow that [a change of] recognition renders of no effect transactions here with a prior recognized government . . . We conclude that *the recognition of the Soviet Government left unaffected those legal consequences of the previous recognition of the Provisional Government and its representatives* . . .") (emphasis added).

Dated: August 27, 2019

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (Bar No. 2436)
Peter J. Keane (Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

ALSTON & BIRD LLP
Alex Yanos, *pro hac vice*
Carlos Ramos-Mrosovsky, *pro hac vice*
Rajat Rana, *pro hac vice*
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Plaintiff Saint-Gobain Performance Plastics Europe*

5