**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA<br><br>Defendant | Civil Action No.: 1:20-cv-00129-RC |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR</u>**
**<u>SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.   SAINT-GOBAIN PREVAILED AGAINST VENEZUELA IN AN ICSID
     ARBITRATION ........................................................................................................ 2

     A.   Origins Of The Dispute.................................................................................. 2
     B.   The Tribunal's Award.................................................................................... 3
     C.   Venezuela's Application To Annul The Award Pursuant To The ICSID
          Convention Was Discontinued ...................................................................... 4

II.  SAINT-GOBAIN SOUGHT TO ENFORCE THE AWARD BEFORE THE
     UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
     WHICH FOUND VENEZUELA TO HAVE BEEN PROPERLY SERVED BUT
     TRANSFERRED THE ACTION TO THIS COURT ....................................................... 6

III. THIS COURT HAS JURISDICTION TO CONFIRM THE FINAL AWARD................. 9

     A.   This Court Has Subject Matter Jurisdiction Under The FSIA And The
          ICSID Convention ......................................................................................... 9
     B.   It Is The Law Of The Case That This Court Has Personal Jurisdiction
          Over Venezuela Because Venezuela Has Been Properly Served ........................ 11

IV.  THE AWARD IS ENFORCEABLE UNDER THE ICSID CONVENTION AND
     IS ENTITLED TO FULL FAITH AND CREDIT ............................................................. 13

     A.   An ICSID Award Is Entitled To The Same Full Faith And Credit From
          This Court As A State Court Judgment ................................................................ 13
     B.   Venezuela Concedes The Authenticity Of The Award........................................ 14
     C.   No Defenses Are Available To Venezuela Where The Award Is Authentic
          and Jurisdiction Is Proper.................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Angellino v. Al-Saud*,
   681 F.3d 463 (D.C. Cir. 2012) ......................................................................................12

*Chevron Corp. v. Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015) ......................................................................................10

*Cont'l Cas. Co. v. Argentine Republic*,
   893 F. Supp. 2d 747 (E.D. Va. 2012) ...........................................................................10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F.Supp. 3d 380 (D. Del. 2018) ........................................................................6, 7, 8

*Duke Energy Int'l Peru Invs. No. 1 Ltd v. Republic of Peru*,
   904 F. Supp. 2d 131 (D.D.C. 2012) ..............................................................................15

*Mesa Power Grp., LLC v. Gov't of Can.*,
   255 F.Supp.3d 175 (D.D.C. 2017) ................................................................................13

*Micula v. Gov't of Romania*,
   404 F. Supp.3d 265 (D.D.C. 2019) ...............................................................................16

*Miminco v. Dem. Rep. Congo*,
   79 F. Supp. 3d 213 (D.D.C. 2015) ..........................................................................14, 15

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
   863 F.3d 96 (2d Cir. 2017) ......................................................................................10, 15

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   No. 16-1533, 2019 U.S. Dist. LEXIS 85128 (D.D.C. May 21, 2019) .........................16

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) ......................................................................................12

*Tatneft v. Ukraine*,
   301 F. Supp.3d 175 (D.D.C. 2018), *aff'd* 2019 U.S. App. LEXIS 15787 (D.C.
   Cir. May 28, 2019), *cert. denied* 2020 U.S. LEXIS 392 (U.S. Jan. 13, 2020) .........11

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
   No. CV-17-102, 2018 U.S. Dist. LEXIS 168518 (D.D.C. Sept. 30, 2018) ..................16

*Teco Guatemala Holdings, LLC v. Republic of Guatemala*,
   No. 17-102, 2019 U.S. Dist. LEXIS 169168 (D.D.C. Oct. 1, 2019) .......................4, 15

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469 (D.D.C. Dec. 17, 2018) ..............................................................................................................9

*Von Drasek v. Burwell*,
121 F.Supp. 3d 143 (D.D. C. 2015) ........................................................................8

