**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, <br><br>         *Plaintiff,* <br><br>     v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>         *Defendant.* | Civil Action No. 1:20-cv-00129-RC |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION TO DISMISS**

Kent A. Yalowitz (*pro hac vice*)
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.Yalowitz@arnoldporter.com

E. Whitney Debevoise
Allon Kedem
Sally L. Pei
Stephen K. Wirth
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Sally.Pei@arnoldporter.com

*Counsel for the Bolivarian Republic of Venezuela*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

RELEVANT FACTS AND PROCEDURAL HISTORY .................................................... 5

STANDARD OF REVIEW .................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

I.      Plaintiff Has Failed to Effect Service and Obtain Personal Jurisdiction ............... 8

        A.      The FSIA's Service Provisions Are Exclusive and Strictly Construed ........ 8

        B.      Plaintiff Did Not Effect Service Under the FSIA ...................................... 10

                1.      The Hague Convention ................................................................... 10

                2.      Service Under the Hague Convention Has Not Occurred Because
                        There Is No Evidence that Service Was Effected in Venezuela
                        Under Venezuelan Law ................................................................... 13

                3.      Delivery to the Central Authority Does Not Constitute Service on the
                        Republic Under the Hague Convention .......................................... 16

        C.      Service on the Republic Under the Hague Convention Cannot Be Completed at
                This Time, but an Alternative Avenue Is Available ................................... 19

II.     The Law of the Case Doctrine Does Not Preclude Dismissal ............................. 21

CONCLUSION ................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*,
    917 F.2d 278 (7th Cir. 1990) ................................................................................................20

*Barot v. Embassy of the Republic of Zambia*,
    785 F.3d 26 (D.C. Cir. 2015) ................................................................................................9

*Beach TV Props., Inc. v. Solomon*,
    324 F. Supp. 3d 115 (D.D.C. 2018) (Contreras, J.) ............................................................21

*Cavic v. Republic of Serbia*,
    2018 WL 6038346 (C.D. Cal. Mar. 21, 2018) .....................................................................16

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988).......................................................................................................21, 22

*Crocker v. Piedmont Aviation, Inc.*,
    49 F.3d 735 (D.C. Cir. 1995)...............................................................................................21

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018)......................................................................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019)......................................................................................3, 6, 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    No. 16-cv-661 ......................................................................................................................6, 7

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
    No. 15-CV-1082-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ........................................3

*Devengoechea v. Bolivarian Republic of Venezuela*,
    No. 12-CV-23743, 2014 WL 12489848 (S.D. Fla. Apr. 25, 2014) ........................................17

*Finamar Inv'rs Inc. v. Republic of Tadjikistan*,
    889 F. Supp. 114 (S.D.N.Y. 1995) ....................................................................................2, 9

*Friedman v. Mission of Gabonese Republic*,
    No. 17-CV-8142, 2019 WL 95479 (S.D.N.Y. Jan. 2, 2019) ....................................................9

*Guaranty Tr. Co. of N.Y. v. United States*,
    304 U.S. 126 (1938)...............................................................................................................19

*Harrison v. Republic of Sudan*,
    802 F.3d 399 (2d Cir. 2015)....................................................................................................8

*Hilaturas Miel, S.L. v. Republic of Iraq*,
   573 F. Supp. 2d 781 (S.D.N.Y. 2008) .................................................................9

*Hill v. Henderson*,
   195 F.3d 671 (D.C. Cir. 1999) ..........................................................................21

*Hilska v. Jones*,
   217 F.R.D. 16 (D.D.C. 2003) ..............................................................................7

*Howe v. Embassy of Italy*,
   68 F. Supp. 3d 26 (D.D.C. 2014) ........................................................................8

*Jian Zhang v. Baidu.com Inc.*,
   293 F.R.D. 508 (S.D.N.Y. 2013) ........................................................................8

*Jiménez v. Palacios*,
   No. 19-CV-0490, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019) ...................3, 19

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013) ..........................................................................................20

*Kumar v. Republic of Sudan*,
   880 F.3d 144 (4th Cir. 2018) ..............................................................................9

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
   188 F.2d 1000 (D.C. Cir. 1951) ........................................................................20

*Light v. Wolf*,
   816 F.2d 746 (D.C. Cir. 1987) ............................................................................8

*Lovati v. Bolivarian Republic of Venezuela*,
   No. 19-cv-4796, ECF No. 44 ............................................................................21

*Mackenzie v. Hare*,
   239 U.S. 299 (1915) ..........................................................................................20

*Marschhauser v. Travelers Indem. Co.*,
   145 F.R.D. 605 (S.D. Fla. 1992) ......................................................................12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
   863 F.3d 96 (2d Cir. 2017) ..................................................................................9

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   No. 16-cv-1533, 2019 WL 2185040 (D.D.C. May 21, 2019) .............................3

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ..............................................................................................7

*Pablo Star Ltd. v. Welsh Gov't*,
   170 F. Supp. 3d 597 (S.D.N.Y. 2016) .................................................................................9

*Pfizer, Inc. v. Gov't of India*,
   434 U.S. 308 (1978) ...............................................................................................................19

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019) ................................................................................ 1, 8-9, 10, 19

*Rock Island, Ark., & La. R.R. v. United States*,
   254 U.S. 141 (1920) ..................................................................................................................1

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
   No. 18-7044 (D.C. Cir. May 1, 2019) (per curiam), Doc. No. 1785518 .............................3, 15

*Samsung Elec. Co. v. Early Bird Sav.*,
   No. 13-CV-3105, 2014 WL 5139488 (S.D. Cal. Oct. 2, 2014) .............................................13

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ...............................................................................................................20

*TechnoSteel, LLC v. Beers Constr. Co.*,
   271 F.3d 151 (4th Cir. 2001) .................................................................................................21

*Tel-Oren v. Libyan Arab Republic*,
   726 F.2d 774 (D.C. Cir. 1984) .............................................................................................20

