**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:20-cv-00129-RC |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| *Defendant*. | |

**REPLY IN SUPPORT OF CROSS-MOTION TO DISMISS**

Kent A. Yalowitz (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.Yalowitz@arnoldporter.com

E. Whitney Debevoise
Allon Kedem
Sally L. Pei
Stephen K. Wirth
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Sally.Pei@arnoldporter.com

*Counsel for the Bolivarian Republic of Venezuela*

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................................1

I.    Plaintiff Failed To Effect Service Under The Hague Convention ........................2

      A.    Plaintiff Did Not Effect Service Under Article 5........................................2

      B.    Plaintiff Did Not Effect Service Under Article 15......................................3

            1.    Article 15 Does Not Authorize Service ..........................................4

            2.    Plaintiff Did Not Meet Article 15's Express Requirements ...........7

            3.    Plaintiff's Policy Argument Is Meritless ........................................9

II.   Plaintiff's Procedural Arguments Are Meritless.................................................10

      A.    The Law-Of-The-Case Doctrine Does Not Preclude Reconsideration......11

      B.    No Forfeiture Occurred.............................................................................14

CONCLUSION...............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. Carnegie Inst. of Washington*,
  309 F.R.D. 77 (D.D.C. 2015)............................................................................12, 13

*Beach TV Props., Inc. v. Solomon*,
  324 F. Supp. 3d 115 (D.D.C. 2018) .................................................................11, 14

*Box v. Dallas Mexican Consulate General*,
  487 F. App'x 880 (5th Cir. 2012) ...........................................................................8

*Cavic v. Republic of Serbia*,
  2018 WL 6038346 (C.D. Cal. Mar. 21, 2018) ........................................................3

*Christianson v. Colt Industries Operating Corp.*,
  486 U.S. 800 (1988)........................................................................................11, 12, 13

*Devengoechea v. Bolivarian Republic of Venezuela*,
  No. 12-CV-23743-PCH, 2014 WL 12489848 (S.D. Fla. April 25, 2014)............8, 9

*Filebark v. U.S. Dep't of Transp.*,
  555 F.3d 1009 (D.C. Cir. 2009) .............................................................................11

*FMC Corp. v. U.S. EPA*,
  557 F. Supp. 2d 105 (D.D.C. 2008) .......................................................................12

*Gilmore v. Palestinian Auth.*,
  843 F.3d 958 (D.C. Cir. 2016) .........................................................................14, 15

*Kimberlin v. Quinlan*,
  199 F.3d 496 (D.C. Cir. 1999) ...............................................................................11

*Klieman v. Palestinian Auth.*,
  923 F.3d 1115 (D.C. Cir. 2019) .............................................................................14

*Laffey v. Nw. Airlines, Inc.*,
  642 F.2d 578 (D.C. Cir. 1980) ...............................................................................12

*LaShawn A. v. Barry*,
  87 F.3d 1389 (D.C. Cir. 1996) ...............................................................................12

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995).................................................................................................15

*Marchhauser v. Travelers Indem. Co.*,
  145 F.R.D. 605 (S.D. Fla. 1992) ..............................................................................3

*Republic of Sudan v. Harrison*,
     139 S. Ct. 1048 (2019) ............................................................6, 7, 13

*Rubin v. Islamic Republic of Iran*,
     138 S. Ct. 816 (2018) ......................................................................5

*Sale v. Haitian Centers Council, Inc.*,
     509 U.S. 155 (1993) .........................................................................7

*Samsung Elec. Co. v. Early Bird Sav.*,
     No. 13-CV-3105, 2014 WL 5139488 (S.D. Cal. Oct. 2, 2014) ...........................3

*Scheck v. Republic of Argentina*,
     No. 10-cv-5167, 2011 WL 2118795 (S.D.N.Y. May 23, 2011) ..............................8

*Shatsky v. Palestine Liberation Org.*,
     No. 17-7168, 2020 WL 1856490 (D.C. Cir. Apr. 14, 2020)..............................14

*Sherley v. Sebelius*,
     776 F. Supp. 2d 1 (D.D.C. 2011) ...................................................12

