APPEAL,CLOSED,TYPE−E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:20−cv−00129−RC</u>

SAINT−GOBAIN PERFORMANCE PLASTICS EUROPE v.
BOLIVARIAN REPUBLIC OF VENEZUELA et al
Assigned to: Judge Rudolph Contreras
Demand: $42,342,000
Case in other court:  Delaware, 1:18−cv−01963
Cause: 27:185 Enforcement of Arbitration Award

Date Filed: 01/15/2020
Date Terminated: 02/01/2021
Jury Demand: None
Nature of Suit: 450 Commerce ICC Rates, Etc.
Jurisdiction: Federal Question

**Plaintiff**

**SAINT−GOBAIN PERFORMANCE PLASTICS EUROPE**

represented by **Alexander A. Yanos**
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210−9400
Fax: 212−299−6801
Email: <u>alex.yanos@alston.com</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carlos Ramos−Mrosovsky**
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210−9585
Fax: (212) 210−9444
Email: <u>carlos.ramos−mrosovsky@alston.com</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rajat Rana**
ALSTON & BIRD L.L.P.
90 Park Avenue
New York, NY 10016
2122109463
Email: <u>Rajat.Rana@alston.com</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BOLIVARIAN REPUBLIC OF VENEZUELA**

represented by **Allon Kedem**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW

1

Washington, DC 20001
202–942–6234
Fax: 202–942–5999
Email: allon.kedem@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eli Whitney Debevoise , II**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942–5000
Email: wdebevoise@aol.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kent A. Yalowitz**
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019
(212) 836–8344
Fax: (212) 836–8689
Email: kent.yalowitz@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sally Pei**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942–5000
Fax: (202) 942–5999
Email: sally.pei@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave. NW
Washington, DC 20001
202–942–6739
Fax: 202–942–5999
Email: stephen.wirth@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

represented by

2

**PETROLEOS DE VENEZUELA, S.A.**
*TERMINATED: 12/12/2019*

**Scott R. Haiber**
HOGAN LOVELLS US LLP
Harbor East
100 International Drive
Suite 2000
Baltimore, MD 21202–4676
(410) 659–2700
Email: scott.haiber@hoganlovells.com
*TERMINATED: 12/12/2019*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/12/2018 | 1 | | COMPLAINT to Register and Enforce ICSID Arbitration Award as a Foreign Judgment filed against Bolivarian Republic of Venezuela, Petroleos de Venezuela, S.A. – Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number 0311–2523429.) – filed by Saint–Gobain Performance Plastics Europe. (Attachments: # 1 Civil Cover Sheet)(nmg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/12/2018 | 2 | | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (nmg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | | | No Summons Issued. (nmg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | 3 | | DECLARATION re 1 Complaint, *of Alexander A. Yanos In Support of Complaint to Register and Enforce ICSID Arbitration Award as a Foreign Judgment* by Saint–Gobain Performance Plastics Europe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | 4 | | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Compagnie de Saint–Gobain, Corporate Parent Societe de Participations Financieres et Industrielles for Saint–Gobain Performance Plastics Europe filed by Saint–Gobain Performance Plastics Europe. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | | | Summons Issued with Magistrate Consent Notice attached as to Bolivarian Republic of Venezuela on 12/13/2018; Petroleos de Venezuela, S.A. on 12/13/2018. (nmg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | 5 | | MOTION for Pro Hac Vice Appearance of Attorney Alexander A. Yanos – filed by Saint–Gobain Performance Plastics Europe. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | 6 | | MOTION for Pro Hac Vice Appearance of Attorney Carlos Ramos–Mrosovsky – filed by Saint–Gobain Performance Plastics Europe. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |
| 12/13/2018 | 7 | | MOTION for Pro Hac Vice Appearance of Attorney Rajat Rana – filed by Saint–Gobain Performance Plastics Europe. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2018) |

| | | | |
|---|---|---|---|
| 12/19/2018 | | | Case Assigned to Judge Leonard P. Stark. Please include the initials of the Judge (LPS) after the case number on all documents filed. Associated Cases: 1:18−mc−00343−LPS, 1:18−cv−01963−LPS (rjb) [Transferred from Delaware on 1/16/2020.] (Entered: 12/19/2018) |
| 12/20/2018 | | | SO ORDERED, re 6 MOTION for Pro Hac Vice Appearance of Attorney Carlos Ramos−Mrosovsky filed by Saint−Gobain Performance Plastics Europe, 7 MOTION for Pro Hac Vice Appearance of Attorney Rajat Rana filed by Saint−Gobain Performance Plastics Europe, 5 MOTION for Pro Hac Vice Appearance of Attorney Alexander A. Yanos filed by Saint−Gobain Performance Plastics Europe. Signed by Judge Leonard P. Stark on 12/20/18. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 12/20/2018) |
| 12/26/2018 | | | Pro Hac Vice Attorney Alexander A. Yanos, Carlos Ramos−Mrosovsky, and Rajat Rana for Saint−Gobain Performance Plastics Europe added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (ceg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/26/2018) |
| 04/24/2019 | 8 | | REQUEST for Default as to Bolivarian Republic of Venezuela, Petroleos de Venezuela, S.A. − filed by Saint−Gobain Performance Plastics Europe. (Keane, Peter) [Transferred from Delaware on 1/16/2020.] (Entered: 04/24/2019) |
| 04/24/2019 | 9 | | DECLARATION re 8 REQUEST for Default as to Bolivarian Republic of Venezuela, Petroleos de Venezuela, S.A. *of Alexander A. Yanos* by Saint−Gobain Performance Plastics Europe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Keane, Peter) [Transferred from Delaware on 1/16/2020.] (Entered: 04/24/2019) |
| 06/12/2019 | 10 | | Clerk's ENTRY OF DEFAULT as to Bolivarian Republic of Venezuela, Petroleos de Venezuela, S.A. − Re: 8 Request for Default filed by Saint−Gobain Performance Plastics Europe. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 06/12/2019) |
| 06/24/2019 | 11 | | MOTION for Default Judgment as to All Defendants − filed by Saint−Gobain Performance Plastics Europe. (Attachments: # 1 Proposed Order, # 2 Declaration)(Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 06/24/2019) |
| 07/08/2019 | 12 | | NOTICE of Appearance by Scott R. Haiber on behalf of Petroleos de Venezuela, S.A. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 07/08/2019) |
| 07/08/2019 | 13 | | STIPULATION the time for Defendants to oppose or otherwise respond to Plaintiffs motion for a default judgment ( To Be So Ordered) re 11 MOTION for Default Judgment as to All Defendants by Petroleos de Venezuela, S.A.. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 07/08/2019) |
| 07/08/2019 | | | SO ORDERED, re 13 STIPULATION to Extend the time for Defendants to oppose or otherwise respond to Plaintiffs motion for a default judgment. Signed by Judge Leonard P. Stark on 7/8/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 07/08/2019) |
| 08/02/2019 | 14 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Pro Hac Vice Appearance of Attorney Dennis H. Tracey, III – filed by Petroleos de Venezuela, S.A.. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 08/02/2019) |
| 08/02/2019 | 15 | | MOTION for Pro Hac Vice Appearance of Attorney Robin L. Muir – filed by Petroleos de Venezuela, S.A.. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 08/02/2019) |
| 08/05/2019 | | | SO ORDERED, re 14 MOTION for Pro Hac Vice Appearance of Attorney Dennis H. Tracey, III filed by Petroleos de Venezuela, S.A., 15 MOTION for Pro Hac Vice Appearance of Attorney Robin L. Muir filed by Petroleos de Venezuela, S.A. Signed by Judge Leonard P. Stark on 8/5/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 08/05/2019) |
| 08/07/2019 | 16 | | ANSWERING BRIEF in Opposition re 11 MOTION for Default Judgment as to All Defendants filed by Petroleos de Venezuela, S.A..Reply Brief due date per Local Rules is 8/14/2019. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 08/07/2019) |
| 08/07/2019 | 17 | | NOTICE of Appearance by A. Thompson Bayliss on behalf of Bolivarian Republic of Venezuela (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/07/2019) |
| 08/07/2019 | 18 | | ANSWERING BRIEF in Opposition re 11 MOTION for Default Judgment as to All Defendants filed by Bolivarian Republic of Venezuela.Reply Brief due date per Local Rules is 8/14/2019. (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/07/2019) |
| 08/07/2019 | 19 | | MOTION for Pro Hac Vice Appearance of Attorney Kent A. Yalowitz, E. Whitney Debevoise II, Sally L. Pei, Stephen K. Wirth, and Avishai D. Don – filed by Bolivarian Republic of Venezuela. (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/07/2019) |
| 08/09/2019 | | | SO ORDERED, re 19 MOTION for Pro Hac Vice Appearance of Attorney Kent A. Yalowitz, E. Whitney Debevoise II, Sally L. Pei, Stephen K. Wirth, and Avishai D. Don filed by Bolivarian Republic of Venezuela. Signed by Judge Leonard P. Stark on 8/9/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 08/09/2019) |
| 08/13/2019 | 20 | | STIPULATION Regarding Page Length of Plaintiff's Reply Brief re 16 Answering Brief in Opposition, 18 Answering Brief in Opposition by Saint–Gobain Performance Plastics Europe. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 08/13/2019) |
| 08/14/2019 | 21 | | REPLY BRIEF re 11 MOTION for Default Judgment as to All Defendants filed by Saint–Gobain Performance Plastics Europe. (Keane, Peter) [Transferred from Delaware on 1/16/2020.] (Entered: 08/14/2019) |
| 08/15/2019 | | | SO ORDERED, re 20 Stipulation filed by Saint–Gobain Performance Plastics Europe. Signed by Judge Leonard P. Stark on 8/15/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 08/15/2019) |
| 08/16/2019 | | | Pro Hac Vice Attorneys Sally Pei, Stephen K. Wirth, Avishai Don for Bolivarian Republic of Venezuela added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) [Transferred from Delaware on |

| | | |
|---|---|---|
| | | 1/16/2020.] (Entered: 08/16/2019) |
| 08/19/2019 | | Pro Hac Vice Attorney E. Whitney Debevoise, II for Bolivarian Republic of Venezuela added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) [Transferred from Delaware on 1/16/2020.] (Entered: 08/19/2019) |
| 08/21/2019 | | Pro Hac Vice Attorney Kent A. Yalowitz for Bolivarian Republic of Venezuela added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd)[Transferred from Delaware on 1/16/2020.] (Entered: 08/21/2019) |
| 08/21/2019 | 22 | REQUEST for Oral Argument by Petroleos de Venezuela, S.A. re 11 MOTION for Default Judgment as to All Defendants. (Haiber, Scott) [Transferred from Delaware on 1/16/2020.] (Entered: 08/21/2019) |
| 08/21/2019 | 23 | REPLY BRIEF re 11 MOTION for Default Judgment as to All Defendants filed by Bolivarian Republic of Venezuela. (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/21/2019) |
| 08/21/2019 | 24 | REQUEST for Oral Argument by Bolivarian Republic of Venezuela re 11 MOTION for Default Judgment as to All Defendants. (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/21/2019) |
| 08/27/2019 | 25 | MOTION for Leave to File /Saint−Gobain Performance Plastics Europe's Motion to Authorize Filing of Surreply − filed by Saint−Gobain Performance Plastics Europe. (Attachments: # 1 Exhibit A − Proposed Order, # 2 Exhibit B − Surreply)(Keane, Peter) [Transferred from Delaware on 1/16/2020.] (Entered: 08/27/2019) |
| 08/28/2019 | 26 | RESPONSE to Motion re 25 MOTION for Leave to File /Saint−Gobain Performance Plastics Europe's Motion to Authorize Filing of Surreply filed by Bolivarian Republic of Venezuela. (Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 08/28/2019) |
| 08/30/2019 | 27 | ORAL ORDER: IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File a Sur−Reply (D.I. 25 ) is GRANTED. Ordered by Judge Leonard P. Stark on 8/30/2019. (etg) [Transferred from Delaware on 1/16/2020.] (Entered: 08/30/2019) |
| 09/03/2019 | 28 | SUR−REPLY BRIEF re 25 MOTION for Leave to File /Saint−Gobain Performance Plastics Europe's Motion to Authorize Filing of Surreply /Surreply to Venezuela's Reply in Support of Its Cross−Motion to Vacate the Clerk's Default and to Vacate or Transfer the Case filed by Saint−Gobain Performance Plastics Europe. (Keane, Peter) [Transferred from Delaware on 1/16/2020.] (Entered: 09/03/2019) |
| 09/09/2019 | 29 | ORAL ORDER: IT IS HEREBY ORDERED that the Court will hear oral argument on all pending motions and issues on December 5, 2019 at 2:30 p.m. Each side will be allocated 45 minutes for its presentation. ORDERED by Judge Leonard P. Stark on 9/9/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 09/09/2019) |
| 11/06/2019 | 30 | ORAL ORDER: IT IS HEREBY ORDERED that the Court will hold a status conference on Wednesday, November 13, 2019, at 3:00 p.m. in Courtroom 6B |

