**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br><br>   *Plaintiff*,<br><br> v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   *Defendant*. | Case No. 1:20-cv-00129-RC |

**DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF**
**PURSUANT TO 28 U.S.C. § 1610(c) AND 28 U.S.C. § 1963**

Defendant Bolivarian Republic of Venezuela hereby opposes the motion of Plaintiff Saint-Gobain Performance Plastics Europe for an order (i) pursuant to 28 U.S.C. § 1610(c) that a reasonable period of time has elapsed since this Court's final judgment of February 1, 2021, confirming an arbitral award against the Republic, such that Plaintiff may seek to attach the Republic's assets in aid of execution of the judgment; and (ii) pursuant to 28 U.S.C. § 1963, permitting Plaintiff to register the judgment in other judicial districts of the United States.

**BACKGROUND**

As the Court is aware, Venezuela and its people are suffering an unparalleled and complex political, economic, and humanitarian crisis. As detailed in the Republic's previous filings (Dkt. 18, at 2-4; Dkt. 45-1, at 2-5), Venezuela's economic collapse and the toll on its citizens and civic institutions have been devastating. The scale of the suffering of the Venezuelan people is impossible to convey fully: Extreme poverty, starvation, lack of clean water, regular blackouts, and a collapsed healthcare system together have caused one of the worst humanitarian

1

and refugee crises facing the world today. *See* Dkt. 18, at 2-4; Dkt. 45-1, at 2-5. These material deprivations have been compounded by endemic corruption and brutal repression under the illegitimate regime of Nicolás Maduro, who has clung to power through fraudulent elections and the systematic subversion of Venezuela's democratic institutions. This crisis has not abated during the pendency of this suit; if anything, it has grown deeper, exacerbated by a global pandemic.

Amid this crisis, the government of Interim President Juan Guaidó—the sole authority recognized by the United States and the broader international community—has been working diligently to address claims of the Republic's creditors as part of its plans to restore Venezuela's economic prosperity. But the Guaidó government does not have full access to the necessary levers of power within Venezuela's government at this time. The illegitimate Maduro regime has unlawfully usurped substantial control of the operation of the government within Venezuela's territory and has refused to recognize Interim President Guaidó's constitutional authority. Among other things, the Maduro regime controls the Finance Ministry, Executive Branch, and Supreme Court, as well as the operations and assets of key government-owned entities within Venezuela. As a result, the Guaidó government does not have full access to the Republic's operations, facilities, or personnel.

Notwithstanding these constraints, Interim President Guaidó has taken significant steps in order to address legacy claims against the Venezuelan government and to protect the interests of the Venezuelan people. To that end, the Republic is developing an orderly, consensual process under which all similarly situated claims will be treated fairly and equally. And this plan is being prepared in conjunction with the Guaidó government's discussions with the United States government, which has expressed interest in assisting the Guaidó government in addressing these

issues. This process has been delayed, however, given more-pressing demands on the Republic's limited resources.

**ARGUMENT**

**I.      Relief under 28 U.S.C. § 1610(c) is not warranted at this time**

In light of the ongoing crisis in Venezuela, it would not be appropriate to permit enforcement proceedings against the Republic at this time. The Foreign Sovereign Immunities Act (FSIA) directs that "[n]o attachment or execution . . . shall be permitted until the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c). "[A] court's determination of 'reasonable time' should be informed by an examination of the procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (citing H.R. Rep. No. 94-1487, at 30 (1976)).

The Guaidó government—the only Venezuelan government recognized by the United States as having legitimate authority to act on behalf of the Republic—cannot reasonably be expected to make payments from Venezuela's public fisc at this time. Not only is a humanitarian crisis of daunting proportions consuming all of the Republic's available resources and attention, but there are also practical impediments that prevent the Guaidó government from paying judgments during this time of political uncertainty. The Guaidó government does not have full access to the necessary levers of power within Venezuela while the Maduro regime continues to control the Finance Ministry, Executive Branch, and Supreme Court, as well as the operations and assets of key government-owned entities within Venezuela. In light of these constraints, it is

3

unreasonable to expect the Republic to be able to pay Plaintiff tens of millions of dollars from the public fisc less than four months after entry of judgment.

