# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | : | | |
| | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-129 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 43, 45 |
| | : | | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
**DENYING DEFENDANT'S CROSS-MOTION TO DISMISS**
**I.  INTRODUCTION**

Plaintiff Saint-Gobain Performance Plastics Europe ("Saint-Gobain") initially filed this action in the United States District Court for the District of Delaware, seeking to register and enforce an arbitration award made pursuant to the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention" or "ICSID"), against Defendant the Bolivarian Republic of Venezuela ("the Republic").  The Republic did not appear, and Saint-Gobain moved for a default judgment.  The Republic then appeared to challenge Saint-Gobain's service of process, arguing that it had not been properly served under the Hague Service Convention, and that venue was also improper in the District of Delaware.  Chief Judge Leonard P. Stark of the District Court in Delaware determined that Saint-Gobain had properly served the Republic under the Hague Service Convention, but agreed with the Republic that venue was improper in the District of Delaware and transferred the action to this Court.  Saint-Gobain now brings a motion for summary judgment, asking this Court to enter a judgment registering and enforcing the arbitration award at issue.  In response, the Republic has brought a cross-motion for dismissal, claiming the action must be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(5) for failure to properly effect service. Because Judge Stark has previously concluded that service of process was properly made in this action, the Republic's motion will be evaluated as a motion for reconsideration. The Court finds that Judge Stark's determination was correct, and does not constitute legal error. Accordingly, Saint-Gobain's motion for summary judgment is granted, while the Republic's cross-motion to dismiss is denied.

## II. BACKGROUND

### A. Factual Background

Plaintiff Saint-Gobain is a French corporation who held a 99.99% interest in NorPro Venezuela C.A., a Venezuelan company that manufactured components used in the fracking process. Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 1, ECF No. 43-2. On March 29, 2011, Hugo Chávez, the then-president of Venezuela, ordered the expropriation of Saint-Gobain's interest. Compl. ¶ 16, ECF No. 1; *see also* Yanos Decl. Ex. 3 ("Decision on Liability") ¶¶ 245–47, ECF No. 3-3. Because Saint-Gobain was protected under the France-Venezuela Bilateral Investment Treaty of April 15, 2004, Saint-Gobain and the Republic entered into arbitration to resolve the dispute. Pl.'s SMF ¶¶ 5, 7–8. Saint-Gobain filed a request for arbitration pursuant to the ICSID Convention, which was registered as ICSID Case Number ARB/12/13 of June 15, 2012.[1] *Id.* ¶¶ 9–10.

Pursuant to the ICSID Convention and Arbitration Rules, a Tribunal was formed to consider the dispute. Written submissions were made, and after a four-day oral hearing the

---

[1] Venezuela withdrew from the ICSID Convention on January 25, 2012, with the withdrawal taking effect roughly one-month after the registration of this dispute on July 25, 2012. This action, however, has no impact on this case as both parties gave their consent to arbitrate prior to Venezuela's withdrawal, and neither party disputes the Tribunal's jurisdiction over Saint-Gobain's claims. *See* Pl.'s SMF ¶ 6.

Tribunal rendered, on December 30, 2016, a Decision on Liability and the Principles of Quantum, finding that the Republic had breached the France-Venezuela Bilateral Investment Treaty due to its acts of expropriation. *Id.* ¶ 11; *see also* Decision on Liability ¶ 908. The same Tribunal issued an award of $42 million to Saint-Gobain on November 3, 2017, which as of March 9, 2020 has accrued with interest to US$ 44,229,629.66. Pl.'s SMF ¶¶ 13, 28. The Republic does not contest that this award is final and binding. *See* Pl.'s Mot. Summ. J. Ex. 4 ("Status Conf. Tr.") at 5:25-6:3 (statement by the Republic's counsel asserting that "we are not going to challenge the merits of the arbitral award in this or any other court. The arbitral award— as a matter of substance, the Republic is prepared to accept . . ."), ECF No. 43-7. However, the Republic has not yet paid any of the amounts owed under the award. Pl.'s SMF ¶ 27.

