# EXHIBIT C

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 15, 2021        Decided January 25, 2022

No. 21-7019

SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,
APPELLEE

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00129)

———

*Kent A. Yalowitz* argued the cause for appellant. With him on the briefs were *E. Whitney Debevoise, Allon Kedem, Sally L. Pei*, and *Stephen K. Wirth*.

*Lewis S. Yelin*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, and *Sharon Swingle* and *Cynthia A. Barmore*, Attorneys.

*Alexander A. Yanos* argued the cause for appellee. With him on the brief was *Carlos Ramos-Mrosovsky*.

2

Before: ROGERS and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Bolivarian Republic of Venezuela appeals the district court's grant of summary judgment to Saint-Gobain Performance Plastics Europe upon determining it had properly served the Republic with court process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. Articles 2 to 6 of the Hague Convention require that a plaintiff request service from a Central Authority designated by the receiving state and receive a certificate of service from the Central Authority stating it has served the defendant by a method consistent with the state's internal law. Because Venezuelan law requires lawsuits against the Republic to be served on the Attorney General, and the Attorney General was never served, we reverse and remand the case to the district court.

**I.**

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608, identifies four methods for serving a foreign state, in descending order of preference. Service is established (1) when service is made "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision"; (2) "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents"; (3) by sending a copy of the relevant documents to be "dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned"; and (4) by sending

3

copies of the documents to be "dispatched by the clerk of the court to the Secretary of State [who] shall transmit one copy of the papers through diplomatic channels to the foreign state." *Id.* § 1608(a)(1)–(4). At issue here is the second option, as no special service arrangement existed between the parties.

The Hague Convention is an international agreement among the signatory sovereign states on service of judicial documents that the Preamble states is designed to "simplify[] and expedit[e] the procedure" for serving process abroad. It was ratified by the United States Senate on April 14, 1967. 113 CONG. REC. - SENATE, 9664-65 (1967). Article 2 requires signatory states to "designate a Central Authority which will undertake to receive requests for service coming from other Contracting States." Under Article 5, once the Central Authority receives a request for service, it must serve the documents "by a method prescribed by [the receiving state's] internal law" or "by a particular method requested by the applicant" that is compatible with that law. Article 6 requires the Central Authority to provide a certificate of service that conforms to a specified model. Paragraph 1 of Article 15, in turn, prohibits entry of a default judgment where the foreign defendant "has not appeared" until the document is served according to the receiving state's internal law or the documents are "actually delivered . . . by another method provided for by this Convention." Paragraph 2 provides that in the absence of a certificate of service, the entry of a default is permitted where:

> (a) the document was transmitted by one of the methods provided for in [the] Convention,

> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document, [and]

4

> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it . . . .

Saint-Gobain Performance Plastics Europe is a French corporation that held a 99.99% interest in NorPro Venezuela, C.A., a Venezuelan company that produced components for hydraulic fracturing. In March 2011, then-President Hugo Chávez of the Bolivarian Republic of Venezuela ordered expropriation of Saint-Gobain's interest. Based on protection against expropriation by the France-Venezuela Bilateral Investment Treaty of April 15, 2004, Saint-Gobain sought compensation and entered into arbitration with the Republic pursuant to the International Centre for Settlement of Investment Disputes ("ICSID") Convention. An arbitral tribunal found that the Republic had breached the Investment Treaty and in November 2017 awarded Saint-Gobain $42 million for the expropriation.

When the Republic failed to pay the award, Saint-Gobain in December 2018 filed a lawsuit in the United States District Court for the District of Delaware seeking to register and enforce the arbitral award pursuant to the ICSID Convention, specifically 22 U.S.C. § 1650(a), which grants federal district courts subject matter jurisdiction over actions to enforce ICSID arbitral awards. In the absence of a special arrangement for service by the parties, Saint-Gobain proceeded under the FSIA's second preferred service option and on December 14, 2018, as Venezuelan law required sent requests for service with copies of its complaint and summons to the Republic's designated Central Authority. T. Flores and I. Ruiz signed for delivery of the requests for service on December 21 and 27, respectively. Saint-Gobain sought no further response from the Central Authority and received none. In June 2019, Saint-Gobain moved for a default judgment against the Republic. The

5

Republic moved to dismiss for lack of personal jurisdiction, on the ground it had not properly been served, and for improper venue in Delaware.