**Statutes**

9 U.S.C. §§ 201-208 ...........................................................................................11

22 U.S.C. § 1650a .................................................................................1, 8, 14, 16

22 U.S.C. § 1650a(a).....................................................................................4, 9, 14

28 U.S.C. § 1330.................................................................................................9, 11

28 U.S.C. § 1391(f)(3) ...........................................................................................6

28 U.S.C. § 1391(f)(4) ............................................................................................7

28 U.S.C. § 1605(a)(1).....................................................................................10, 11

28 U.S.C. § 1605(a)(6)(B) ................................................................................9, 10

28 U.S.C. § 1605(a)(6)..........................................................................................10

28 U.S.C. § 1608..............................................................................................11, 12

Federal Arbitration Act (9 U.S.C. 1 *et seq.*) .........................................................4

Foreign Sovereign Immunities Act..................................................................9, 11

Federal Rule of Civil Procedure Rule 56(a) .......................................................1, 8

**International Agreements**

Convention on the Settlement of Investment Disputes between States and Nationals of Other States (1965) ……………………………………………….…………1, 2, 3, 4, 5, 9, 10, 11, 14, 15, 16, 17

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1958) …...……11

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1965) ……………………………………………….…….1, 6, 7, 8, 13

France-Venezuela Bilateral Investment Treaty (2004) ………………….…………..…2, 3, 10

Plaintiff Saint-Gobain Performance Plastics Europe ("Plaintiff" or "Saint-Gobain"), by and through its counsel Alston & Bird LLP, respectfully submits this memorandum of points and authorities in support of its Motion for Summary Judgment.

Federal law mandates the registration and enforcement of valid international arbitral awards rendered pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 55 U.N.T.S. 159 ("ICSID Convention" or "Convention"), with "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a. Where, as here, the Bolivarian Republic of Venezuela ("Venezuela") concedes the validity of the award, the only possible objections to an action pursuant to 22 U.S.C. § 1650a would be based on venue and service.

Neither is available to Venezuela.  Any objection based on venue here would be frivolous as when this case was originally filed in the District of Delaware, Venezuela requested transfer to this very Court.  At the same time, prior to transfer, the Chief Judge of the United States District Court for the District of Delaware ruled that Saint-Gobain had properly served Venezuela pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1965) ("Hague Service Convention"), 20 U.S.T. 361, 658 U.N.T.S. 163 (entered into force for the United States, Feb. 10, 1969).

As a result, this Court should grant summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and register the investor-state arbitration award rendered in Saint-Gobain's favor on November 3, 2017, in the arbitration of ICSID Case No. ARB/12/13 (the "Award"), as a foreign judgment against Venezuela.

1

## BACKGROUND

### I.  SAINT-GOBAIN PREVAILED AGAINST VENEZUELA IN AN ICSID ARBITRATION

#### A.  Origins Of The Dispute

Saint-Gobain was a French investor in Venezuela protected by the France-Venezuela Bilateral Investment Treaty of April 15, 2004 ("the Treaty").  First Yanos Decl., Ex.1, ¶ 5 (ECF No. 3-1).[1]  On March 29, 2011, Venezuelan President Hugo Chávez decreed the expropriation of Saint-Gobain's 99.99% interest in NorPro Venezuela C.A., a company which manufactured ceramic proppants used during fracking to keep induced hydraulic fractures "propped" open.  *Id.*, Ex. 3 (Decision on Liability), ¶¶ 245-47 (ECF No. 3-3).

In response, Saint-Gobain accepted Venezuela's standing offer to arbitrate Treaty disputes with French investors by sending notices of dispute to Venezuela on July 4, 2011 and January 17, 2012.  *Id.* ¶¶ 249, 253.  Saint-Gobain then filed a request for ICSID arbitration against Venezuela on May 25, 2012, seeking compensation for Venezuela's unlawful expropriation of its investment in Venezuela.  *Id.* ¶¶ 5, 266.  Saint-Gobain's request for arbitration was registered as ICSID Case Number ARB/12/13 on June 15, 2012.[2]

Consistent with the ICSID Convention and Arbitration Rules, a Tribunal of three prominent international lawyers was constituted: Judge Charles N. Brower, a U.S. citizen and former judge of the Iran-U.S. Claims Tribunal, appointed by Saint-Gobain; Mr. Gabriel Bottini, an Argentine

---

[1] Over the course of the litigation extending from the District Court for the District of Delaware, three separate declarations were submitted by Alex Yanos, on behalf of Saint-Gobain, in conjunction with different filings, which include: (1) Declaration filed with Complaint to Register and Enforce ICSID Arbitration Award as a Foreign Judgment filed against Venezuela by Saint-Gobain, (ECF No. 3) ("First Yanos Decl."); (2) Declaration filed with Request for Default as to Venezuela filed by Saint-Gobain, (ECF No. 9) ("Second Yanos Decl."); and (3) Declaration filed with Motion for Default Judgment as to All Defendants filed by Saint-Gobain, (ECF No. 11) ("Third Yanos Decl.").