*United States v. Curtiss-Wright Export Corp.*,
   299 U.S. 304 (1936) ...............................................................................................................20

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ...........................................................................................10, 12, 15, 17

*Walton v. Bilinski*,
   2015 WL 9489610 (E.D. Mo. Dec. 30, 2015) ....................................................................11

*Water Splash, Inc. v. Menon*,
   137 S. Ct. 1504 (2017) ....................................................................................................11, 15

*Zivotofsky v. Kerry*,
   135 S. Ct. 2076 (2015) ...........................................................................................................19

## Statutes

22 U.S.C. § 1650(a) .....................................................................................................................5

28 U.S.C.
    § 1330(b).............................................................................................................1, 9
    § 1391(f)..................................................................................................................6
    § 1608(a).................................................................................................................8
    § 1608(a)(1)...........................................................................................................10
    § 1608(a)(2)......................................................................................................10, 19
    § 1608(a)(3)..............................................................................................10, 19, 20
    § 1608(a)(4)............................................................................10, 19, 20, 21, 22

Fed. R. Civ. P. 4(f)(3)....................................................................................................8

Fed. R. Civ. P. 4(j)(1)....................................................................................................8

Fed. R. Civ. P. 12(b)(5)..............................................................................................7, 8

**Other Authorities**

Colleen Walsh, *Understanding Venezuela's Collapse*, Harvard Gazette (Feb. 12, 2019) .............3

Convention on the Settlement of Investment Disputes Between States and
    Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 .......................................5

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
    Civil or Commercial Matters, Nov. 15, 1965,
    20 U.S.T. 361, 658 U.N.T.S. 163................................................2, 11, 12, 13, 17, 18

Hague Conference on Private International Law, Venezuela Declarations and
    Reservations .................................................................................................18

H.R. Rep. No. 94-1487 (1976), 1976 U.S.C.C.A.N. 6604 .........................................8

Michelle Bachelet, *Oral Update on the Situation of Human Rights in the
    Bolivarian Republic of Venezuela*, Office of the UN High Comm'r for Human
    Rights (Mar. 20, 2019),........................................................................................4, 5

*Practical Handbook on the Operation of the Hague Service Convention*
    (3d ed. 2006) ....................................................................................11, 12, 18

*Refugees and Migrants from Venezuela Top 4 million: UNHCR and IOM*, UN High
    Comm'r for Refugees, (June 7, 2019) .....................................................................4

S. Exec. Rep. No. 6, 90th Cong., 1st Sess. (App'x) (1967)........................................17

*UN Human Rights Report Documents Maduro Regime's Human Rights Abuses*, U.S.
    Dep't of State (July 5, 2019)..................................................................................5

U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic
    Aspirations of the Venezuelan People*, U.S. Dep't of State .......................................3

Ved P. Nanda et al., *Litigation of International Disputes in U.S. Courts* (Dec. 2019) .................12

*Venezuela's Humanitarian Emergency*, Human Rights Watch (Apr. 2019) ..............................4, 5

*Venezuela Regional Crisis*, *Fact Sheet #1*, U.S. Agency for Int'l Dev. (Mar. 1, 2019) .............4, 5

*Venezuela Regional Crisis*, *Fact Sheet #2*, U.S. Agency for Int'l Dev. (Apr. 10, 2019) ...............4

**INTRODUCTION**

The Bolivarian Republic of Venezuela currently faces more than $140 billion in legacy debts and other external claims, compounded by a humanitarian crisis affecting millions of its citizens, a constitutional crisis involving the gravest violations of human rights, and an economic downturn more severe than the Great Depression. The vast majority of the Republic's creditors are forbearing at this time, in anticipation of a voluntary, orderly restructuring in which like creditors will be treated alike.

Amid this crisis, however, some creditors are attempting to advantage themselves by obtaining and enforcing judgments in the hope of preferential treatment, threatening to set off a scramble for the limited commercial assets of the Republic and its state-owned enterprises. Plaintiff Saint-Gobain Performance Plastics Europe is one such claimant. The Republic acknowledges that its creditors are entitled to exercise their rights, even if the vast majority have shown restraint. And as a matter of substance, the Republic accepts the award of the ICSID tribunal in favor of Saint-Gobain and will not challenge the merits or quantum of that award. Nevertheless, it is the Republic's right and responsibility to insist that Plaintiff—like all other claimants and creditors seeking to exercise their legal rights against the Republic—be required to "turn square corners," *Rock Island, Ark., & La. R.R. v. United States*, 254 U.S. 141, 143 (1920), and respect the sovereign integrity of the Republic.

Plaintiff did not do so here. The Foreign Sovereign Immunities Act ("FSIA") sets forth stringent requirements for initiating suit against a foreign sovereign in a U.S. court. These requirements must be scrupulously followed, even when doing so "may seem like an empty formality" or "when the equities of a particular case may seem to point in the opposite direction." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019). A court cannot exercise personal jurisdiction over a foreign sovereign absent valid service in strict compliance with the

1

FSIA. 28 U.S.C. § 1330(b). And "actual notice of [a] suit is irrelevant when strict compliance is required." *Finamar Inv'rs Inc. v. Republic of Tadjikistan*, 889 F. Supp. 114, 118 (S.D.N.Y. 1995).

Plaintiff claims that it served the Republic by sending a request for service of documents to the Venezuela Foreign Ministry, which is the Republic's designated "Central Authority" for processing such requests under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Convention"). By the Hague Convention's own terms, however, the mere *delivery* to the Central Authority of a *request* for service does not complete service. Rather, service must then actually be effected in accordance with the internal laws of the receiving state, or by some other means permitted under the Hague Convention and acceptable to the receiving state. Here, there is no evidence that service was effected in compliance with Venezuelan law— or by any other method authorized by Venezuela—and a strong inference may be drawn that it was not. Accordingly, service of process as required by the FSIA has not been completed.