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
     486 U.S. 694 (1988)...................................................................3, 4, 5

*Water Splash, Inc. v. Menon*,
     137 S. Ct. 1504 (2017).................................................................5, 6, 7

## Statutes

28 U.S.C.
     § 1330(b) ..............................................................................2, 14
     § 1608(a)(2) ...............................................................................2
     § 1608(a)(3) ...............................................................................9
     § 1608(a)(4) ......................................................................9, 10, 13, 14

## Other Authorities

European Convention on State Immunity, ETS No. 74
     (opened for signature May 16, 1972) .................................................7

Fed. R. Civ. P. 54(b) .......................................................................12, 14

Hague Convention on the Service Abroad of Judicial and Extrajudicial
     Documents in Civil or Commercial Matters, Nov. 15, 1965,
     20 U.S.T. 361, 658 U.N.T.S. 163........................................1, 2, 3, 4, 5, 6, 7, 8, 9, 15

Message from the President Transmitting the Convention on the Service Abroad
   of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Sen.
   Exec. C, 90th Cong., 1st Sess. (1967).............................................................................6

Permanent Bureau of the Hague Conference on Private International Law,
   *Practical Handbook on the Operation of the Hague Service Convention*
   (3d ed. 2006) ..........................................................................................................2, 3, 9

*Report of the U.S. Delegation to the 10th Session of the Hague Convention on*
   *Private International Law* (Oct. 7-28, 1964) ...........................................................5

H.R. Rep. No. 94-1487 (1976), 1976 U.S.C.C.A.N. 6604 ...........................................6

U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial*
   *Documents on the United States Government Pursuant to the Hague Service*
   *Convention* (Jan. 12, 2018) .......................................................................................6

**INTRODUCTION**

Plaintiff's argument for service, which rests solely on Article 15 of the Hague Service Convention, is remarkably devoid of substance: no analysis of the text of Article 15; no published cases applying or discussing Article 15; not one word about Article 15's well-documented purposes; and no discussion of international practice under Article 15. But the text, negotiating history, and implementation of the Convention leave no doubt that Article 15 does not authorize service of process on a foreign sovereign by delivery of a request for service to the Central Authority.

Unable to make a case under established service rules, Plaintiff attempts to shift focus away from substance with a pair of procedural arguments, but neither is persuasive. The law of the case doctrine carries little weight here, because the Delaware District Court's analysis of Article 15 came in the context of a motion for a default judgment that the court *denied* before transferring the case. And Plaintiff's claim that the Republic forfeited its jurisdictional argument is frivolous.

Finally, Plaintiff's opposition to the motion to dismiss for lack of service misleadingly suggests that the Republic is attempting to "frustrate service" and "feign non-service." Opp. 8-9. Nothing of the sort is going on. Other plaintiffs have successfully effected service on the Republic through diplomatic channels—that is, in accordance with the only method available at present for serving the Republic under the Foreign Sovereign Immunities Act (FSIA). *See infra* p. 10. Plaintiff never offers this Court any explanation for why it refuses to effect service by this available method.

As a foreign sovereign, the Republic is entitled to the protections of the FSIA. This Court should not permit Plaintiff to evade the FSIA's stringent requirements.

**I.      Plaintiff Failed To Effect Service Under The Hague Convention**

The FSIA authorizes district courts to exercise personal jurisdiction over foreign

sovereigns *only* "where service has been made under section 1608 of this title," 28 U.S.C.

§ 1330(b), which Plaintiff claims to have accomplished by serving the Republic "in accordance

with" the Hague Convention, *id.* § 1608(a)(2). The Hague Convention contains a "main channel"

of service and several alternative channels. *See generally* Permanent Bureau of the Hague

Conference on Private International Law, *Practical Handbook on the Operation of the Hague

Service Convention* ¶ 81 (3d ed. 2006) (*Practical Handbook*). The "main channel" is service

through a Central Authority, *id.* ¶ 82, which requires service in accordance with the internal law

of the receiving state, *id.* ¶¶ 127, 131; the "alternative channels" include methods such as

diplomatic and consular channels, *id.* ¶ 184.