| | | | |
|---|---|---|---|
| | | | in all of the following matters: 1:15–cv–01082–LPS; 1:16–cv–00904–LPS; 1:16–cv–01007–LPS; 1:17–cv–00028–LPS; 1:17–mc–00151–LPS; 1:18–mc–00343–LPS; 1:18–cv–01963–LPS; 1:19–cv–00290–LPS; 1:19–mc–00290–UNA. All parties, all proposed parties, and all potential intervenors are expected to attend. The Court's intent is NOT to hear argument on the pending motions in any of these cases but instead to discuss how and on what schedule the Court should proceed to resolve any and all disputes, if indeed it should proceed at all. ORDERED by Judge Leonard P. Stark on 11/6/19. Associated Cases: 1:15–cv–01082–LPS et al. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 11/06/2019) |
| 11/13/2019 | 31 | | ORAL ORDER: IT IS HEREBY ORDERED that the Status Conference today will begin at 4:00 PM. ORDERED by Judge Leonard P. Stark on 11/13/19. Associated Cases: 1:15–cv–01082–LPS et al. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 11/13/2019) |
| 11/13/2019 | | | Minute Entry for proceedings held before Judge Leonard P. Stark – Status Conference held on 11/13/2019. (Court Reporter B. Gaffigan.) Associated Cases: 1:15–cv–01082–LPS et al. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 11/18/2019) |
| 11/17/2019 | 32 | | Official Transcript of In–Court Status Conference Hearing held on November 13, 2019 before Chief Judge Leonard P. Stark. Court Reporter Brian Gaffigan, Email: Brian_Gaffigan@ded.uscourts.gov. Transcript may be viewed at the court public terminal or ordered/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/9/2019. Redacted Transcript Deadline set for 12/18/2019. Release of Transcript Restriction set for 2/17/2020. (bpg) [Transferred from Delaware on 1/16/2020.] (Entered: 11/17/2019) |
| 11/22/2019 | 33 | | Letter to The Honorable Leonard P. Stark from A. Thompson Bayliss regarding Supplemental Authority. (Attachments: # 1 Attachment to Letter)(Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 11/22/2019) |
| 11/26/2019 | 34 | | Remark: Given recent developments in and affecting these matters – including OFAC's amendments to 31 C.F.R. Part 591 (see Dep't of Treasury, Off. of Foreign Assets Control, Venezuela Sanctions Regulations, 84 Fed. Reg. 64,415 (Nov. 22, 2019)); the Third Circuit's denial of the petitions for rehearing (see Order Sur Pet'n for Reh'g, Nos. 18–2797 & 18–3124 (3d Cir. Nov. 21, 2019)); the Southern District of New York's grant of motions to transfer venue to the District of Columbia to enforce arbitration awards (see Greentech Energy Sys. A/S v. Italian Republic, Case No. 19–cv–04398–LLS, D.I. 23 (S.D.N.Y. Nov. 8, 2019); CEF Energia, B.V. v. Italian Republic, Case No. 19–cv–09153–LLS, D.I. 13 (S.D.N.Y. Nov. 8, 2019)); and the related letters filed in 17–mc–00151–LPS (D.I. 146, 147), 18–cv–01963–LPS (D.I. 33), and 19–mc–00290–LPS (D.I. 20) – the Court requires additional time to determine how to proceed. The Court's current expectation is to provide the parties with an update by no later than on or about December 10, 2019. Associated Cases: 1:15–cv–01082–LPS et al. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 11/26/2019) |
| 12/02/2019 | 35 | | ORAL ORDER: IT IS HEREBY ORDERED that the hearing on December 5, 2019 will begin at 10:30 a.m. Each side will have forty–five (45) minutes for |

| | | | |
|---|---|---|---|
| | | | argument. ORDERED by Judge Leonard P. Stark on 12/2/19. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 12/02/2019) |
| 12/05/2019 | | | Minute Entry for proceedings held before Judge Leonard P. Stark – Oral Argument held on 12/5/2019. (Court Reporter B. Gaffigan.) (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 12/06/2019) |
| 12/09/2019 | 36 | | Letter to The Honorable Leonard P. Stark from A. Thompson Bayliss, Esq., Samuel T. Hirzel, Esq. and Scott R. Haiber, Esq. regarding Frequently Asked Questions. (Attachments: # 1 Attachment to Letter)(Bayliss, A.) [Transferred from Delaware on 1/16/2020.] (Entered: 12/09/2019) |
| 12/10/2019 | 37 | | ORAL ORDER: Having received the letter dated December 9, 2019 (17–mc–151–LPS, D.I. 150), IT IS HEREBY ORDERED that if Crystallex, or any other party or entity, wishes to respond, it shall file a letter no later than December 11, 2019. Ordered by Judge Leonard P. Stark on 12/10/2019. Associated Cases: 1:17–mc–00151–LPS, 1:18–cv–01963–LPS, 1:19–mc–00290–LPS(etg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/10/2019) |
| 12/11/2019 | 38 | | Letter to The Honorable Leonard P. Stark from Alexander A. Yanos, Counsel for Saint–Gobain Performance Plastics Europe regarding Response to Letter Dated December 9, 2019 From Venezuela and PDVSA – re 36 Letter. (Jones, Laura) [Transferred from Delaware on 1/16/2020.] (Entered: 12/11/2019) |
| 12/12/2019 | 39 | | MEMORANDUM ORDER regarding pending motions and stay. Signed by Judge Leonard P. Stark on 12/12/19. Associated Cases: 1:15–cv–01082–LPS et al. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 12/12/2019) |
| 12/13/2019 | 40 | | Official Transcript of Oral Argument Hearing held on December 5, 2019 before Chief Judge Leonard P. Stark. Court Reporter Brian Gaffigan, Email: Brian_Gaffigan@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 1/3/2020. Redacted Transcript Deadline set for 1/13/2020. Release of Transcript Restriction set for 3/12/2020.(bpg) [Transferred from Delaware on 1/16/2020.] (Entered: 12/13/2019) |
| 01/15/2020 | | | Case electronically transferred to District of Columbia. (ntl) [Transferred from Delaware on 1/16/2020.] (Entered: 01/15/2020) |
| 01/16/2020 | 41 | | Case transferred in from District of Delaware; Case Number 1:18–cv–01963. Original file certified copy of transfer order and docket sheet received. (Entered: 01/16/2020) |
| 02/20/2020 | | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for a status conference on March 6, 2020, at 3:00 p.m. in Courtroom 14 before Judge Rudolph Contreras. SO ORDERED. Signed by Judge Rudolph Contreras on 2/20/2020. (lcrc2) (Entered: 02/20/2020) |
| 02/28/2020 | 42 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kent A. Yalowitz, Filing fee $ 100, receipt number ADCDC–6874622. Fee Status: Fee Paid. by BOLIVARIAN REPUBLIC OF VENEZUELA (Wirth, Stephen) (Entered: 02/28/2020) |

| | | | |
|---|---|---|---|
| 02/28/2020 | | | MINUTE ORDER granting 42 Motion for Admission of Attorney *Pro Hac Vice*: Pursuant to Local Civil Rule 83.2(c), it is hereby ORDERED that Kent A. Yalowitz is admitted to represent Defendant *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. SO ORDERED. Signed by Judge Rudolph Contreras on 2/28/20 20. (lcrc2) (Entered: 02/28/2020) |
| 03/02/2020 | | | Set/Reset Hearings: Status Conference set for 3/6/2020 at 3:00 PM in Courtroom 14 before Judge Rudolph Contreras. (tj) (Entered: 03/02/2020) |
| 03/06/2020 | | | Minute Entry for proceedings held before Judge Rudolph Contreras: Status Conference held on 3/6/2020. Parties inform the court of the status of this action. The following briefing schedule is set: Summary Judgment motions due by 3/9/2020; Response to Motion for Summary Judgment due by 4/6/2020; Reply to Motion for Summary Judgment due by 4/20/2020; Cross Motions due by 4/6/2020; Response to Cross Motions due by 4/20/2020; Reply to Cross Motions due by 5/4/2020. (Court Reporter: Elizabeth Saint Loth) (tj) (Entered: 03/10/2020) |
| 03/09/2020 | 43 | | MOTION for Summary Judgment by SAINT–GOBAIN PERFORMANCE PLASTICS EUROPE (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Declaration of Alexander A. Yanos, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Text of Proposed Order)(Yanos, Alexander) (Entered: 03/09/2020) |
| 03/11/2020 | 44 | | TRANSCRIPT OF PROCEEDINGS, before Judge Rudolph Contreras, held on 3–6–2020. Page Numbers: 1 – 10. Date of Issuance: 3–11–2020. Court Reporter: Elizabeth SaintLoth, Telephone number: 202–354–3242. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/1/2020. Redacted Transcript Deadline set for 4/11/2020. Release of Transcript Restriction set for 6/9/2020.(Saint–Loth, Elizabeth) (Entered: 03/11/2020) |
| 04/06/2020 | 45 | | Cross MOTION to Dismiss by BOLIVARIAN REPUBLIC OF VENEZUELA (Attachments: # 1 Memorandum in Support, # 2 Declaration of Kent Yalowitz, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Proposed Order)(Yalowitz, Kent) (Entered: 04/06/2020) |
| 04/06/2020 | 46 | | Memorandum in opposition to re 43 MOTION for Summary Judgment filed by BOLIVARIAN REPUBLIC OF VENEZUELA. (Attachments: # 1 Declaration |

| | | | |
|---|---|---|---|
| | | | of Kent Yalowitz, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order)(Yalowitz, Kent) (Entered: 04/06/2020) |
| 04/06/2020 | 47 | | RESPONSE re 43 *to Plaintiff's Statement of Material Facts as to which There Is No Genuine Issue* filed by BOLIVARIAN REPUBLIC OF VENEZUELA. (Yalowitz, Kent) Modified to add link on 4/8/2020 (znmw). (Entered: 04/06/2020) |
| 04/07/2020 | 48 | | NOTICE of Appearance by Allon Kedem on behalf of BOLIVARIAN REPUBLIC OF VENEZUELA (Kedem, Allon) (Entered: 04/07/2020) |
| 04/20/2020 | 49 | | REPLY to opposition to motion re 43 MOTION for Summary Judgment filed by SAINT–GOBAIN PERFORMANCE PLASTICS EUROPE. (Yanos, Alexander) (Entered: 04/20/2020) |
| 04/20/2020 | 50 | | Memorandum in opposition to re 45 Cross MOTION to Dismiss filed by SAINT–GOBAIN PERFORMANCE PLASTICS EUROPE. (Yanos, Alexander) (Entered: 04/20/2020) |
| 05/04/2020 | 51 | | REPLY to opposition to motion re 45 Cross MOTION to Dismiss filed by BOLIVARIAN REPUBLIC OF VENEZUELA. (Yalowitz, Kent) (Entered: 05/04/2020) |
| 11/16/2020 | 52 | | NOTICE OF SUPPLEMENTAL AUTHORITY by BOLIVARIAN REPUBLIC OF VENEZUELA (Attachments: # 1 Exhibit)(Yalowitz, Kent) (Entered: 11/16/2020) |
| 11/17/2020 | 53 | | Unopposed MOTION for Telephone Conference by SAINT–GOBAIN PERFORMANCE PLASTICS EUROPE (Attachments: # 1 Exhibit A)(Yanos, Alexander) (Entered: 11/17/2020) |
| 02/01/2021 | 54 | | ORDER: granting 43 Plaintiff's Motion for Summary Judgment and denying 45 Defendant's Cross–Motion to Dismiss. See document for details. Signed by Judge Rudolph Contreras on 2/1/2021. (lcrc2) (Entered: 02/01/2021) |
| 02/01/2021 | 55 | | MEMORANDUM OPINION: granting 43 Plaintiff's Motion for Summary Judgment and denying 45 Defendant's Cross–Motion to Dismiss. See document for details. Signed by Judge Rudolph Contreras on 2/1/2021. (lcrc2) (Entered: 02/01/2021) |
| 02/26/2021 | 56 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 54 Order on Motion for Summary Judgment, 55 Memorandum & Opinion, 39 Order by BOLIVARIAN REPUBLIC OF VENEZUELA. Filing fee $ 505, receipt number ADCDC–8253834. Fee Status: Fee Paid. Parties have been notified. (Yalowitz, Kent) (Entered: 02/26/2021) |

SAINT-GOBAIN PERFORMANCE PLASTICS
EUROPE,

*Plaintiff,*

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant*.