It is particularly unreasonable to expect the Republic to pay the judgment at this time given the case's procedural posture. The Republic is currently pursuing an appeal of this Court's decision on jurisdictional grounds. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, No. 21-7019 (D.C. Cir.). Briefing is ongoing, and the United States has filed an amicus brief supporting the Republic's position that delivery of documents to the Central Authority does not, in and of itself, constitute valid service under the Hague Convention. Br. for the United States as Amicus Curiae Supporting Appellant, *Saint-Gobain Performance Plastics Eur.*, No. 21-7019 (D.C. Cir. June 9, 2021), Doc. No. 1901880.

In enacting Section 1610(c), Congress was sensitive to the fact that foreign sovereigns often must engage in time-consuming procedures, such as enacting law or regulations, before judgments can be paid. *See Ned Chartering & Trading*, 130 F. Supp. 2d at 67 (citing H.R. Rep. No. 94-1487, at 30 (1976)). Venezuela is no exception. In order to pay a judgment, the Interim Government must seek an appropriation from the National Assembly. But the National Assembly could not reasonably be expected to make such an appropriation while an appeal on jurisdictional issues is pending.[*] Indeed, the U.S. Congress similarly appropriates funds to pay money judgments and awards against the United States *only* where such awards are final and the United States has determined not to seek further review or appeal. *See* 28 U.S.C. § 2414; 31 U.S.C. § 1304.

---

[*]    For the same reason, the Republic is not in a position to post a supersedeas bond while it appeals this Court's judgment to the D.C. Circuit. *See* Mot. 5, 6, 9 (noting that the Republic has not posted a bond).

Plaintiff complains that the Republic has not voluntarily paid the underlying award and has not "ma[d]e a representation to this Court that it intends to do so." Mot. 5. But the Republic has stated from the outset of this litigation that the Guaidó government is fully committed to addressing claims by the Republic's creditors on a comprehensive basis. Contrary to Plaintiff's assertion that Venezuela has a "habitual practice" of evading its international obligations, Mot. 5, the Guaidó government is working diligently to develop an orderly, consensual process under which all similarly situated claims will be treated equally. The Republic needs more time to address the current political crisis before it can effectively implement that process. Based on the unprecedented and complex financial and humanitarian crisis in Venezuela, the Guaidó government should be given time to address the Republic's obligations in a global manner that best serves the interests of the Venezuelan people and puts all of the Republic's creditors on equal footing. Allowing enforcement actions to proceed through piecemeal litigation at this juncture puts at risk assets that will be required for long-term humanitarian relief. Equally important, permitting Plaintiff to seek to execute its judgment now (particularly when there is still a live appeal regarding whether Plaintiff validly obtained personal jurisdiction over the Republic in the first place) will require the Republic to expend resources to protect its assets— resources that, again, could be used for humanitarian purposes.

Even putting aside the present crisis, it would not be "reasonable" for this Court to permit execution at a time when Plaintiff lacks the licenses from the Office of Foreign Assets Control (OFAC) that would be necessary for it to execute its judgment against the Republic's assets. Sanctions currently in place by OFAC prevent Plaintiff from executing a writ of attachment against the Republic's assets unless and until the sanctions are lifted or Plaintiff receives a specific license. *See* Exec. Order No. 13,884, Blocking Property of the Government of

Venezuela, 84 Fed. Reg. 38,843, 38,843 (Aug. 7, 2019). OFAC guidance confirms the point, explaining that while "[a] specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against" a blocked entity, "a specific license from OFAC is required for . . . the enforcement of any . . . judgment . . . through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [such] property." OFAC, Frequently Asked Questions No. 808, U.S. Dep't of the Treasury (Dec. 9, 2019), https://bit.ly/3gkBpDn. The guidance also provides a non-exhaustive list of "measures" for which "a specific license from OFAC would be required," which include "seizing," "levying upon," "attaching," or "encumbering" the property. *Id.* (capitalization removed). Plaintiff does not purport even to have sought—much less to have been granted—a license from OFAC, meaning Plaintiff has no authority to seek to execute its judgment or attach the Republic's assets.