In December 2018, Saint-Gobain filed this action in the U.S. District of Court for the District of Delaware seeking registration of the award as a Foreign Judgment and enforcement of the award pursuant to 22 U.S.C. § 1650(a). *See* Compl. ¶¶ 30–38. Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1969) ("Hague Service Convention" or "the Convention"), Saint-Gobain sought to serve the Republic with the summons and Complaint in this action. Pl.'s SMF ¶ 20. To this end, on December 14, 2018, Saint-Gobain sent via certified mail "(i) duly-executed USM-94 'Request for Service Abroad of Judicial or Extrajudicial Documents' forms in duplicate English and Spanish versions addressed to [the Republic], together with duplicate English and Spanish copies of: (ii) the summons and Complaint in this action, (iii) five supporting exhibits and (iv) notice of right to consent to trial before a magistrate judge, to the Central Authority designated by Venezuela for international service of process pursuant to the Hague Service Convention." *Id.* ¶ 21. On December 21, 2018 and December 27, 2018 these deliveries were

3

signed for by T. Flores and I. Ruiz respectively, two individuals Saint-Gobain asserts were employees of the Venezuelan Foreign Ministry. *Id.* ¶ 22; *see also* Def.'s Response to Pl.'s Statement of Material Facts ¶ 22 (noting "the Republic disputes Plaintiff's characterization of these individuals as employees of the Foreign Ministry" as Saint-Gobain "has not come forward with any evidence or other information supporting its assertion as to that relationship"), ECF No. 47. No further response or action from the Central Authority occurred after the packages were delivered. *See* Pl.'s SMF ¶ 23. [2]

Because of this lack of response, the clerk of the United States District Court for the District of Delaware entered a default against the Republic on June 12, 2019. Pl.'s SMF ¶ 23. Saint-Gobain moved for a default judgment on June 24, 2019. *Id.* ¶ 24. On August 7, 2019, counsel for the Republic opposed Saint-Gobain's motion for default and requested that the court vacate the clerk's entry of default, challenging Saint-Gobain's service of process under the Hague Service Convention and also arguing that venue was improper in Delaware.[3] *Id.* ¶ 25. On

---

[2] Important to this timeline is the fact that shortly after the delivery of the documents in question, Venezuela devolved into political upheaval. In response to then-President Mr. Nicolas Maduro claiming victory in a presidential election many contend was fraudulent, the Venezuela National Assembly President Juan Guaidó assumed the Presidency of Venezuela on January 23, 2019. The United States has since recognized Mr. Guaidó as the legitimate President of Venezuela. *See* U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S. Dep't of State (Feb. 5, 2019), https://2017-2021.state.gov/u-s-supports-democratic-aspirations-of-the-venezuelan-people/index.html. However, Mr. Maduro still controls the Ministry of Foreign Affairs and Ministry of Justice, though the courts of the United States are required to only recognize the Guaidó administration as the legitimate representative of Venezuela.

[3] Under the Foreign Sovereign Immunities Act ("FSIA"), actions to confirm arbitral awards levied against foreign sovereigns are most frequently to be filed in the Federal District Court for the District of Columbia. *See* 28 U.S.C. § 1391(f). Saint-Gobain brought the suit initially in the District of Delaware because that court had previously ruled that Petroleso de Venezuela S.A., the Venezuelan state oil company, was Venezuela's alter ego and was subject to suit in Delaware. *See* Mem. Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 6, ECF No. 43-1 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 414 (D. Del. 2018)).

December 12, 2019, Chief Judge Leonard P. Stark of the District Court in Delaware vacated the clerk's entry of default and denied Saint-Gobain's motion for default judgment, determining that while Saint-Gobain had properly served the Republic under the Hague Service Convention, venue was improper in the District of Delaware. *Id.* ¶ 26; *see also* Dec. 12, 2019 Mem. Order ("Stark Decision") at 21–22, ECF No. 39. Judge Stark transferred the action to this Court on January 16, 2020. Pl.'s SMF ¶ 26.

Saint-Gobain now brings a motion for summary judgment, asking this Court to enter a judgment registering and enforcing the award in question. *See* Pl.'s Mot. at 1. In response, the Republic has brought a cross-motion for dismissal, claiming that the action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5), arguing that the actions taken under the Hague Service Convention failed to properly effect service in compliance with the FSIA. *See* Def.'s Cross Mot. to Dismiss Compl. ("Def.'s Mot.") at 1, ECF No. 45. Both of these motions have been fully briefed and are now ripe for decision.

### III.  LEGAL STANDARDS

#### A.  Motion to Dismiss for Inadequate Service of Process

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Accordingly, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A "[r]ule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) (citing 5B C. Miller & A. Wright, Federal Practice & Procedure: Civil § 1353 (3d ed.

5

2006)); *see, e.g.*, *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) (12(b)(5) motion to dismiss challenging service made in accordance with the terms of the Hague Convention). The burden to establish the validity of the purported service rests on "[t]he party on whose behalf service [was] made." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quotations omitted).