The Delaware district court found that it had jurisdiction inasmuch as the Hague Convention "does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate." D. Del. Slip Op. at 2. Saint-Gobain had served the Republic pursuant to Article 15(1) when it "serv[ed] the appropriate documents directly to the Central Authority designated by the Republic." *Id*. at 22. Upon granting Venezuela's venue motion, the court transferred the case to the District of Columbia.

In the U.S. District Court for the District of Columbia, Saint-Gobain moved for summary judgment and the Republic moved to dismiss for lack of personal jurisdiction. The district court, treating the motion to dismiss as a motion for reconsideration of the Delaware district court's jurisdictional determination, denied the Republic's motion and granted summary judgment to Saint-Gobain. D.D.C. Slip Op. 2. The court agreed with the Delaware court that service was complete under Article 15 when Saint-Gobain submitted its requests for service because that interpretation was "reasonable and consistent with the findings of other courts." D.D.C. Slip Op. 19–20 (citing *Box v. Dall. Mex. Consulate Gen.*, 487 Fed. App'x 880, 886 (5th Cir. 2012); *Devengoechea v. Bolivarian Republic of Venez.*, No. 12-cv-23743, 2014 WL 12489848 at *1 (S.D. Fla. Apr. 25, 2014); *Scheck v. Republic of Arg.*, No. 10-cv-5167, 2011 WL 2118795 at *3 (S.D.N.Y. May 23, 2011)). It ruled that Article 15 properly applied "in the context of evaluating a motion for default," *id.* at 21, and that requesting service from the Central Authority was sufficient in cases against a foreign sovereign state. *Id.* at 22–23. Absent

6

other objections, summary judgment was therefore appropriate. *Id.* at 7–8, 24.

The Republic appeals, and our review of the district court's determination that it had personal jurisdiction over the Republic is *de novo*. *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020); *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1123 (D.C. Cir. 2019).

**II.**

In cases of treaty interpretation, the Supreme Court has instructed that courts must "begin with the text," *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988) (internal quotations omitted), and that "[w]here the text is clear . . . [the courts] have no power to insert an amendment," *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1988). "To alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial," the Court explained, "would be on our part an usurpation of power, and not an exercise of judicial functions." *Id.* at 135 (quoting *In re The Amiable Isabella*, 19 U.S. (6 Wheat.) 1, 71 (1821)). Because the Hague Convention is a treaty, this law applies. *See Water Splash v. Menon*, 137 S. Ct. 1504, 1508–09 (2017). Courts must also adhere to the plain text when interpreting the FSIA's requirements for service given the "sensitive diplomatic implications" of suits against foreign sovereigns. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).

The plain text of Article 5 of the Hague Convention requires that the Central Authority serve the defendant "by a method prescribed by its internal law" or "by a particular method requested by the applicant, unless such a method is

7

incompatible with the law of the State addressed." Convention, art. 5. Because Saint-Gobain did not propose its own method of service, this court looks to the method of service prescribed by the law of the Republic to determine whether Article 5's requirements were met.

Under Venezuelan law, lawsuits against the Republic must be served on the Attorney General of the Republic. Organic Law of the Attorney General's Office, art. 95, *published in* Official Extraordinary Gazette No. 6.210, at 66 (Dec. 30, 2015) (Venez.). The parties do not dispute either that the Attorney General was not served or that Saint-Gobain did not receive a certificate of service from the Central Authority. Consequently, service was not completed under Article 5 of the Convention.