[2] Venezuela's withdrawal from the ICSID Convention on January 25, 2012, with effect from July 25, 2012, has no bearing on this case because both parties consented to arbitrate this dispute before Venezuela's denunciation of the ICSID Convention took effect.  Venezuela has never disputed the Tribunal's jurisdiction over Saint-Gobain's claims under the Treaty or the ICSID Convention.

2

citizen and former Director of International Affairs and Disputes of the Treasury-Attorney General's Office of Argentina, appointed by Venezuela; and Prof. Dr. Klaus Sachs, a German citizen and noted international arbitrator, jointly selected by the parties as President of the Tribunal. First Yanos Decl., Ex. 1 (ECF No. 3-1). Following the exchange of voluminous written submissions, the Tribunal held a four-day oral hearing at the World Bank from February 2 to 6, 2015. *Id.*, ¶ 15 (ECF No. 3-1).

### B. The Tribunal's Award

On December 30, 2016, the Tribunal rendered a Decision on Liability and the Principles of Quantum ("Decision on Liability"). *Id.*, Ex. 3 (ECF No. 3-3). In the Decision on Liability, the Tribunal found that Venezuela had breached Article 5 of the Treaty by expropriating Saint-Gobain's investment without paying compensation. *Id.* ¶ 908 (ECF No. 3-3). The Decision on Liability also discussed, at length, the principles upon which the Tribunal would assess the quantum of compensation to be paid to Saint-Gobain. *Id*. ¶¶ 566-905 (ECF No. 3-3). The Tribunal then gave the parties two months to attempt to agree on the compensation to be paid to Saint-Gobain, failing which it would hear further submissions on outstanding quantum issues. *Id.* ¶ 907 (ECF No. 3-3).

Venezuela and Saint-Gobain were unable to reach an agreement. The parties accordingly submitted further extensive pleadings and expert testimony on the appropriate quantum of compensation owed for Venezuela's unlawful expropriation of Saint-Gobain's investment. On November 3, 2017, the Tribunal issued its Final Award pursuant to Chapter IV (Articles 48-49) of the ICSID Convention. In the Award, the Tribunal ordered Venezuela to pay Saint-Gobain compensation as follows:

(i)      US$ 29.6 million as the principal amount of compensation for the expropriation of Saint-Gobain's investment in Venezuela;

(ii)      US\$ 4.8 million as pre-award interest from May 15, 2010 through March 31, 2017, with further pre-award interest through November 3, 2017 to be calculated at a rate equal to 2% over the average six-month U.S. Treasury bill rate, compounded annually;

(iii)     Post-award interest on the principal amount of compensation at a rate equal to 2% over the average six-month U.S. Treasury bill rate, compounded annually;

(iv)     The costs of the arbitration, in the amount of US\$ 1,303,189.99;

(v)      Two-thirds of Saint-Gobain's legal fees and expenses in the amount of US\$ 4,634,532.05; and

(vi)     Post-award interest on costs at a rate equal to 2% over the average six-month U.S. Treasury bill rate, compounded annually.

*Id.*, Ex. 1, ¶ 72 (ECF No. 3-1). As of March 9, 2020, Venezuela owes Saint-Gobain US\$ 44,229,629.66 including accrued interest. Fourth Yanos Decl., Ex. 2.

**C.  <u>Venezuela's Application To Annul The Award Pursuant To The ICSID Convention Was Discontinued</u>**

On March 12, 2018, the Secretary-General of ICSID registered Venezuela's application for annulment of the Award pursuant to Article 52(5) of the ICSID Convention. Under the ICSID Convention, an application pursuant to Article 52 is the only way in which an ICSID Award may be set aside. *See Teco Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-102 2019 U.S. Dist. LEXIS 169168, *14 (D.D.C. Oct. 1, 2019) ("All of the[] remedies . . . . are internal to the ICSID process. The role of the courts of the member-states . . . is limited"). Indeed, ICSID awards, as a matter of law, are not subject to vacatur under the Federal Arbitration Act. *See* 22 U.S.C. § 1650a(a) ("The Federal Arbitration Act (9 U.S.C. 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the convention.")