And, in the absence of service of process in strict compliance with the FSIA, this Court lacks personal jurisdiction over the Republic. Plaintiff is not entitled to judgment as a matter of law, and its motion for summary judgment should be denied. The Court should grant the Republic's cross-motion to dismiss.

## BACKGROUND

During the regimes of Hugo Chávez and Nicolás Maduro, the Venezuelan economy was systematically destroyed through nationalizations, expropriations, over-indebtedness, criminality, and corruption.

On January 10, 2019, the freely and fairly elected Venezuelan National Assembly determined, in accordance with the Venezuelan constitution, that the presidency was vacant

because Mr. Maduro had claimed victory in a fraudulent election. On January 23, National

Assembly President Juan Guaidó, supported by the democratically elected National Assembly,

assumed the interim Presidency of Venezuela in an effort to restore democracy and constitutional

rule. The United States immediately recognized Mr. Guaidó as the legitimate interim President

of Venezuela and rejected the legitimacy of the Maduro regime.[1]

      Mr. Maduro has refused to relinquish his position and to surrender control of organs such

as the Ministry of Foreign Affairs or the Ministry of Justice. Under U.S. law, however, the

Maduro government is not recognized by the courts: Only the Guaidó administration and the

National Assembly are so recognized, and the courts of the United States are therefore required

to recognize the Interim Government as the sole legitimate representative of the Republic. *See*

Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. May 1,

2019) (per curiam), Doc. No. 1785518 ("The executive branch's action in recognizing a foreign

government is conclusive on all domestic courts, which are bound to accept that determination."

(ellipsis and quotation marks omitted)); *see also Crystallex Int'l Corp. v. Bolivarian Republic of

Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019); *Crystallex Int'l Corp. v. PDV Holding Inc.*, No.

15-CV-1082-LPS, 2019 WL 6785504, at *3 n.9 (D. Del. Dec. 12, 2019); *Jiménez v. Palacios*,

No. 19-CV-0490, 2019 WL 3526479, at *10-11 (Del. Ch. Aug. 2, 2019); *OI European Grp. B.V.

v. Bolivarian Republic of Venezuela*, No. 16-cv-1533, 2019 WL 2185040, at *4-5 (D.D.C. May

21, 2019).

      In addition to contending with a constitutional crisis, the Guaidó government and the

National Assembly face an unprecedented economic and social crisis in Venezuela. The policies

---

[1]   *See* U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic
Aspirations of the Venezuelan People*, U.S. Dep't of State, https://www.state.gov/u-s-
government-support-for-the-democratic-aspirations-of-the-venezuelan-people/#crisis.

of former presidents Maduro and Chávez, combined with rampant corruption, have destroyed

Venezuela's infrastructure and domestic production capacity, leading to "the biggest economic

collapse in human history outside of war or state collapse."[2] Venezuela's gross domestic product

has fallen nearly 50% in the last five years—much more than the United States' drop during the

Great Depression.[3] According to the United Nations High Commissioner for Human Rights,

more than 4 million people have fled Venezuela "[a]s a direct result of this far-reaching human

rights crisis."[4]

     For those remaining, life is grim. Many lack access to clean water.[5] Eight out of ten

households lack a reliable source of food.[6] Eighty percent can no longer afford basic healthcare.[7]

Nearly 70% of Venezuela's hospitals report intermittent power outages and a lack of potable

water.[8] Venezuela now experiences routine outbreaks of vaccine-preventable diseases that had

---

[2]   Colleen Walsh, *Understanding Venezuela's Collapse*, Harvard Gazette (Feb. 12, 2019), https://news.harvard.edu/gazette/story/2019/02/harvard-expert-tries-to-make-sense-of-venezuelas-collapse (interviewing Ricardo Hausmann, Director of the Center for International Development, Harvard University).

[3]   *Id.*

[4]   Michelle Bachelet, *Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela*, Office of the UN High Comm'r for Human Rights (Mar. 20, 2019), https://www.ohchr.org/en/NewsEvents/Pages/DisplayNews.aspx?NewsID=24374; *Refugees and Migrants from Venezuela Top 4 million: UNHCR and IOM*, UN High Comm'r for Refugees, (June 7, 2019), https://www.unhcr.org/news/press/2019/6/5cfa2a4a4/refugees-migrants-venezuela-top-4-million-unhcr-iom.html.

[5]   *Venezuela Regional Crisis*, *Fact Sheet #2* at 5, U.S. Agency for Int'l Dev. (Apr. 10, 2019), https://www.usaid.gov/sites/default/files/documents/1866/04.10.19_-_USG_Venezuela_Regional_Crisis_Fact_Sheet_2.pdf ("USAID Fact Sheet #2).

[6]   *Venezuela's Humanitarian Emergency* 26, Human Rights Watch (Apr. 2019), https://www.hrw.org/sites/default/files/report_pdf/venezuela0419_web.pdf ("HRW Report").

[7]   *Venezuela Regional Crisis*, *Fact Sheet #1* at 6, U.S. Agency for Int'l Dev. (Mar. 1, 2019), https://www.usaid.gov/sites/default/files/documents/1866/venezuela_regional_crisis_fs01_03-01-2019.pdf.

[8]   *Id.*

previously been eradicated.[9] More than one million children no longer attend school.[10] The crisis

has been further exacerbated by rolling blackouts.[11] The United States has also expressed

"deep[] concern[]" about "gross human rights abuses and violations" still occurring in

Venezuela.[12]

## RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff obtained an arbitral award against the Republic from a tribunal under the

Convention on the Settlement of Investment Disputes Between States and Nationals of Other

States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 ("ICSID tribunal"). The ICSID tribunal

determined that the Republic had breached the bilateral investment treaty between France and

Venezuela by expropriating Plaintiff's property without compensation in violation of

international law and, on November 3, 2017, issued an award in favor of Plaintiff in the amount

of approximately $42 million. Dkt. 1 ¶¶ 21, 24 ("Compl.").