In its opening Memorandum, the Republic demonstrated that Plaintiff has not carried its

burden to prove main-channel service by a method permitted under the internal law of

Venezuela, Mem. 13-15, and that "Plaintiff does not claim to have invoked any alternative

channel," Mem. 11. Plaintiff disputes neither of these points. The consequence of this silence is

that the record before this Court is incompatible with a conclusion that service has been effected

"in accordance with" the Hague Convention—not under Article 5, and not under Article 15.

**A.      Plaintiff Did Not Effect Service Under Article 5**

The parties agree that Plaintiff has not effected service under Article 5. In its cross-

motion, the Republic explained that main-channel service under Article 5 consists of a two-step

process—transmittal of a *request* for service, followed by actual service in the receiving state in

a manner compatible with its "internal law for the service of documents." Mem. 11 (quoting

Hague Convention art. 5, 20 U.S.T. at 362). As the Supreme Court put it, "[o]nce a central

authority receives a request in the proper form," it facilitates service "by a method prescribed by

the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Plaintiff attempts to distinguish the *facts* of the numerous cases the Republic cited for the proposition that Article 5 requires the Central Authority *itself* to serve documents in compliance with internal law of the receiving state. Opp. 8 & n.4. But Plaintiff ultimately does not and cannot dispute the legal rule that service is not complete under Article 5 in the absence of subsequent delivery in compliance with the internal law of the requested state.[1] Indeed, Plaintiff concedes that it has *not* made service under Article 5, arguing instead that Article 5 is simply inapplicable to this case. Opp. 7.

In short, Plaintiff does not argue that it effected service under Article 5, the "main channel," nor under any of the customary "alternative channels," *see Practical Handbook* ¶ 184 (listing those channels). Its case therefore stands or falls on Article 15.

### B.    Plaintiff Did Not Effect Service Under Article 15

Plaintiff claims that proper service was made in a manner authorized by the first paragraph of Article 15 of the Convention, which provides:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, *judgment shall not be given* until it is established that—
>
>      a)    the document was *served by a method prescribed by the*

---

[1] *See Cavic v. Republic of Serbia*, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ("The arrival of the papers at the Ministry of Justice is a 'request for service;' service must then be effectuated by the Ministry upon the parties within Serbia."); *Samsung Elec. Co. v. Early Bird Sav.*, 2014 WL 5139488, at *2 (S.D. Cal. Oct. 2, 2014) ("Once a central authority receives a request in the proper form, it must serve the documents by a method *prescribed by the internal law of the receiving state* or by a method designated by the requester and compatible with that law." (emphasis in original) (quoting *Schlunk*, 486 U.S. at 699)); *Marchhauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 609 (S.D. Fla. 1992) ("The Convention requires the Central Authority to serve the process or arrange to have it served by an appropriate agency.").

> > *internal law of the State* addressed for the service of documents in domestic actions upon persons who are within its territory, or
> >
> > b) the document was actually delivered to the defendant or to his residence *by another method provided for by this Convention*,
>
> and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

(Emphasis added.) Plaintiff asserts that, under this provision, mere *delivery* to the Central Authority of a *request* for service constitutes actual service on a foreign sovereign. Opp. 7. That is incorrect for two reasons: first, Article 15 does not provide a freestanding method of service; and second, even if it did, Plaintiff has not satisfied its terms.

### 1.    Article 15 Does Not Authorize Service

Plaintiff invokes subparagraph (b) of Article 15's first paragraph (Opp. 9), but does not claim to have delivered service by "another method provided for by this Convention" as required by that paragraph. Rather, Plaintiff contends that, in cases against a foreign sovereign, Article 15 establishes a separate, free-standing method of service by "actual[] deliver[y]" to the Central Authority. This theory cannot be squared with Article 15's text, nor with the other available tools of treaty construction: "the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Schlunk*, 486 U.S. at 700 (quotation source omitted).