Case No.  1:20-cv-00129

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that Defendant, the Bolivarian Republic of Venezuela (the Republic), appeals to the United States Court of Appeals for the District of Columbia Circuit from the District Court's Order and Final Judgment entered on February 1, 2021.  D.E. 54.  The Republic appeals from the entirety of the Order and Final Judgment, including, to the extent necessary, from the Memorandum Opinion upon which the Order and Final Judgment relies, D.E. 55, and from the Memorandum Order upon which the Order and Final Judgment relies, D.E. 39.

Dated:   February 26, 2021

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Kent A. Yalowitz*
Kent A. Yalowitz
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.Yalowitz@arnoldporter.com

1

E. Whitney Debevoise
Allon Kedem
Sally L. Pei
Stephen K. Wirth
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
T: (202) 942-5000
F: (202) 942-5999

*Attorneys for the Bolivarian Republic of
Venezuela*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-cv-1082-LPS |
| | : | |
| PDV HOLDING INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 16-cv-904-LPS |
| | : | |
| PETROLEOS DE VENEZUELA S.A., et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-cv-1007-LPS |
| | : | |
| PDV HOLDING INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 17-cv-28-LPS |
| | : | |
| PETROLEOS DE VENEZUELA S.A., et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-mc-151-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 18-cv-1963-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| OI EUROPEAN GROUP B.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-cv-290-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| OI EUROPEAN GROUP B.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-mc-290-LPS |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

All of the numerous above-captioned actions relate to efforts to collect debts owed or allegedly owed by the Republic of Venezuela ("Venezuela" or "the Republic"). The case that has progressed furthest is *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 17-mc-151 ("*Crystallex Asset Proceeding*").[1] In the *Crystallex Asset Proceeding*, the Court issued an opinion in August 2018 holding that Crystallex had met its burden to prove that Petróleos de Venezuela S.A. ("PDVSA") is the alter ego of the Republic. *See Crystallex Asset Proceeding*, 333 F. Supp. 3d 380, 412, 414 ("*Crystallex* Aug. 9 Op."). The Court further held that the Republic's and PDVSA's jurisdictional immunities and immunities from attachment under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, do not defeat Crystallex's claims. *See id.* at 414-21. Subsequently, in another opinion, the Court granted Crystallex's motion for writ of attachment. *See Crystallex Asset Proceeding*, 2018 WL 4026738 (D. Del. Aug. 23, 2018) ("*Crystallex* Aug. 23 Op."). The United States Marshals Service has served the writ. (*See* D.I. 96)

---

[1]All citations to the docket index ("D.I.") are to the *Crystallex Asset Proceeding*, unless otherwise noted.

1

The Republic and PDVSA filed an interlocutory appeal in the Court of Appeals for the Third Circuit. (*See* D.I. 80) On November 23, 2018, while the appeal was being briefed, the Third Circuit stayed proceedings in this Court. (D.I. 129) ("[I]t is further ORDERED that all proceedings in the District Court are hereby stayed pending the merits panel's disposition of the petition for writ of mandamus and the consolidated appeals . . .") A week later, this Court issued its own stay order, staying proceedings in the *Crystallex Asset Proceeding* and in other actions[2] "until . . . the Third Circuit's disposition of the petition for writ of mandamus and the consolidated appeals." (D.I. 132)

On July 29, 2019, the Third Circuit issued an opinion affirming this Court. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex* App. Op.").[3] On September 30, 2019, while the Republic and PDVSA's requests for rehearing were pending, the Third Circuit (without explanation) lifted its stay of this Court's proceedings. (*See* D.I. 136)

On October 11, 2019, this Court received a joint status report in the *Crystallex Asset Proceeding*. (*See* D.I. 139) Other status reports were thereafter provided in other actions. (*See*

---

[2]The other actions that were stayed as a result of this Court's November 30, 2018 order are: *Crystallex International Corp, v. PDV Holding Inc.*, C.A. No. 15-1082 ("*Crystallex I*"); *Crystallex International Corp, v. PDV Holding Inc.*, C.A. No. 16-1007 ("*Crystallex II*"); *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, C.A. 16-904 ("*ConocoPhillips I*"); and *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, C.A. 17-28 ("*ConocoPhillips II*").

[3]More particularly, as Crystallex has explained: "On July 29, 2019, the Third Circuit issued its order and judgment denying the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-2797, as well as denying as moot (i) the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-3124, and (ii) the petition for writ of mandamus filed in *In Re: Petróleos de Venezuela, S.A.*, No. 18-2889." (D.I. 139 at 1)

*Crystallex I* D.I. 115; *Crystallex II* D.I. 69; *ConocoPhillips I* D.I. 67; *ConocoPhillips II* D.I. 63)

On November 13, 2019, the Court convened a consolidated, in-court status conference in all of the above-captioned actions to receive further input on how it should proceed. (*See Crystallex I* D.I. 118) ("Tr.") Then, on November 21, 2019, the Third Circuit denied the requests for rehearing.

Having reviewed all of the pertinent filings in all of these cases, and having carefully considered the comments provided at the November 13 status conference,

**IT IS HEREBY ORDERED** that:

1. The *Crystallex Asset Proceeding* is **STAYED** until the conclusion of proceedings in the Supreme Court (i.e., the latest of (if applicable) the expiration of the time to file a petition for a writ of certiorari ("cert. petition"), denial of such a petition, or conclusion of proceedings following grant of such petition) or further order of this or any other Court lifting the stay. The Court's decision to stay is **WITHOUT PREJUDICE** to Crystallex's opportunity to file a motion to lift the stay.

Federal Rule of Civil Procedure 62(c), which governs requests for a stay pending appeal, requires a court faced with a situation like the one before the Court to consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (applying *Hilton* factors and granting motion to stay). Applying this standard, the Court has determined that a stay until

conclusion of proceedings in the Supreme Court is the best exercise of its discretion. While the Court cannot say that the Republic or PDVSA (both of which have indicated they will be filing a cert. petition (*see* D.I. 139 at 7) have made a strong showing they are likely to succeed on the merits, the Court does believe there is a greater-than-usual likelihood that their petition will be granted. (*See generally* Tr. at 25-27) (counsel for Republic discussing reasons Supreme Court may grant petition, including purported Circuit split and sensitive issues of international relations) More importantly, for reasons further explained below, the Court is persuaded that the Republic and PDVSA could be irreparably injured in the absence of a stay, yet a stay will not substantially injure the other parties (particularly Crystallex and other creditors) interested in the proceeding.[4] The Court also finds that the public interest (including the public's interest in furthering the expressed foreign policy of the United States, as determined by the Executive Branch) strongly supports a stay.

Additionally, the following considerations (in no particular order) have factored into the Court's conclusion that its proceedings should be halted at this time:

A.       Crystallex's lack of a license from the Office of Foreign Assets Control ("OFAC")

---

[4]Crystallex asserts "there's a very real risk that we will be prejudiced severely if this case stalls and doesn't go anywhere after the Third Circuit has ruled" (Tr. at 20), but Crystallex has failed, at this point, to persuade the Court that this is correct. Crystallex is trying to collect money it is owed and it has attached property of the Republic (i.e., PDVSA's shares of Petróleos de Venezuela Holding ("PDVH")) in order to collect that debt. If the Supreme Court proceedings do not alter the Third Circuit's instructions to this Court, the Court intends to proceed toward selling those shares. Crystallex's request for a bond (*see, e.g.*, Tr. at 20) is denied. (*See* Tr. at 37) (Republic: "They're fully secured for whatever the value is of those assets.")

and its failure to this point even to seek one.[5]

B.    The uncertainty created by further proceedings, which could diminish the value of the Petróleos de Venezuela Holding ("PDVH") shares to be sold, as potential buyers cannot know with any confidence that a purchase and transfer of the shares can be consummated.[6]

C.    The change in the regime of U.S. sanctions imposed on Venezuela and recent amendment of OFAC's policies and guidance.[7]

D.    The change in the Boards of Directors at PDVSA, PDVH, CITGO Holding, Inc., and CITGO Petroleum Corp. ("CITGO"), and possible consequent changes in the relationship of PDVSA to the Republic.[8]

---

[5] *See, e.g., Crystallex* App. Op. at 151 ("[A]ny attachment and execution against PDVSA's shares of PDVH would likely need to be authorized by the Treasury Department."); *id.* ("Whether that FAQ is legally binding, Crystallex has committed that it will seek clarification of the current license . . . and/or the issuance of an additional license to cover the eventual execution sale of the shares of PDVH once the [attachment w]rit has issued.") (internal quotation marks omitted; some alterations in original); *see also* Tr. at 24 (Crystallex acknowledging it has not yet sought OFAC license and does not believe it can until buyer of PDVSA's property is identified after bidding process).

[6] *See, e.g.*, Tr. at 36 (Republic: "If you start a process which is designed to end up in a sale of these shares and there is a complete lack of certainty concerning whether or not that transaction can ever happen, it is going to severely depress the value of those shares."); Tr. at 39 (Republic: "[P]roceeding down with the sale process, all the way through essentially signing a contract to sale, waiting to find out whether they're going to get a license is going to substantially diminish the value that they're able to obtain . . . for the PDVH stock [which] will cause injury to Citgo Petroleum, a U.S. corporation with thousands of people employed.").

[7] *See, e.g.*, Tr. at 35 (Republic arguing: "The whole regime [of sanctions] has changed and the reasons for it have changed from being, in effect, punitive with respect to Venezuela to now being helpful to [it] in trying to preserve assets of Venezuela.").

[8] *See Jiménez v. Palacios*, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019).

E.   The change in the U.S.-recognized government of Venezuela.[9]

F.   Issues of international affairs and United States foreign policy, which are within the purview of the Executive Branch.[10]

G.   The Court's concern not to create a "run on the bank," that is, an influx of creditors to the Court, with negative consequences for the Republic, for U.S. policy (which favors an orderly transition of power in the Republic and a coordinated restructuring of its debts), and, potentially, this Court.[11]

---

[9]*See* Tr. at 57 ("[N]ow we have a much more comprehensive blocking regime where the OFAC guidance is absolutely clear."); D.I. 139 at 8 ("On January 23, 2019, the President of the United States recognized Juan Guaidó as the interim president of Venezuela.").  The Third Circuit has recognized the Guaidó regime "as authorized to speak and act on behalf of Venezuela" in these cases.  *Crystallex* App. Op. at 135 n.2.

[10]The Republic, which did not appear in this Court's earlier proceedings but did intervene in the Third Circuit and has now entered an appearance here, as of October 10, 2019 (*see* D.I. 139 at 7), posits that "lifting the stay would undermine a foreign ally, worsen a grave humanitarian crisis, and tread on diplomatic sensitivities."  (D.I. 139 at 7; *see also* Tr. at 63-64 ("[T]he foreign policy of the United States is that we want to encourage voluntary consensual restructuring in the cases of [our] foreign allies where they run into economic crisis.  So the more we do to impede that, the worse it is for our nation's foreign policy."))

[11]*See* D.I. 139 at 11 ("Encouraged by the pendency of this case, a growing number of claimants are bringing piecemeal litigation against the Republic and PDVSA, attempting to seize their limited external assets or, at a minimum, outpace other similarly situated claimants."); *see also* Tr. at 31 ("So what is happening right now is on the one side, you have got a terrible crisis and a struggling government trying desperately to dislodge a despot and on the other side, you have a group of people, many of whom support the goals of the Guaidó government, support the intention to restore the economy, restore democracy, engage in a consensual restructuring, but they see what is happening in this courtroom and they feel that they cannot stand on the sidelines."); Tr. at 32 ("If the Court moves forward, it's creating, in essence, creating like a run on the bank.  The more the Court moves forward, the more people are going to have to feel that they have no choice but to show up and try to elbow their way in in order to be in equal position so that they're not hurt, and that eventually will lead to a much more difficult voluntary restructuring."); Tr. at 63 ("[T]he more the Court moves forward with cases against the Republic, the faster you will get new cases and other judges will get new cases because of the run on the bank problem, the mad scramble for assets problem.").

H.     The humanitarian crisis in Venezuela, which has been described (by the Republic's own attorneys) as the worst on the planet other than in Syria.[12]

The Court recognizes that many (if not all) of these same considerations were recently presented to the Third Circuit, which nonetheless decided just two months ago to lift the stay it had imposed on this Court's proceedings.  (*See* Tr. at 43) (Crystallex: "[E]very argument that you heard about the difficulties in Venezuela, about the sanctions, were all presented to the Third Circuit . . . [i]n opposition to our motion to lift the identical stay . . . .  [Yet] the Third Circuit lifted [its] stay.")  The Court of Appeals did not explain the reasoning for its stay decision.  Nor did it, in this Court's view, dictate that this Court *must* now move forward, particularly when the Supreme Court is going to have an opportunity to review the Third Circuit's merits opinion, if it chooses to do so.