This sanctions regime is just one expression of the United States' foreign policy respecting Venezuela. Apart from sanctions, the Executive Branch, which is charged by our Constitution with executing the foreign policy of the United States, has made clear its desire to freeze the status quo with respect to all blocked assets of the Republic unless and until it gives specific permission for further action. As the United States explained in another case in which a judgment creditor of the Republic sought to move forward with execution, the United States has "strong foreign policy and national security interests in supporting the interim government's efforts to reconstruct the Venezuelan economy following the departure of Maduro," and the execution of judgments against the Republic's assets in the United States "would be greatly damaging" to "Guaidó, the interim government, and U.S. foreign policy goals in Venezuela." Statement of Interest of the United States at 3, 4, *Crystallex Int'l Corp. v. Bolivarian Republic of*

*Venezuela*, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), ECF No. 212 (citation omitted) (attached as Exhibit A). Moving forward with execution under circumstances that would "greatly damag[e]" our Nation's foreign policy would, by definition, not be "reasonable." At a minimum, the Court should not take such a step without first seeking the views of the United States government, which can apprise the Court regarding the OFAC process, relevant foreign-policy implications, and any other "interests of the United States in [this] suit." *See* 28 U.S.C. § 517.

Finally, the Republic acknowledges that two district courts have ruled in cases involving the Republic that two months was a reasonable period of time within the meaning of Section 1610(c). *See* Mot. at 4 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:16-cv-00661-RC, 2017 WL 6349729 (D.D.C. June 9, 2017), and Order, *Gold Reserve v. Bolivarian Republic of Venezuela*, No. 1:14-cv-02014-JEB (D.D.C. Jan. 20, 2016), ECF No. 48), and that another court recently ruled that seven months was a reasonable period of time, Order, *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-03123-AT (S.D.N.Y. May 27, 2021), ECF No. 74. Another court, however, *denied* a similar request more than *eight* months after entry of judgment. *See* Minute Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 1:16-cv-02020-RJL (D.D.C. Nov. 21, 2018). The Republic respectfully submits that the decisions cited by Plaintiff granting relief against Venezuela under Section 1610(c) do not adequately account for the challenging circumstances faced by the Republic today. Nor did those decisions consider and weigh the foreign policy interests of the United States implicated by this unique situation. The Court should therefore decline to follow those decisions and should instead follow the *Rusoro Mining* decision. In order to avoid exacerbating the current political and humanitarian crisis and undermining U.S. foreign policy goals in Venezuela, the Court should exercise its broad discretion under Section 1610(c) to deny Plaintiff's attempts to execute

on its judgment now, without prejudice to a later motion for execution at a more appropriate time.

**II.     Relief under 28 U.S.C. § 1963 is unwarranted**

The Court should also deny Plaintiff's request for an order permitting it to register the judgment in another judicial district under 28 U.S.C. § 1963. A registration order normally becomes appropriate once "the judgment has become final by appeal or expiration of the time for appeal." *Id.* While an appeal is still pending, however, a party may register a judgment under Section 1963 only "when ordered by the court that entered the judgment for good cause shown." *Id.* Plaintiff's request for an order under Section 1963 should be denied, for two separate reasons.

**A.**     The Court lacks jurisdiction to order relief against the Republic under Section 1963. Because the FSIA is the exclusive source of subject-matter jurisdiction over foreign sovereigns, including in actions to enforce arbitral awards, summary proceedings under Section 1963 to register a judgment against the Republic are unavailable.