### B. Motion for Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "material" fact is one capable of affecting the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

In response, the non-movant must identify specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In determining whether a genuine issue exists, a court must refrain from making credibility determinations or weighing the evidence; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citation omitted). "In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent

evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute." *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 19–20 (D.D.C. 2016) (citing Fed. R. Civ. P. 56(c)(1)).[4]

Summary judgment to confirm and enforce an ICSID arbitration award should be granted where the party seeking recognition or enforcement provides a copy of the award to the relevant court, *see* ICSID Convention Art. 54(2)*,* and where there are no defenses to enforcement. *See, e.g.*, *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019). This is because courts have an "exceptionally limited" role in enforcing ICSID arbitral awards, which in this instance consists solely of ensuring that personal jurisdiction is proper. *Id.*; *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017) ("[U]nder the Convention's terms, [member state's courts] may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award."). When these preconditions are met, an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a). Saint-Gobain has provided the Court with a copy of the Award certified by the Secretary-General, as required. *See generally,* Decision on Liability. The Republic does not dispute the Award's authenticity. Furthermore, there are no

---

[4] This District has supplemented Rule 56 with Local Civil Rule 7(h), pursuant to which a party filing a motion for summary judgment must include a statement of material facts as to which that party contends there is no genuine dispute. *See Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59, 63–64 (D.D.C. 2011). "The party opposing the motion must, in turn, submit a statement enumerating all material facts which the party contends are genuinely disputed." *Id*. at 63 (citing LCvR 7(h)(1)). This local rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Id*. at 63–64 (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996)).

material facts in dispute. The Republic argues only that due to a defect in service of process, personal jurisdiction is lacking, and the Award cannot be confirmed. Def.'s Mot. at 1. It is this issue the Court will now review.

## IV. ANALYSIS

### A. Preliminary Issues

A number of procedural issues must be addressed before the Court proceeds to the substantive question in this case. Saint-Gobain asserts that the Republic is barred from bringing their current motion to dismiss on the grounds of waiver. Saint-Gobain also relies on the law-of-the-case doctrine to argue that this Court should abstain altogether from reconsideration of Judge Stark's determination that Saint-Gobain had properly served the Republic under the Hague Service Convention. Finally, Saint-Gobain contends that the Republic is barred from raising new arguments not previously brought before Judge Stark in his determination that service of process was properly made on the Republic. The Court considers each of these arguments in turn.

### 1. Waiver of 12(b)(5) Defense

The Court can quickly dispose of Saint-Gobain's first procedural argument, in which they argue that the Republic's Cross-Motion to Dismiss must be dismissed as untimely. *See* Pl.'s Reply in Support of Mot. for Summ. J. and Opp'n to Def.'s Cross-Mot. to Dismiss ("Pl.'s Opp'n") at 11, ECF No. 49. Saint-Gobain claims that "[the Republic] waived the jurisdictional defense based on improper service because it failed to properly assert this defense together with its cross-motion for dismissal based on improper venue before the Delaware district court." *Id.* at 3. The Republic calls this claim "false," given the contents of their initial motion to dismiss.

8

Def.'s Reply in Support of Cross-Mot. to Dismiss ("Def.'s Reply) at 14, ECF No. 51.  The Court agrees that this argument by Saint-Gobain is without merit.

Under the Federal Rules of Civil Procedure 12(g) and 12(h), a party will waive an insufficient service of process defense if they fail to raise this defense in their first motion to dismiss or responsive pleading.  *See Candido v. District of Columbia*, 242 F.R.D. 151, 161 (D.D.C. 2007) ("If a party files a Rule 12(b) motion to dismiss, it may not subsequently assert any Rule 12(b) defenses that were available when the first Rule 12(b) motion was filed."); *see also Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 n.8 (D.C. Cir. 1988) ("[T]he defense of lack of service of process. . . is waived if not asserted in a timely manner.").