Saint-Gobain nonetheless contends that when the foreign defendant is a state, requesting service from the Central Authority suffices because the Central Authority is the state. Saint-Gobain Br. 26–27. This interpretation is unsupported by the plain text of the Convention. The Convention states in Article 2 that the Central Authority receives requests for service, not that this constitutes legal service, and under Articles 4 and 13, the Central Authority retains the power to object to requests that do not comply with the Convention or that infringe the receiving state's sovereignty. Viewing the Central Authority as legally equivalent to a sovereign defendant would amend the Convention by effectively rendering irrelevant the signatory state's law in determining whether service is complete. The Convention specifies that service must be made either by a "method prescribed by [the receiving state's] internal law," or by a "method requested by the applicant, unless . . . incompatible with the law of the [receiving state]." Convention, art. 5. Because Venezuelan law requires service on the Attorney General in lawsuits filed

8

against the Republic, that also is what the Convention requires. The interpretation of a treaty such as the Hague Convention is "governed by the text [of the Convention,] solemnly adopted by the governments of many separate nations," and the court has "no power to insert an amendment" where the "text is clear." *Chan*, 490 U.S. at 134. Saint-Gobain does not cite contrary authority.

Article 15(1), on which Saint-Gobain relies, is not a basis for obtaining personal jurisdiction here. Article 15(1) states that "[where] the defendant has not appeared, judgment shall not be given until it is established that — (a) the document was served by a method prescribed by the internal law of the State addressed, or (b) the document was actually delivered to the defendant . . . by another method provided for by this Convention." The Republic appeared before both the Delaware district court and the District of Columbia district court to challenge the personal jurisdiction of the courts. Saint-Gobain has neither completed service in compliance with Venezuelan law, which requires service on the Attorney General, nor identified another method of service under the Convention with which it complied. Therefore, Saint-Gobain has not satisfied the requirements of either Article 5 or Article 15(1).

The District of Columbia district court cited with approval the Delaware district court's conclusion that the Hague Convention "does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate," noting such a conclusion was "reasonable and consistent with the findings of other courts." D.D.C. Slip Op. 19-20 (quoting D. Del. Slip Op. 21). The district court's reliance on unpublished decisions outside of this circuit is unpersuasive. *Id*. In *Devengoechea*, 2014 WL 12489848 at *1 (S.D. Fla. Apr. 25, 2014), the court provided no explanation for

9

the conclusion that service on the Central Authority is alone sufficient to serve a foreign sovereign defendant. *Box*, 487 Fed. App'x at 886 (5th Cir. 2012), and *Scheck*, 2011 WL 2118795 at *3 (S.D.N.Y. May 23, 2011), concern service under Article 15(2), which is not at issue here, and do not interpret the text of Article 5. The district court's conclusion suggests that a foreign sovereign could not contest service once its Central Authority has received a request for service, but this does not comport with the plain text of Article 6 of the Convention. At no point does the Hague Convention modify Articles 5 or 15(1) to dispense with their requirements for service when the defendant is a state.

To the extent the district courts' rulings may be understood to suggest possible bad faith by the Republic in failing to assure that its Central Authority actually served the Attorney General and notified Saint-Gobain that service had been made, the plain text of the Convention speaks for itself. Unlike in *Water Splash*, 137 S. Ct. at 1508, where the FSIA and the Hague Convention Article 10(a) were silent on use of mail "for the purpose of service," the Convention is not silent on the elements of service at issue and nowhere provides that these requirements are inapplicable when the defendant is a sovereign state. Even when "the equities of a particular case may seem to point in the opposite direction," the Supreme Court has required courts to adhere to the plain text of the FSIA and the Hague Convention in view of the "sensitive diplomatic implications." *Harrison*, 139 S. Ct. at 1062.

Notably, Saint-Gobain has alternative means of effecting service on the Republic. For example, the FSIA permits service through diplomatic channels where other methods have failed, 28 U.S.C. § 1608(a)(4), a channel that is also recommended by the Convention in case of "difficulties" or "exceptional circumstances." Convention, arts. 9, 14; *see also*

10

*Water Splash*, 137 S. Ct. at 1508 (citing as well arts. 8, 11 &
19). Saint-Gobain objects only that "there is no indication of
how long diplomatic service may take," Saint-Gobain Br. 35,
but its claims of inconvenience do not affect how the courts are
required by Supreme Court precedent to interpret the
Convention. *Harrison*, 139 S. Ct. at 1062.

Accordingly, the court reverses the grant of summary
judgment to Saint-Gobain and remands the case for the district
court to afford Saint-Gobain the opportunity to effect service
pursuant to the Hague Convention or otherwise as 28 U.S.C.
§ 1608 allows, *see* FED. R. CIV. P. 4(j)(1).