Regulation 14(3)(e) of ICSID's Administrative and Financial Regulations, "the applicant [for annulment] shall be solely responsible for making the advance payments [to ICSID] . . . to cover expenses following the constitution of the [*ad hoc*] Committee." Despite seeking annulment of the Award two years ago, and repeated inquiries by the *ad hoc* Committee appointed by the Secretary-General of ICSID to consider Venezuela's challenge to the Award, Venezuela failed to make a single payment towards the expenses of its annulment application, thus causing the suspension of the proceedings before the *ad hoc* committee on October 24, 2018. On April 25, 2019, the Acting Secretary-General of ICSID directed that the *ad hoc* committee discontinue the annulment proceeding pursuant to ICSID's Administrative and Financial Regulations on the basis of Venezuela's continued failure to pay mandatory advances on costs. Third Yanos Decl., Ex. 1 (ECF No. 11-2). On August 15, 2019, the *ad hoc* committee accordingly discontinued the annulment proceeding for "lack of payment of the initial advance payment" by Venezuela. Fourth Yanos Decl., Ex. 1.

Venezuela now concedes that the Award is final and binding on Venezuela. *See id*., Ex. 3 (Transcript of Motion for Entry of Default Judgment and Motion to Vacate Default) ("Tr."), at 38:7-18 (acknowledging that the government of Venezuela recognized by the United States inherited the liabilities of the Maduro regime, and further, that "[Saint-Gobain] deserves to be compensated"). Indeed, pursuant to Article 53 of the ICSID Convention, Venezuela is obliged to "abide by and comply with the terms of the award." Counsel for Venezuela have accordingly acknowledged, including at the status conference held before this Court on March 6, 2020, that Venezuela accepts the Award. *See* Fourth Yanos Decl., Ex. 4 (Transcript of Status Conference) ("Tr.") at 5:25-6:3 (where Venezuela's counsel states that "we are not going to challenge the merits of the arbitral award in this or any other court. The arbitral award -- as a matter of substance, the

Republic is prepared to accept . . ."). Nevertheless, Venezuela has not paid any of the amounts owed under the Award, upon which interest continues to accrue.  A detailed calculation of amounts payable under the Award (US$ 44,229,629.66 as of March 9, 2020) is attached.  *See Id.*, Ex. 2.

**II.    SAINT-GOBAIN SOUGHT TO ENFORCE THE AWARD BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE WHICH FOUND VENEZUELA TO HAVE BEEN PROPERLY SERVED BUT TRANSFERRED THE ACTION TO THIS COURT**

On December 12, 2018, Saint-Gobain filed this action before the United States District Court for the District of Delaware to enforce the pecuniary obligations of the Award against Venezuela.  (ECF No. 1).  Saint-Gobain brought this action in the District of Delaware because that Court had ruled that Venezuela's state oil company, Petróleos de Venezuela S.A. ("PDVSA"), which was subject to suit in Delaware, was Venezuela's alter ego.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F.Supp. 3d 380, 414 (D. Del. 2018) ("PDVSA may be deemed the alter ego of Venezuela. . .")  Saint-Gobain accordingly reasoned that Venezuela was subject to suit in Delaware pursuant to 28 U.S.C. §1391(f)(3).

On December 14, 2018, Saint-Gobain couriered: (*i*) duly-executed USM-94 "Request for Service Abroad of Judicial or Extrajudicial Documents" forms in duplicate English and Spanish versions addressed to both Venezuela and PDVSA, together with duplicate English and Spanish copies of: (*ii*) the Summons and Complaint in this action, (*iii*) five supporting exhibits, and (*iv*) notice of right to consent to trial before a magistrate judge, to the Office of Consular Relations of Venezuela's Ministry of the Popular Power for External Relations (*Ministerio del Poder Popular para Relaciones Exteriores*) (the "Foreign Ministry"), the Central Authority designated by Venezuela for international service of process pursuant to the Hague Service Convention.  Second Yanos Decl., Exs. 2-3, 6 (ECF No. 9-2, 9-3, 9-6).  Deliveries to the Foreign Ministry were made on December 21, 2018 and December 27, 2018 and signed for by T. Flores and I. Ruiz, employees

6

of the Foreign Ministry, respectively. *Id.*, Exs. 4-5 (ECF No. 9-4, 9-5); *see* Fourth Yanos Decl., Ex. 3, Tr. 36:1-2; 57:9-12 (confirming that the document was signed for by two individuals at the Foreign Ministry and that there is no dispute that they were sent to the correct address).