In December 2018, Plaintiff filed this action in the U.S. District of Court for the District

of Delaware asserting two counts: Count One, For Registration of the Award as a Foreign

Judgment Pursuant to 22 U.S.C. § 1650a; and Count Two, For Enforcement of the Award

Pursuant to 22 U.S.C. § 1650a. Compl. ¶¶ 30–38. Plaintiff named two defendants—the Republic,

and Petróleos de Venezuela, S.A. ("PDVSA"), a Venezuelan corporation that is wholly owned

by the Republic and was not a party to the ICSID arbitration. Compl. ¶¶ 2–3.

---

[9]   HRW Report at 20.

[10]   Bachelet, *supra* note 4.

[11]   USAID Fact Sheet #2 at 1.

[12]   *UN Human Rights Report Documents Maduro Regime's Human Rights Abuses*, U.S. Dep't of State (July 5, 2019), https://www.state.gov/un-human-rights-report-documents-maduro-regimes-human-rights-abuses.

Ordinarily, actions to confirm arbitral awards against foreign sovereigns are filed in this District as the default location under 28 U.S.C. § 1391(f), the FSIA's venue provision. *E.g.*, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 16-cv-2020; *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 16-cv-661. But Plaintiff attempted to take a short-cut by proceeding in Delaware, where the district court had determined in the *Crystallex* case that that the Republic (then under Maduro) was the alter ego of PDVSA, and that an attachment of shares in a PDVSA-owned holding company that owns Citgo Petroleum Corporation could lead to a judicial auction to enforce Crystallex's judgment against the Republic. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019), *petition for cert. filed*, No. 19-1049 (Feb. 19, 2020).[13] As counsel told the Delaware district court, Plaintiff filed in Delaware to "be in a position to participate in any auction that the Court may supervise and to attach the shares that are of concern" in the *Crystallex* case. Dkt. 32 at 62 (Transcript of Proceedings); *see* Dkt. 40 at 8 (Transcript of Proceedings).

On December 14, 2018, Plaintiff transmitted a request for service pursuant to the Hague Convention, together with the complaint and summons, via courier addressed to the Republic's Foreign Ministry in Caracas, Venezuela. Dkt. 9-2. Two individuals—identified only as "T. Flores" and "I. Ruiz," whose affiliation with the Foreign Ministry (if any) is unknown— signed for delivery of these packages on December 21 and December 27. Dkt. 9-4; Dkt. 9-5. There is no evidence as to what became of the request for service after that. So far as the record reveals, Plaintiff never received any communication from the Central Authority concerning the

---

[13]  CITGO is a United States-based refiner, transporter and marketer of transportation fuels, lubricants, petrochemicals, and other industrial products.

request. As noted above, the United States recognized Juan Guaidó as Interim President approximately one month later.

On April 24, 2019, Plaintiff requested that the clerk of the Delaware district court enter a default because defendants had "failed to plead or otherwise defend." Dkt. 8. The clerk entered a default as to both defendants on June 12. Dkt. 10. Plaintiff moved for default judgment on June 24. Dkt. 11.

On August 7, 2019, the Republic, now under instructions from Interim President Guaidó, appeared, opposed Plaintiff's motion for default judgment, and asked the district court to vacate the clerk's entry of default. Dkt. 18. The Republic argued that service on the Republic had not been completed and that venue was improper in Delaware. *Id.* at 5-6. PDVSA also appeared and moved to vacate the default and to dismiss for lack of service. Dkt. 16.

On December 12, 2019, the Delaware district court vacated the clerk's entry of default and denied Plaintiff's motion for default judgment. The court agreed with the Republic that venue was improper in Delaware and ordered that the case be transferred to this Court. Dkt. 39 at 19. However, the Delaware court held that Plaintiff had validly effected service on the Republic under the Hague Convention. *Id.* at 21. The court rejected Plaintiff's argument that PDVSA was the alter ego of the Republic and dismissed Plaintiff's complaint against PDVSA for lack of service of process, which Plaintiff had also attempted under the Hague Convention. *Id.* at 25.

The case was transferred to this Court on January 16, 2020. Dkt. 41.

## STANDARD OF REVIEW

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "If the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" pursuant to Federal Rule of

Civil Procedure 12(b)(5). *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "The party on whose behalf service is made has the burden of establishing its validity when challenged." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quotation marks omitted); *see Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 32 (D.D.C. 2014) (dismissing under Rule 12(b)(5) because plaintiff "failed to sustain her burden to prove service was effected properly").

## ARGUMENT

This Court lacks personal jurisdiction over the Republic because service has not been effected in compliance with the FSIA under 28 U.S.C. § 1608(a), the only permissible means of initiating suit against a foreign sovereign in U.S. court. Although Plaintiff *initiated* the process of servicing the Republic pursuant to article 5 of the Hague Convention by sending a *request* for service to Venezuela's Central Authority, actual service of process has not been made in accordance with the internal law of Venezuela, as required by article 5. As a consequence, the Court should deny Plaintiff's motion for summary judgment and grant the Republic's cross-motion to dismiss. The law-of-the-case doctrine does not bar such relief, as this Court has discretion to revisit the Delaware court's earlier ruling and has good reason to do so.