To begin, and as the Republic explained in its cross-motion to dismiss (Mem. 17), Article 15's text does not *authorize* service at all, but instead *limits* the power of courts to enter a default judgment by specifying the circumstances under which a default judgment "shall not be given." In contrast, other Articles use words indicating authorization or permission to effect service. For example, Article 5 provides that "[t]he Central Authority … shall itself *serve* the document" (emphasis added); Article 8 provides that the sending state "shall be free to effect service" through diplomatic or consular channels; and Article 10 affirms "freedom … to effect service"

through postal channels absent objection. Article 15's lack of language *authorizing service*, combined with its express cross-reference to "serv[ice] by a method prescribed by the internal law" of the receiving state or "actual[] deliver[y] by another method provided for by this Convention," indicates that Article 15 incorporates *other* methods of service permitted by the Convention and is not itself a free-standing method for service. *Cf. Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823-24 (2018) (similar textual signals in the FSIA indicated that a provision was not freestanding).

The Convention's negotiating history is also incompatible with Plaintiff's theory. Philip W. Amram, the U.S. delegate "most closely involved in the drafting," *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1511 (2017), explained that Article 15 was drafted to "sharply[] restrict" judgment by default against non-resident defendants in light of "the system of *notification au parquet*," which "has permitted the plaintiff to serve … process merely by delivery to a local court official." *See Report of the U.S. Delegation to the 10th Session of the Hague Convention on Private International Law* at 21 (Oct. 7-28, 1964). Based on Mr. Amram's report and other records of the Convention's negotiating history, the Supreme Court had no trouble concluding that Article 15 was included in the Convention because "the Conference wanted to eliminate *notification au parquet*" in order to prevent default judgments in the absence of actual notice to the defendant. *Schlunk*, 486 U.S. at 703-04. Thus, the first paragraph of Article 15 forbade default judgment absent either (a) service in accordance with the law of the receiving state or (b) actual delivery "by another method provided for by this Convention." With this combination, the drafters ensured that service by *notification au parquet* would not result in a default unless it was permitted in the receiving state, or followed up by timely actual delivery "by another method provided for by this Convention." Nothing in the Convention's negotiation

record indicates that the drafters also intended Article 15 to authorize service upon sovereign defendants by actual delivery to the Central Authority.

In addition, Plaintiff's theory cannot be reconciled with the Executive Branch's views. In transmitting the Convention to the Senate for ratification, the State Department explained: "Articles 1 through 14 are concerned with providing machinery to facilitate service of documents. Articles 15 and 16 provide substantial 'due process' protection for the addressee" to "minimize the possibility of abuses" arising from *notification au parquet*. *See* Message from the President Transmitting the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Sen. Exec. C, 90th Cong., 1st Sess. at 5-6 (1967). In the years after the Convention came into force, service through diplomatic channels—not delivery to the Central Authority—was the method "preferred by the United States in suits brought against the United States Government in foreign courts." H.R. Rep. No. 94-1487 (1976), at 25, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6624. And even today, the Executive Branch holds that "the Central Authority is not the legal representative or agent of the U.S. Government," so that "receipt of a request for service from a foreign court by the U.S. Central Authority *is not effective service*. Service is only complete upon receipt of the documents by the appropriate U.S. Government office or agency." U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial Documents on the United States Government Pursuant to the Hague Service Convention* 2 (Jan. 12, 2018) (emphasis added) (footnote omitted).[2] The Executive Branch's practical construction of the Convention carries "great weight." *Water Splash*, 137 S. Ct. at 1512 (citation omitted). Indeed, in the context of service under the FSIA, the Supreme Court has warned against "accepting [an] interpretation of § 1608 [that] might imperil [United States]

---

[2] *Available at* https://www.justice.gov/civil/page/file/1036571/download.

practice." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1060-61 (2019); *see id.* at 1061 (explaining that aligning interpretation with U.S. practice "avoid[s] the potential international implications of a contrary interpretation").