The Court also recognizes that, as the Third Circuit has pronounced, "Venezuela owes Crystallex from a judgment that has been affirmed in our courts.  Any outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Crystallex* App. Op. at 149.  Today's decision is not intended to permit Venezuela to accomplish such a result.  Venezuela recognizes that it must pay what it owes.  (*See, e.g.*, Tr. at 31) (counsel for Republic stressing that Guaidó government intends to engage in voluntary restructuring of all its debts)  Instead,

---

[12]*See, e.g.,* Tr. at 30-31 (Republic: "[T]he Republic of Venezuela is facing a massive humanitarian crisis.  Other than Syria, it is the worst crisis on the Planet Earth at this time.  People are going without food.  People are leaving the country.  People do not have enough medicine.  They don't have electricity.  It is a very bad situation, and the Republic is without significant resources to address that situation now."); *see also* 19-mc-290 D.I. 11 at 4 (Republic citing report that "Venezuela's gross domestic product [GDP] has plummeted nearly 50%" over past five years, which "is considered the biggest economic collapse in human history outside of war or state collapse and is double the size of the GDP drop in the United States during the Great Depression").

today's decision reflects the Court's attempt to carefully balance the many competing interests in a dynamic and internationally sensitive set of circumstances. Should Crystallex believe the Court's assessment is incorrect or an abuse of discretion, it can move to lift the stay – or seek to appeal this order.

The Republic has asked for a longer stay than the Court is granting. It seeks a stay "until somebody shows up with a license from OFAC saying that they're permitted to go forward." (Tr. at 29; *see also* D.I. 150 at 4 (arguing that cases should be stayed "until those parties [i.e., creditors] obtain a specific license from OFAC to proceed"))[13] Today's stay lasts *only* until the

---

[13]One of the multiple dynamic factors making the management of these cases all the more challenging is the (understandably) ongoing issuance of guidance from OFAC. Just this week, on December 9, 2019, OFAC responded to additional Frequently Asked Questions ("FAQ"), in a manner the Republic and PDVSA contend (correctly, in the Court's view) further supports the granting of at least some stay. (*See* D.I. 150) The new FAQs include the following:

> **808. Do I need a specific license from OFAC to file a suit in U.S. court against a person designated or blocked pursuant to Venezuela-related sanctions? Does a U.S. court, or its personnel, need a specific license from OFAC to hear such a case?**
>
> No. A specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court, or its personnel, to hear such a case. However, a specific license from OFAC is required for the entry into a settlement agreement or the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591). . . .
>
> **809. I hold a writ of attachment on shares of a Government of Venezuela entity whose property and interests in property are blocked pursuant to the Venezuela Sanctions Regulations. Am I authorized to prepare for and hold an auction or other sale of**

completion of Supreme Court proceedings (subject to any further order of this or any other Court lifting the stay). The longer stay preferred by the Republic might be much longer indeed; it might even last forever, if Crystallex's speculation is correct that OFAC will not issue a license until a winning bidder has been identified (which cannot happen if this Court refuses to proceed with a sale until after a license is obtained).[14] A stay any longer than the one the Court is entering

> **the shares, contingent upon the winning bidder obtaining a license from OFAC?**
>
> No. Parties who have attached shares of an entity whose property and interests in property are blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591) must obtain a specific license from OFAC prior to conducting an auction or other sale, including a contingent auction or other sale, or taking other concrete steps in furtherance of an auction or sale. More generally, OFAC urges caution in proceeding with any step in furtherance of measures which might alter or affect blocked property or interests in blocked property. OFAC would consider license applications seeking to authorize such activities on a case-by-case basis. . . .

(D.I. 150-1)

Crystallex responded on December 11, 2019 by reiterating its position that the steps it proposes occur now – including requiring an answer to the writ and briefing how an eventual sale will be conducted without actually conducting such a sale – are still consistent with the OFAC guidance. (*See* D.I. 153) The Court recognizes that it has discretion to move forward in the manner Crystallex requests. However, for the reasons explained throughout this Order, the Court believes the most reasonable and appropriate exercise of its discretion is to not proceed until after litigation over the issues the Court has already resolved is concluded at the Supreme Court (one way or another). (*See also* 18-cv-1963 D.I. 38 (letter filed by creditor Saint-Gobain Performance Plastics Europe in response to Republic and PDVSA's December 9 letter); 19-mc-290 D.I. 25 (letter filed by creditor OI European Group B.V. in response to same))

[14] *See* Tr. at 24; *see also id.* at 66-68 (Crystallex: "There's no question that the U.S. Government knows what is going on here, but it's all somewhat hypothetical until we have a buyer identified and they can say, is this a good buyer? . . . OFAC is not going to be able to make that decision until they know who the party is and then we will do it. . . . [T]o ask them to take a position at this point in time in the abstract is really just asking them to, asking them for the purpose of causing additional delay here.").

today is not, at this time, warranted.

Given the Court's reasoning, it follows that now is not the appropriate time to require the Republic to answer the writ or for the Court to engage in the likely complicated and time-consuming effort to delineate the process for conducting a sale of the attached assets, both of which Crystallex requests be done expeditiously. (*See* D.I. 139 at 4-6; *see also generally id.* at 15 (CITGO observing that "[a] sale of privately-held stock of the magnitude at issue in this case is unprecedented")) Nor is now the appropriate time to litigate a motion to quash the writ or for reconsideration under Federal Rule of Civil Procedure 60(b), as the Republic and PDVSA suggest could also be done at this point. (*See id.* at 14) Instead, the legal issues presented by the Republic and PDVSA's appeal from this Court's August 2018 opinion should first receive their final determination with completion of the Supreme Court proceedings, however and whenever they end.

In the meantime, should Crystallex (or any other party, including any other creditor in the actions being stayed by this Order) believe it can persuade the Court that additional steps toward an eventual execution should be taken, it may so move. In the absence of receiving and granting such a motion, this Court will await the conclusion of the Supreme Court process.

2.      Further in the *Crystallex Asset Proceeding*, (a) Rosneft Trading S.A.'s motion to

---

Another creditor, OI European Group B.V. ("OI"), has sought a license from OFAC and (as far as the record reveals) that request is still pending. (*See, e.g.*, Tr. at 57-58) OI, like Crystallex, insists "if the stay isn't vacated in this court, then they certainly aren't going to do anything at OFAC and we are going to be stuck here for a long time." (*Id.* at 51)

As explained below, the Court is hopeful it will hear directly from some entity of the Executive Branch, perhaps including OFAC, so that it need not speculate whether OFAC will refrain from issuing a license until after the bidding process is completed.

intervene (D.I. 100) is **GRANTED**; (b) CITGO's motion to intervene (D.I. 101) is **GRANTED**; (c) the Bondholders'[15] motion to intervene (D.I. 103) is **GRANTED**; and (d) PDVH's motion to extend its obligation to file a verified answer (D.I. 109) is **GRANTED**. After the stay is lifted, the parties should advise the Court as to their positions as to when an answer should be required.

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Third Circuit has articulated four elements that must be established to permit intervention pursuant to Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Terr. of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014). "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). The Third Circuit's approach favors "pragmatism" and "elasticity" over "rigid rules" or "narrow approach[es];" it further "favors intervention over subsequent collateral attacks." *Id.* at 970-71.

Each of the requirements is met by each of the proposed intervenors. The applications for

---

[15]The "Bondholders" are BlackRock Financial Management, Inc. and its affiliates, on behalf of certain client funds and accounts under management, and Contrarian Capital Management, L.L.C., also on behalf of client funds and accounts that it manages, as holders of bonds issued by PDVSA. (*See* D.I. 103)

intervention were timely, as they were consistent with the timing set out in the Court's August 23, 2018 Order. (D.I. 95 at 2) Each of the creditors (Rosneft and the Bondholders) has a sufficient interest to protect (i.e., an interest in collecting money owed to them by the Republic) that may be affected or impaired by the disposition of this action (if Crystallex collects $1.2 billion from the sale of PDVH shares, those assets will not be available to satisfy debts owed to others), which is not adequately represented by the existing parties in this litigation.

CITGO's interest is based on the fact that CITGO and its parent, CITGO Holding, Inc., are parties to various agreements that are secured by assets that could be impacted by the outcome of the *Crystallex Asset Proceeding.* Certain CITGO assets could be harmed by these proceedings (for reasons that are elaborated on in portions of CITGO's filings that are currently sealed). (*See, e.g.*, D.I. 101 at 3-6) CITGO's interest is not adequately represented by any existing party in the litigation.

In considering all the relevant facts and circumstances, and preferring pragmatism and elasticity over rigidity, the Court can identify no prejudice to Crystallex in granting the intervention motions.

3. *Crystallex I* and *Crystallex II* will remain **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay. (*See* C.A. No. 15-1082 D.I. 115) Only Rosneft opposes the continued stay, seeking instead dismissal, based on the purported futility of amendment of Crystallex's claim under the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 Del. C. § 1301 *et seq.*, given the Third Circuit's reversal of this Court's 2016 decision in *Crystallex I*, 213 F. Supp. 3d 683 (D. Del. 2016), *rev'd by Crystallex Int'l Corp. v. Petróleos de Venezuela,*

*S.A.*, 879 F.3d 79 (3d Cir. 2018). The Court does not see any need to evaluate the futility of any proposed amendment at this time, particularly as *Crystallex I* and *Crystallex II* may become moot depending on what occurs in the *Crystallex Asset Proceeding*. (*See, e.g.*, Tr. at 47) (Crystallex explaining that it hopes to satisfy its judgment in *Crystallex Asset Proceeding*, thereby mooting *Crystallex I* and *II*)

4. *ConocoPhillips I* and *ConocoPhillips II* will remain **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay. (*See* C.A. 16-904 D.I. 67) Only Rosneft opposes the continued stay, seeking dismissal instead, for the same reasons noted above in connection with *Crystallex I* and *Crystallex II*. For the same reasons given above with respect to those cases, the Court also decides not to dismiss these *ConocoPhillips* cases.

5. OI, another creditor of the Republic, seeks an order granting a writ of attachment like the one granted to Crystallex in the *Crystallex Asset Proceeding*. (*See OI European Group, B.V. v. Bolivarian Republic of Venezuela*, 19-mc-290 D.I. 2) OI's principal contention is that the Court has already found that PDVSA is the Republic's alter ego, so the Republic and PDVSA are barred by the doctrine of collateral estoppel from relitigating this issue. (*See* 19-mc-290 D.I. 3 at 1, 8-14; *see also* Tr. at 51) ("[W]e're another secured creditor, precisely, or about to be, if the writ is granted, situated precisely as Crystallex was, except that we come second. And so under basic principles of collateral estoppel, the same rules should apply.") The Court disagrees. *See generally Crystallex* Aug. 9 Op. at 425 ("[T]he collateral estoppel effect of any ruling from this Court will be a matter to be decided by whatever . . . court is confronted with these issues at a later time.").

A party asserting collateral estoppel must prove the following elements: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003) (alterations in original).

The question of whether PDVSA can, under the present circumstances, be deemed an alter ego of the Republic is not identical to the issue decided in the *Crystallex Asset Proceeding*, and has not been actually litigated and decided on the merits. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974) ("It is well settled that changed factual circumstances [when they are "material" or "controlling"] can operate to preclude the application of collateral estoppel."). As the Republic persuasively argues: "things are not at all the same" as they were when the Court made its findings in the *Crystallex Asset Proceeding*. (Tr. at 55) "The relevant portion of PDVSA, which is the property in the U.S., is under different control under a new legal regime . . ., recognized by the U.S." (*Id.* at 55-56) Thus, the Court agrees with the Republic that "[t]he alter-ego status today was not actually litigated and necessarily decided in [the Court's] decision in August of 2018." (Tr. at 57)

Nor is it clear that the pertinent date as to which the Court must decide whether PDVSA was or is the alter ego of Venezuela in connection with OI's action is the same August 2018 date the Court analyzed in the *Crystallex Asset Proceeding*.[16] Instead, the pertinent date on which an

---

[16] *See generally Crystallex* Aug. 9 Op. at 391 ("[T]he shares of PDVH . . . are, ***at this time***, really the property of Venezuela.") (emphasis added); *Crystallex* App. Op. at 150 (assessing "commercial use" element of FSIA attachment immunity analysis under "a totality-of-the-circumstances" standard "***at the moment*** the writ is executed") (emphasis added).