Section 1963, by authorizing federal courts to grant a particular form of relief, creates subject-matter jurisdiction where it would not otherwise exist. For example, a federal court may not entertain a traditional action seeking entry of new judgment on the basis of a foreign (*i.e.*, out-of-jurisdiction) judgment where complete diversity of citizenship is lacking at the time of commencement of the new action, or where the judgment does not meet the minimum amount in controversy. *See Stanford v. Utley*, 341 F.2d 265, 268, 270 (8th Cir. 1965). Section 1963, in authorizing a special registration action, allows a judgment creditor to "avoid the impediments, such as diversity of citizenship, which new and distinct federal litigation might otherwise encounter." *Id.* (citation omitted).

8

In cases against foreign sovereigns, however, "the FSIA [is] the sole basis for obtaining jurisdiction . . . in our courts," and "subject-matter jurisdiction" for relief against a sovereign defendant "depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-35 (1989) (quotation marks and citation omitted); *see* 28 U.S.C. § 1330(a) (granting limited "original jurisdiction" for a "nonjury civil action against a foreign state"). Those exceptions, which are specifically delineated in 28 U.S.C. §§ 1605-07, do not include registration actions under Section 1963. By not incorporating Section 1963, the FSIA supersedes that statute as a basis for subject-matter jurisdiction in proceedings against foreign sovereigns. Courts have held that the FSIA has the same superseding effect on similar statutes. *See, e.g.*, *Amerada Hess*, 488 U.S. at 429, 443 (FSIA supersedes the ATS to the extent the ATS once conferred federal jurisdiction over foreign sovereigns); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 112 (2d Cir. 2017) (FSIA supersedes 22 U.S.C. § 1650a, which vests federal courts with "exclusive jurisdiction" to enforce arbitral awards "arising under a treaty of the United States"); *Micula v. Government of Romania*, 404 F. Supp. 3d 265, 276 (D.D.C. 2019).

The fact that *this Court* had subject-matter jurisdiction under Section 1605(a)(6) to enter judgment enforcing an arbitral award therefore does not create jurisdiction in a *different* court for a proceeding under Section 1963. Rather, the separate action seeking a separate form of relief requires a separate jurisdictional basis. Section 1963 is not merely a procedural mechanism for exercising existing authority but rather a "substantive" grant of new authority because it "provides . . . the equivalent of a *new judgment* of the registration court." *Stanford*, 341 F.2d at 268, 271 (emphasis added). Plaintiff cannot bootstrap subject-matter jurisdiction in this case to invoke authority under Section 1963 for a second case, thereby obtaining a new judgment. The

authority to grant "the equivalent of a new judgment" against a foreign sovereign in a new court is one that Congress itself must confer. Congress has not done so in the FSIA, which displaces prior grants of subject-matter jurisdiction.

B.      Even if this Court had jurisdiction over Plaintiff's request to invoke Section 1963, Plaintiff has not demonstrated the requisite "good cause." Plaintiff argues that "[g]ood cause can be established by an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum." Mot. 6 (quoting *Non-Dietary Exposure Task Force v. Tagros Chems. India, Ltd.*, 309 F.R.D. 66, 69 (D.D.C. 2015)). But that argument fails on its own terms: Plaintiff has not established that Venezuela has substantial assets in any other forum.

Rather than attempt to show that Venezuela has "substantial assets in the registration forum," *id.*, Plaintiff instead points to assets held by *another* entity—Venezuela's state-owned oil company, PDVSA. Plaintiff tries to piggyback on the determination in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 414, 417 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (*Crystallex Asset Proceeding*), that allowed another creditor of the Republic to attach Delaware assets owned by PDVSA, on the theory that PDVSA is the alter ego of the Republic. Mot. 6-7. But the District of Delaware has rejected other creditors' attempts to ride on the coattails of the alter-ego ruling in the *Crystallex Asset Proceeding*, noting that it is unclear whether "the pertinent date as to which the Court must decide whether PDVSA was or is the alter ego of Venezuela in connection with [this case] is the same August 2018 date the Court analyzed in the *Crystallex Asset Proceeding*." *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 1:18-cv-01963, 2019 WL 6785504, at *7 (D. Del. Dec. 12, 2019) (citation omitted). Whether PDVSA is or was Venezuela's alter ego on the relevant date thus "is a determination that will need to be made in each non-Crystallex case, at the appropriate