In accordance with the Federal Rules of Civil Procedure, the Republic's first brief filed in this matter in the Delaware District Court raised a defense based on improper service, noting that "Plaintiff has not served the complaint in compliance with the strict requirements of the Foreign Sovereign Immunities Act, and, as a consequence, there is no personal jurisdiction over the Republic at this time."  Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Default J. ("Def.'s Default J. Opp'n") at 1, ECF No. 18.  Saint-Gobain contends that this still constitutes waiver, because "[a]t that time. . . Venezuela raised a different jurisdictional defense to service," and not the "defense based on Article 5 of the Hague Convention which it debuts in this Court."  Pl.'s Opp'n at 11.  In short, Saint-Gobain argues that the Republic should be limited to only the specific service of process defense raised in their first motion.  But this is not the law.[5]  The

---

[5] Saint-Gobain provides no support for this assertion in its brief, as the cases it cites stand for only the proposition that a failure to assert a waivable personal jurisdiction defense *in any form* in a party's first responsive briefing waives a party's ability to assert such a defense later. *See* Pl.'s Opp'n at 11 (citing *Placide Ayissi-Etoh v. Fannie Mae*, 49 F. Supp. 3d 9, 12 (D.D.C. 2014) (deeming defense waived where "Defendants waited years to raise" the improper service defense in any capacity); *Nichols v. Vilsack*, 183 F. Supp. 3d 39, 41 (D.D.C. 2016) (describing

Federal Rules dictate only that a party must raise a defense of insufficient service of process in its first responsive motion, *see* Fed. R. Civ. P. 12((h)(1), which the Republic properly did, *see* Def.'s Default J. Opp'n at 1; *see also id.* at 10–17.  The Republic devoted nearly half of its brief to Saint-Gobain's alleged failure to effect service under the Hague Convention—providing Saint-Gobain plenty of notice of its intent to rely on this defense.  Furthermore, while the Republic does augment its prior arguments for lack of service by invoking Article 5 of the Hague Convention in this current round of briefing, it returns to its prior contention that service was not completed under Article 15.  And in any case, a party is generally free to raise "new argument[s] to support . . . [a] consistent claim."  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (citing *Yee v. Escondido*, 503 U.S. 519, 534-35 (1992).  Accordingly, there has been no waiver, and the Republic is free to proceed with its motion to dismiss based on insufficient service of process.

### 2.  Law of the Case Doctrine

The next procedural matter to be resolved by this Court is if, as Saint-Gobain argues, the Court is bound by the law-of-the-case doctrine.  Pl.'s Opp'n at 1, 4–5.  Judge Stark of the District of Delaware, prior to transferring the case to this Court, issued an opinion concluding that "Saint-Gobain has served the Republic" under the Hague Service Convention.  Stark Decision at 22.  As a result, Saint-Gobain asserts that Judge Stark's previous determination must stand unless this Court determines it "was clearly erroneous and would work a manifest injustice."  Pl.'s Opp'n at 4 (quoting *Kimberlin v. Quinian*, 199 F.3d 496, 500 (D.C. Cir. 1999)).  In contrast, the Republic argues that the proper standard for their "request for reconsideration of a non-final

---

general failure to raise defense despite its "availab[ility] when it filed its motion to dismiss Plaintiff's original complaint")).

order" under Federal Rule of Civil Procedure 54(b) is that this Court may grant their request "as justice requires," meaning if it is "necessary under the relevant circumstances." Def.'s Reply at 12–13 (citing *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 80 (D.D.C. 2015)). While in effect the two standards have a great deal of overlap, the Court will review Judge Stark's decision pursuant to the Rule 54(b) standard, though the principles underlying the law-of-the-case doctrine still inform the Court's determination.[6]

The "'[l]aw-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). The doctrine serves to "promote[] the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)). The law-of-the-case doctrine also applies, as is relevant here, "to the decisions of a coordinate court in the same case." *Id.*

However, "'[a]dherence to the doctrine is not mandatory,' but rather left to the district court's sound discretion." *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (citing *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 n.6 (D.D.C. 2004)); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the

---

[6] While not styled as such, the Republic effectively concedes that its cross-motion for dismissal is in effect a "request for reconsideration of [Judge Stark's] non-final order" brought pursuant to Federal Rule of Civil Procedure 54(b). Def.'s Reply at 12. The Court will accordingly treat it as such.

absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (internal quotations omitted). In this way the doctrine acts not as a jurisdictional bar to review, but rather a general principal of judicial restraint. *See Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (noting the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"). This is particularly true in regards to interlocutory orders, such as the non-final determination by Judge Stark at issue here, which "are not subject to the law-of-the-case doctrine and may always be reconsidered prior to final judgment." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997)).