In April 2019, as Venezuela had failed to timely respond to Saint-Gobain's Complaint, Saint-Gobain requested the Clerk of Court of the United States District Court for the District of Delaware to enter a default against Venezuela and PDVSA. (ECF No. 9). The Clerk subsequently entered a default on June 12, 2019. (ECF No. 10).

Saint-Gobain moved for a default judgment on June 24, 2019. (ECF No. 11). Over a month later, on August 7, 2019, counsel for Venezuela and PDVSA opposed Saint-Gobain's motion for default judgment and asked the court to vacate the clerk's entry of default. (ECF Nos. 16 and 18). Venezuela argued that it had not been properly served pursuant to the Hague Service Convention because Venezuela's Central Authority had not issued a certificate confirming that it had carried out service on itself. *See*, *e.g.*, Venezuela's Reply Brief in Support of Cross-Motion to Vacate the Clerk's Default and to Dismiss or Transfer the Case (ECF No. 23 at p. 8) (insisting that "the Hague Convention . . . requires the issuance of a certificate of the Central Authority…"). Venezuela also objected to venue in Delaware because, it contended, the alter-ego finding in *Crystallex* was not applicable as *res judicata* to Saint-Gobain's action and asked that the matter be transferred to this Court pursuant to 28 U.S.C. § 1391(f)(4). *See id.*

On December 13, 2019, Chief Judge Leonard P. Stark of the District Court in Delaware ruled that Saint-Gobain had properly served Venezuela under the Hague Service Convention. In a carefully-reasoned decision, Judge Stark explained that:

> The Hague Service Convention . . . does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate . . . . ***By actually delivering to the defendant, i.e., the Republic, by serving the appropriate documents***

7

> ***directly to the Central Authority designated by the Republic of Venezuela, [the Plaintiff] served the Republic, notwithstanding the Republic's failure to provide [the Plaintiff] a certificate***.

(ECF No. 39).  In reaching this decision, Chief Judge Stark agreed with Saint-Gobain's argument that the Hague Service Convention's provisions for a "certificate" were not necessary for effective service through a Central Authority where the Central Authority (*i.e.* the Venezuelan State) was itself the party to be served, rather than charged with executing service on a third party. *Id.* at pp. 21-22.

At the same time, Chief Judge Stark declined to apply his alter ego finding from *Crystallex* to this action.  He accordingly agreed with Venezuela that venue was improper in the District of Delaware, dismissed PDVSA, and granted Venezuela's request that the case be transferred to this Court. *Id.*, at p. 22.

## ARGUMENT

Pursuant to Rule 56(a) of Federal Rule of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This Court's role in deciding a summary judgment motion is to decide "whether there is a genuine issue [of material fact] for trial' . . . [and a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Von Drasek v. Burwell*, 121 F.Supp. 3d 143, 152 (D.D. C. 2015) (citing *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) and *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008)).  To survive a motion for summary judgment, the non-moving party— Venezuela in this case—would have to show evidence that "the jury could reasonably find" in its favor. *Id.*  Venezuela has not done so and cannot do so.  To the contrary, Saint-Gobain has established as a matter of law that this Court should confirm the Award and enter judgment for Saint-Gobain.

8

### III.    THIS COURT HAS JURISDICTION TO CONFIRM THE FINAL AWARD

This Court enjoys both subject matter and personal jurisdiction over Venezuela for the purpose of enforcing Saint-Gobain's ICSID Award pursuant to 22 U.S.C. § 1650a.