## I.    Plaintiff Has Failed to Effect Service and Obtain Personal Jurisdiction

### A.    The FSIA's Service Provisions Are Exclusive and Strictly Construed

"The FSIA provides the sole means for effecting service of process on a foreign state." *Harrison v. Republic of Sudan*, 802 F.3d 399, 403 (2d Cir. 2015), *rev'd on other grounds*, 139 S. Ct. 1048 (2019); *see* H.R. Rep. No. 94-1487, at 23 (1976), 1976 U.S.C.C.A.N. 6604, 6622 ("[The FSIA] sets forth the exclusive procedures with respect to service on ... a foreign state."). The FSIA's specialized service provisions reflect Congress's understanding that cases involving foreign-sovereign defendants raise "sensitive diplomatic implications." *Harrison*, 139 S. Ct. at 1062. Thus, while in *other* circumstances a federal court may permit service in a foreign country

"as the court orders," Fed. R. Civ. P. 4(f)(3), such provisions expressly "do[] not apply to service on a foreign state." *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 516 (S.D.N.Y. 2013). To the contrary, "[a] foreign state … *must* be served in accordance with" the FSIA. Fed. R. Civ. P. 4(j)(1) (emphasis added); *see Harrison*, 139 S. Ct. at 1062 ("[T]he rule of law demands adherence to [the FSIA's] strict requirements."); *Kumar v. Republic of Sudan*, 880 F.3d 144, 154 (4th Cir. 2018) ("[A] court cannot excuse noncompliance."); *see also Mobil Cerro Negro*, *Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) ("ICSID award-creditors must pursue federal court judgments to enforce their awards against a foreign sovereign by filing a federal action on the award against the sovereign, serving the sovereign with process in compliance with the FSIA.").

The same diplomatic sensitivities that make compliance with the FSIA compulsory also "mandate strict adherence to its terms," *Finamar Investors*, 889 F. Supp. at 117, and "neither substantial compliance, nor actual notice, [will] suffice[]," *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015); *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 603 (S.D.N.Y. 2016); *Hilaturas Miel*, *S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008). Courts thus consistently find service lacking based even on seemingly minor departures from the law's requirements. *See, e.g.*, *Friedman v. Mission of Gabonese Republic*, No. 17-CV-8142, 2019 WL 95479, at *2 (S.D.N.Y. Jan. 2, 2019) (service improper where "no signature was required upon receipt"); *Hilaturas Miel*, 573 F. Supp. 2d at 797 (service improper even though "the U.S. Postal Service was not accepting mail directed to Iraq"); *Finamar Investors*, 889 F. Supp. at 117 (service improper because papers had not been translated into Tadjik).

The FSIA permits a court to exercise personal jurisdiction over a foreign state only "where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Section 1608(a), in

turn, specifies four methods for serving "a foreign state or political subdivision of a foreign state," which are:

1. Delivery of a copy of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." § 1608(a)(1).

2. Delivery of a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." § 1608(a)(2).

3. Sending "a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." § 1608(a)(3).

4. Sending the materials specified in paragraph 3 "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia," for transmittal "through diplomatic channels to the foreign state." § 1608(a)(4).

These four methods, which are exclusive and exhaustive, are listed "in hierarchical order." *Harrison*, 139 S. Ct. at 1054.

**B.    Plaintiff Did Not Effect Service Under the FSIA**

Plaintiff claims that it served the Republic under § 1608(a)(2). *See* Memo. Supp. Pl.'s Mot. Summ. J., Dkt. 43, at 12. Section 1608(a)(2) allows service "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents"—in this case, the Hague Convention. But Plaintiff has not met the requirements for Hague Convention service.

**1.    The Hague Convention**

The United States and Venezuela are parties to the Hague Convention. "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk*

*Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Service through the Central Authority is the "main channel" of service under the Convention. Permanent Bureau of the Hague Conference on Private Int'l Law, *Practical Handbook on the Operation of the Hague Service Convention* ¶¶ 81-82 (3d ed. 2006) ("*Practical Handbook*"); *see Walton v. Bilinski*, 2015 WL 9489610, at *2 (E.D. Mo. Dec. 30, 2015) ("The primary method for service of judicial documents abroad, as set forth in … the Hague Convention, is through a designated Central Authority."). The Hague Convention also permits several alternative channels of service that plaintiffs may use "as long as the receiving state does not object." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017); *Bilinski*, 2015 WL 9489610, at *2; *Practical Handbook* ¶¶ 183-84. Plaintiff does not claim to have invoked any alternative channel, and asserts only "main-channel" service through the Central Authority.

"Main channel" service consists of a two-step procedure. *First*, a person authorized by law transmits a request for service, along with "the document to be served," to the "Central Authority of the requested State (State where the service is to occur)." *Practical Handbook* ¶ 82; *see* Hague Convention arts. 2-3, 20 U.S.T. at 362. *Second*, once the Central Authority has satisfied itself that the request complies with the Convention's requirements, *see* Hague Convention art. 4, 20 U.S.T. at 362, the Central Authority "*shall itself serve the document* or shall arrange to have it served by an appropriate agency, either (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed," Hague Convention art. 5, 20 U.S.T. at 362 (emphasis added).

Following service, the Central Authority completes a certificate stating that the document

has been served; setting forth the method, place, and date of service; and identifying the person to whom the document was delivered. *See Schlunk*, 486 U.S. at 699; Hague Convention art. 6, 20 U.S.T. at 363. A Central Authority may refuse to serve documents, however, if "compliance [with the request for service] would infringe its sovereignty or security." Hague Convention art. 13, 20 U.S.T. at 364.

As these procedures attest, the Central Authority is not an *agent* for *receiving* service on behalf of a signatory state, but instead the entity designated to "*process*" all "*requests* for service." Ved P. Nanda et al., *Litigation of International Disputes in U.S. Courts* § 2:4 (Dec. 2019) (emphasis added); *see Practical Handbook* ¶ 127 ("The Central Authority of the requested State will execute the request for service or cause it to be executed … ."). Effecting service through a Central Authority ensures that service is made "in accordance with … the legislation of the requested State for service of documents issued in that country and intended for persons located on its territory." *Practical Handbook* ¶ 128; *see Marschhauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 609 (S.D. Fla. 1992) ("The Convention requires the Central Authority to serve the process or arrange to have it served by an appropriate agency."). As the Supreme Court has put it, "[o]nce a central authority receives a request in the proper form," it facilitates service "by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Schlunk*, 486 U.S. at 699.