The practice of other signatories to the Convention also carries "considerable weight," *Water Splash*, 137 S. Ct. at 1512 (quotation source omitted), and that practice is incompatible with Plaintiff's interpretation of Article 15. For example, the European Convention on State Immunity requires serving foreign sovereigns through diplomatic channels. ETS No. 74, Art. 16 (opened for signature May 16, 1972). All signatories to the European Convention on State Immunity are also parties to the Hague Convention. It would be incongruous to conclude that these countries created a shortcut in the Hague Convention for plaintiffs anywhere in the world, but then restricted service to diplomatic channels in cases brought in other European nations in a convention negotiated only a few years later. *Cf. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 180 (1993) (rejecting an interpretation of a treaty that "would create an absurd anomaly").

In short, Plaintiff has offered no indication that *anyone* negotiating or joining the Convention believed that Article 15 created an alternative method of serving foreign states by delivering requests for service to the Central Authority, nor that any Convention signatory has found such service acceptable.

### 2.    Plaintiff Did Not Meet Article 15's Express Requirements

By its terms, Article 15 applies *only* when service has been made (a) "by a method prescribed by the internal law" of the receiving state, or (b) "by another method provided for by this Convention." Plaintiff has not carried its burden to prove that it has done either.

As noted above, Plaintiff does not and cannot contend that it complied with Venezuelan law. Plaintiff's delivery of a *request for service* in this case stands in sharp contrast to the actual service under Venezuelan law accomplished in *Rusoro Mining.* Mem. 14-15 (discussing *Rusoro*

*Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 16-cv-2020 (D.D.C.), ECF No. 11). On

this point, Plaintiff denigrates Venezuelan law as "discretionary and formal" (Opp. 10), but does

not contest the legal authorities submitted by the Republic and offers no evidence that it

complied with them. Similarly, Plaintiff has nothing to say in response to the Republic's

statement that "Plaintiff does not claim to have invoked any alternative channel" provided for by

the Convention. Mem. 11. Therefore, Plaintiff does not come within the text of Article 15.

Rather than attempt to explain how it has met that text, Plaintiff relies (Opp. 7) on a

handful of inapposite opinions from other courts, none of which assists Plaintiff here. *Scheck v.

Republic of Argentina*, No. 10-cv-5167, 2011 WL 2118795 (S.D.N.Y. May 23, 2011), in fact

recognizes the requirement that the Central Authority serve the documents upon the defendant

(even in cases against governments): the court specifically acknowledged that "the designated

central authority must … serve, or arrange to have an authorized party serve, the documents on

the defendant." *Id.* at *3. The court simply ruled that the plaintiffs had in fact complied with

Argentine law, finding the Central Authority's contrary position based on ministerial

requirements to be "invalid and frivolous." *Id.* In *Box v. Dallas Mexican Consulate General*, 487

F. App'x 880 (5th Cir. 2012), "the sole argument for lack of personal jurisdiction [was] that the

Mexican government did not issue [a] certificate [under Article 6 of the Hague Convention]," *id.*

at 885; unlike in this case, there was no argument that the plaintiff had failed to establish that the

documents were served in accordance with local law or actually delivered to the defendant. And

*Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743-PCH, 2014 WL

12489848 (S.D. Fla. April 25, 2014), includes no analysis of the Hague Convention at all, nor

any explanation for its conclusory statement that "[s]ervice was effected on Venezuela, through

its Central Authority under the Hague Convention … when it received the Summons, Complaint

and transmittal documents," *id.* at *1.

### 3.    Plaintiff's Policy Argument Is Meritless

At bottom, Plaintiff's argument rests on the assertion that requiring compliance with the Convention's text in cases against foreign governments would create a "moral hazard" by "allow[ing] a State to frustrate service on itself through the formality of refusing to issue a certificate." Opp. 8, 10. As an initial matter, the defect in Plaintiff's attempted service is that there has been no service either under Venezuelan law or through another method authorized by the Convention—not simply that Plaintiff has failed to obtain a certificate of service from Venezuela's Central Authority. A certificate of service is merely *evidence* of service: it "creates a rebuttable *presumption* of valid service allowing the proceedings to continue before the foreign court," but "[i]t does not … heal service that is ineffective according to the law of the [State where service is to be performed]." *Practical Handbook* ¶ 170. Conversely, where a plaintiff has not received a certificate, it may carry its burden of proof of service with other evidence, as the plaintiff did in *Rusoro Mining*.[3]