14

alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors. The Court is not persuaded at this point that its finding of an alter ego relationship as of August 2018 is dispositive of whether such a relationship existed at any other time.

Moreover, the Third Circuit expressly noted in its *Crystallex* Appellate Opinion: "On remand, Venezuela may direct to the District Court credible arguments to expand the record with later events." *Crystallex* App. Op. at 144; *see also Crystallex* Aug. 9 Op. at 424-25 ("[T]he record which has persuaded this Court that PDVSA and Venezuela should be treated as alter egos of one another may not be the same record that is created in some other action. Indeed, even in this case, the record may be supplemented in the next stage of the proceedings . . . which could potentially lead to different findings."); *id.* at 425 (identifying as "unsettled" whether "Venezuela, PDVSA, and/or any other entity [may] appear and seek to supplement the factual record already developed in this litigation and, if so, will such an entity attempt to (and if so, be permitted to) argue that additional evidence materially alters the Court's findings"). If even the *Crystallex Asset Proceeding* record may possibly be expanded, it must be that the Court has discretion in the non-Crystallex actions to consider a record other than (or in addition to) the record created in the *Crystallex Asset Proceeding*.

Yet another reason collateral estoppel will not be applied is that equitable principles disfavor its application in the circumstances presented here. "Even when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." *Nat'l R.R. Passenger Corp.*, 288 F.3d at 528; *see also Parklane*

15

*Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979) ("[Where] the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."); *Smith v. Borough of Dunsmore*, 516 Fed. App'x 194 (3d Cir. 2013) (recognizing courts "have broad discretion to determine when to apply non-mutual offensive collateral estoppel") (internal quotation marks omitted). The same concerns that have persuaded the Court it is appropriate to stay these actions until conclusion of the Supreme Court proceedings likewise suggest that the equities do not favor the application of collateral estoppel that creditors, including OI, are seeking.

Since collateral estoppel does not apply, any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date.[17] In attempting to meet this burden, any creditor may be able to find support (perhaps strong support) in the record created in the *Crystallex Asset Proceeding* and the finding reached (and affirmed)[18] there. But that is a determination that will

---

[17]At least with respect to *execution* of a writ, the Third Circuit has explained that a "totality-of-the-circumstances inquiry" applies. *Crystallex* App. Op. at 150. "[N]arrowing the temporal inquiry to [just] the day the writ is executed [would] unnecessarily leave[] room for manipulation." *Id.*; *see also id.* ("This analysis should include an examination of the uses of the property in the past as well as all facts related to its present use, with an eye toward determining whether the commercial use of the property, if any, is so exceptional that it is an out of character use for that particular property.") (internal citation and quotation marks omitted). It may be that the "temporal inquiry" with respect to immunity from suit and issuance of the writ (i.e., "extensive-control" analysis) calls for a similar totality analysis. The Court need not decide these issues at this point.

[18]The Third Circuit evidently found it easy to affirm this Court's finding. *See, e.g.*, *Crystallex* App. Op. at 133 (noting that Venezuela did "not substantially contest the District Court's finding that it extensively controlled PDVSA"); *id.* at 144 (noting that outcome would have been the same even if clear and convincing evidence standard applied); *id.* at 146 ("PDVSA effectively conceded that Crystallex satisfied each factor under *Rubin* at oral argument"); *id.* at 152 ("[W]here a foreign sovereign exerts dominion over the instrumentality so extensive as to be

16

need to be made in each non-Crystallex case, at the appropriate time.

From all of the foregoing, it follows that a creditor like OI must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date – just as Crystallex did in connection with its writ of attachment.[19] OI has failed to present any evidence other than attempting to rely on the record created in the *Crystallex Asset Proceeding*. As collateral estoppel does not apply, OI has failed to meet its burden of proof. Accordingly, OI's motion for a writ of attachment (19-mc-290 D.I. 2) is **DENIED**.

Further, for the same reasons given above in connection with the *Crystallex Asset Proceeding*, 19-mc-290 is **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay.

6. For the same reasons given above in connection with the *Crystallex Asset Proceeding*, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 19-cv-290, is **STAYED** until completion of the Supreme Court proceedings in the *Crystallex Asset Proceeding* or further order of this or any other Court lifting the stay. (*See also* Tr. at 60) (counsel for CITGO explaining this case is "basically tracking the *Conoco* civil cases and *Crystallex* civil

_____

beyond normal supervisory control . . . equity requires that we ignore the formal separateness of the two entities. This [case] clears that bar ***easily***.") (emphasis added); *see also id.* at 146 (noting that any "equitable basis" required to rebut presumption of separateness between Venezuela and PDVSA "is easily satisfied here").

[19]The Third Circuit noted Venezuela's argument that the "appropriate point of reference for the extensive-control analysis" is "the moment the writ is issued." *Crystallex* App. Op. at 144. For purposes of appellate review, the Third Circuit rejected the contention that it should analyze the extensive-control question as of a date different than the date this Court analyzed, as the Third Circuit's task was to review this Court's analysis. *See id.* While Venezuela "points to no authority for [its] proposition" that the only pertinent date is the date the writ is issued, *id.*, this Court does not (and need not at this point) decide which date is the pertinent date for undertaking an extensive-control analysis in any of the non-Crystallex cases.

cases")

7.      Saint-Gobain Performance Plastics Europe ("Saint-Gobain") is another creditor of the Republic. *See Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 18-cv-1963. Saint-Gobain has an International Centre for Settlement of Investment Disputes ("ICSID") award on which it seeks to collect. On December 5, 2019, the Court heard oral argument on Saint-Gobain's motion for entry of default judgment and the Republic and PDVSA's cross-motion to vacate the Clerk's entry of default.

For the reasons stated below, (a) Saint-Gobain's motion for default judgment (D.I. 11) is **DENIED**; (b) the Republic's and PDVSA's motions to vacate the entry of default are **GRANTED**; (c) the Republic's motion to transfer is **GRANTED** and this action as against the Republic will be **TRANSFERRED** to the United States District Court for the District of Columbia, as the District of Delaware is not a proper venue; and (d) this action as against PDVSA is **DISMISSED**, as there has not been proper service.

Because the Court is granting the Republic and PDVSA's motion to vacate the Clerk's entry of default, for the reasons to be explained, it follows that the Court cannot grant Saint-Gobain's motion to enter a default judgment. *See Church-El v. Bank of N.Y.*, 2013 WL 1190013, at *4 (D. Del. Mar. 21, 2013) ("The Third Circuit and multiple district courts within the Circuit have recognized that an entry of default or a default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking.") (citing cases); Fed. R. Civ. Proc. 55 (explaining that entry of default judgment involves two-step process, beginning with Clerk's entry of default). Further, there is "good cause" to set aside the default against the Republic because it will not prejudice Saint-Gobain

18

(which presumably will have an opportunity after the case is transferred to continue to attempt to collect on its ICSID judgment); the Republic has a meritorious defense to proceeding here (i.e., improper venue); and the default was not the result of the Republic's "culpable conduct" but rather due (at least as it appears from the record) to the change in government in the Republic, the crises that nation is experiencing, and a vast amount of pending litigation confronting Venezuela. *See* Fed. R. Civ. Pro. 55(c); *see also Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).[20]

The Court is vacating the Clerk's entry of default as to the Republic and transferring this action as against the Republic because venue is not proper in the District of Delaware. Saint-Gobain's contention that Delaware is a proper venue turns on two propositions: that PDVSA is "doing business" in Delaware (through PDVH) and that PDVSA is Venezuela's alter ego. (*See, e.g.*, 18-cv-1963 D.I. 21 at 9-11 (citing 28 U.S.C. § 1391(f)(3); *see also id.* D.I. 1 at 3 ¶ 5 (Saint-Gobain alleging: "Venue in this District is proper under 28 U.S.C. § 1391(f)(3) because Defendant PDVSA is an instrumentality of Venezuela that does business in Delaware through PDVH.")) Neither of these propositions has been established in this case.

First, in the *Crystallex Asset Proceeding*, this Court found that PDVSA has "used" PDVH stock "for a commercial activity" within the meaning of 28 U.S.C. § 1610, a finding affirmed by the Third Circuit, *see Crystallex* App. Op. at 149-50. Contrary to Saint-Gobain's contention, however, that finding does not equate to a finding that Venezuela (through PDVSA) is "doing business" in Delaware, as that term is understood in the context of 28 U.S.C. § 1391(f)(3). (*See*

---

[20]The Court need not analyze whether there is "good cause" to set aside the default against PDVSA because the case against PDVSA is being dismissed.

19

18-cv-1963 D.I. 21 at 9-11)  Instead, the "used . . . for a commercial activity" finding was based on the distinction between "a foreign government act[ing] . . . as a regulator of a market" and one acting "in the manner of a private player within it," *Crystallex* App. Op. at 150;[21] *see also Crystallex* Aug. 9 Op. at 418 (same), which is a different inquiry than whether the foreign government is "doing business."  *See generally Vivadent (USA), Inc. v. Darby Dental Supply Co.*, 655 F. Supp. 1359, 1362 (D.N.J. 1987) ("[An entity] will be held to be 'doing business' for purposes of section 1391(c) if its activities within the district are such that its business has become localized and is in operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business.") (emphasis omitted).   Not every "private player" act taken by a sovereign in the market constitutes "doing business" or would require a license.

Second, and for reasons already explained, Saint-Gobain (like OI) has not demonstrated that PDVSA is or was the alter ego of Venezuela as of the pertinent date.

The proper venue for this action as against the Republic is the United States District Court for the District of Columbia ("D.C. Court").  *See* 28 U.S.C. § 1391(f)(1) (FSIA provision requiring civil action against foreign state be brought in D.C. Court unless "a substantial part of

---

[21]As the Third Circuit explained in the *Crystallex* Appellate Opinion:

> [T]he phrase commercial activity captures the distinction between state sovereign acts, on the one hand, and state commercial and private acts, on the other.  [W]hen a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are commercial within the meaning of the [Sovereign Immunities Act].  Commercial actions include those that . . . are the type of actions by which a private party engages in trade and traffic or commerce.

*Crystallex* App. Op. at 150 (internal citations, quotation marks, and emphasis omitted).

the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," in another District). The Court will transfer (rather than dismiss) this action to the D.C. Court.

The case as against PDVSA is being dismissed because PDVSA has not been properly served. The FSIA permits four methods by which a plaintiff may effect service on a defendant foreign sovereign, the second of which is "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). Here, the applicable convention on service of judicial documents is the Hague Service Convention.[22] The Hague Service Convention requires member-states to establish a Central Authority to receive and process requests for service of documents from other countries, and to effectuate such service. *See* Hague Service Convention art. 2. Once service has been effectuated, the Central Authority is then required to complete a certificate detailing the circumstances of service or explaining why service was prevented, and return that certificate directly to the service applicant. *See* Hague Service Convention art. 6. Service is deemed to be "made" on the date of service set forth in the certificate of service provided by the Central Authority. *See* 28 U.S.C. § 1608(c)(2).

Saint-Gobain couriered service papers to the Venezuelan Foreign Ministry, which Venezuela has designated as its Central Authority, but the Central Authority never returned a completed certificate of service to Saint-Gobain. (18-cv-1963 D.I. 11 at 11-12) The Hague Service Convention contemplates such a situation and does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate. For example,

---

[22]*See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

the first paragraph of Article 15 of the Hague Service Convention provides that a default judgment may be entered where "the document was ***actually delivered to the defendant*** or to his residence by another method provided for by this Convention." Hague Service Convention art. 15 (emphasis added).[23] Pursuant to this first paragraph of Article 15, the Court finds (based on the undisputed evidence) that Saint-Gobain has served the Republic. By "actually deliver[ing] to the defendant," i.e., the Republic, by serving the appropriate documents directly to the Central Authority designated by the Republic of Venezuela, Saint-Gobain served the Republic, notwithstanding the Republic's failure to provide Saint-Gobain a certificate.[24]

The analysis is different for service on PDVSA. For the same reasons given above in connection with OI's motion, the Court finds that Saint-Gobain has failed at this point to meet its burden to prove that PDVSA is the alter ego of Venezuela as of the pertinent date in the *Saint-Gobain* action. Saint-Gobain has provided no evidence that PDVSA should be treated as the alter ego of the Republic other than pointing generally to the record and holding in the *Crystallex*

---

[23]In other words, the first paragraph, by setting out that "judgment shall not be given until it is established" that at least one of the disjunctive conditions of paragraph 1 is met, provides that judgment ***may*** be given once such a condition is established.