10

time." *Id.* at *8. In other words, a creditor seeking to attach PDVSA's assets in Delaware cannot meet its burden to prove alter-ego status simply by "attempting to rely on the record created in the *Crystallex Asset Proceeding*." *Id.*

Plaintiff has done nothing to attempt to satisfy its burden. Indeed, Plaintiff's alter-ego argument has already been rejected in this case. Plaintiff argued before the Delaware district court that venue for this action was proper in that forum on the theory that PDVSA is an alter ego of Venezuela that is "doing business" in Delaware. D.E. 21 at 9-11. The Delaware district court squarely rejected that proposition, noting, among other things, that "Saint-Gobain . . . has not demonstrated that PDVSA is or was the alter ego of Venezuela as of the pertinent date." *Crystallex Int'l Corp. v. PDV Holding Inc.*, 2019 WL 6785504, at *10. Plaintiff offers no reason why that determination was unsound, nor has it made any attempt to develop a record on the issue.

The fact that other judgment creditors are already lining up in the District of Delaware to attempt to attach the same assets, Mot. 7-9, also does not provide good cause to permit Plaintiff to register the judgment before the completion of appellate proceedings. The Republic's pending appeal was made necessary by Plaintiff's insistence that it could validly serve process upon the Republic under 28 U.S.C. § 1608(a)(2) simply by transmitting a request for service to Venezuela's Central Authority, without the need for the completion of service under Venezuelan law, as the Hague Convention expressly requires. It is the Republic's right and sovereign prerogative to insist that all litigants turn square corners when dealing with the Republic— including by scrupulously following the procedures set forth in the Foreign Sovereign Immunities Act and the Hague Convention for service of process on the Republic. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019) (demanding "adherence to [the] strict

11

requirements" of the FSIA's service provisions). The Republic acknowledges that this Court has concluded that proper service was made under the Convention, and it does not seek to relitigate that conclusion here. But the Republic respectfully submits that, at a minimum, the pending appeal, now supported by the United States with an amicus brief, raises substantial questions regarding federal court authority to render judgment against the Republic, a foreign sovereign.

Insofar as waiting for the appeal would delay Plaintiff's ability to get in line ahead of other creditors, Plaintiff must accept its share of responsibility. The Republic has advised Plaintiff on numerous occasions—and expressly represented to this Court more than 14 months ago—that it would not object to service of process via diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4). Those channels have been used successfully by numerous other litigants with claims against the Republic, including during the pendency of this litigation. *See, e.g.*, Status Rep., *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. 1:20-cv-08497-AT (S.D.N.Y. Mar. 8, 2021), ECF No. 17; Letter, *Contrarian Cap. Mgmt., LLC v. Bolivarian Republic of Venezuela*, No. 1:19-cv-11018-AT-KNF (S.D.N.Y. Feb. 3, 2020), ECF No. 27; Certificate of Service, *ACL1 Invs. Ltd. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-09014-LLS (S.D.N.Y. Feb. 4, 2020), ECF No. 26. Had Plaintiff initiated that process a year ago, it is likely that service would have been accomplished by now and Plaintiff would have obtained a final judgment. The Court should not allow Plaintiff to take a shortcut when Plaintiff has refused to pursue avenues that are expressly set forth (and required) by statute—and that the Republic has expressly stated it will not oppose.

## CONCLUSION

The Court should deny Plaintiff's motion for relief pursuant to 28 U.S.C. § 1610(c) and

28 U.S.C. § 1963.


Dated: June 10, 2021

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: _____

Kent A. Yalowitz
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Kent.Yalowitz@arnoldporter.com


E. Whitney Debevoise (*pro hac vice*)
Arturo Caraballo
Sally L. Pei
Stephen K. Wirth
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Stephen.Wirth@arnoldporter.com

*Attorneys for the Bolivarian Republic of Venezuela*