The review of interlocutory orders is governed by Federal Rule of Civil Procedure 54(b), which provides that reconsideration should be granted "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir.1985)). While the standard is flexible, this Court has interpreted this language to allow reconsideration "of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017). The moving party must also show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied. *Id.* at 302; *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

But this is not to say that the law-of-the-case doctrine plays no role. Even though interlocutory orders are not "subject to" the law of the case doctrine, "nothing prevents the court from applying the rationales of that doctrine to guide a Rule 54(b) decision." *Moore v. Hartman*,

12

332 F. Supp. 2d 252, 256 (D.D.C. 2004).  Consequently, courts have found that their discretion under Rule 54(b) is still "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted).

Against this backdrop, the parties dispute the proper standard of review that should be applied by this Court to evaluate Judge Stark's prior decision on the validity of service upon the Republic.  Saint-Gobain posits that, "[i]n this Circuit, the law of the case may be revisited only in exceptional circumstances such as where 'there is an intervening change in the law or if the previous decision was clearly erroneous and would work a manifest injustice.'"  Pl.'s Opp'n at 4 (citing *Kimberlin v. Quinian*, 199 F.3d 496, 500 (D.C. Cir. 1999)).  But as previously discussed, the law of the case doctrine is not binding on Judge Stark's interlocutory order.  *See Filebark*, 555 F.3d at 1013.  Accordingly, this Court will grant the Republic's 54(b) motion as "justice requires."  *Coulibaly*, 278 F. Supp. 3d at 301; *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014).  While this flexible standard accounts for a variety of considerations, based on the arguments presented the Court will evaluate if Judge Stark's prior decision was made in "error" and if "some harm. . . . [or] some sort of injustice will result if reconsideration is refused."  *Coulibaly*, 278 F. Supp. 3d at 302 (citing *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011)).

### 3.  The Republic's New Arguments

The final procedural matter raised by Saint-Gobain is their contention that the Republic is barred from raising new arguments in this round of briefing that were not previously brought before Judge Stark when he first considered this issue.  *See* Pl.'s Opp'n at 5 (claiming the

Republic "cannot ask the Court to revisit the Delaware Court's decision based on an argument [under Article 5 of the Hague Convention] that it failed to raise before that Court."). Contrary to Saint-Gobain's claims, however, in this Circuit a court can consider new arguments raised for the first time on a Rule 54(b) motion for reconsideration, though only if such an allowance is in the interest of justice.

"Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves . . . [is] flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (citing *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (ellipsis omitted)). In light of this flexibility, the D.C. Circuit has determined that it is "unwarranted" for district courts to impose a flat bar on considering new arguments in reconsideration motions made under Rule 54(b). *Id.* That said, this Court has previously ruled that Rule 54(b) motions for reconsideration "cannot be used as an 'an opportunity to reargue facts and theories upon which a count has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Coulibaly*, 278 F. Supp. 3d at 301 (citing *Est. of Gaither v. District of Columbia,* 771 F.Supp.2d 5, 10 (D.D.C. 2011)). The Republic seeks a second bite at the apple regarding Judge Stark's previous decision on service, though as Saint-Gobain has noted, nothing prevented the Republic from raising arguments under Article 5 previously, given that all of the authorities the Republic invokes to make its argument existed at that time. *See* Pl.'s Opp'n at 5–6. However, given the governing standard, the Court will review the new arguments brought by the Republic to determine if allowing them to proceed is in the interest of justice.

**B. Saint-Gobain Effected Service on the Republic Under the FSIA**

The Court will now review Judge Stark's prior finding that the Republic was properly served under the Hague Service Convention, one of the approved methods for service on a foreign sovereign under the FISA. If there was service of process such that this Court can exercise personal jurisdiction over the Republic, then the ICSID judgment must be enforced. [7]

1. Service on Foreign Sovereigns Under FSIA

Under 28 U.S.C. § 1330(b), this Court can exercise personal jurisdiction over a foreign state that is not entitled to sovereign immunity, such as the Republic, but only as long as effective service of process has been obtained under the strictures of the FSIA, 28 U.S.C. § 1608. *See also* H.R. Rep. No. 94-1487, at 23 (1976), 1976 U.S.C.C.A.N. 6604, 6622 ("[The FSIA] sets forth the exclusive procedures with respect to service on . . . a foreign state."); *Mobil Cerro Negro*, 863 F.3d at 100 ("ICSID award-creditors must pursue federal court judgments to enforce their awards against a foreign sovereign by filing a federal action on the award against the sovereign, [and] *serving the sovereign with process in compliance with the FSIA . . .* ") (emphasis added).