### A. This Court Has Subject Matter Jurisdiction Under The FSIA And The ICSID Convention

This Court has subject matter jurisdiction pursuant to Article 54 of the ICSID Convention, which is incorporated into U.S. law at 22 U.S.C. § 1650a(a).

The ICSID Convention directs Contracting States to recognize ICSID arbitral awards and enforce pecuniary obligations imposed thereunder as if they were "a final judgment of a court" in that State. *See* ICSID Convention, Art. 54; *see* 22 U.S.C. § 1650a(a). In turn, 22 U.S.C. § 1650a(a) grants U.S. District Courts exclusive jurisdiction over actions to enforce ICSID awards. Federal district courts also have original jurisdiction over actions against foreign states under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1330.

Here, Venezuela is not entitled to sovereign immunity from this Court's jurisdiction under 28 U.S.C. § 1605(a)(6)(B), which provides in relevant part that

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case… brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

*Id.*, § 1605(a)(6)(B).

The Award was issued pursuant to an agreement to arbitrate—formed by the Treaty by which Venezuela agreed to arbitrate Treaty disputes with French investors and Saint-Gobain's acceptance of that offer—within the framework established by the ICSID Convention, an international agreement in force for the United States that specifically calls for the recognition and enforcement of arbitration awards. *See* ICSID Convention, Article 54; *Tidewater Inv. SRL v.*

9

*Bolivarian Republic of Venezuela*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, * 10 (D.D.C. Dec. 17, 2018) ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FISA has concluded that they do") (quoting *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013)).

Likewise, Venezuela is not entitled to sovereign immunity from this Court's jurisdiction under 28 U.S.C. § 1605(a)(1), which provides in relevant part that:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

*Id.*, § 1605(a)(1).

Here, by consenting to arbitrate—in the Treaty and under the Convention—Venezuela waived any immunity from sovereign immunity that it might have otherwise enjoyed. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir. 2015) (Section 1605(a)(6) grants a U.S. district court jurisdiction "to confirm an award made pursuant to an arbitration agreement governed by an international treaty."); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104-05 (2d Cir. 2017) ("The FSIA's immunity provisions do not shield a foreign sovereign from federal courts' exercise of jurisdiction over a civil action to enforce an ICSID award: the waiver and arbitration exceptions to immunity that are found in subsections 1605(a)(1) and (a)(6), respectively, apply, and allow such an action to proceed"); *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) (noting that there is no doubt that "ICSID arbitral awards fall within [28 U.S.C. § 1605(a)(6)'s] immunity exception" and that "even before Congress enacted § 1605(a)(6)(B), courts recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity") (citing *Liberian E. Timber Corp. v. Government*

10

*of Republic of Liberia,* 650 F.Supp. 73, 76 (S.D.N.Y. 1986) ("Liberia, as a signatory to the Convention, waived its sovereign immunity in the United States with respect to the enforcement of any arbitration award entered pursuant to the Convention."). In addition, the Supreme Court recently declined to review the D.C. Circuit's decision in *Tatneft v. Ukraine*, 301 F. Supp.3d 175 (D.D.C. 2018), *aff'd* 2019 U.S. App. LEXIS 15787 (D.C. Cir. May 28, 2019), *cert. denied* 2020 U.S. LEXIS 392 (U.S. Jan. 13, 2020). Although *Tatneft* concerned an investor-state arbitration award enforceable under the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), *see* 9 U.S.C. §§ 201-208, rather than the ICSID Convention, the D.C. Circuit's holding that Ukraine waived its sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) by ratifying the New York Convention is directly applicable in the ICSID context as well.

For these independently sufficient reasons, Venezuela is subject to the jurisdiction of this Court under the FSIA.

### B. It Is The Law Of The Case That This Court Has Personal Jurisdiction Over Venezuela Because Venezuela Has Been Properly Served

Chief Judge Stark has already ruled that this Court has personal jurisdiction over Venezuela pursuant to 28 U.S.C. § 1330(b), which provides that this Court can exercise personal jurisdiction over a foreign state in an action which the foreign state is not entitled to sovereign immunity so long as effective service of process has been obtained under 28 U.S.C. § 1608.

The FSIA, 28 U.S.C. § 1608(a)(1)-(4), lists four methods of service in descending order of preference that a plaintiff must use to effect service on a defendant foreign sovereign: (1), "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision;" (2) "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on

11

service of judicial documents;" (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail required a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned;" and (4) if none of the first three methods works, a plaintiff may serve the necessary documents through diplomatic channels with the assistance of the Department of State.

A plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Al-Saud*, 681 F.3d 463, 465 (D.C. Cir. 2012) citing *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, n.4 (9th Cir. 2010) ("The four forms of service are listed in descending order of preference").

Here, service under 28 U.S.C § 1608(a)(1) was not an option, because Saint-Gobain and Venezuela are not party to any "special arrangement for service." *Id*. (finding that "there is no 'special arrangement service' between the U.S. and Iran"). Saint-Gobain thus proceeded to serve Venezuela in accordance with the Hague Service Convention, that is, "in accordance with an applicable international convention on service of judicial documents." *See* 28 U.S.C. § 1608(a)(2). To that end, Saint-Gobain couriered duly-executed USM-94 forms addressed to Venezuela, in duplicate English and Spanish versions, together with duplicate English and Spanish copies of the complaint in this action, five supporting exhibits, summons, and notice of right to consent to trial before a magistrate judge, to the Venezuelan Foreign Ministry, the Central Authority designated by Venezuela for purposes of the Hague Service Convention. *See* Third Yanos Decl., Exs. 2 and 3 (ECF No. 9-2, 9-3). These were signed for by T. Flores and I. Ruiz, employees of the Foreign Ministry, on December 21, 2018 and December 27, 2018. *Id.*, Exs. 4 and 5 (ECF No. 9-4, 9-5).

12

As a result, the U.S. District Court for the District of Delaware, the original forum in which this action was brought, found that Saint-Gobain validly served process on Venezuela. In a Memorandum Order issued on December 13, 2019, Chief Judge Leonard P. Stark of the District Court in Delaware rejected Venezuela's argument that it could not be properly served under the Hague Service Convention unless and until Venezuela's own Foreign Ministry certified that it had served itself. (ECF No. 39), at pp. 21-22. Noting the moral hazard inherent in Venezuela's position, Chief Judge Stark ruled that the "Hague Service Convention . . . does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate" and held that Saint-Gobain properly served Venezuela under the Hague Service Convention. *Id*. Chief Judge Stark's ruling that Venezuela was properly served under the Hague Convention was correct. It is also the law of the case. *Mesa Power Grp., LLC v. Gov't of Can.*, 255 F.Supp.3d 175, 181 (D.D.C. 2017) ("if the transferor court already decided an issue (based on its own interpretation of the law) . . . the law of the case governs that issue even in the transferee court") (citing *Hill v. Henderson*, 195 F.3d 671, 678 (D.C. Cir. 1999)).

## IV. THE AWARD IS ENFORCEABLE UNDER THE ICSID CONVENTION AND IS ENTITLED TO FULL FAITH AND CREDIT

### A. An ICSID Award Is Entitled To The Same Full Faith And Credit From This Court As A State Court Judgment

As an ICSID Award, the Award is governed by the ICSID Convention, which among other things provides a framework for the resolution of investment disputes between a foreign state that is a member of the Convention and a national of another country that is a member of the Convention.

The ICSID Convention obliges Contracting States to enforce ICSID awards as if they were final judgments of their respective national courts. Article 54(1) of the Convention provides that:

13

> Each Contracting State *shall* recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state.  A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

The United States has been a party or "Contracting State" to the ICSID Convention since 1966.  *See* 17 U.S.T. 1270.  The United States' Article 54 obligation to enforce ICSID awards as if they were final judgments of a court in one of the United States is codified at 22 U.S.C. § 1650a(a), which provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the Convention shall create a right arising under a treaty of the United States.  The pecuniary obligations imposed by such an award shall be enforced and *shall be given the same full faith and credit as if the award were a final judgment of a court* of general jurisdiction of one of the several States. (Emphasis added).

Unlike other international arbitration awards, awards rendered under the ICSID Convention are **not** subject to review under the Federal Arbitration Act, and do not require confirmation in the manner prescribed by the Federal Arbitration Act.  This is made explicit at 28 U.S.C. § 1650a, which states "[t]he Federal Arbitration Act (9 U.S.C. 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] Convention."  Therefore, ICSID awards are entitled to full faith and credit and should be confirmed accordingly.