Compliance with the law of the receiving state (*i.e.*, the state where service occurs) is thus a *sine qua non* of actual service under Article 5 of the Hague Convention. Because the Hague Convention itself "contains no provisions relating to the validity of service … *[i]t therefore falls on the Court of the requesting State to determine whether service has been validly performed according to the law of the* [*receiving*] *State* and to draw the consequences of failure

12

to serve (*e.g.*, nullity of the summons)." *Practical Handbook* ¶ 130 (emphasis in original).

Failure to comply with such local legal requirements is fatal to a claim of proper Hague

Convention service. *See Samsung Elec. Co. v. Early Bird Sav.*, No. 13-CV-3105, 2014 WL

5139488, at *2 (S.D. Cal. Oct. 2, 2014) ("The text of the Hague Convention establishes that

service must be effected in accordance with the law of the State in which the defendant is to be

served. Here, the [plaintiff] did not effect service according to Chinese law.").

> **2.    Service Under the Hague Convention Has Not Occurred Because There Is No Evidence that Service Was Effected in Venezuela Under Venezuelan Law**

Plaintiff's attempt at service here was insufficient under the Hague Convention. Plaintiff

claims to have submitted a request for service to Venezuela's Ministry of Foreign Affairs, the

Central Authority designated by Venezuela for purposes of the Convention. But Plaintiff does

not claim that its request resulted in actual service "by a method prescribed by [Venezuela's]

internal law for the service of documents." Hague Convention art. 5(a), 20 U.S.T. at 362.

a.    Under the internal law of Venezuela (as in the United States), special rules for

service apply in cases against the sovereign. The Venezuelan Constitution assigns the Attorney

General exclusive responsibility for defending the Republic in such cases. Constitution of the

Bolivarian Republic of Venezuela, art. 247 (published in Official Extraordinary Gazette No.

36.860, at 312.187 (Dec. 30, 1999)) (Declaration of Kent Yalowitz ("Yalowitz Decl."), Ex. A).

Procedures for serving the Attorney General are set forth in the Organic Law of the Attorney

General's Office, which provides that "[s]ummonses to the Attorney General of the Republic to

answer claims must be delivered by written notice, accompanied by the complaint and the

annexes produced by the plaintiff." Organic Law of the Attorney General's Office, art. 95

(published in Official Extraordinary Gazette No. 6.210, at 18 (Dec. 30, 2015)) (Yalowitz Decl.,

Ex. B). "The notice must be delivered personally to the Attorney General of the Republic, or to

whomever this power is delegated to." *Id.* Venezuelan courts have long held that these requirements are not waivable under Venezuelan law, and failure to comply with them means that service has not been accomplished. *See* Decision No. 9 of the Political-Administrative Chamber of the Supreme Tribunal of Justice of Venezuela, Mar. 18, 2014 (published in Official Gazette No. 40.382, at 410.366–.369 (Mar. 28, 2014)) (Yalowitz Decl., Ex. C) (relying on a long line of established precedent).

This Court's cases reflect strict adherence to these legal requirements, including in cases seeking to enforce arbitral awards against the Republic. For example, in *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 16-cv-2020 (D.D.C.), the plaintiff submitted its request for service to the Central Authority, and that request was then submitted to a Venezuelan Court of First Instance along with a request for assistance. The Venezuelan court issued an order confirming receipt of the documents and had its bailiff deliver the documents to the Ministry of Foreign Affairs. The bailiff of the court duly issued a certificate confirming delivery to the Foreign Ministry. *See id.* ECF No. 10 (Notice of Withdrawal of Request for Foreign Mailing).

Yet delivery to the Ministry of Foreign Affairs was not deemed sufficient to effect service. Rather, the Venezuelan court ordered that delivery be made to the Office of the Attorney General, as the Republic's sole representative in judicial and extrajudicial proceedings. The bailiff thus delivered the documents to the Office of the Attorney General and issued a certificate to that effect. *Only then* did the Venezuelan court inform the Venezuelan Directorate-General that "the mission entrusted to [the Venezuelan Court] has been duly fulfilled," *id.* ¶ 7, and the Ministry thereafter issued a certificate confirming that the documents had been served in accordance with the Hague Convention, *id.* ¶ 8; *see id.* ECF No. 11 (Return of Service Declaration). In other words, delivery to the Ministry of Foreign Affairs was not adequate

service in *Rusoro*; in accordance with the nation's Organic Law, the Venezuelan court required actual delivery to the Office of the Attorney General.

b.    Plaintiff offers no evidence of compliance with those procedures here. Indeed, nowhere does Plaintiff even *claim* to have effected service in accordance with Venezuelan law.

By its own telling, Plaintiff filled out a form denoted as a "Request for Service Abroad," checking a box on the form requesting service pursuant to Article 5(a)(1) of the Hague Convention. Dkt. 9-2 at 3. Plaintiff asserts that the form was couriered, together with the documents to be served, to the Venezuelan Foreign Ministry; there, the request was "signed for by T. Flores and I. Ruiz," whom Plaintiff says were "employees of the Foreign Ministry." Dkt. 43-1 at 12-13.

Even by Plaintiff's account, its attempt at service here was defective. Plaintiff merely transmitted a "Request" for service to the Central Authority. Dkt. 9-2 at 3. Yet "the Convention 'applies only when there is both transmission of a document from the requesting state to the receiving state, *and service upon the person for whom it is intended.*'" *Water Splash*, 137 S. Ct. at 1509 (emphasis added) (quoting *Schlunk*, 486 U.S. at 701). Transmission of a request alone does not suffice.