But, as the Republic has explained, there is no "moral hazard" here. The Hague Convention itself explicitly provides for alternative channels of service that do not rely on the Central Authority, Mem. 18, and the FSIA, too, permits litigants to effect service through additional methods in the event that service through the Hague Convention is unsuccessful, Mem. 19; *see* 28 U.S.C. § 1608(a)(3), (4). Plaintiff does not dispute that it has not pursued any of

---

[3] The fact that Plaintiff has not obtained a certificate was of particular relevance in the Delaware District Court on Plaintiff's motion for default judgment. *See Practical Handbook* ¶ 170 (rebuttable presumption of service created by certificate is "important for the purposes of the recognition and enforcement of a default judgment"). As the Republic explained then, the lack of a certificate, the fact that an adequate period of time had not elapsed since Plaintiff transmitted the documents, and Plaintiff's failure to take reasonable steps to obtain a certificate all precluded entry of default judgment under Article 15 of the Hague Convention. ECF No. 18, pp. 14-17.

these alternative channels of service, even though the Republic has made Plaintiff aware of them on numerous occasions.

While Plaintiff points to other cases that have been brought against the Republic, Opp. 8-9 & n.5, Plaintiff omits to mention that, in all but one of them, the plaintiffs subsequently accomplished service via diplomatic channels under § 1608(a)(4).[4] For example, in *OIEG B.V. v. Bolivarian Republic of Venezuela*, No. 16-cv-1533 (D.D.C.), the plaintiff first transmitted the summons and complaint to the Central Authority. When, after six months, the Central Authority had not confirmed completion of service, the plaintiff requested under § 1608(a)(4) that the clerk of the court dispatch the required documents to the U.S. Secretary of State, to the attention of the Director of Special Consular Services, for transmission to the Republic via diplomatic channels. ECF No. 8. The clerk did so, and the documents were ultimately served by diplomatic note, as confirmed by a return of summons issued by the State Department. ECF No. 16. The same was true in *Valores Mundiales, SL v. Bolivarian Republic of Venezuela*, No. 19-cv-00046 (D.D.C.) (ECF Nos. 5, 10); *Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18-cv-1371 (D.D.C.) (ECF Nos. 6, 9); and *Vestey Group Ltd. v. Bolivarian Republic of Venezuela*, No. 18-cv-1456 (D.D.C.) (ECF Nos. 7, 10). In none of these cases did the Republic contest service accomplished through diplomatic channels.

## II.     Plaintiff's Procedural Arguments Are Meritless

Plaintiff raises two meritless procedural arguments. Neither should detain the Court.

---

[4] The lone outlier is *Koch Minerals Sarl v. Bolivarian Republic of Venezuela*, No. 17-cv-2559 (D.D.C.). In that case, the plaintiffs (represented by the same counsel representing Plaintiff here) attempted service only by transmitting documents to the Central Authority, and, when the Republic did not appear, moved for a default judgment. *See* ECF No. 25, at 11-13. The Republic in *Koch Minerals*, as here, has moved to vacate based on lack of service of process and lack of personal jurisdiction, ECF No. 30-1, and the case remains pending.

### A.    The Law-Of-The-Case Doctrine Does Not Preclude Reconsideration

The law-of-the-case doctrine does not bar this Court from exercising its discretion to reconsider the Delaware District Court's ruling on personal jurisdiction. As this Court has recognized, "adherence to the [law-of-the-case] doctrine is not mandatory, but rather left to the district court's sound discretion." *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (Contreras, J.) (citation and internal quotation marks omitted). The Supreme Court has similarly explained that "the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.)); *see Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) ("[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment." (quoting *Langevine v. District of Columbia*, 106 F.3d 1023 (D.C. Cir. 1997)). The *Christianson* case arose from a dispute between the Federal Circuit and the Seventh Circuit on a question of appellate jurisdiction. The Supreme Court held that "the Federal Circuit did not exceed its power in revisiting the jurisdictional issue, and once it concluded that the prior decision was 'clearly wrong' it was obliged to decline jurisdiction." *Christianson*, 486 U.S. at 817.