The Republic reads the first paragraph of Article 15 as delineating a necessary but not independently sufficient condition for service. (*See, e.g.*, 18-cv-1963 Dec. 5, 2019 Tr. at 26-35, 57; *see also id.* D.I. 18 at 14-17) The Republic further contends that the conditions set out in the second paragraph of Article 15 must be found satisfied in order to find that the Republic has been served, in the absence of a completed certificate of service. (*See id.* Dec. 5, 2019 Tr. at 27) The Court disagrees. The second paragraph does not limit applicability of the first paragraph. Instead, it provides another manner of perfecting service despite a sovereign's failure to complete a certificate, "notwithstanding the provisions of the first paragraph." Hague Service Convention art. 15.

[24]The Republic's argument that personal jurisdiction is lacking is rejected, as it relies on the premise of improper service, which the Court has rejected. (*See* 18-cv-1963 D.I. 18 at 10-11)

22

*Asset Proceeding*. As Saint-Gobain has itself admitted, unless PDVSA is viewed as the alter ego of Venezuela, there has been no service on PDVSA. Therefore, the case as against PDVSA must be dismissed. (Consequently, the Court will not address PDVSA's other arguments for dismissal.)

8. Finally, the Court invites and would welcome any input that the Executive Branch of the United States Government would like to provide at any and all future stages of any of the above-captioned actions. If, as would be entirely acceptable to the Court, the Executive Branch wishes to provide input during the pendency of the stay of any of these actions, any party may provide a brief response to any such submission in a timely manner, notwithstanding the stay.

The Court will deliver a copy of this Order to the United States Attorney for the District of Delaware ("USAO") and requests that the USAO take reasonable efforts to ensure that copies of the Order are received by the pertinent offices within the United States Department of Justice. (*See* Tr. at 65, 70) (counsel for Republic suggesting this course of action)[25]

December 12, 2019
Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[25]The Court does not mean to suggest that it will automatically or necessarily defer to whatever views and preferences the Executive Branch may express. (*See generally* D.I. 153) (contending that certain readings of OFAC FAQs "would raise potential separation of powers concerns") But the Court does feel its analysis of the issues it must decide will be better informed if it hears directly from the Executive Branch.

23

| | | | |
|---|---|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-129 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 43, 45 |
| | : | | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | | |
| | : | | |
| Defendant. | : | | |

## ORDER AND FINAL JUDGMENT

For the reasons stated in the Court's Memorandum Opinion separately and contemporaneously issued, Plaintiff's Motion for Summary Judgment (ECF No. 43) is **GRANTED** and Defendant's Motion for Dismissal (ECF No. 45) is **DENIED**.

It is **FURTHER ORDERED** that the Award rendered pursuant to the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention") in Plaintiff's favor and against Defendant, ECF No. 3-1, is, pursuant to 22 U.S.C. § 1650(a), **RECOGNIZED, ENTERED AND RECORDED** as a judgment by the Clerk of Court in the same way and with the same force and effect as if the Award were a final judgment of a court of general jurisdiction in the United States.

It is **FURTHER ORDERED** that, in accordance with the Award, Defendant shall pay Plaintiff the amount equal to the pecuniary obligations of the Award, compromising (i) US$ 29.6 million as to the principal amount of compensation, in addition to US$ 4.8 million as pre-award interest from May 15, 2010 through March 31, 2017, with further pre-award interest through November 3, 2017 in the amount of US$ 542,189.80, and post- award interest at a rate of 2% over the average 6-month U.S. Treasury bill rate, compounded annually; (ii) US$ 1,303,189.99

as to the costs of the arbitration subject to post-award interest at a rate of 2% over the average 6-month U.S. Treasury bill rate, compounded annually; and (iii) US$ 4,634,532.05 representing two-thirds of Plaintiff's legal fees and expenses, also subject to post-award interest through the date of satisfaction of the Award at a rate of 2% over the average 6-month U.S. Treasury bill rate, compounded annually.

**SO ORDERED**.

Dated:  February 1, 2021

RUDOLPH CONTRERAS
United States District Judge

SAINT-GOBAIN PERFORMANCE
PLASTICS EUROPE,

     Plaintiff,

     v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

     Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 20-129 (RC)

Re Document Nos.: 43, 45

## MEMORANDUM OPINION
### GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
### DENYING DEFENDANT'S CROSS-MOTION TO DISMISS
## I. INTRODUCTION

Plaintiff Saint-Gobain Performance Plastics Europe ("Saint-Gobain") initially filed this action in the United States District Court for the District of Delaware, seeking to register and enforce an arbitration award made pursuant to the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention" or "ICSID"), against Defendant the Bolivarian Republic of Venezuela ("the Republic"). The Republic did not appear, and Saint-Gobain moved for a default judgment. The Republic then appeared to challenge Saint-Gobain's service of process, arguing that it had not been properly served under the Hague Service Convention, and that venue was also improper in the District of Delaware. Chief Judge Leonard P. Stark of the District Court in Delaware determined that Saint-Gobain had properly served the Republic under the Hague Service Convention, but agreed with the Republic that venue was improper in the District of Delaware and transferred the action to this Court. Saint-Gobain now brings a motion for summary judgment, asking this Court to enter a judgment registering and enforcing the arbitration award at issue. In response, the Republic has brought a cross-motion for dismissal, claiming the action must be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(5) for failure to properly effect service. Because Judge Stark has previously concluded that service of process was properly made in this action, the Republic's motion will be evaluated as a motion for reconsideration. The Court finds that Judge Stark's determination was correct, and does not constitute legal error. Accordingly, Saint-Gobain's motion for summary judgment is granted, while the Republic's cross-motion to dismiss is denied.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff Saint-Gobain is a French corporation who held a 99.99% interest in NorPro Venezuela C.A., a Venezuelan company that manufactured components used in the fracking process. Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 1, ECF No. 43-2. On March 29, 2011, Hugo Chávez, the then-president of Venezuela, ordered the expropriation of Saint-Gobain's interest. Compl. ¶ 16, ECF No. 1; *see also* Yanos Decl. Ex. 3 ("Decision on Liability") ¶¶ 245–47, ECF No. 3-3. Because Saint-Gobain was protected under the France-Venezuela Bilateral Investment Treaty of April 15, 2004, Saint-Gobain and the Republic entered into arbitration to resolve the dispute. Pl.'s SMF ¶¶ 5, 7–8. Saint-Gobain filed a request for arbitration pursuant to the ICSID Convention, which was registered as ICSID Case Number ARB/12/13 of June 15, 2012.[1]  *Id.* ¶¶ 9–10.

Pursuant to the ICSID Convention and Arbitration Rules, a Tribunal was formed to consider the dispute. Written submissions were made, and after a four-day oral hearing the

---

[1] Venezuela withdrew from the ICSID Convention on January 25, 2012, with the withdrawal taking effect roughly one-month after the registration of this dispute on July 25, 2012. This action, however, has no impact on this case as both parties gave their consent to arbitrate prior to Venezuela's withdrawal, and neither party disputes the Tribunal's jurisdiction over Saint-Gobain's claims. *See* Pl.'s SMF ¶ 6.

Tribunal rendered, on December 30, 2016, a Decision on Liability and the Principles of Quantum, finding that the Republic had breached the France-Venezuela Bilateral Investment Treaty due to its acts of expropriation. *Id.* ¶ 11; *see also* Decision on Liability ¶ 908. The same Tribunal issued an award of $42 million to Saint-Gobain on November 3, 2017, which as of March 9, 2020 has accrued with interest to US$ 44,229,629.66. Pl.'s SMF ¶¶ 13, 28. The Republic does not contest that this award is final and binding. *See* Pl.'s Mot. Summ. J. Ex. 4 ("Status Conf. Tr.") at 5:25-6:3 (statement by the Republic's counsel asserting that "we are not going to challenge the merits of the arbitral award in this or any other court. The arbitral award— as a matter of substance, the Republic is prepared to accept . . ."), ECF No. 43-7. However, the Republic has not yet paid any of the amounts owed under the award. Pl.'s SMF ¶ 27.

In December 2018, Saint-Gobain filed this action in the U.S. District of Court for the District of Delaware seeking registration of the award as a Foreign Judgment and enforcement of the award pursuant to 22 U.S.C. § 1650(a). *See* Compl. ¶¶ 30–38. Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1969) ("Hague Service Convention" or "the Convention"), Saint-Gobain sought to serve the Republic with the summons and Complaint in this action. Pl.'s SMF ¶ 20. To this end, on December 14, 2018, Saint-Gobain sent via certified mail "(i) duly-executed USM-94 'Request for Service Abroad of Judicial or Extrajudicial Documents' forms in duplicate English and Spanish versions addressed to [the Republic], together with duplicate English and Spanish copies of: (ii) the summons and Complaint in this action, (iii) five supporting exhibits and (iv) notice of right to consent to trial before a magistrate judge, to the Central Authority designated by Venezuela for international service of process pursuant to the Hague Service Convention." *Id.* ¶ 21. On December 21, 2018 and December 27, 2018 these deliveries were

signed for by T. Flores and I. Ruiz respectively, two individuals Saint-Gobain asserts were employees of the Venezuelan Foreign Ministry. *Id.* ¶ 22; *see also* Def.'s Response to Pl.'s Statement of Material Facts ¶ 22 (noting "the Republic disputes Plaintiff's characterization of these individuals as employees of the Foreign Ministry" as Saint-Gobain "has not come forward with any evidence or other information supporting its assertion as to that relationship"), ECF No. 47. No further response or action from the Central Authority occurred after the packages were delivered. *See* Pl.'s SMF ¶ 23. [2]

Because of this lack of response, the clerk of the United States District Court for the District of Delaware entered a default against the Republic on June 12, 2019. Pl.'s SMF ¶ 23. Saint-Gobain moved for a default judgment on June 24, 2019. *Id.* ¶ 24. On August 7, 2019, counsel for the Republic opposed Saint-Gobain's motion for default and requested that the court vacate the clerk's entry of default, challenging Saint-Gobain's service of process under the Hague Service Convention and also arguing that venue was improper in Delaware.[3] *Id.* ¶ 25. On

---

[2] Important to this timeline is the fact that shortly after the delivery of the documents in question, Venezuela devolved into political upheaval. In response to then-President Mr. Nicolas Maduro claiming victory in a presidential election many contend was fraudulent, the Venezuela National Assembly President Juan Guaidó assumed the Presidency of Venezuela on January 23, 2019. The United States has since recognized Mr. Guaidó as the legitimate President of Venezuela. *See* U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S. Dep't of State (Feb. 5, 2019), https://2017-2021.state.gov/u-s-supports-democratic-aspirations-of-the-venezuelan-people/index.html. However, Mr. Maduro still controls the Ministry of Foreign Affairs and Ministry of Justice, though the courts of the United States are required to only recognize the Guaidó administration as the legitimate representative of Venezuela.

[3] Under the Foreign Sovereign Immunities Act ("FSIA"), actions to confirm arbitral awards levied against foreign sovereigns are most frequently to be filed in the Federal District Court for the District of Columbia. *See* 28 U.S.C. § 1391(f). Saint-Gobain brought the suit initially in the District of Delaware because that court had previously ruled that Petroleso de Venezuela S.A., the Venezuelan state oil company, was Venezuela's alter ego and was subject to suit in Delaware. *See* Mem. Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 6, ECF No. 43-1 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 414 (D. Del. 2018)).

December 12, 2019, Chief Judge Leonard P. Stark of the District Court in Delaware vacated the clerk's entry of default and denied Saint-Gobain's motion for default judgment, determining that while Saint-Gobain had properly served the Republic under the Hague Service Convention, venue was improper in the District of Delaware. *Id.* ¶ 26; *see also* Dec. 12, 2019 Mem. Order ("Stark Decision") at 21–22, ECF No. 39. Judge Stark transferred the action to this Court on January 16, 2020. Pl.'s SMF ¶ 26.

Saint-Gobain now brings a motion for summary judgment, asking this Court to enter a judgment registering and enforcing the award in question. *See* Pl.'s Mot. at 1. In response, the Republic has brought a cross-motion for dismissal, claiming that the action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5), arguing that the actions taken under the Hague Service Convention failed to properly effect service in compliance with the FSIA. *See* Def.'s Cross Mot. to Dismiss Compl. ("Def.'s Mot.") at 1, ECF No. 45. Both of these motions have been fully briefed and are now ripe for decision.

### III. LEGAL STANDARDS

### A. Motion to Dismiss for Inadequate Service of Process

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Accordingly, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A "[r]ule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) (citing 5B C. Miller & A. Wright, Federal Practice & Procedure: Civil § 1353 (3d ed.

2006)); *see, e.g.*, *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) (12(b)(5) motion to dismiss challenging service made in accordance with the terms of the Hague Convention). The burden to establish the validity of the purported service rests on "[t]he party on whose behalf service [was] made." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quotations omitted).