The FSIA describes four different methods, listed in descending order of favorability, that are available to plaintiffs to use to effect service on a foreign sovereign defendant. These include: (1) "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision;" (2) "by delivery of a copy of the summons and complaint in accordance with an applicable

---

[7] Saint-Gobain asserts, and the Republic does not dispute, that this Court has subject matter jurisdiction pursuant to Article 54 of the ICSID Convention, which is incorporated into U.S. law at 22 U.S.C. § 1650a(a). Pl.'s Mot. at 9–11. Consequently, this opinion focuses solely on the disputed legal question of personal jurisdiction.

international convention on service of judicial documents;" (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court of the head of the ministry of foreign affairs of the foreign state concerned;" and (4) if none of the first three methods are possible, a plaintiff may serve the necessary documents through diplomatic channels with the assistance of the Department of State. 28 U.S.C. § 1608(a)(1)-(4). A plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Al-Saud*, 681 F.3d 463, 465 (D.C. Cir. 2012) (citing *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)).

The first method of service detailed under 28 U.S.C. § 1608(a)(1) was not available in this case, as neither Saint-Gobain nor the Republic contend that they are party to any "special arrangement for service." Pl.'s Mot. at 12. The next available method under the FSIA dictates that service must be made "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). This method includes the Hague Service Convention, which is the method that Saint-Gobain asserts it employed. Pl.'s Mot. at 12.

The Hague Service Convention is a multilateral treaty designed to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). As is relevant to the matter at hand, member states, such as Venezuela, are required to establish a Central Authority to receive and process requests for service of documents from other countries, and to effectuate such service. *See* Hague Service Convention art. 2, 5; *see also Walton v. Bilinski*, No. 2:15-cv-36, 2015 WL 9489610, at *2 (E.D. Mo. Dec. 30, 2015) (noting "a designated Central Authority" is "[t]he primary method for

16

service of judicial documents abroad.").  Pursuant to Article 5 and 6 of the Convention, once

service has been effectuated, the Central Authority is then required to complete a certificate

detailing the circumstances of service including the method, place and the date of service and the

person to whom the document was delivered.  *Volkswagenwerk Aktiengesellschaft v. Schlunk*,

486 U.S. 694, 699 (1988).  "If the document has not been served, the certificate shall set out the

reasons which have prevented service."  Hague Service Convention art. 6.  Service is thus

deemed "made" on the date of service set forth in the certificate of service provided by the

Central Authority.  *See* 28 U.S.C. § 1608(c)(2).

The Convention also provides under Article 15 an alternative method to ascertain that

service has been made for the purpose of entering a default judgment, even in the situation where

a Central Authority fails to complete and return the required certificate.  *See Schlunk*, 486 U.S.

694, 705 (1988) (noting Article 15 was intended to be a "sanction against those who ignore" the

Convention).[8]  Judge Stark provided that this provision is intended to prohibit "a foreign

---

[8] The full text of Article 15 reads:

Where a writ of summons or an equivalent document had to be transmitted abroad
for the purpose of service, under the provisions of the present Convention, and the
defendant has not appeared, judgment shall not be given until it is established
that:

(a) the document was served by a method prescribed by the internal law of the
State addressed for the service of documents in domestic actions upon persons
who are within its territory, or

(b) the document was actually delivered to the defendant or to his residence by
another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in
sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the
provisions of the first paragraph of this article, may give judgment even if no

sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21. As is relevant here, Article 15 provides that a default judgment may be given even in the absence of a completed certificate (presumably because service can inferred) when "it is established that . . .[the writ of summons or an equivalent document] was actually delivered to the defendant or to his residence by another method provided for by this Convention . . . in sufficient time to enable the defendant to defend." Hague Service Convention art. 15(b).

In this matter, both parties agree (as did Judge Stark) that Saint-Gobain couriered papers to the Venezuelan Foreign Ministry, the Republic's designated Central Authority, but that the Central Authority never completed or returned the required certificate of service. *See e.g.,* Pl.'s Mot. at 6; Def.'s Mot. at 6; Stark Decision at 21. The issue is if this delivery alone is sufficient for service to be deemed completed. The Republic argues it is not. Saint-Gobain disagrees.

---

certificate of service or delivery has been received, if all the following conditions are fulfilled -

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Hague Service Convention art. 15.