### B.  Venezuela Concedes The Authenticity Of The Award

Article 54(2) of the ICSID Convention requires only that "[a] party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court . . . a copy of the award certified by the Secretary-General."  First Yanos Decl., Ex. 2 (ECF No. 3-2).  Saint-Gobain provided the Court with such a copy of the Award.  *See Id.*, Ex. 1 (ECF No. 3-1).  *See also Miminco v. Dem. Rep. Congo*, 79 F. Supp. 3d 213, 216 (D.D.C. 2015) ("[B]y filing a certified copy

14

of the award, Petitioners have complied with the requirements of Article 54(2) of the ICSID Convention."). Venezuela, for its part, concedes the Award's authenticity. *See* Memorandum of Law of the Bolivarian Republic of Venezuela In Opposition to Plaintiff's Motion for Default Judgment and Motion of the Bolivarian Republic of Venezuela to Vacate Default, (ECF No. 18), at p. 9 ("Plaintiff obtained an arbitral award against the Republic . . . ."); Letter from Venezuela to the District Court for the District of Delaware, (ECF No. 33) (Saint-Gobain "seeks to register and enforce an arbitral award rendered against the Republic").

The requirements of Article 54(2) of the ICSID Convention having been met, it follows that there is no defense to enforcement, and that summary judgment is warranted. *See, e.g., Teco Guatemala Holdings, LLC*, 2019 U.S. Dist. LEXIS 169168, at *36 (granting the petitioner's motion for summary judgment to register and enforce an ICSID award against Guatemala); *Duke Energy Int'l Peru Invs. No. 1 Ltd v. Republic of Peru*, 904 F. Supp. 2d 131, 132-33 (D.D.C. 2012) (confirming petition to enforce ICSID award against the Republic of Peru); *Miminco*, 79 F. Supp. 3d at 220 (confirming petition to enforce ICSID award against Democratic Republic of the Congo).

This Court should similarly confirm the ICSID award here.

**C.** **No Defenses Are Available To Venezuela Where The Award Is Authentic and Jurisdiction Is Proper**

It would violate the ICSID Convention if the Court were to impose any conditions on the recognition of an ICSID award. It is well-settled that "a U.S. court is ***not*** permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Teco Guatemala Holdings, LLC v. Republic of Guatemala* 2019 U.S. Dist. LEXIS 169168, at *5 (emphasis added); *see id.*, at *17 (("By placing ICSID awards beyond the scope of the FAA, Congress rendered these grounds of attack 'unavailable to ICSID award-debtors in federal court enforcement proceedings.'"). *See also Mobil Cerro Negro, Ltd.*, 863 F.3d at 102

15

("Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award."); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 16-1533, 2019 U.S. Dist. LEXIS 85128, *11 (D.D.C. May 21, 2019) ("ICSID's enabling statute makes clear that the Court may not re-examine the propriety of the award"); *TECO Guat. Holdings, LLC v. Republic of Guat.*, No. CV-17-102, 2018 U.S. Dist. LEXIS 168518, *12 (D.D.C. Sept. 30, 2018) ("a member state is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award'; all it may do is 'examine the judgment's authenticity and enforce the obligation imposed by the award."); *Micula v. Gov't of Romania*, 404 F. Supp.3d 265 (D.D.C. 2019) ("a federal court's role in enforcing an ICSID award is limited . . . . This limited role 'reflects an expectation [under the Convention] that the courts of a member nation will treat the award as final.'").

Thus, because there are no material facts in dispute and Venezuela is properly subject to jurisdiction in this Court and properly served, there is no basis as a matter of law upon which Venezuela may resist confirmation of the Award. Accordingly, this Court should register and enforce the Award pursuant to 22 U.S.C. § 1650a.

## CONCLUSION

For the foregoing reasons, Saint-Gobain requests that the Court enter a judgment registering and enforcing the Award, in the form submitted with this motion, and that it be granted such other and further relief as is just and proper.

16

Dated: March 9, 2020                                Respectfully submitted,

 

ALSTON & BIRD LLP
Alex Yanos
Carlos Ramos-Mrosovsky
Rajat Rana
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Plaintiff Saint-Gobain Performance Plastics Europe*

17