At no point did proper service occur under Venezuelan law. Even assuming Plaintiff has correctly identified the initial recipients of its request (Flores and Ruiz) and their employer (Ministry of Foreign Affairs), Plaintiff offers no evidence as to the whereabouts of the relevant documents after that—and certainly no reason to believe that the documents were ever submitted "personally to the Attorney General of the Republic" or a designee, pursuant to a method of service prescribed by the internal law of Venezuela. *See* Yalowitz Dec. Exs. B, C.  Thus, service on the Republic has not been completed under Article 5 of the Hague Convention.

### 3.    Delivery to the Central Authority Does Not Constitute Service on the Republic Under the Hague Convention

Plaintiff effectively concedes that it has not completed service in compliance with

Article 5. Instead, Plaintiff's position is that nothing further was required once it delivered its

request for service to the Foreign Ministry, because "[t]he Foreign Ministry is responsible for

Venezuela's foreign relations, obviously, so once the Foreign Ministry received the papers, the

only thing they would be doing is handing them over to themselves." Dkt. 43-6 at 10. In other

words, Plaintiff contends that it was not obligated to serve the Republic in compliance with

Venezuelan law, because delivering papers to the Foreign Ministry should be considered

equivalent to serving the Republic.

As explained above, however, delivery of a request for service on a foreign sovereign to

the Central Authority merely *initiates* the process of service abroad; it does not itself constitute

completed service under Venezuelan law or Article 5 of the Hague Convention. *See Cavic v.*

*Republic of Serbia*, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ("[T]he arrival of

[Plaintiff's] request for service at the [Serbian] Ministry of Justice … does not constitute service

on Serbia itself. The arrival of the papers at the Ministry of Justice is a 'request for service;'

service must then be effectuated by the Ministry upon the parties within Serbia."). Indeed,

Plaintiff does not even attempt to identify any provision of the Hague Convention that authorizes

service merely by delivery to the Central Authority.

In ruling that service on Venezuela was properly effectuated by delivery of Plaintiff's

request to the Central Authority, the Delaware district court relied not on Article 5, but instead

on Article 15. *See* Dkt. 39 at 22. Under that provision, the court stated, "[b]y 'actually

deliver[ing] to the defendant,' i.e., the Republic, by serving the appropriate documents directly to

the Central Authority designated by the Republic of Venezuela, Saint-Gobain served the

16

Republic." *Id.*; *see Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743, 2014 WL 12489848, at *1-2 (S.D. Fla. Apr. 25, 2014) (relying on similar reasoning to find service).

Yet Article 15 does not authorize service at all, much less in the manner stated by the Delaware district court. Rather, it governs entry of default judgments, forbidding such entry "until it is established that (a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention." 20 U.S.T. at 364. In other words, Article 15 *forbids* entry of judgment until the plaintiff can show that it "served by a method *prescribed by the internal law*" of Venezuela, or "actually delivered . . . *by another method provided for by this Convention*." *Id.* (emphasis added). Article 15 was designed to prevent unfair entry of default judgments following "service" in countries that permitted a form of publication notice that was unlikely to provide actual notice to the defendant. *See, e.g.*, *Schlunk*, 486 U.S. at 703-04 (explaining that Article 15 is designed to prevent unfair entry of default judgments); S. Exec. Rep. No. 6, 90th Cong., 1st Sess. (App'x) at 15 (1967) (statement of Philip W. Amram, U.S. Rep. to the Convention) ("Article 15 will forbid the snap judgments that were taken under the practice of *notification au parquet*" by placing strict limitations on entry of default judgments). Article 15 does not provide a separate channel for service outside the means otherwise available under the Convention—and certainly does not authorize service by mere delivery to an agency of a sovereign defendant where internal law of the receiving state does not permit service by such delivery.

Plaintiff contends that, in cases against the sovereign itself, declining to recognize effective Hague Convention service by mere delivery of a request for service to the Central

Authority would create a "moral hazard," by allowing "a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." Dkt. 43-1 at 13 (quoting Dkt. 39 at 21-22). That is nonsense. There is no moral hazard, because the Hague Convention permits a variety of channels of service outside the "main channel" that Plaintiff invoked here. For example, Article 10(c) permits "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." 20 U.S.T. at 363. Venezuela has not objected to this channel. *See* Hague Conference on Private International Law, Venezuela Declarations and Reservations, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid= 429&disp=resdn. More generally, Article 19 permits the use of *any* method of service of documents coming from abroad provided for under a state's internal law. 20 U.S.T. at 365.

These alternative channels, which do not depend on the Central Authority, protect plaintiffs from neglect or supposed "moral hazard" by the Central Authority without disregarding the internal laws of the receiving State (and thus the Hague Convention). Plaintiff's position— that transmission to the Central Authority of a request for service, without more, constitutes formal service on a foreign sovereign—*would* disregard Venezuela's internal laws governing service, contrary to the accepted view that "the Convention is not intended to modify the substantive rules of service applicable in States" joining the Convention. *Practical Handbook* ¶ 8. Indeed, accepting Plaintiff's contention would make it *far easier* to accomplish service on a foreign sovereign than on any private foreign corporation. There is no support in the Convention for that counterintuitive result, and, as the Supreme Court recently explained in the FSIA context, "the rule of law demands adherence to strict requirements even when the equities of a

18

particular case may seem to point in the opposite direction… [in] cases with sensitive diplomatic implications." *Harrison*, 139 S. Ct. at 1062.

Moreover, the FSIA itself contemplates that Hague Convention service on a foreign sovereign may not always be possible, and accordingly sets forth additional methods of service that plaintiffs may attempt. If service under the Hague Convention is unsuccessful, plaintiffs may then request that the clerk of the court dispatch the documents to be served to the head of the ministry of foreign affairs of the country concerned, and failing that, through diplomatic channels. 28 U.S.C. § 1608(a)(3), (4). Again, Plaintiff here has not availed itself of any of those alternative channels. Plaintiff's inexplicable refusal to take further steps to effect service does not excuse it from the stringent requirements that govern service of process on foreign sovereigns.