Plaintiff proposes a more rigid standard, insisting that a prior order must *always* stand unless "the previous decision was clearly erroneous *and would work a manifest injustice*." Opp. 4 (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999)) (emphasis added). But the D.C. Circuit applied a heightened standard in *Kimberlin* because it was applying a *different* aspect of the law-of-the case doctrine: the rule that a district court must follow the mandate of the court of appeals. There, the party seeking reconsideration had "failed to appeal an appealable issue and then raised the issue for a second time before the District Court." 199 F.3d at 500.

Similarly, in the other cases relied upon by Plaintiff (Opp. 4-5), the district courts properly rejected requests to reconsider an issue already conclusively determined on appeal. *See Laffey v. Nw. Airlines, Inc.*, 642 F.2d 578, 584-85 (D.C. Cir. 1980) ("[T]he District Court was entirely right in denying NWA's motion to modify the injunction since it had no power to reconsider issues laid to rest on an earlier appeal."); *Sherley v. Sebelius*, 776 F. Supp. 2d 1, 15 (D.D.C. 2011) ("[T]his isn't a situation where a court is asked to exercise its discretion by reconsidering a rule of law that it decided in a prior stage of the case."). And *FMC Corp. v. U.S. EPA*, 557 F. Supp. 2d 105 (D.D.C. 2008), concerned a request to *retransfer* a case back to the transferor court. In such unusual circumstances, "the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law," because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson*, 486 U.S. at 816. Finally, *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996), is not instructive as it concerned law of the case *and* law of the circuit. *Id.* at 1397 (Silberman, J., concurring) ("[T]he majority is quite right that in this sort of situation we have law of the case plus elements of law of the circuit").

The Republic's cross-motion, by contrast, presents a more traditional request for reconsideration of a nonfinal order, which "may be revised at any time before the entry of [final] judgment," Fed. R. Civ. P. 54(b). Plaintiff has identified no case in which the law-of-the-case doctrine barred reconsideration in similar circumstances; to the contrary, courts in this Circuit are empowered to grant such requests "as justice requires"—a standard which "leave[s] a great deal of room for the court's discretion." *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 80 (D.D.C. 2015) (Contreras, J.) (citation omitted). "[T]he 'as justice requires' standard amounts to

determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" *Id.* (citation omitted).

Here, that standard is met. As demonstrated above and in the Republic's opening brief, the Delaware District Court's order is clearly wrong on a question of jurisdiction. That is reason enough to grant reconsideration. *See Christianson*, 486 U.S. at 817. There are also prudential reasons that the Court should exercise its discretion to grant reconsideration. For one thing, the Delaware District Court made its service ruling *after* it determined that *this Court*, not Delaware, is the proper venue for resolving the dispute between Plaintiff and the Republic. ECF No. 39 at 19, 21-22. Since then, the case has not progressed in any manner that would be undone if the service ruling is reconsidered; overturning the ruling will accordingly result in no wasted effort. Service on a sovereign also raises "sensitive diplomatic implications," *Harrison*, 139 S. Ct. at 1062, making strict compliance with the rules particularly important. And the Republic has accepted the ICSID tribunal's award in favor of Plaintiff and is not challenging the merits or quantum of that award. The only dispute is over service of process, a matter on which the FSIA requires all plaintiffs to turn square corners—a requirement that has not impaired the Republic's other claimants.

The Court is thus faced with two options: it can allow an obviously erroneous decision to stand, in which case the Republic will be forced to take an appeal that will inevitably result in reversal but will consume time and resources of the parties and the judiciary along the way; or the Court can direct Plaintiff to cure its defective service now, before the entry of final judgment, thus obviating the need for any appeal. Indeed, the Republic has acknowledged the availability of service through diplomatic channels, as authorized by 28 U.S.C. § 1608(a)(4); has not contested service so effected in other cases, *see supra* p. 10; and has alerted Plaintiff to that available

13

method, *see* ECF No. 18 at 16 n.16; Mem. 21 ("[T]here is no impediment to Plaintiff's

proceeding through diplomatic channels … ."). A proper exercise of this Court's power—

whether characterized as under authority of Rule 54(b) or discretionary application of power to

reconsider, *see Beach TV Props., Inc.*, 324 F. Supp. 3d at 123—would be to grant the Republic's

cross-motion to dismiss and direct Plaintiff to effect service under § 1608(a)(4), thereby

eliminating the time and expense of any appeal otherwise required to address the obvious lack of

personal jurisdiction over the Republic in this case. *See* 28 U.S.C. § 1330(b).