### B. Motion for Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "material" fact is one capable of affecting the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

In response, the non-movant must identify specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In determining whether a genuine issue exists, a court must refrain from making credibility determinations or weighing the evidence; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citation omitted). "In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent

evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute." *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 19–20 (D.D.C. 2016) (citing Fed. R. Civ. P. 56(c)(1)).[4]

Summary judgment to confirm and enforce an ICSID arbitration award should be granted where the party seeking recognition or enforcement provides a copy of the award to the relevant court, *see* ICSID Convention Art. 54(2)*,* and where there are no defenses to enforcement. *See, e.g.*, *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019). This is because courts have an "exceptionally limited" role in enforcing ICSID arbitral awards, which in this instance consists solely of ensuring that personal jurisdiction is proper. *Id.*; *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017) ("[U]nder the Convention's terms, [member state's courts] may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award."). When these preconditions are met, an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a). Saint-Gobain has provided the Court with a copy of the Award certified by the Secretary-General, as required. *See generally,* Decision on Liability. The Republic does not dispute the Award's authenticity. Furthermore, there are no

---

[4] This District has supplemented Rule 56 with Local Civil Rule 7(h), pursuant to which a party filing a motion for summary judgment must include a statement of material facts as to which that party contends there is no genuine dispute. *See Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59, 63–64 (D.D.C. 2011). "The party opposing the motion must, in turn, submit a statement enumerating all material facts which the party contends are genuinely disputed." *Id*. at 63 (citing LCvR 7(h)(1)). This local rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Id*. at 63–64 (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996)).

material facts in dispute.  The Republic argues only that due to a defect in service of process, personal jurisdiction is lacking, and the Award cannot be confirmed.  Def.'s Mot. at 1.  It is this issue the Court will now review.

## IV.  ANALYSIS

### A.  Preliminary Issues

A number of procedural issues must be addressed before the Court proceeds to the substantive question in this case.  Saint-Gobain asserts that the Republic is barred from bringing their current motion to dismiss on the grounds of waiver.  Saint-Gobain also relies on the law-of-the-case doctrine to argue that this Court should abstain altogether from reconsideration of Judge Stark's determination that Saint-Gobain had properly served the Republic under the Hague Service Convention.  Finally, Saint-Gobain contends that the Republic is barred from raising new arguments not previously brought before Judge Stark in his determination that service of process was properly made on the Republic.  The Court considers each of these arguments in turn.

### 1.  Waiver of 12(b)(5) Defense

The Court can quickly dispose of Saint-Gobain's first procedural argument, in which they argue that the Republic's Cross-Motion to Dismiss must be dismissed as untimely.  *See* Pl.'s Reply in Support of Mot. for Summ. J. and Opp'n to Def.'s Cross-Mot. to Dismiss ("Pl.'s Opp'n") at 11, ECF No. 49.  Saint-Gobain claims that "[the Republic] waived the jurisdictional defense based on improper service because it failed to properly assert this defense together with its cross-motion for dismissal based on improper venue before the Delaware district court."  *Id.* at 3.  The Republic calls this claim "false," given the contents of their initial motion to dismiss.

8

Def.'s Reply in Support of Cross-Mot. to Dismiss ("Def.'s Reply) at 14, ECF No. 51. The Court

agrees that this argument by Saint-Gobain is without merit.

Under the Federal Rules of Civil Procedure 12(g) and 12(h), a party will waive an

insufficient service of process defense if they fail to raise this defense in their first motion to

dismiss or responsive pleading. *See Candido v. District of Columbia*, 242 F.R.D. 151, 161

(D.D.C. 2007) ("If a party files a Rule 12(b) motion to dismiss, it may not subsequently assert

any Rule 12(b) defenses that were available when the first Rule 12(b) motion was filed."); *see*

*also Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 n.8 (D.C. Cir. 1988) ("[T]he defense of

lack of service of process. . . is waived if not asserted in a timely manner.").

In accordance with the Federal Rules of Civil Procedure, the Republic's first brief filed in

this matter in the Delaware District Court raised a defense based on improper service, noting that

"Plaintiff has not served the complaint in compliance with the strict requirements of the Foreign

Sovereign Immunities Act, and, as a consequence, there is no personal jurisdiction over the

Republic at this time." Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Default J. ("Def.'s

Default J. Opp'n") at 1, ECF No. 18. Saint-Gobain contends that this still constitutes waiver,

because "[a]t that time. . . Venezuela raised a different jurisdictional defense to service," and not

the "defense based on Article 5 of the Hague Convention which it debuts in this Court." Pl.'s

Opp'n at 11. In short, Saint-Gobain argues that the Republic should be limited to only the

specific service of process defense raised in their first motion. But this is not the law.[5] The

---

[5] Saint-Gobain provides no support for this assertion in its brief, as the cases it cites stand
for only the proposition that a failure to assert a waivable personal jurisdiction defense *in any*
*form* in a party's first responsive briefing waives a party's ability to assert such a defense later.
*See* Pl.'s Opp'n at 11 (citing *Placide Ayissi-Etoh v. Fannie Mae*, 49 F. Supp. 3d 9, 12 (D.D.C.
2014) (deeming defense waived where "Defendants waited years to raise" the improper service
defense in any capacity); *Nichols v. Vilsack*, 183 F. Supp. 3d 39, 41 (D.D.C. 2016) (describing

Federal Rules dictate only that a party must raise a defense of insufficient service of process in its first responsive motion, *see* Fed. R. Civ. P. 12((h)(1), which the Republic properly did, *see* Def.'s Default J. Opp'n at 1; *see also id.* at 10–17. The Republic devoted nearly half of its brief to Saint-Gobain's alleged failure to effect service under the Hague Convention—providing Saint-Gobain plenty of notice of its intent to rely on this defense. Furthermore, while the Republic does augment its prior arguments for lack of service by invoking Article 5 of the Hague Convention in this current round of briefing, it returns to its prior contention that service was not completed under Article 15. And in any case, a party is generally free to raise "new argument[s] to support . . . [a] consistent claim." *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (citing *Yee v. Escondido*, 503 U.S. 519, 534-35 (1992). Accordingly, there has been no waiver, and the Republic is free to proceed with its motion to dismiss based on insufficient service of process.

### 2. Law of the Case Doctrine

The next procedural matter to be resolved by this Court is if, as Saint-Gobain argues, the Court is bound by the law-of-the-case doctrine. Pl.'s Opp'n at 1, 4–5. Judge Stark of the District of Delaware, prior to transferring the case to this Court, issued an opinion concluding that "Saint-Gobain has served the Republic" under the Hague Service Convention. Stark Decision at 22. As a result, Saint-Gobain asserts that Judge Stark's previous determination must stand unless this Court determines it "was clearly erroneous and would work a manifest injustice." Pl.'s Opp'n at 4 (quoting *Kimberlin v. Quinian*, 199 F.3d 496, 500 (D.C. Cir. 1999)). In contrast, the Republic argues that the proper standard for their "request for reconsideration of a non-final

---

general failure to raise defense despite its "availab[ility] when it filed its motion to dismiss Plaintiff's original complaint")).

order" under Federal Rule of Civil Procedure 54(b) is that this Court may grant their request "as justice requires," meaning if it is "necessary under the relevant circumstances." Def.'s Reply at 12–13 (citing *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 80 (D.D.C. 2015)). While in effect the two standards have a great deal of overlap, the Court will review Judge Stark's decision pursuant to the Rule 54(b) standard, though the principles underlying the law-of-the-case doctrine still inform the Court's determination.[6]

The "'[l]aw-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). The doctrine serves to "promote[] the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)). The law-of-the-case doctrine also applies, as is relevant here, "to the decisions of a coordinate court in the same case." *Id.*

However, "'[a]dherence to the doctrine is not mandatory,' but rather left to the district court's sound discretion." *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (citing *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 n.6 (D.D.C. 2004)); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the

---

[6] While not styled as such, the Republic effectively concedes that its cross-motion for dismissal is in effect a "request for reconsideration of [Judge Stark's] non-final order" brought pursuant to Federal Rule of Civil Procedure 54(b). Def.'s Reply at 12. The Court will accordingly treat it as such.

absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (internal quotations omitted).  In this way the doctrine acts not as a jurisdictional bar to review, but rather a general principal of judicial restraint.  *See Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (noting the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power").  This is particularly true in regards to interlocutory orders, such as the non-final determination by Judge Stark at issue here, which "are not subject to the law-of-the-case doctrine and may always be reconsidered prior to final judgment."  *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997)).

The review of interlocutory orders is governed by Federal Rule of Civil Procedure 54(b), which provides that reconsideration should be granted "as justice requires."  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir.1985)).  While the standard is flexible, this Court has interpreted this language to allow reconsideration "of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order."  *Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017).  The moving party must also show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.  *Id.* at 302; *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

But this is not to say that the law-of-the-case doctrine plays no role. Even though interlocutory orders are not "subject to" the law of the case doctrine, "nothing prevents the court from applying the rationales of that doctrine to guide a Rule 54(b) decision."  *Moore v. Hartman*,

332 F. Supp. 2d 252, 256 (D.D.C. 2004).  Consequently, courts have found that their discretion under Rule 54(b) is still "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted).

Against this backdrop, the parties dispute the proper standard of review that should be applied by this Court to evaluate Judge Stark's prior decision on the validity of service upon the Republic.  Saint-Gobain posits that, "[i]n this Circuit, the law of the case may be revisited only in exceptional circumstances such as where 'there is an intervening change in the law or if the previous decision was clearly erroneous and would work a manifest injustice.'"  Pl.'s Opp'n at 4 (citing *Kimberlin v. Quinian*, 199 F.3d 496, 500 (D.C. Cir. 1999)).  But as previously discussed, the law of the case doctrine is not binding on Judge Stark's interlocutory order.  *See Filebark*, 555 F.3d at 1013.  Accordingly, this Court will grant the Republic's 54(b) motion as "justice requires."  *Coulibaly*, 278 F. Supp. 3d at 301; *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014).  While this flexible standard accounts for a variety of considerations, based on the arguments presented the Court will evaluate if Judge Stark's prior decision was made in "error" and if "some harm. . . . [or] some sort of injustice will result if reconsideration is refused."  *Coulibaly*, 278 F. Supp. 3d at 302 (citing *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011)).

### 3.  The Republic's New Arguments

The final procedural matter raised by Saint-Gobain is their contention that the Republic is barred from raising new arguments in this round of briefing that were not previously brought before Judge Stark when he first considered this issue.  *See* Pl.'s Opp'n at 5 (claiming the

Republic "cannot ask the Court to revisit the Delaware Court's decision based on an argument [under Article 5 of the Hague Convention] that it failed to raise before that Court."). Contrary to Saint-Gobain's claims, however, in this Circuit a court can consider new arguments raised for the first time on a Rule 54(b) motion for reconsideration, though only if such an allowance is in the interest of justice.

"Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves . . . [is] flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (citing *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (ellipsis omitted)). In light of this flexibility, the D.C. Circuit has determined that it is "unwarranted" for district courts to impose a flat bar on considering new arguments in reconsideration motions made under Rule 54(b). *Id.* That said, this Court has previously ruled that Rule 54(b) motions for reconsideration "cannot be used as an 'an opportunity to reargue facts and theories upon which a count has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Coulibaly*, 278 F. Supp. 3d at 301 (citing *Est. of Gaither v. District of Columbia,* 771 F.Supp.2d 5, 10 (D.D.C. 2011)). The Republic seeks a second bite at the apple regarding Judge Stark's previous decision on service, though as Saint-Gobain has noted, nothing prevented the Republic from raising arguments under Article 5 previously, given that all of the authorities the Republic invokes to make its argument existed at that time. *See* Pl.'s Opp'n at 5–6. However, given the governing standard, the Court will review the new arguments brought by the Republic to determine if allowing them to proceed is in the interest of justice.

### B. Saint-Gobain Effected Service on the Republic Under the FSIA

The Court will now review Judge Stark's prior finding that the Republic was properly served under the Hague Service Convention, one of the approved methods for service on a foreign sovereign under the FISA. If there was service of process such that this Court can exercise personal jurisdiction over the Republic, then the ICSID judgment must be enforced. [7]

#### 1. Service on Foreign Sovereigns Under FSIA

Under 28 U.S.C. § 1330(b), this Court can exercise personal jurisdiction over a foreign state that is not entitled to sovereign immunity, such as the Republic, but only as long as effective service of process has been obtained under the strictures of the FSIA, 28 U.S.C. § 1608. *See also* H.R. Rep. No. 94-1487, at 23 (1976), 1976 U.S.C.C.A.N. 6604, 6622 ("[The FSIA] sets forth the exclusive procedures with respect to service on . . . a foreign state."); *Mobil Cerro Negro*, 863 F.3d at 100 ("ICSID award-creditors must pursue federal court judgments to enforce their awards against a foreign sovereign by filing a federal action on the award against the sovereign, [and] *serving the sovereign with process in compliance with the FSIA . . .* ") (emphasis added).