2. Judge Stark Correctly Found that Service Was Made Under Article 15 of the Convention.

In his December 12, 2019 order, Judge Stark determined that the Republic had been properly served by Saint-Gobain under Article 15 of the Convention. Stark Decision at 21. Article 15 permits a judgment to be issued after a writ of summons or equivalent document, which has been transmitted abroad for the purpose of service, "was actually delivered to the defendant. . . by another method provided for by this Convention." Judge Stark found that Saint-Gobain had fulfilled this requirement "[b]y 'actually deliver[ing] to the defendant,' i.e., the Republic, by serving the appropriate documents directly to the Central Authority designated by the Republic of Venezuela." Stark Decision at 22. At the time, the Republic argued that service was improper under the Hague Convention because delivery to Venezuela's Central Authority only began the service process, which they contend was never completed because the Central Authority never returned a certificate confirming service. *See* Def.'s Default J. Opp'n at 13; *see also* Stark Decision at 21. Judge Stark disagreed and concluded service had been properly made in this instance, noting that the Hague Convention "does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21.

The Republic now argues that reconsideration of this decision is warranted because it was "clearly wrong." Def.'s Mot. at 22. It argues (for the first time), that Article 15 does not authorize service, and that Saint-Gobain failed to meet Article 15's express requirements by failing to deliver the summons in accord with procedures under Venezuelan law for service on the sovereign. Def.'s Reply at 6–7.

The Court agrees with Judge Stark's holding that service was made on the Republic under Article 15 of the Convention, given that his interpretation was reasonable and consistent

with the findings of other courts. For example, in *Scheck v. Republic of Argentina*, the court found that Article 15 allowed for a conclusion that service was completed and jurisdiction over a sovereign state defendant was proper where the "Plaintiffs properly transmitted the documents to the [proper Central Authority]" that then refused to deliver and or provide a certificate for alleged deficiencies the court deemed "frivolous." *Scheck v. Republic of Arg.*, No. 10-cv-5167, 2011 WL 2118795 at \*3 (S.D.N.Y. May 23, 2011). This is similar to what occurred in the instant case, though with less transparency to Saint-Gobain regarding the status of their service request. After delivery to the Republic's Central Authority, the Central Authority took no further action, despite being required to do so. As Judge Stark determined, and the court in *Sheck* also recognized, "[t]he Hague Service Convention . . . does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." Stark Decision at 21. This is particularly true given that, as is the case here, the Central Authority as part of the Republic itself, is also the party upon whom process is to be served. Other courts have found similarly. *See, e.g., Devengoechea v. Bolivarian Republic of Venez.*, No. 12-cv-23743, 2014 WL 12489848, at \*1 (S.D. Fla. Apr. 25, 2014) ("Service was effectuated on Venezuela, through its Central Authority under the Hague Convention, on December 12, 2012, when it received the Summons, Complaint and transmittal documents."); *Box v. Dall. Mex. Consulate Gen.*, 487 Fed. App'x 880, 886 (5th Cir. 2012) (determining that pursuant to Article 15 of the Convention service of process occurred notwithstanding the failure of the Central Authority to issue a certificate, given it was "certainly not [Plaintiff's] fault that the authorities did not return a formal Certificate.") (citation omitted).

Against this backdrop, the Republic raises two new arguments for why the previous determination by Judge Stark was erroneous, including that (1) Article 15 cannot provide an

independent basis for service of process, and (2) that the requirements of Article 15 were not met due to a failure to comply with internal Venezuelan law. Neither argument was presented to Judge Stark when this issue was first decided. As this Court has stated in the past, "a motion for reconsideration generally is not an opportunity for a party to relitigate an issue that was or should have been raised at an earlier stage in the litigation." *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 72 (D.D.C. 2015) (citing *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). This is because "motions for reconsideration enable courts to correct their own errors, not the litigants' errors." *Id.; see also Coulibaly*, 278 F. Supp. 3d at 301 (declining to allow a reconsideration motion to serve as a "vehicle for presenting theories or arguments that could have been advanced earlier."). And the Republic provides no explanation for why it did not raise these arguments in the first instance, or why it is "in the interests of justice" to consider them now. But regardless, this Court reviews these new arguments and finds that Judge Stark's conclusion is correct.