### C.  Service on the Republic Under the Hague Convention Cannot Be Completed at This Time, but an Alternative Avenue Is Available

Plaintiff cannot now correct its past errors and effect service under § 1608(a)(2), because any further attempt to complete service under the Hague Convention would likely require the Court to recognize actions and decrees of a regime deemed illegitimate under United States law. On January 23, 2019, the President of the United States rejected the legitimacy of the Maduro regime and recognized Juan Guaidó as the sole valid leader of Venezuela. *See supra* note 1. To attribute to the Republic any conduct by Maduro and his associates after that date would implicitly recognize their legitimacy, and would run afoul of the President's exclusive power to recognize a foreign government. *See Crystallex*, 932 F.3d at 135 n.2; *see also Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2087 (2015); *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319–20 (1978); *Guaranty Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 138 (1938); *Jiménez*, 2019 WL 3526479, at *9-11. As the Supreme Court has repeatedly cautioned, U.S. courts must avoid actions that could expose the Executive Branch to embarrassment in its relationship with foreign

nations. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116–17 (2013); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004); *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–22 (1936); *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915).

To recognize any act taken by the Maduro-controlled foreign ministry would be to implicitly recognize Mr. Maduro. For that reason, courts may not do so. *See Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 293 (7th Cir. 1990) (refusing to give effect to decrees of a non-recognized government of Cyprus because "[t]he Republic of Cyprus remains the only recognized Cypriot government, the sovereign nation for the entire island"); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1003 (D.C. Cir. 1951) (refusing to give effect to decrees of a non-recognized government of the Soviet Socialist Republic of Latvia because "when the executive branch of the Government has determined upon a foreign policy, which can be and is ascertained, and the non-recognition of specific foreign decrees is deliberate and is shown to be part of that policy, such non-recognition must be given effect by the courts"); *see also Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 825 (D.C. Cir. 1984) (Robb., J., concurring) ("The courts must be careful to preserve [the President's] flexibility and must hesitate to publicize and perhaps legitimize … those who deserve the brand of absolute illegitimacy.").

In view of the present situation, the Republic deems service under the Hague Convention unavailable at this time to U.S. litigants. For the same reason, service dispatched by the clerk of the court to the Ministry of Foreign Affairs under § 1608(a)(3) (allowing service to be "dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned") is likewise unavailable.

20

However, there is no impediment to Plaintiff's proceeding through diplomatic channels under § 1608(a)(4). The Republic does not object to service of process through that channel. *See, e.g.*, Mem. Supp. Mot. Vacate Certificate of Default and Dismiss at 18, *Lovati v. Bolivarian Republic of Venezuela*, No. 19-cv-4796, ECF No. 44. But this Plaintiff has not availed itself of that channel, even though it has been advised of it on multiple occasions.

## II.    The Law of the Case Doctrine Does Not Preclude Dismissal

The Republic acknowledges that the Delaware district court ruled against it on the issue presented here. Dkt. 39 at 21-23. Plaintiff accordingly contends that the Delaware district court's ruling is law of the case. Dkt. 43-1 at 13. So it is. The law-of-the-case doctrine, of course, "cannot insulate an issue from appellate review." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).[14] And even as between co-equal courts—like the Delaware district court and this Court—"the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Id.* (citation omitted). Accordingly, "'adherence to the doctrine [of law of the case] is not mandatory,' but rather left to the district court's sound discretion." *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (Contreras, J.) (citation omitted); *see, e.g.*, *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C. Cir. 1995) ("Law of the case is a prudential rule rather than a jurisdictional one" and presents no "absolute" bar to review).

---

[14]    Insofar as presenting the service issue to this Court is necessary to ensure it is properly preserved for appellate review, the Republic hereby does so. *See Hill v. Henderson*, 195 F.3d 671, 676-77 (D.C. Cir. 1999) (questioning the power of a circuit court to review a pre-transfer decision in a case transferred from a district court in another circuit, absent renewal of the argument in the transferee court); *see also TechnoSteel, LLC v. Beers Constr. Co.*, 271 F.3d 151, 154-56 (4th Cir. 2001).

Reconsideration of a previous decision is warranted, *inter alia*, where the initial decision was "clearly wrong." *Christianson*, 486 U.S. at 817. That is particularly true where, as here, the court's jurisdiction is at issue. *See id.* ("[E]ven if the Seventh Circuit's decision was law of the case, the Federal Circuit did not exceed its power in revisiting the jurisdictional issue, and once it concluded that the prior decision was 'clearly wrong' it was obliged to decline jurisdiction."). The Delaware district court's personal jurisdiction ruling was clearly wrong, for the reasons described above, and this Court accordingly has discretion to revisit it. In the exercise of that discretion, moreover, this Court may consider questions of judicial economy. Forcing the Republic to pursue an appeal would be a waste of the scarce resources of the parties and the judiciary, when Plaintiff has it within its power to make proper service under 28 U.S.C. § 1608(a)(4), a procedure to which the Republic will not object—and a procedure that, had Plaintiff followed it, could have been accomplished months ago.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment and grant the Republic's cross-motion to dismiss for lack of personal jurisdiction.

Dated:  April 6, 2020
        New York, New York

Respectfully submitted,

ARNOLD & PORTER
    KAYE SCHOLER LLP

By:  _____
     Kent A. Yalowitz
     250 West 55th Street
     New York, NY 10019
     T: (212) 836-8000
     F: (212) 836-8689
     Kent.Yalowitz@arnoldporter.com

     E. Whitney Debevoise
     Allon Kedem
     Sally L. Pei
     Stephen K. Wirth
     601 Massachusetts Ave., NW
     Washington, DC 20001
     T: (202) 942-5000
     F: (202) 942-5999

     *Attorneys for the Bolivarian Republic of
     Venezuela*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S District Court of the District of Columbia using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kent A. Yalowitz*

Kent A. Yalowitz