### B.    No Forfeiture Occurred

Plaintiff mistakenly asserts that "Venezuela waived the jurisdictional defense based on

improper service because it failed to properly assert this defense together with its cross motion

for dismissal based on improper venue before the Delaware district court." Opp. 3. That is false.

The Republic raised the jurisdictional defense in its very first brief in the Delaware District

Court: "No default judgment should be entered because Plaintiff has not served the complaint in

compliance with the strict requirements of the Foreign Sovereign Immunities Act, and, as a

consequence, there is no personal jurisdiction over the Republic at this time." ECF No. 18 at 1. A

pre-answer motion is obviously sufficient to preserve a defense to personal jurisdiction. *See*

*Shatsky v. Palestine Liberation Org.*, No. 17-7168, 2020 WL 1856490, at *11 (D.C. Cir. Apr. 14,

2020) (abuse of discretion to hold that personal jurisdiction defense was forfeited where

defendant "raised personal jurisdiction in a motion to dismiss at the outset of the case and

litigated it fully before the district court, which considered and rejected the personal jurisdiction

challenge" before defendant pivoted to the merits); *Klieman v. Palestinian Auth.*, 923 F.3d 1115,

1122 (D.C. Cir. 2019) (no forfeiture where defendants asserted their "personal jurisdictional

defenses … in advance of filing their answer"); *cf. Gilmore v. Palestinian Auth.*, 843 F.3d 958,

965 (D.C. Cir. 2016) (defendants "waived their personal-jurisdiction defense by failing to assert it in their pre-answer motion").

Plaintiffs fall back on the assertion (Opp. 11) that "Venezuela raised a different jurisdictional defense to service" in the Delaware District Court, because the Republic "failed to assert" a defense "based on Article 5 of the Hague Convention." That makes no sense. Plaintiff does not claim to have served the Republic under Article 5; how can the Republic forfeit its jurisdictional defense by failing to address a method of service that Plaintiff disclaims? Plaintiff is also wrong on the facts, because the Republic *did* raise Article 5 in its initial brief in the Delaware District Court, when explaining how proper service is made under the Hague Convention.[5] Finally, and in any event, a party is free to invoke any authority in support of a properly presented claim. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995).

## CONCLUSION

For the foregoing reasons, the Court should grant the Republic's cross-motion to dismiss.

---

[5] The Republic explained, citing Article 5, that the "Hague Convention provides for several methods of service, one of which is service through a contracting state's designated 'Central Authority,'" which "serves the document itself, or arranges for the document to be served by an appropriate agency." ECF No. 18, at 12. And the Republic argued—as it does here—that "under the Convention, the Central Authority is not an agent for receiving service on behalf of a signatory state. Instead, it is simply the entity designated to 'process' all 'requests for service,'" so that "a 'request for service of process on a foreign sovereign under the Convention does not itself constitute service of process on that sovereign." *Id.* at 13 (citations omitted).

Dated:  May 4, 2020
        New York, New York

Respectfully submitted,

ARNOLD & PORTER
    KAYE SCHOLER LLP

By:  _____
     Kent A. Yalowitz
     250 West 55th Street
     New York, NY 10019
     T: (212) 836-8000
     F: (212) 836-8689
     Kent.Yalowitz@arnoldporter.com

     E. Whitney Debevoise
     Allon Kedem
     Sally L. Pei
     Stephen K. Wirth
     601 Massachusetts Ave., NW
     Washington, DC 20001
     T: (202) 942-5000
     F: (202) 942-5999

     *Attorneys for the Bolivarian Republic of
     Venezuela*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S District Court of the District of Columbia using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kent A. Yalowitz*
Kent A. Yalowitz