The FSIA describes four different methods, listed in descending order of favorability, that are available to plaintiffs to use to effect service on a foreign sovereign defendant. These include: (1) "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision;" (2) "by delivery of a copy of the summons and complaint in accordance with an applicable

---

[7] Saint-Gobain asserts, and the Republic does not dispute, that this Court has subject matter jurisdiction pursuant to Article 54 of the ICSID Convention, which is incorporated into U.S. law at 22 U.S.C. § 1650a(a). Pl.'s Mot. at 9–11. Consequently, this opinion focuses solely on the disputed legal question of personal jurisdiction.

international convention on service of judicial documents;" (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court of the head of the ministry of foreign affairs of the foreign state concerned;" and (4) if none of the first three methods are possible, a plaintiff may serve the necessary documents through diplomatic channels with the assistance of the Department of State. 28 U.S.C. § 1608(a)(1)-(4). A plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Al-Saud*, 681 F.3d 463, 465 (D.C. Cir. 2012) (citing *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)).

The first method of service detailed under 28 U.S.C. § 1608(a)(1) was not available in this case, as neither Saint-Gobain nor the Republic contend that they are party to any "special arrangement for service." Pl.'s Mot. at 12. The next available method under the FSIA dictates that service must be made "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). This method includes the Hague Service Convention, which is the method that Saint-Gobain asserts it employed. Pl.'s Mot. at 12.

The Hague Service Convention is a multilateral treaty designed to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). As is relevant to the matter at hand, member states, such as Venezuela, are required to establish a Central Authority to receive and process requests for service of documents from other countries, and to effectuate such service. *See* Hague Service Convention art. 2, 5; *see also Walton v. Bilinski*, No. 2:15-cv-36, 2015 WL 9489610, at *2 (E.D. Mo. Dec. 30, 2015) (noting "a designated Central Authority" is "[t]he primary method for

16

service of judicial documents abroad."). Pursuant to Article 5 and 6 of the Convention, once service has been effectuated, the Central Authority is then required to complete a certificate detailing the circumstances of service including the method, place and the date of service and the person to whom the document was delivered. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). "If the document has not been served, the certificate shall set out the reasons which have prevented service." Hague Service Convention art. 6. Service is thus deemed "made" on the date of service set forth in the certificate of service provided by the Central Authority. *See* 28 U.S.C. § 1608(c)(2).

The Convention also provides under Article 15 an alternative method to ascertain that service has been made for the purpose of entering a default judgment, even in the situation where a Central Authority fails to complete and return the required certificate. *See Schlunk*, 486 U.S. 694, 705 (1988) (noting Article 15 was intended to be a "sanction against those who ignore" the Convention).[8] Judge Stark provided that this provision is intended to prohibit "a foreign

---

[8] The full text of Article 15 reads:

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that:

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no

17

sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21. As is relevant here, Article 15 provides that a default judgment may be given even in the absence of a completed certificate (presumably because service can inferred) when "it is established that . . .[the writ of summons or an equivalent document] was actually delivered to the defendant or to his residence by another method provided for by this Convention . . . in sufficient time to enable the defendant to defend." Hague Service Convention art. 15(b).

In this matter, both parties agree (as did Judge Stark) that Saint-Gobain couriered papers to the Venezuelan Foreign Ministry, the Republic's designated Central Authority, but that the Central Authority never completed or returned the required certificate of service. *See e.g.,* Pl.'s Mot. at 6; Def.'s Mot. at 6; Stark Decision at 21. The issue is if this delivery alone is sufficient for service to be deemed completed. The Republic argues it is not. Saint-Gobain disagrees.

---

certificate of service or delivery has been received, if all the following conditions are fulfilled -

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Hague Service Convention art. 15.

2. Judge Stark Correctly Found that Service Was Made Under Article 15 of the Convention.

In his December 12, 2019 order, Judge Stark determined that the Republic had been properly served by Saint-Gobain under Article 15 of the Convention. Stark Decision at 21. Article 15 permits a judgment to be issued after a writ of summons or equivalent document, which has been transmitted abroad for the purpose of service, "was actually delivered to the defendant. . . by another method provided for by this Convention." Judge Stark found that Saint-Gobain had fulfilled this requirement "[b]y 'actually deliver[ing] to the defendant,' i.e., the Republic, by serving the appropriate documents directly to the Central Authority designated by the Republic of Venezuela." Stark Decision at 22. At the time, the Republic argued that service was improper under the Hague Convention because delivery to Venezuela's Central Authority only began the service process, which they contend was never completed because the Central Authority never returned a certificate confirming service. *See* Def.'s Default J. Opp'n at 13; *see also* Stark Decision at 21. Judge Stark disagreed and concluded service had been properly made in this instance, noting that the Hague Convention "does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21.

The Republic now argues that reconsideration of this decision is warranted because it was "clearly wrong." Def.'s Mot. at 22. It argues (for the first time), that Article 15 does not authorize service, and that Saint-Gobain failed to meet Article 15's express requirements by failing to deliver the summons in accord with procedures under Venezuelan law for service on the sovereign. Def.'s Reply at 6–7.

The Court agrees with Judge Stark's holding that service was made on the Republic under Article 15 of the Convention, given that his interpretation was reasonable and consistent

with the findings of other courts. For example, in *Scheck v. Republic of Argentina*, the court found that Article 15 allowed for a conclusion that service was completed and jurisdiction over a sovereign state defendant was proper where the "Plaintiffs properly transmitted the documents to the [proper Central Authority]" that then refused to deliver and or provide a certificate for alleged deficiencies the court deemed "frivolous." *Scheck v. Republic of Arg.*, No. 10-cv-5167, 2011 WL 2118795 at *3 (S.D.N.Y. May 23, 2011). This is similar to what occurred in the instant case, though with less transparency to Saint-Gobain regarding the status of their service request. After delivery to the Republic's Central Authority, the Central Authority took no further action, despite being required to do so. As Judge Stark determined, and the court in *Sheck* also recognized, "[t]he Hague Service Convention . . . does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21. This is particularly true given that, as is the case here, the Central Authority as part of the Republic itself, is also the party upon whom process is to be served. Other courts have found similarly. *See, e.g., Devengoechea v. Bolivarian Republic of Venez.*, No. 12-cv-23743, 2014 WL 12489848, at *1 (S.D. Fla. Apr. 25, 2014) ("Service was effectuated on Venezuela, through its Central Authority under the Hague Convention, on December 12, 2012, when it received the Summons, Complaint and transmittal documents."); *Box v. Dall. Mex. Consulate Gen.*, 487 Fed. App'x 880, 886 (5th Cir. 2012) (determining that pursuant to Article 15 of the Convention service of process occurred notwithstanding the failure of the Central Authority to issue a certificate, given it was "certainly not [Plaintiff's] fault that the authorities did not return a formal Certificate.") (citation omitted).

Against this backdrop, the Republic raises two new arguments for why the previous determination by Judge Stark was erroneous, including that (1) Article 15 cannot provide an

independent basis for service of process, and (2) that the requirements of Article 15 were not met due to a failure to comply with internal Venezuelan law. Neither argument was presented to Judge Stark when this issue was first decided. As this Court has stated in the past, "a motion for reconsideration generally is not an opportunity for a party to relitigate an issue that was or should have been raised at an earlier stage in the litigation." *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 72 (D.D.C. 2015) (citing *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). This is because "motions for reconsideration enable courts to correct their own errors, not the litigants' errors." *Id.; see also Coulibaly*, 278 F. Supp. 3d at 301 (declining to allow a reconsideration motion to serve as a "vehicle for presenting theories or arguments that could have been advanced earlier."). And the Republic provides no explanation for why it did not raise these arguments in the first instance, or why it is "in the interests of justice" to consider them now. But regardless, this Court reviews these new arguments and finds that Judge Stark's conclusion is correct.

In order to argue that "Article 15 does not authorize service at all," Def.'s Mot. at 17, the Republic conducts a statutory analysis and invokes the legislative history of Article 15. Def.'s Reply at 4-7. The Republic contends that because there is no explicit authorization of service in the text of Article 15, and because the legislative history demonstrates that Article 15 was designed to prevent unfair entry of default judgments, it thus cannot be used as an independent method of service. *Id.* at 5. But this ignores that Judge Stark reached his conclusion that effective service had been rendered in the context of evaluating a motion for default, which the Republic does not dispute is a common action taken by courts and not contradicted by the plain language of Article 15. And as the Supreme Court and the D.C. Circuit have repeatedly noted, the plain terms of a statute cannot be muddied by legislative history. *See Food Mktg. Inst. v.*

*Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019); *see also Int'l Bhd. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*, 814 F.2d 697, 700 (D.C. Cir. 1987) ("[C]ourts have no authority to enforce alleged principles gleaned solely from legislative history that has no statutory reference point."). Second, even if the Court were to grant this inference, none of the legislative history cited indicates that the drafters intended to foreclose allowing service through Article 15, even if it was originally intended primarily to "eliminate notification au parquet." Def.'s Reply at 5–6.

The Republic's second argument— that Saint-Gobain has not met the requirements of Article 15— also fails to show error by Judge Stark. The Republic claims that the express terms of Article 15 were not met, Def.'s Reply at 7, because the summons documents were never "actually delivered [to the Republic]. . . *by another method provided for by this Convention*." Hague Service Convention art. 15 (emphasis added). This in effect resurrects the Republic's previously rejected argument that service of papers on the Central Authority does not equate to service on a state itself, without completion of a certificate under Article 6 of the Convention. Def.'s Mot. at 16.[9] But the cases the Republic relies on are inapposite, in that they only show

---

[9] After failing to succeed on their argument before Judge Stark that service was defective due to the lack of a completed certificate by the Central Authority, on this go-around the Republic makes much of the need under Venezuelan law to serve the Attorney General when commencing suit against the state itself. *See* Def.'s Mot. at 13–14; *see also* Def.'s Reply at 3 (arguing service could not be completed in accord with the requirements of Article 5 of the Convention due to "the absence of subsequent delivery [by the Central Authority] *in compliance with the internal law of the requested state*.") (emphasis added). But the authority the Defendant cites for this rule shows that it is the responsibility of the Central Authority to take this step to have the attorney general notified. *See* Def.'s Mot. at 14 (citing *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 16-cv-2020 (D.D.C.), slip op. 10 (detailing how after being served, the Venezuelan Central Authority submitted a request for service to the Venezuelan court, who then arranged delivery to the Ministry of Foreign Affairs for service on the Attorney General). Thus, this defect is much the same as the failure to issue a certificate, in that it is an action within the control of the Central Authority, and could be manipulated to evade service, as

22

that service of papers on a Central Authority does not equate to service on a third-party, which is all-together distinct from this situation where the Central Authority was the state that was served. *See, e.g., Cavic v. Republic of Serbia,* No. 8:16-cv-1910, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ("There is no evidence that [Plaintiff] has even initiated an attempt at proper service upon Serbia," where requests concerned a state-owned bank); *Samsung Elec. Co. v. Early Bird Sav.*, No. 13-cv-3105, 2014 WL 5139488, at *1 (S.D. Cal. Oct. 2, 2014) (requests to Chinese Central Authority concerned private Chinese corporations, not state sovereign). Judge Stark concluded that in this instance, where the Central Authority was the party being served, no further action was required for service beyond actual delivery to the Central Authority. *See* Stark Decision at 22. As previously detailed, other courts have come to similar conclusions. *See Scheck*, 2011 WL 2118795 at *3; *Box*, 487 Fed. App'x at 886; *Devengoechea*, 2014 WL 12489848 at *1. And this Court agrees. In sum, the Republic has failed to show "clear errors of law which compel the court to change its prior position," *Nat'l Ctr. for Mfg. Sciences v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000), but regardless, this Court agrees with Judge Stark's prior determination that service was properly made on the Republic. Accordingly, the Republic's cross-motion for dismissal, treated as a motion for reconsideration, must be denied. Consequently, with jurisdiction being proper, the Court will register and enforce the award.

---

Judge Stark feared. Because of the Court's shared concern with Judge Stark regarding the Republic's habit of evading service, *see* Pl.'s Opp'n at 8 n.5 (collecting cases demonstrating the Republic's evasion of service on itself under the Hague Service Convention), the Court rejects this argument.

# V. CONCLUSION

For the foregoing reasons, Saint-Gobain's Motion for Summary Judgment is **GRANTED** and the Republic's Motion for Dismissal is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 1, 2021

RUDOLPH CONTRERAS
United States District Judge