In order to argue that "Article 15 does not authorize service at all," Def.'s Mot. at 17, the Republic conducts a statutory analysis and invokes the legislative history of Article 15. Def.'s Reply at 4-7. The Republic contends that because there is no explicit authorization of service in the text of Article 15, and because the legislative history demonstrates that Article 15 was designed to prevent unfair entry of default judgments, it thus cannot be used as an independent method of service. *Id.* at 5. But this ignores that Judge Stark reached his conclusion that effective service had been rendered in the context of evaluating a motion for default, which the Republic does not dispute is a common action taken by courts and not contradicted by the plain language of Article 15. And as the Supreme Court and the D.C. Circuit have repeatedly noted, the plain terms of a statute cannot be muddied by legislative history. *See Food Mktg. Inst. v.*

*Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019); *see also Int'l Bhd. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*, 814 F.2d 697, 700 (D.C. Cir. 1987) ("[C]ourts have no authority to enforce alleged principles gleaned solely from legislative history that has no statutory reference point."). Second, even if the Court were to grant this inference, none of the legislative history cited indicates that the drafters intended to foreclose allowing service through Article 15, even if it was originally intended primarily to "eliminate notification au parquet." Def.'s Reply at 5–6.

The Republic's second argument— that Saint-Gobain has not met the requirements of Article 15— also fails to show error by Judge Stark. The Republic claims that the express terms of Article 15 were not met, Def.'s Reply at 7, because the summons documents were never "actually delivered [to the Republic]. . . *by another method provided for by this Convention*." Hague Service Convention art. 15 (emphasis added). This in effect resurrects the Republic's previously rejected argument that service of papers on the Central Authority does not equate to service on a state itself, without completion of a certificate under Article 6 of the Convention. Def.'s Mot. at 16.[9] But the cases the Republic relies on are inapposite, in that they only show

---

[9] After failing to succeed on their argument before Judge Stark that service was defective due to the lack of a completed certificate by the Central Authority, on this go-around the Republic makes much of the need under Venezuelan law to serve the Attorney General when commencing suit against the state itself. *See* Def.'s Mot. at 13–14; *see also* Def.'s Reply at 3 (arguing service could not be completed in accord with the requirements of Article 5 of the Convention due to "the absence of subsequent delivery [by the Central Authority] *in compliance with the internal law of the requested state*.") (emphasis added). But the authority the Defendant cites for this rule shows that it is the responsibility of the Central Authority to take this step to have the attorney general notified. *See* Def.'s Mot. at 14 (citing *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 16-cv-2020 (D.D.C.), slip op. 10 (detailing how after being served, the Venezuelan Central Authority submitted a request for service to the Venezuelan court, who then arranged delivery to the Ministry of Foreign Affairs for service on the Attorney General). Thus, this defect is much the same as the failure to issue a certificate, in that it is an action within the control of the Central Authority, and could be manipulated to evade service, as

22

that service of papers on a Central Authority does not equate to service on a third-party, which is all-together distinct from this situation where the Central Authority was the state that was served. *See, e.g., Cavic v. Republic of Serbia,* No. 8:16-cv-1910, 2018 WL 6038346, at \*3 (C.D. Cal. Mar. 21, 2018) ("There is no evidence that [Plaintiff] has even initiated an attempt at proper service upon Serbia," where requests concerned a state-owned bank); *Samsung Elec. Co. v. Early Bird Sav.,* No. 13-cv-3105, 2014 WL 5139488, at \*1 (S.D. Cal. Oct. 2, 2014) (requests to Chinese Central Authority concerned private Chinese corporations, not state sovereign). Judge Stark concluded that in this instance, where the Central Authority was the party being served, no further action was required for service beyond actual delivery to the Central Authority. *See* Stark Decision at 22. As previously detailed, other courts have come to similar conclusions. *See Scheck*, 2011 WL 2118795 at \*3; *Box*, 487 Fed. App'x at 886; *Devengoechea*, 2014 WL 12489848 at \*1. And this Court agrees. In sum, the Republic has failed to show "clear errors of law which compel the court to change its prior position," *Nat'l Ctr. for Mfg. Sciences v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000), but regardless, this Court agrees with Judge Stark's prior determination that service was properly made on the Republic. Accordingly, the Republic's cross-motion for dismissal, treated as a motion for reconsideration, must be denied. Consequently, with jurisdiction being proper, the Court will register and enforce the award.

---

Judge Stark feared. Because of the Court's shared concern with Judge Stark regarding the Republic's habit of evading service, *see* Pl.'s Opp'n at 8 n.5 (collecting cases demonstrating the Republic's evasion of service on itself under the Hague Service Convention), the Court rejects this argument.

23

## V.  CONCLUSION

For the foregoing reasons, Saint-Gobain's Motion for Summary Judgment is **GRANTED** and the Republic's Motion for Dismissal is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 1, 2021                                          RUDOLPH CONTRERAS
                                                                          United States District Judge